# UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

|  |  |  |
|---|---|---|
| **JOSHUA DAVID SAPPI BIERING,** | § § § § | |
| Petitioner, *Pro Se,* | § § | **Case No**. 4:26cv-381-O |
| v. | § | |
| **J.P. MORGAN SECURITIES, LLC,** | § § | FINRA Case No. 24-01208 |
| **JPMORGAN CHASE & CO., and** | § | EEOC Case No.450-2024-04743 |
| **JPMORGAN CHASE BANK, N.A.,** | § § | AAA Case No. 01-26-0000-7215 |
| Respondents. | § § | |

## PETITIONER'S MOTION FOR ACCELERATED HEARING, CONCURRENT DISPOSITIVE BRIEFING, AND EXPEDITED SCHEDULING

Petitioner Joshua David Sappi Biering, proceeding *pro se*, moves for a narrow scheduling order requiring Respondents to file any Rule 12 motion, motion to compel arbitration, motion to stay, motion to transfer, or other threshold motion by the existing response deadline for the Amended Verified Petition [Dkt. 11]. Petitioner also requests expedited consideration of Dkt. 11 under 9 U.S.C. § 9, made and heard as a motion under 9 U.S.C. § 6 and Fed. R. Civ. P. 81(a)(6)(B), and, if the Court finds argument helpful, an expedited hearing. In the alternative, Petitioner requests a brief Rule 16(a) status conference.

Petitioner does not ask the Court to shorten Respondents' Rule 12(a)(1)(A)(i) response deadline, which runs from April 13, 2026 executed service of record [Dkts. 12, 12-1, 12-2, 12-3] and expires May 4, 2026. Nor does Petitioner ask the Court to alter the briefing periods under N.D. Tex. L. Civ. R. 7.1(e)–(f). The requested order addresses only sequencing: **threshold motion practice should proceed concurrently, not serially**.

The Amended Verified Petition seeks confirmation, modification, and partial vacatur of a FINRA arbitration award under 9 U.S.C. §§ 9–11. The relief ordered by the Panel does not self-execute. It depends on judicial action under §§ 9 and 11 to take effect through the regulated channels that disseminate Form U5 disclosures and arbitration awards. While that

1

judicial action remains pending, the public regulatory record continues to operate against Petitioner in CRD, BrokerCheck, FINRA Awards Online, and downstream hiring review under FINRA Rule 3110(e). That ongoing operation is the cognizable prejudice the FAA's "expeditious and summary" framework was enacted to forestall, and counsel transition or staggered briefing is not good cause to defer it. *Fed. R. Civ. P. 6(b)(1)(A).*

The requested relief is proportionate to the posture of this case. **The operative facts have not changed since the Award issued on December 29, 2025.**

Respondents have had continuous notice through the points of contact that have defined this dispute: the December 29, 2025 Award; the protective AAA demand filed on February 10–11, 2026, which expressly reserved this federal litigation pending judicial determination of arbitrability and forum (Dkt. 13 at 3); seven substantive AAA submissions and follow-up communications in the seven weeks that followed (*id.* at 3–4); the March 30, 2026 written notice of the federal filing and assigned case number transmitted to UB Greensfelder LLP (*id.* at 4); and the April 13, 2026 executed service of record.

AAA Employment/Workplace Rule R-7 sets the responding party's answering statement period at fourteen days; Respondents did not enter the AAA proceeding within that window, and engaged only after AAA itself directed a position on April 9, 2026. Mediation and settlement negotiations have been attempted on multiple occasions, however, both sides have stated more than once, on this record and in writing, that further negotiations would not presently be productive. Those avenues have been exhausted.

Counsel who handled the underlying FINRA arbitration and related proceedings remain involved. A concurrent-filing order would preserve Respondents' ability to raise any threshold issue, while preventing staggered motion practice from delaying review of a petition Congress directed to be heard as a motion.

