This copy is for your personal, non-commercial use only. Reproductions and distribution of this news story are strictly prohibited.

• **View reprint options** • **Order a reprint article now** • **Print**

Finra Panel Offers Insight Into Alleged JPMorgan U5 Tactics

DECEMBER 30, 2025 • JENNIFER LEA REED

A Finra panel decision yesterday in an arbitration between J.P. Morgan Securities and a former advisor with the firm offered rare insight into ways the firm might use the Form U5—the official document that details the why and how of an advisor's departure.

Typically, Finra panels are tight-lipped on these details, and it can be difficult to glean even a glimmer of what actually happened between the advisor and the firm. However, in this case, the panel was unusually forthcoming about what led to its decision.

It gave an explanation "for the parties' information only" because it said it was concerned J.P. Morgan Securities' action were part of a "pattern of conduct." J.P. Morgan did not immediately respond to a request for comment on the case.

The arbitration began when advisor Joshua David Sappi Biering, who worked for the financial giant's brokerage unit in Dallas from 2017 to 2023 first as a broker and then as a dually registered advisor, filed a statement of claim June 3, 2024 and accused J.P. Morgan of mishandling his Form U5 as he left the firm.

Biering alleged defamation, wrongful discharge, weaponization of the Form U5, breach of contract, illegal forfeiture of earned compensation, forfeiture of deferred compensation in violation of ERISA and violation of Texas and/or New York labor and wage laws, among other things. Biering requested damages of at least $10 million and expungement.

J.P. Morgan denied the claims and asked the panel to assess all arbitration costs to Biering.

The Finra panel denied all of Biering's requests except for expungement. On that claim, it ruled J.P. Morgan must change the reason for termination to "voluntary" and that the termination explanation would be left blank. It also assessed all $19,800 in hearing session fees to J.P. Morgan.

According to the panel's decision, it believed that at some point J.P. Morgan learned that Biering was thinking about leaving and then "began investigating reasons to terminate [Biering] so as to make it more difficult for [him] to go to work with a competitor."

The panel also said that "based on the testimony and the citation to instances in which [J.P. Morgan] has been found to have done this in the past, the panel is concerned that this may be a pattern of conduct."

According to the decision, Biering was put on administrative leave on Oct. 27, 2023, without being told why. Biering resigned the next day.

J.P. Morgan's employment policies require that an advisor remains an employee on a "notice period" or "garden leave" for 60 days following a resignation, unless terminated earlier by the firm, the decision said. During that period, the advisor cannot engage in any business with the firm that requires registration.

On Dec. 1, 2023, J.P. Morgan terminated Biering for violation of the firm's code of conduct. On Dec. 22, the firm filed a Form U5 saying he had been discharged because after he submitted his resignation—but before the end of the notice period—he allegedly engaged in inappropriate behavior not related to sale of securities or any customer complaints.

"The panel believes one of the primary reasons for the timing of the filing of the U5 was to hinder [Biering's] ability to transfer his book of business to a competitor of [J.P. Morgan]," the decision said. And while the panel didn't find the reasons for termination given to be "defamatory," it did find them to be inaccurate "based on the facts in this case."

"With respect to damages, although the panel acknowledges the absence of a clean U5 makes it very difficult to move to a Tier One competitor of [J.P. Morgan], the panel notes [Biering] secured lucrative employment with a highly respected national brokerage firm less than two months after his termination," the decision said.

According to BrokerCheck, Biering subsequently went to Raymond James.

Joshua Iacuone, of Iacuone McAllister Potter in Dallas, was on the team that represented Biering and said that the Finra panel did not go far enough in penalizing J.P. Morgan.

"Biering  did a really good job and hustled and worked hard for his clients. A lot of them did not come with him, but he got new ones," Iacuone said. "The frustrating part is the panel sort of said, 'You thought your career was over, a firm took a chance on you miraculously, you hustled and did a good job and now since you're doing well we're not going to award damages."

"Until you start hammering firms with significant monetary awards, they're not necessarily disincentivized from doing this again," Iacuone added.

This copy is for your personal, non-commercial use only. Reproductions and distribution of this news story are strictly prohibited.

• **View reprint options** • **Order a reprint article now** • **Print**