# Investment**News**

The trusted resource for independent-minded advisors

**ALTERNATIVES**

# Former JPMorgan advisor fights zero-dollar FINRA award in federal court

Comparable cases against JPMorgan resulted in awards up to $2.5 million.

APR 01, 2026

By Tez Romero

A FINRA panel found JPMorgan made it harder for a departing advisor to join a competitor — then awarded him nothing.

That tension is at the center of a federal petition filed March 30 in the Northern District of Texas by Joshua David Sappi Biering, a former Executive Director at J.P. Morgan Private Bank's Fort Worth office. Biering, who claims he managed roughly $1 billion in client assets and generated $5.8 million in annualized revenue, is asking the court to partially confirm, modify, and vacate the arbitration award (*Biering v. J.P. Morgan Securities LLC et al.*, Case No. 4:26-cv-00381).

According to the petition, when Biering told his managers he planned to resign in October 2023, JPMorgan opened overlapping internal investigations and placed him on involuntary administrative leave. He says he submitted a formal resignation on October 28, 2023, triggering a 60-day garden-leave period. The firm terminated him on December 1 — roughly 34 days in — for a code-of-conduct violation that both sides agree had nothing to do with securities or customer complaints.

Fifteen days after Biering filed a retaliation complaint through JPMorgan's internal hotline, the firm filed a Form U5 designating him as "Discharged" for "inappropriate behavior," according to the petition. That language, Biering claims, did not name a specific policy or describe the conduct behind it.

**The FINRA panel's own findings cut in his favor.** In its explained decision, the panel stated that JPMorgan "began investigating reasons to terminate Claimant so as to make it more difficult for Claimant to go to work with a competitor." It noted the firm "has been found to have done this in the past" and flagged concern over "a pattern of conduct." The panel ordered the U5 corrected — changing the reason for termination to "Voluntary," wiping the termination explanation, and adjusting the date.

Yet it denied every damage claim. No compensatory damages. No punitive damages. No attorneys' fees. No defamation liability. The petition argues that gap between findings and outcome leaves the award without a final and definite resolution under federal arbitration law.

What gives the case broader significance for wealth professionals is the pattern. The petition cites three comparable FINRA proceedings against the same firm involving similar U5 disputes. *Luckett v. J.P.*

*Morgan Securities LLC* resulted in a $1.4 million compensatory award and U5 expungement, later confirmed by a federal court in Kentucky. *Becht v. J.P. Morgan Securities LLC* produced $363,200 in compensatory and $50,000 in punitive damages, with the arbitrator calling the same Global Security investigation methodology "woefully inadequate." *Han v. J.P. Morgan Securities LLC* ended in a $2.5 million award affirmed on appeal in New York.

Biering also claims that within days of registering with **Raymond James**, securities regulators in four states — Missouri, Hawaii, Colorado, and Massachusetts — sent letters of inquiry triggered by the U5 disclosures. He is seeking $825,407.26 in documented fees and costs. He has also separately filed an EEOC charge of discrimination, and the petition reserves those statutory employment claims for potential future litigation.

JPMorgan's counsel has indicated the petition is opposed. No court ruling has been issued.

The case raises a question advisors managing large books of business cannot afford to ignore: when a FINRA panel finds a firm acted to make it harder for an advisor to compete and filed an inaccurate U5, what does it mean when the award still comes back at zero?

Copyright © 2026 KM Business Information US, Inc. All rights reserved.
Reprinted from InvestmentNews. Use of editorial content without permission is strictly prohibited.