## I.  RELIEF REQUESTED

Petitioner requests entry of an order providing:

1. ***Concurrent filing of threshold motions.*** An order directing that any motion to dismiss, compel arbitration, stay, transfer, or otherwise defer adjudication of the Amended Verified Petition be filed concurrently with Respondents' response to Dkt. 11, rather than in sequence. This is the only deviation from the default operation of the Federal and Local Rules.

2. ***Expedited consideration and hearing if helpful.*** Expedited consideration of the Amended Verified Petition under 9 U.S.C. § 9, as required by 9 U.S.C. § 6 and *Fed. R. Civ. P. 81(a)(6)(B)*, and, if the Court finds argument helpful, an expedited hearing at the Court's earliest convenience after Local Rule briefing closes.

3. ***Alternative — Rule 16(a) status conference.*** If the Court prefers to address sequencing, appearance posture, service, and settlement posture in conference, a brief Rule 16(a) status conference.

Petitioner does not request that the Court alter Respondents' Rule 12(a)(1)(A)(i) response deadline (May 4, 2026, measured from the April 13, 2026 executed service of record) or the briefing windows under N.D. Tex. L. Civ. R. 7.1(e)–(f). Those defaults operate without further order.

## II.  PROMPT, SUMMARY DISPOSITION IS THE FAA BASELINE

§ 6 of the FAA provides that applications under the Act "shall be made and heard in the manner provided by law for the making and hearing of motions." 9 U.S.C. § 6; *see also Fed. R. Civ. P. 81(a)(6)(B)*. The Supreme Court and Fifth Circuit describe FAA proceedings as streamlined, summary, and limited in scope. *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581–82, 587 (2008); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22, 29 (1983); *Brabham v. A.G. Edwards & Sons, Inc.*, 376 F.3d 377, 380–81 (5th Cir. 2004); *Legion Ins. Co. v. Ins. Gen. Agency, Inc.*, 822 F.2d 541, 543 (5th Cir. 1987).

*Moses H. Cone* is especially instructive. The FAA calls for "expeditious and summary" proceedings, with "only restricted inquiry into factual issues." 460 U.S. at 22. That restricted inquiry is satisfied here. Petitioner does not contest the Panel's factual findings; he invokes them. Dkt. 11 at 4.

What remains are the dispositive legal questions reserved to this Court — the § 9 confirmation/correction relief and the § 10(a)(4) structural-incompleteness analysis — on which the FAA preserves Petitioner's Article III opportunity. *See SEC v. Jarkesy*, 603 U.S. 109 (2024); *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024). Petitioner respectfully asks the Court to reach those questions on the schedule the FAA prescribes.

The requested order does not preclude any defense, shorten any response period, or alter Local Rule briefing. It only requires Respondents to present threshold objections at the outset. That sequencing serves Rule 1's command that the Rules be employed to secure the "just, speedy, and inexpensive determination" of this action, and Rule 16's purpose of expediting disposition and discouraging wasteful pretrial delay. *Fed. R. Civ. P. 1, 16(a), 16(c)(2)*. The Court also retains inherent authority to manage its docket. *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016); *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

## III. ONGOING PREJUDICE WARRANTS EXPEDITED SEQUENCING

### A.    The Inaccurate Form U5 Continues to Operate in Regulated Channels.

FINRA Rule 1122 bars member firms from filing information with FINRA that is incomplete, ***inaccurate***, misleading, or that "could in any way tend to mislead," and requires correction after notice. FINRA Rule 1122.

The Panel found Petitioner's Form U5 ***inaccurate***. Award at 4.

The correction has been ordered but cannot self-execute; the Rule 1122 duty therefore remains in breach until this Court's confirmation gives the ordered correction effect in CRD and BrokerCheck.

FINRA's own guidance confirms why this matters. Regulatory Notice 10-39 places three concurrent obligations on member firms — that Form U5 disclosures be "[t]imely, complete and accurate," and that they contain sufficient detail for "a reasonable person" to understand the underlying circumstances — because FINRA, the SEC, state regulators, member firms, and the investing public rely on those disclosures. FINRA Reg. Notice 10-39, at 2–3; *see Dep't of Enf't v. Wall*, FINRA Disc. Proc. No. 2007009472201. Each prong is

independent: timeliness alone is not sufficient; accuracy alone is not sufficient; and a disclosure that is neither timely nor sufficiently detailed defeats the regulatory purpose the Notice was issued to serve.

The current record presents a stigmatizing juxtaposition that the regulated channels cannot resolve. The Panel found Petitioner's Form U5 inaccurate, ordered expungement, and ordered correction (Award at 4); industry publications reported the Award within forty-eight hours of issuance (Mot. Exs. B–C); and the Award itself remains a public record indexed in FINRA Awards Online alongside Petitioner's name. Until this Court acts, the "reasonable person" the Notice contemplates — the prospective employer, regulator, market participant, or client — cannot tell from the public record whether Petitioner engaged in the alleged misconduct, whether the underlying allegation has been adjudicated against him, or whether the correction has been given effect. FINRA Rule 3110(e) requires hiring firms to investigate prior Form U5 disclosures before associating with a new representative; the inaccurate filing therefore continues to operate in CRD, BrokerCheck, and downstream hiring review until judicial relief gives effect to the ordered correction.

## B.   The Public Award Compounds The Harm.

FINRA awards are not confidential. FINRA Rules 12904(h), 13904(h). They are published as permanent public records and indexed in the same professional ecosystem that uses CRD, BrokerCheck, and Form U5 disclosures.

Petitioner's book of business when the inaccurate U5 was filed comprised approximately $958.9 million in client assets with trailing twelve-month production of $5,108,900. The Panel had before it uncontroverted damages-expert analysis quantifying the lost trajectory and uncontroverted industry-expert testimony that Petitioner's post-U5 production at Raymond James — $2,041,744 in 2024 — fell materially short of comparable tier-one to tier-one transitions. Dkt. 11 ¶¶ 27, 29–30, 143–145. The trajectory disrupted is concrete: in the eighteen months preceding the inaccurate U5, Petitioner's book grew new-client assets by approximately 234%, a growth profile the Panel's findings expressly recognized. Dkt. 11 ¶ 30. Against that record, the Panel found that Respondent "intend[ed]

to hinder" Petitioner's ability to associate with another firm and that the inaccurate U5 made it "difficult" for Petitioner to move to a tier-one firm. Award at 4.

The Award and inaccurate U5 now operate together in public regulatory channels. Within forty-eight hours of issuance, the Award was reported in industry publications. Mot. Exs. B–C. Those reports are searchable alongside Petitioner's name. The Award also refers throughout to an undifferentiated "Respondent," while denying relief against the same undifferentiated entity. Dkt. 11 ¶¶ 56–72. The result is a public record containing findings of misconduct without clear entity-specific disposition. Only this Court can resolve that ambiguity.

**C.    JPMS Has Been Judicially Found to Know How This Harm Operates.**

*Luckett* is useful here for institutional knowledge, not claim preclusion. In *J.P. Morgan Sec. LLC v. Luckett*, JPMS sought to vacate a FINRA arbitration award in a Form U5 dispute. The court rejected JPMS's challenge, holding that "JPMS was likely to know of this practice as a member of the same industry and would have expected [the former employee's] potential employers to conduct this kind of review," and further concluding that the record "establish[ed] a plausible basis from which the Panel could conclude that JPMS knew of the prospective employers and the effect which the Form U5 would have on [the departing advisor's] hiring prospects." No. 3:22-cv-137-RGJ, 2023 WL 6050230, at *5; Ex. X.02c.ii at 9 (W.D. Ky. Sept. 15, 2023). That is the same institutional knowledge — and the same mechanism — at issue here.

That adjudicated knowledge is corroborated by the Panel's own findings in this matter. The Panel found Respondent acted with the "intent to hinder" Petitioner's ability to associate with another firm and that the underlying internal review process — the predicate for the inaccurate U5 disclosure — was effectively "rubber stamped" by Respondent's Global Security function. Award at 4.

**Delay therefore does not preserve the status quo; it preserves an inaccuracy that JPMS has been judicially found to know operates against former employees, in a channel JPMS knows hiring firms must consult under Rule**

**3110(e).**

### D.    Delay Produces Irreversible Harm In Regulated Channels.

The D.C. Circuit recently explained that delayed review in the FINRA context may be "too little too late," because regulated participants can be forced out of business before meaningful review occurs. *Alpine Sec. Corp. v. FINRA*, 121 F.4th 1314, 1330, 1337–38 (D.C. Cir. 2024). The Supreme Court recognized the same timing principle in *Axon*: an injury caused by being subjected to an improper proceeding is "impossible to remedy once the proceeding is over," because "[a] proceeding that has already happened cannot be undone." *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191 (2023).

The same principle applies here. Petitioner's license, client relationships, and competitive position operate through regulated channels: CRD, BrokerCheck, FINRA Awards Online, state registration, and Rule 3110(e) hiring review. Subsequent employment does not cure a transition window that has already closed. It goes to mitigation, not irreversibility.

### E.    Settlement Efforts Do Not Justify Delay.

This is not a case where deferring motion practice for settlement would likely conserve resources. Without disclosing settlement communications, the procedural fact is that mediation and settlement negotiations have already been attempted. Both sides have stated more than once that further negotiations would not presently be productive. The case therefore needs sequencing, not a pause.

The requested order leaves settlement available if positions change. It simply prevents settlement posture from becoming another reason to defer threshold filings or stagger the FAA petition into multiple rounds of motion practice.

### IV. THE RECORD WARRANTS CONCURRENT FILING

The operative facts have not changed since the Award issued on December 29, 2025. What has changed, repeatedly, is the schedule on which Respondents engage. The relief Petitioner requests is a response to a documented pattern of delay across three fora — the

underlying FINRA arbitration, the parallel AAA proceeding, and now this action.

### A.    Continuous Representation Forecloses a Learning-Curve Defense.

Jeffrey H. Dunlap of UB Greensfelder LLP has represented JPMS in matters arising from Petitioner's Form U5 since at least December 2023, and through the entire FINRA arbitration that produced the Award. Award at 1. Mr. Dunlap also appeared for JPMS in *Luckett*, the federal Form U5 case discussed in § III.C above. Greenberg Traurig, LLP appeared for JPMorgan in the parallel AAA proceeding on April 9, 2026. Continuity of counsel across all three fora forecloses any generalized assertion that Respondents need additional time to learn the record. Diligence is the threshold under Rule 16(b)(4), and on this record that threshold is not met by counsel-transition or learning-curve assertions. *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003).

### B.    The Pattern of Delay in the FINRA Forum.

The same Respondents used delay as a tactical lever in the FINRA arbitration that produced the Award. Three episodes from that record are documented in the Award and in Dkt. 11:

(i)    ***Statement of Answer renege.*** Petitioner agreed on August 13, 2024, to extend Respondents' Statement of Answer deadline conditioned on no resulting delay to the rank-and-strike. The next afternoon, the rank-and-strike deadline itself, Respondents contested FINRA jurisdiction over the statutory employment-discrimination claims and requested a new arbitrator list. The only discernible effect was delay. Dkt. 11 ¶¶ 35, 86–87, 91.

(ii)    ***Discovery delay and obstruction.*** The arbitration ran 351 days and required nine production rounds. Award at 5–6; Dkt. 11 ¶¶ 86–88. Respondents produced zero documents on the Rule 13507 deadline; three motions to compel were required to elicit production. Among the documents ultimately produced were materials reflecting the inconsistency between Respondents' internal characterization of Petitioner's conduct and the contemporaneous record of approximately 234% new-client growth in the eighteen months preceding the

inaccurate U5. Dkt. 11 ¶ 30.

(iii) ***Refusal to proceed before two arbitrators.*** In late September 2025, days before the first scheduled hearing session, the Petitioner-first-ranked arbitrator withdrew. Petitioner consented to proceed before the two remaining arbitrators by mutual consent. Respondents declined. The result was an approximately two-month hearing delay, with no benefit to the merits. Dkt. 11 ¶¶ 87–90.

## C.    The Pattern Continued in the AAA Forum.

Petitioner filed a protective AAA demand on February 10–11, 2026 to toll TCHRA limitations and preserve statutory employment-discrimination claims excluded from the FINRA forum under FINRA Rule 13201(a). The filing expressly reserved this federal litigation pending judicial determination of arbitrability and forum. Dkt. 13 at 3. AAA Employment/Workplace Rule R-7 sets the responding party's answering statement period at fourteen days. Respondents did not file an answering statement within that window and did not engage on the AAA docket during the seven weeks that followed, despite Petitioner's seven substantive submissions and follow-up communications during that period. *Id.* at 3–4.

Respondents' first substantive engagement came on April 1, 2026 — one day after Petitioner filed the Verified Petition in this Court — when Mr. Dunlap requested additional time from AAA. The request was framed in indeterminate terms: until Respondents were "done with arbitration," rather than tied to any date certain. *Id.* at 4. Petitioner opposed any open-ended delay the same day. *Id.* On April 9, 2026, after AAA itself directed Respondents to state a position, Greenberg Traurig appeared and agreed only to a limited stay under AAA Rule R-2 while this Court determines arbitrability. *Id.* at 4–5. On April 10, 2026, AAA issued a Judicial Intervention letter imposing a 90-day administrative hold. *Id.* at 5.

## D.    The Pattern Continues in This Court.

The same dynamic is now visible on this docket. On April 13, 2026, Petitioner effected service of the Amended Verified Petition through CT Corporation System on all three Respondents at 11:44 AM CT. Dkts. 12, 12-1, 12-2, 12-3; Dkt. 13 at 6. Rule 12(a)(1)(A)(i) response window runs from that date and closes May 4, 2026. The same day, Petitioner

transmitted copies of the filed and served petition to counsel at UB Greensfelder LLP and to attorneys at Greenberg Traurig, LLP, who had recently appeared in the parallel AAA matter. Greenberg Traurig responded in writing that it "did not represent the JPMorgan entities in this federal action and was not authorized to accept service."

On April 27, 2026 — fourteen days later and one day before the filing of this Motion — Greenberg Traurig reversed that position. Counsel wrote that "[c]ontrary to what we noted earlier, JPMorgan has since asked that Greenberg Traurig serve as local counsel," transmitted a pre-executed AO 399 Waiver of the Service of Summons identifying April 27, 2026 as the date of a "request," and asked Petitioner to confirm the request and file the waiver with the Court. Mot. Ex. A. No such request had been made. Petitioner declined the waiver the same day, preserved the April 13 service-of-record date, and confirmed in writing that counsel transition is not a basis for enlargement under Rule 6(b). *Id.*

The procedural significance is straightforward. Rule 4(d) waiver, when properly requested and accepted, lengthens the responding party's answer period to sixty days from the date of the request. *Fed. R. Civ. P. 4(d)(3).* The waiver as transmitted, had Petitioner accepted it, would have substituted an April 27 "request" date for the April 13 service-of-record date and effectively reframed the operative timeline. New counsel does not restart the clock; voluntary appearance of new counsel with full notice of the pending deadline is not good cause under Rule 6(b)(1)(A). Petitioner does not ask the Court to decide any conduct issue arising from that exchange. Petitioner asks only for a sequencing order tied to the April 13 service date and the May 4 response deadline.

## V.  CONCLUSION

Petitioner respectfully requests entry of an order requiring any motion to dismiss, compel arbitration, stay, transfer, or otherwise defer adjudication of the Amended Verified Petition to be filed by Respondents' existing response deadline.

Petitioner further requests expedited consideration and, if the Court finds argument helpful, an expedited hearing after Local Rule briefing closes. Alternatively, Petitioner

requests a brief Rule 16(a) status conference to address response sequencing, appearance posture, service, and the present settlement posture.

The relief is narrow. It preserves Respondents' defenses, preserves the existing deadline, and preserves Local Rule briefing. It simply prevents serial threshold motion practice from delaying review of an FAA petition involving an adjudicated inaccurate Form U5 and a public FINRA Award that continue to operate against Petitioner in regulated channels.

Respectfully submitted,

**JOSHUA DAVID SAPPI BIERING**
4635 Washburn Ave.
Fort Worth, TX 76107
(682) 218-6738
jdsb@bierfam.com
*Petitioner, Pro Se*

Dated: April 28, 2026

**INDEX OF MOTION EXHIBITS**

**Mot. Ex. A** — Email exchange dated April 27, 2026 (Greenberg Traurig waiver-of-service offer; Petitioner's reply declining waiver and conferring under Local Rule 7.1)

**Mot. Ex. B** — Jennifer Lea Reed, *Finra Panel Offers Insight Into Alleged JPMorgan U5 Tactics*, Financial Advisor Magazine (Dec. 30, 2025)

**Mot. Ex. C** — Mark Schoeff Jr., *Ex-JPMorgan Advisor Gets U-5 Firing Expunged by Arb Panel*, Financial Planning Magazine (Jan. 2, 2026)

## CERTIFICATE OF CONFERENCE

Pursuant to N.D. Tex. L. Civ. R. 7.1(a) and (b), Petitioner certifies as follows. On March 23, 2026, Petitioner conferred by email with Jeffrey H. Dunlap of UB Greensfelder LLP, counsel of record for Respondents in the underlying FINRA arbitration, regarding the anticipated federal petition; Mr. Dunlap stated the petition would be opposed.

On March 30, 2026, Petitioner emailed Mr. Dunlap and counsel at UB Greensfelder LLP providing direct notice of the federal filing and the assigned case number. Dkt. 13 at 4. On April 27, 2026, Greenberg Traurig, LLP advised by email that it has appeared as local counsel for all three Respondents alongside UB Greensfelder LLP.

The same day, Petitioner conferred with counsel by email (Elizabeth Bones, Christopher S. Dodrill, and Jennifer Tomsen at Greenberg Traurig; Jeffrey H. Dunlap and Sarah Henderson at UB Greensfelder) regarding the relief requested in this Motion, identifying the proposed deadlines tied to the April 13, 2026, service date and requesting a response by 3:00 p.m. CT on April 27, 2026. As of the time of filing, no substantive response to the relief requested has been received.

Petitioner therefore treats this Motion as opposed for filing purposes pursuant to L. Civ. R. 7.1(b)(3), without prejudice to supplementing this certificate if Respondents subsequently provide a position.

**JOSHUA DAVID SAPPI BIERING**
*Petitioner, Pro Se*

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2026, a true and correct copy of the foregoing Motion and proposed order were filed with the Court via CM/ECF. I further transmitted copies by electronic mail to all known counsel from related proceedings: Elizabeth Bones (beth.bones@gtlaw.com), Christopher S. Dodrill (christopher.dodrill@gtlaw.com), and Jennifer Tomsen (tomsenj@gtlaw.com) at Greenberg Traurig, LLP; and Jeffrey H. Dunlap (jdunlap@ubglaw.com) and Sarah Henderson (shenderson@ubglaw.com) at UB Greensfelder LLP.

Respondent entities were served through CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201, with summonses returned executed as to all three Respondents on April 13, 2026 [Dkts. 12, 12-1, 12-2, 12-3].

**JOSHUA DAVID SAPPI BIERING**
*Petitioner, Pro Se*