## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| **JOSHUA DAVID SAPPI BIERING,** | § | |
| *Petitioner, Pro Se,* | § | Case No. 4:26-cv-00381-O-BP |
| **v.** | § | |
| **J.P. MORGAN SECURITIES, LLC,** | § | FINRA Case No. 24-01208 |
| **JPMORGAN CHASE & CO., and** | § | EEOC Charge No. 450-2024-04743 |
| **JPMORGAN CHASE BANK, N.A.,** | § | AAA Case No. 01-26-0000-7215 |
| *Respondents.* | § | |

---

# EXHIBIT B.01a

## Biering JPM Personnel File – Binding Arbitration Agreement (Intake Signature)

## B.01a-001 – 011

---

**Description:**  Biering's JPM personnel file excerpt containing the signed JPM Binding Arbitration Agreement (BAA) executed at intake.

**Relevance:**  Establishes the arbitration agreement in force between the parties and its BAA/personnel-file provenance. Referenced throughout the petition's BAA provisions analysis.

**Source:**  CX-011; BIERING_0000449 – BIERING_0000466

**Petition Ref:**  ¶¶ 6–7 (agreement to arbitrate)

**Disclosures:**  None — reproduced as produced, no added markings

**Filing Status:**  Public - not sealed



B.1a-001
4:26-cv-00381-O
*Biering v. JPMS, et al.*



February 18, 2016


Joshua Biering
████████████████
Savannah, Georgia 31401

Dear Joshua:

We are very pleased to formally present our employment offer. In this letter we have included the details of your position, your compensation and the terms and conditions of your offer. You will also find information about your next steps. You will join us as a Military Officer Executive Development Program Associate - Dallas, TX at Chase Bank USA, NA, which we'll refer to as "Chase". Your manager will be Jeffrey T Hassman, whom you can reach at 302-282-3989.

We're planning to have you start on April 25, 2016. Whenever we mention start date in this letter, we are referring to the date of the first day you actually start working for us. Touch base with your manager before you start to make sure you have everything you need to know for your first day.

**Your pay**
Your annual base salary as of your start date is $100,000.00 (less applicable taxes). While your hours will vary based on business needs, your salary covers all hours you work during any week. You are not eligible for any overtime payments in this position. You will be paid consistent with Chase's payroll practices.


**Special cash award**
You will be paid a one-time sign-on award of $25,000. This award is subject to applicable taxes. We'll make this payment within 30 days after your start date. If your employment with Chase ends for any reason other than job elimination within a year after your start date, you would need to repay this sign-on award. The repayment is due within ten days of our request for repayment. You agree that Chase may withhold all or part of the repayment amount as allowed by law from any remaining salary or other payments owed to you at the time you leave. Chase will also be entitled to any costs and attorneys' fees associated with enforcing your repayment obligations.


**Other benefits**
We offer a comprehensive benefits program to our U.S. benefits-eligible employees, including health care and insurance plans, a cash balance pension plan, a 401(k) plan, and discounted Chase products. In addition, you will be eligible for paid time off, including vacation, based on your role and time working for us.


We provide some of our benefits materials electronically - by e-mail or on the company Intranet, which is accessible from work or from home. When you accept this offer, you agree to receive documents for the JPMorgan Chase Benefits Program electronically. This includes the summary plan descriptions, plan prospectuses and other documents. You may request a paper copy for a benefit plan at any time. The contact information you will need for each benefits plan is available in the Highlights of the JPMorgan Chase U.S. Benefits Program under a section called Benefits at a Glance. After completion of the Onboarding process, we will make this information available to you on our My Welcome site which is covered in more detail in the Next ▌ offer letter.

B.1a-001

B.1a-002
4:26-cv-00381-O
Biering v. JPMS, et al.

**Terms & Conditions**

In this section, we will cover the terms and conditions of this employment offer.

We need you to review all the information in this letter to check that it reflects our discussion because this document will legally supersede anything we've communicated previously verbally or in writing. If anything needs to change, we'll need a new document that refers to this offer and both you and Chase will need to sign it.

This offer of employment is subject to all the terms, conditions and attachments included in this document, the Binding Arbitration Agreement and all Chase policies and procedures, including but not limited to the JPMorgan Chase Code of Conduct.

**Introductory period and "at-will" employment**

Your first 90 days on the job are an introductory period. It lets us evaluate how you're adjusting to your new job and our organization. Plus it's the time during which we can make sure that you understand your role and responsibilities and our performance standards and policies. You are an "at-will" employee both during and after this introductory period, which means that either you or Chase can end your employment at any time, for any or no reason.

**Other conditions**

When you accept this offer, you're confirming that there's nothing restricting you from accepting employment or performing any duties with Chase, whether by contract (express or implied) or otherwise. You confirm you are not restricted from soliciting customers or from hiring employees of your former employer or any other party.

You're also acknowledging that you understand and agree that if you have any obligations with your former or current employers that they can enforce, Chase doesn't seek to violate those obligations.

You are affirming that you won't disclose to Chase or use in connection with your employment at Chase any protected trade secrets or protected confidential or proprietary materials of another entity, including any prior employer.

**Non-solicitation**

During your employment and for one year after you leave Chase, you agree you won't solicit, induce or encourage any current Chase employee to apply for employment elsewhere or to leave Chase. You confirm that you will not hire any employee who was working at Chase on the day you left unless that person left Chase more than six months before you wish to hire him or her, or because Chase eliminated his or her job.

Additionally, during your employment and for one year after you leave Chase, you agree you won't interfere with current Chase customers, suppliers, or other persons or entities that do business with Chase. By interfere we mean attempt to or actually solicit, induce to leave Chase, divert from doing business with Chase, or otherwise interfere with the business relationship any party has with Chase. This includes parties you directly worked with while employed at Chase or whose names you know because you worked at Chase. If required to be enforceable under any applicable law, your obligations in this paragraph will be interpreted to apply only when you use our confidential or proprietary information or any of our trade secrets.

You agree not to conduct these activities personally or on behalf of anyone else, directly or indirectly. If you do not meet or threaten not to meet the non-solicitation agreements mentioned above, Chase may seek monetary damages or equitable relief as appropriate.

**Next Steps**

**Pre-employment requirements to complete**

... of pre-employment processes you'll need to start shortly. They include various background ... processing and drug screening, a ... is several onboarding forms. For example, you will

02_Series_B_FINRA_Submission_Agreements.pdf  |  C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\20



B.1a-003
4:26-cv-00381-O
*Biering v. JPMS, et al.*

need to establish your identity and valid employment eligibility by completing Form I-9 on M presenting your ID and employment eligibility documents on or before your start date. We'll u Program to electronically compare your Form I-9 information against Social Security Admin: Department of Homeland Security records. We'll keep you updated about all the steps you ne throughout the pre-employment process.

This offer and continued employment is based on you successfully completing all pre-employment processes.

**Before your first day**
As a new hire, learning how to find resources and information is critical to your success. To help you get started, we've created a new hire website called My Welcome. On this site you will find more information about our pre-employment requirements and the benefits of joining Chase. After you start you'll continue to have access to the site to get you settled.

**On your first day**
Your manager will provide your ID badge and your employee Standard ID number that will be used to access the information and resources that are available to you.

If you have any questions, please contact our Pre-Employment team at 1-877-332-4473.

With the formalities covered, let us say again that we look forward to having you join us.

Sincerely,
Reggie Brown
469-477-5233

**Appendix: Systems Monitoring Activities and Cross-Border Transfers**

The following provides a summary of how JPMorgan Chase & Co., its affiliates and its subsidiaries and the entity that employs you, or for which you provide services (collectively, ?JPMC?), conducts Systems monitoring. JPMC may conduct monitoring to the extent permitted by applicable law.

JPMC conducts monitoring of JPMC?s physical facilities and its equipment and systems (collectively, the ? Systems?). System monitoring applies to your JPMC equipment, your personal equipment when accessing the Systems, and the communications, information, and materials conveyed or accessed using the Systems. Monitoring activities may include the monitoring and logging of traffic and usage data of all electronic communications; monitoring of telephone calls to or from JPMC work telephones as permitted by applicable laws and subject to any required notices; monitoring of the contents of electronic communications, files, databases, applications, and internet usage; and logging hours worked and physical presence at JPMC?s facilities if applicable. JPMC may at all times monitor, access, retrieve, record and review information obtained from the monitoring activities for various purposes, such as preventing and investigating activities that may violate JPMC?s policies and ensuring compliance with legal or regulatory obligations. While conducting monitoring activities, JPMC may obtain and process personal information about you and others that may reside on the Systems.

The monitoring activities (including JPMC?s collection and processing of personal or other information) are required for purposes of your employment or work assignment to promote adherence to applicable policies and regulations. Subject to applicable laws and regulations, if you object to this processing, JPMC may prohibit you from using the Systems; terminate offers of employment or work assignment; and, for employees, take disciplinary action against you, up to and including termination of your employment with JPMC.

JPMC may disclose the information it obtains in connection with monitoring activities to JPMC affiliates and to providers, regulators, superviso    ies, law enforcement and other government agencies.

B.1a-003

02_Series_B_FINRA_Submission_Agreements.pdf  |  C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\2(



B.1a-004

4:26-cv-00381-O

*Biering v. JPMS, et al.*

Information obtained from the monitoring activities may be used as the basis to take disciplin
and including termination or other legal action, for violations of JPMC?s policies or applicab

In addition to the monitoring activities discussed above, JPMC may obtain and store other inf
your employment or other working relationship, such as your compensation information, performance
information, benefits information and other workplace-related data.  JPMC may transfer such information, and
the information it obtains in connection with monitoring activities, to countries other than the country in which
the information originally was collected, including to the United States.

**Understanding Obligations under the Firm?s Personal Account Dealing Policy (PAD):**

**New hires NOT subject to PAD at joining:**

Employees are expected to understand the firm?s Personal Account Dealing (PAD) Policy, which helps to protect
the firm's reputation and maintain the highest standards of integrity when employees conduct personal
investment activities. Details of the Policy can be reviewed here.

**Hires Subject to PAD at time of joining:**

Employees are expected to understand the firm?s Personal Account Dealing (PAD) Policy, which helps to protect
the firm?s reputation and maintain the highest standards of integrity when employees conduct personal
investment activities. Details of the Policy can be reviewed here.

The position you are being offered is considered to be subject to the Personal Account Dealing Policy and, as
such, you, your covered family members  and anyone with an associated account* will need to be familiar with
the obligations set forth in this policy, including, but not limited to, the requirements, once you are employed
here, to disclose personal trading accounts and private investments, to pre-clear trades, to limit investment
strategies to those approved within this policy and to maintain trading accounts at JPMorgan Chase Approved
Brokers. Please note that all trading restrictions that apply to you, including but not limited to the prohibition
against day trading, also apply to your spouse/domestic partner, covered family members  and anyone with an
associated account*.

**Seasonal Worker model for individuals joining in formal seasonal/Short term programs:**

JPMorgan Chase requires that seasonal workers refrain from trading in any personal or ?associated*? accounts
for the time period that you are employed in a short term training program.  Please verify that you will comply
with the following personal trading requirements:

1. For the duration of the short term program I am joining I will not trade in any of my personal or ?associated?
accounts.
2. I understand that the Firm has the right to request account information for any of my accounts or ?associated?
accounts.
3. If there is an extenuating circumstance that would compel me to place a trade in my personal or ?associated?
account, I will obtain pre-approval of the trade by the Personal Account Dealing Group and I would be
responsible for supplying all confirmations and statements to the Personal Account Dealing Group for that
trade.

*The term ?associated accounts? refers to any securities accounts no matter where they are located and
includes, but is not limited to, those accounts that are established, maintained or controlled (either directly or
indirectly) by you, your spouse, domestic partner or minor children (even if financially independent), anyone to
whom you provide significant financial support, and in which the employee has a direct or indirect financial
interest.*

B.1a-004

02_Series_B_FINRA_Submission_Agreements.pdf  |  C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\2



**Acceptance and Code Affirmation:**

Upon signing this letter I accept the terms described above. I also affirm that I have read and JPMorgan Chase Code of Conduct, and agree as a condition of employment to comply with t amended and revised from time to time.

- I understand that I can access the Code via the Internet at http://www.jpmorganchase.com/ >About Us>Governance>Code of Conduct prior to joining the firm, and through the firm's intranet once I begin employment.
- I acknowledge that the Code requires that certain outside activities be approved in writing after I begin employment, and I agree that, if any such required approval is denied, I will cease the relevant activity immediately.
- As a JPMorgan Chase employee I understand that the Code requires me to report any known or suspected violation of the Code, of internal firm policies, or of laws or regulations applicable to the firm's business. I understand that failure to do so can result in disciplinary action up to and including termination of employment.
- I understand that all employees have post-employment responsibilities regarding confidential information.
- I acknowledge that the Code also requires that I safeguard confidential information, including anything that I created while working for my previous employer(s). I understand that I am not allowed to bring any of this with me to use at JPMorgan Chase or disclose any confidential information from a prior employer unless it has already been made public through no action of my own.
- I understand my offer of employment is contingent upon a determination by JPMorgan Chase that neither the offer nor my employment would violate, or create the appearance of violating, the firm's Code of Conduct, Anti-Corruption Policy, or Human Resources policies and practices, or any applicable laws or regulations
- I understand further if I am a Senior-Level Employee*, that Senior-Level Employees have certain additional responsibilities that continue after their employment with the firm terminates, including restrictions on solicitation and hiring of the firm's employees and solicitation of certain customers. I understand that I am responsible for knowing which post-employment responsibilities apply to me and I agree to comply with all applicable requirements.

*The term "Senior-Level Employee" is currently defined as any employee whose (a) annual base salary rate is US$150,000 (or the local currency equivalent) or higher, OR (b) annual total cash compensation is US$250,000 (or the local currency equivalent) or higher.*

**Independent Auditor Tax Services to Employees of JPMorgan Chase and its Affiliates:**

To be in compliance with the Public Company Accounting Oversight Board (PCAOB) Rule 3523 it is JPMorgan Chase's (JPMC) policy that PricewaterhouseCoopers (PwC) cannot provide any tax services to employees of JPMC or any of its controlled entities (hereafter referred to as JPMC employee). This restriction is regardless of whether the individual is in a financial reporting oversight role or not, and whether PwC is engaged by the individual or by JPMC. PwC is also prohibited from providing any tax services to a spouse of a JPMC employee if the work is related to a joint tax return. Exceptions to this policy will be reviewed on a case-by-case basis and will require the approval of the JPMC Controller.

Signature: _Joshua Biering_    Date: __18-Feb-2016__

B.1a-005

mployment is subject to my and JPMorgan Chase's agreement to submit ed disputes that cannot be res                internally to binding arbitration, as set forth in



B.1a-006
4:26-cv-00381-O
*Biering v. JPMS, et al.*

the Binding Arbitration Agreement detailed below. By signing below I acknowledge and have read and understand the Binding Arbitration Agreement, have accepted its term that it is a condition of my employment with JPMorgan Chase.

## BINDING ARBITRATION AGREEMENT:

JPMorgan Chase believes that if a dispute related to an employee's or former employee's employment arises, it is in the best interests of both the individual and JPMorgan Chase to resolve the dispute without litigation. Most such disputes are resolved internally through the Firm's Open Communication Policy. When such disputes are not resolved internally, JPMorgan Chase provides for their resolution by binding arbitration as described in this Binding Arbitration Agreement ("Agreement"). "JPMorgan Chase" and the "Firm" as used in this Agreement mean JPMorgan Chase & Co. and all of its direct and indirect subsidiaries.

This Agreement will be governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. ? 1 et seq.

As a condition of and in consideration of my employment with JPMorgan Chase & Co. or any of its direct or indirect subsidiaries, I agree with JPMorgan Chase as follows:

**1. SCOPE:** Any and all "Covered Claims" (as defined below) between me and JPMorgan Chase (collectively "Covered Parties" or "Parties", individually each a "Covered Party" or "Party") shall be submitted to and resolved by final and binding arbitration in accordance with this Agreement.

**2. COVERED CLAIMS:** "Covered Claims" include all legally protected employment-related claims, excluding those set forth below in Paragraphs 3 and 4 of this Agreement, that I now have or in the future may have against JPMorgan Chase or its officers, directors, shareholders, employees or agents which arise out of or relate to my employment or separation from employment with JPMorgan Chase and all legally protected employment-related claims that JPMorgan Chase has or in the future may have against me, including, but not limited to, claims of employment discrimination or harassment if protected by applicable federal, state or local law, and retaliation for raising discrimination or harassment claims, failure to pay wages, bonuses or other compensation, tortious acts, wrongful, retaliatory and/or constructive discharge, breach of an express or implied contract, promissory estoppel, unjust enrichment, and violations of any other common law, federal, state, or local statute, ordinance, regulation or public policy, including, but not limited to Title VII of the Civil Rights Act of 1964, the Civil Rights Acts of 1866 and 1991, the Age Discrimination in Employment Act of 1967, the Older Workers Benefit Protection Act of 1990, the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990, the Family and Medical Leave Act of 1993, the Fair Labor Standards Act of 1938, the Equal Pay Act of 1963, Section 1981 of the Civil Rights Act, and the Worker Adjustment and Retraining Notification Act.

**3. EXCLUDED CLAIMS:** This Agreement does not cover, and the following claims are not subject to arbitration under this Agreement: (a) any criminal complaint or proceeding, (b) any claims covered by state unemployment insurance, state or federal disability insurance, and/or state workers' compensation benefit laws, except that claims for retaliation pursuant to these laws shall be subject to arbitration under this Agreement, (c) any claim under the National Labor Relations Act, and (d) claims for benefits under a plan that is governed by Employee Retirement Income Security Act of 1974 ("ERISA").

Further, this Agreement also does not cover any action seeking only declaratory and/or emergency, temporary or preliminary injunctive relief (including a temporary restraining order) in a court of competent jurisdiction in accordance with applicable law, so long as that action is brought on an individual basis and not on a consolidated basis or as part of a collective or class action, and subject to the following:

B.1a-006



B.1a-007
4:26-cv-00381-O
*Biering v. JPMS, et al.*

- In the event such relief is sought by a Covered Party, who is not otherwis[e] arbitration requirements of the Financial Industry Regulatory Authority ("FINRA issues a ruling concerning emergency, temporary or preliminary injunctive relie[f] submit such claim if otherwise considered a Covered Claim to arbitration pursu[ant] Agreement, and

- In connection with any such action related to post-employment restrictions (e.g., actions to enforce rights to trade secrets, or agreements not to compete or solicit customers or employees) on a Covered Party who is otherwise subject to the arbitration requirements of FINRA (absent this Agreement), in order for the Covered Parties to have available to them the expedited arbitration procedures provided by FINRA, after the court issues a ruling concerning emergency, temporary or preliminary injunctive relief, the parties must submit such claim if otherwise considered a Covered Claim to arbitration before FINRA in accordance with its expedited arbitration procedures under FINRA Rule 13804.

**4. CLASS ACTION/COLLECTIVE ACTION WAIVER:** All Covered Claims under this Agreement must be submitted on an individual basis. No claims may be arbitrated on a class or collective basis unless required by applicable law. Covered Parties expressly waive any right with respect to any Covered Claims to submit, initiate, or participate in a representative capacity or as a plaintiff, claimant or member in a class action, collective action, or other representative or joint action, regardless of whether the action is filed in arbitration or in court. Furthermore, if a court orders that a class, collective, or other representative or joint action should proceed, in no event will such action proceed in the arbitration forum, subject to applicable law. Claims may not be joined or consolidated in arbitration with disputes brought by other individual(s), unless agreed to in writing by all parties or required by applicable law. To the extent there is a question of enforceability of class or collective arbitration, it shall be decided only by a court, not an arbitrator.

The arbitrator's authority to resolve disputes and make awards under this Agreement is limited to disputes between: (i) an individual and JPMorgan Chase; and (ii) the individual and any current or former officers, directors, employees and agents, if such individual is sued for conduct within the scope of their employment. No arbitration award or decision will have any preclusive effect as to issues or claims in any dispute with anyone who is not a named party to the arbitration.

I retain the right to challenge the validity of this Agreement upon grounds that may exist at law or equity and will not be subject to any form of retaliation for asserting such rights.

**5. ADMINISTRATIVE AGENCIES:** I understand that this Agreement does not preclude me from filing an administrative claim or charge with the Equal Employment Opportunity Commission ("EEOC") and/or state and local human rights agencies to investigate alleged violations of laws enforced by the EEOC or those agencies. However, I understand that I am not required to initiate an administrative proceeding before pursuing a Covered Claim under this Agreement. In the event I file such an administrative proceeding, I understand that I cannot pursue Covered Claims under this Agreement without first exhausting all required administrative remedies, such as obtaining a right to sue notice from the EEOC in order to arbitrate federal discrimination claims that require such a notice. By responding to administrative agencies, JPMorgan Chase does not waive its right to enforce this Agreement and the arbitrator shall treat a decision of an administrative agency in the same manner as it would be treated by a court of law.

**6. INITIATING ARBITRATION:** Arbitration under this Agreement shall be conducted before a single neutral arbitrator of the American Arbitration Association ("AAA")(unless the Parties agree upon another mutually acceptable arbitrator, in which case the arbitration will be conducted before such [sing]le arbitrator) in accordance with and selected pursuant to the rules and procedures [...t] Arbitration Rules of the AAA [... Rules") to the extent the AAA Rules do not

B.1a-007

02_Series_B_FINRA_Submission_Agreements.pdf | C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\2[...]

B.1a-008
4:26-cv-00381-O
*Biering v. JPMS, et al.*

conflict with the terms of this Agreement or applicable law. The AAA Rules will govern explicitly addressed by this Agreement. Where there is a conflict between this Agree Rules, this Agreement will govern. Where there is a conflict between applicable law a and/or this Agreement, the applicable law will govern. I understand that arbitration un Agreement will occur in the state where I am currently or was most recently employed by the firm, unless otherwise agreed by the Parties. Information about AAA is available from its website www.adr.org. A Covered Party may contact them directly at 1-800-778-7879. A Covered Party who is otherwise subject to the arbitration requirements of FINRA who wishes to pursue arbitration of a Covered Claim, must file such Covered Claim with AAA (or other mutually acceptable arbitrator), except as otherwise provide in Paragraph 3 of this Agreement.

To initiate arbitration:

- A Covered Party must send a written demand for arbitration to any office of the AAA (or if another mutually acceptable arbitrator has been agreed to by the Parties, to the offices of such other arbitrator). The Covered Party submitting the demand for arbitration must also simultaneously send a copy of the written demand for arbitration to the other Party (if being sent to JPMorgan Chase, the copy should be sent to the following address:JPMorgan Chase & Co. Legal Department, c/o Legal Papers Served, 4 Chase Metrotech Center, Floor 18, Brooklyn, NY 11245).
- Both of the following must be included in the demand for arbitration:

(a) A statement of the nature of the dispute, including the alleged act or omission at issue, the names of the parties involved in the dispute, the amount in controversy, if any, the remedy sought to resolve the issue (including the dollar amount, if any), the mailing address for future correspondence and the legal counsel, if any, and

(b) Any required filing fee. If a Covered Claim is filed by me, the filing fee is $100 payable by check, money order or any other method of payment permitted by the AAA (or another mutually acceptable arbitrator agreed to by the parties). In the event the filing fee required by the state or federal court in which the Covered Claim could have been brought is less than $100, JPMorgan Chase agrees to refund to me the difference between $100 and such state or federal court filing fee within 30 days of receiving notice of payment. Any demand received by the AAA (or another mutually acceptable arbitrator agreed to by the Parties) that is not accompanied by the required filing fee will be returned.

Nothing in this Agreement releases a Covered Party from any obligation to comply with timely filing requirements and statutes of limitations under applicable law, statutes, or regulations. Thus, whether or not a Covered Party chooses to file with administrative agencies, his/her arbitration must still be initiated as an arbitration within the applicable administrative, statutory or judicial filing time frame, as required by law, and the demand for arbitration must be received at the address above within the time period allowed pursuant to the statute, regulation or other law applicable to the alleged act or omission giving rise to the dispute. Nothing in this Agreement is intended or should be construed to shorten or extend the statute(s) of limitations and/or filing periods that exist under applicable law.

The submission and timing of any response to an arbitration demand shall be in accordance with AAA's Rules, which currently provides that a response be filed within 15 days after the date of the letter from the AAA (or other mutually agreed to arbitrator) acknowledging receipt of the demand for arbitration.

**7. ARBITRATION PROCEEDINGS:** The arbitrator will conduct the hearing as expeditiously as possible, while ensuring that all Parties have the opportunity to present evidence and arguments and Agreement is followed. The arbitrator will set the date, time, and place of the hearing, arbitration provider mutually  to by the parties) will notify the Parties at least

Case 4:26-cv-00381-O-BP    Document 20-2    Filed 04/29/26    Page 10 of 16    PageID 283



**B.1a-009**
4:26-cv-00381-O
*Biering v. JPMS, et al.*

30 calendar days in advance, unless the Parties otherwise agree. In the event the he reasonably be completed in one day, the arbitrator will schedule the hearing to be co or dates that is/are convenient to both Parties. The arbitrator will make every effort to reasonably convenient location for the continued arbitration, without incurring additio possible.

**(a)     Fees:** All ordinary and reasonable administrative expenses of the arbitration, including fees for a single arbitrator, hearing room expenses, travel expenses of the arbitrator, the AAA representatives (if applicable), and any witnesses produced at the arbitrator's specific request and not otherwise called by a party, will be paid completely by JPMorgan Chase. The fees and expenses of any witness, expert, consultant, interpreter and others retained or consulted by a party shall be paid by the party requiring the presence of such persons, subject to applicable law.  JPMorgan Chase will not pay for fees or costs incurred as a result of deliberate and inappropriate delay or absence caused by employees or their counsel, as determined by the arbitrator and permitted by applicable law. Except as otherwise provided by law, all attorney's fees shall be paid by the party that incurs them.  Nothing in this Agreement is intended or should be construed to require employees to bear any type of expense that they would not otherwise bear if the Parties were to litigate a Covered Claim in a court of law.

**(b)     Legal Representation and Language Interpreter:** The Parties (if desired) may use the services of legal counsel and/or a language interpreter. The Parties utilizing such services are responsible for making and paying all fee and other arrangements directly with the legal counsel and/or interpreter, subject to applicable law. Nothing in this Agreement is intended or should be construed to require employees to bear any type of expense that they would not otherwise bear if the Parties were to litigate a Covered Claim in a court of law.

**(c)     Attendance at and Confidentiality of Arbitration Hearing:** The Covered Party, a JPMorgan Chase corporate representative of its choosing, and the arbitrator must be present at the hearing. In addition, an official recorder and legal counsel (for any party) also may attend the hearing. Further, the Parties may call witnesses to testify at the arbitration. Unless the parties agree otherwise, the arbitrator shall exclude witnesses (other than the represented Parties) from the hearing during the testimony of any other witness. The arbitrator, the Parties and their representatives must maintain the confidentiality of the hearings unless the law provides otherwise.

**(d)     Discovery:** Discovery requests and the provision of discovery must be consistent with this Agreement, general standards of due process, the Rules of AAA and the expedited nature of arbitration. The guidelines below are only guidelines, do not establish a minimum or maximum of discovery, and will be applied subject to these principles. Thus, there may be cases which warrant more or less discovery than that outlined below.

- At least 20 days before the arbitration hearing, the Parties must submit the names and addresses of the witnesses each party intends to produce and any documents each party intends to present.  The Parties may add to such information up to 10 days before the hearing. All such submissions are final after that point absent a finding of good cause by the arbitrator.

- In general, the Parties may take the depositions of all expert witnesses and up to 3 other individuals. Any individual who certifies he/she has no direct knowledge of the facts should not be deposed as a fact witness. At least 10 days' prior notice should be given by the party requesting a deposition and advance efforts should be made to mutually agree on deposition dates, including the time and place for any depositions to be taken. The party requesting the deposition is responsible for all related costs for that deposition. Discovery must be completed at least 20 days before the hearing. The arbitrator may alter the timing and scope of discovery as necessary or upon request of the Parties.

B.1a-009

CONFIDENTIAL



• The arbitrator will resolve discovery disputes and may expand or l of discovery within his or her reasonable discretion, and the rules of AAA consi expedited nature of arbitration.

**(e)**    **Prehearing Motions**: The arbitrator is authorized to consider and rule on prehearing motions, including discovery motions, motions to dismiss and summary judgment on the claims, provided that the other party has reasonable notice and time to respond to any such prehearing motions. Any dispute which fails to state a claim upon which relief may be granted under applicable law (including, but not limited to claims that are barred by the applicable statute of limitations or mandated timeframe for filing such claim, or that are barred by an enforceable release, or involve a claim against someone who was not associated with the conduct at issue) is subject to dismissal without an evidentiary hearing. Any ruling regarding such motion shall be made consistent with the Form of Decision and Scope of Relief sections in this Agreement.

**(f)**    **Time of Decision**: The arbitrator will make the decision within 30 days of the close of the hearing or as soon as possible thereafter, unless otherwise agreed to by the Parties or otherwise specified by law.

**(g)**    **Form of Decision**: The decision will be in writing and signed by the arbitrator. Unless otherwise agreed to by the Parties, the decision will include a summary of claims arbitrated and decided, a reasoned opinion setting forth any findings of fact or conclusions of law, and damages and other relief (if any) granted. All decisions shall be executed in the manner required by law. The decision will be final and binding upon the Parties, and appeal of the decision to a court shall be limited as provided by the FAA.

**(h)**    **Scope of Relief**: The arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court, including the award of monetary damages and the imposition of requirements on the Parties (including injunctive relief), as permitted by applicable law. The arbitrator may award only such relief as may be granted for a Covered Claim brought in court on an individual basis under applicable law. The arbitrator may award punitive or exemplary damages or attorneys' fees as provided or limited by applicable law.  Nothing in this Agreement is intended or should be construed to limit the remedies that otherwise would be available to the Parties in a court of law.

**(i)**    **Enforcement of Arbitration Decision/Judicial Procedure**: The decision of the arbitrator may be enforced under the terms of the FAA to the maximum extent possible. Either party may have an arbitration decision enforced in a court of law in accordance with applicable the FAA. If this occurs, neither the arbitrator nor AAA will be involved in the court proceedings.

If a court determines that the decision is not completely enforceable, it will be enforced and binding on both parties to the maximum extent permitted by law.

**8.  SEVERABILITY**: If any part of this Agreement is held to be void or unenforceable, the remainder of the Agreement will be enforceable and any part may be severed from the remainder as appropriate, to the extent permitted by law. For example, if a court determines that a particular provision of this Agreement is in conflict with a mandatory provision of applicable law in that jurisdiction, such provision(s) will not be enforced in that jurisdiction, but the exclusivity of the Agreement and its use of arbitration as the sole and exclusive forum for all Covered Claims within its scope shall not be affected. Any dispute as to the arbitrability of a particular issue or claim pursuant to this Agreement is to be resolved in arbitration. Notwithstanding the foregoing, any issue concerning the validity of the class, collective, or representative or joint action waiver provided in Paragraph 4 of this Agreement must be decided by a court with jurisdiction over the Parties, and an arbitrator does not have authority ue of the validity of the waiver. If for any reason the class, collective, or oint action waiver is found to          enforceable, the class, collective, or

B.1a-010

CONFIDENTIAL



B.1a-011
4:26-cv-00381-O
*Biering v. JPMS, et al.*

representative or joint action may only be heard in court and may not be arbitrated under this Agreement

**9.   AMENDMENT OR TERMINATION OF AGREEMENT:** JPMorgan Chase reserves amend, modify or discontinue this Agreement at any time in its sole discretion to the extent permitted by applicable law. Such amendments may be made by publishing them on the JPMorgan Chase Intranet or by separate notification to me and shall be effective 30 calendar days after such amendments are provided to me and will apply on a going-forward basis only.  Amendment, modification or discontinuation of the Agreement will not affect pending arbitration proceedings. Continuation of my employment after receiving such amendments or modifications will be considered my acceptance of the amended terms.

This Agreement does not alter the voluntary ("at will") nature of my employment relationship with the Firm, nor does it afford any rights or remedies not otherwise available under applicable law. Of course, this Agreement does not require that JPMorgan Chase initiate arbitration before taking corrective action of any kind, including termination of employment.

Signature:   *Joshua Biering*       Date:   **18-Feb-2016**

B.1a-011
02_Series_B_FINRA_Submission_Agreements.pdf  |  C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\20

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| **JOSHUA DAVID SAPPI BIERING,** | § | |
| *Petitioner, Pro Se,* | § | Case No. 4:26-cv-00381-O-BP |
| **v.** | § | |
| **J.P. MORGAN SECURITIES, LLC,** | § | FINRA Case No. 24-01208 |
| **JPMORGAN CHASE & CO., and** | § | EEOC Charge No. 450-2024-04743 |
| **JPMORGAN CHASE BANK, N.A.,** | § | AAA Case No. 01-26-0000-7215 |
| *Respondents.* | § | |

# EXHIBIT B.02

## FINRA Submission Agreement – Claimant (Biering)

## B.02-001

| | |
|---|---|
| **Description:** | Claimant's signed FINRA Dispute Resolution Submission Agreement. |
| **Relevance:** | Proves claimant's submission to FINRA arbitration jurisdiction. |
| **Source:** | FINRA Arbitration Filing, Submission Agreement; submitted December 4, 2023 |
| **Petition Ref:** | ¶¶ 6–7 |
| **Disclosures:** | None — reproduced as produced, no added markings |
| **Filing Status:** | Public - not sealed |



## FINRA ARBITRATION Submission Agreement

### Claimant(s)

In the Matter of the Arbitration Between

Name(s) of Claimant(s)   Joshua D. Biering (CRD #6883842)
                         Ft. Worth, TX) 76109

and

Name(s) of Respondent(s)   JPMorgan Securities LLC (CRD # 79)
383 Madison Ave, New York, NY 10179

1. The undersigned parties ("parties") hereby submit the present matter in controversy, as set forth in the attached statement of claim, answers, and all related cross claims, counterclaims and/or third-party claims which may be asserted, to arbitration in accordance with the FINRA By-Laws, Rules, and **Code of Arbitration Procedure.**

2. The parties hereby state that they or their representative(s) have read the procedures and rules of FINRA relating to arbitration, and the parties agree to be bound by these procedures and rules.

3. The parties agree that in the event a hearing is necessary, such hearing shall be held at a time and place as may be designated by the Director of Arbitration or the arbitrator(s). The parties further agree and understand that the arbitration will be conducted in accordance with the FINRA **Code of Arbitration Procedure.**

4. The parties agree to abide by and perform any award(s) rendered pursuant to this Submission Agreement. The parties further agree that a judgment and any interest due thereon, may be entered upon such award(s) and, for these purposes, the parties hereby voluntarily consent to submit to the jurisdiction of any court of competent jurisdiction which may properly enter such judgment.

5. The parties hereto have signed and acknowledged the foregoing Submission Agreement.

Joshua Biering
Claimant Name (please print)

*Josh Biering*                                                    12/4/2023
Claimant's Signature                                             Date
State capacity if other than individual (*e.g.*, executor, trustee or corporate officer)

_____
Claimant Name (please print)

_____                    _____
Claimant's Signature                                             Date
State capacity if other than individual (*e.g.*, executor, trustee or corporate officer)

**If needed, copy this page.**

B.2-001                                      22

**UNITED STATES DISTRICT COURT**
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **JOSHUA DAVID SAPPI BIERING,** | § | |
| *Petitioner, Pro Se,* | § | Case No. 4:26-cv-00381-O-BP |
| **v.** | § | |
| **J.P. MORGAN SECURITIES, LLC,** | § | FINRA Case No. 24-01208 |
| **JPMORGAN CHASE & CO., and** | § | EEOC Charge No. 450-2024-04743 |
| **JPMORGAN CHASE BANK, N.A.,** | § | AAA Case No. 01-26-0000-7215 |
| *Respondents.* | § | |

# EXHIBIT B.03

## FINRA Submission Agreement – Respondent (JPMS)

## B.03-001

| | |
|---|---|
| **Description:** | JPMS's signed FINRA Dispute Resolution Submission Agreement. |
| **Relevance:** | Proves JPMS's submission to FINRA arbitration jurisdiction. |
| **Source:** | FINRA Case No. 24-01208 – Submission Agreement (Respondent JPMS, Sept. 10, 2024) |
| **Petition Ref:** | ¶¶ 6–7 |
| **Disclosures:** | None — reproduced as produced, no added markings |
| **Filing Status:** | Public - not sealed |



**FINRA ARBITRATION** Submission Agreement

Respondent(s)

**In the Matter of the Arbitration Between**

Name(s) of Claimant(s)
Joshua Biering

**and**

Name(s) of Respondent(s)
J.P. Morgan Securities LLC

1. The undersigned parties ("parties") hereby submit the present matter in controversy, as set forth in the attached statement of claim, answers, and all related cross claims, counterclaims and/or third-party claims which may be asserted, to arbitration in accordance with the FINRA By-Laws, Rules, and Code of Arbitration Procedure.

2. The parties hereby state that they or their representative(s) have read the procedures and rules of FINRA relating to arbitration, and the parties agree to be bound by these procedures and rules.

3. The parties agree that in the event a hearing is necessary, such hearing shall be held at a time and place as may be designated by the Director of Arbitration or the arbitrator(s). The parties further agree and understand that the arbitration will be conducted in accordance with the FINRA Code of Arbitration Procedure.

4. The parties agree to abide by and perform any award(s) rendered pursuant to this Submission Agreement. The parties further agree that a judgment and any interest due thereon, may be entered upon such award(s) and, for these purposes, the parties hereby voluntarily consent to submit to the jurisdiction of any court of competent jurisdiction which may properly enter such judgment.

5. The parties hereto have signed and acknowledged the foregoing Submission Agreement.

J.P. Morgan Securities LLC
Respondent Name (please print)
/s/ Rachel L. Tidwell-Neal, Assistant General Counsel                09/10/2024
Respondent's Signature                                               Date
State capacity if other than individual (*e.g.,* executor, trustee or corporate officer)

Respondent Name (please print)

Respondent's Signature
State capacity if other than individual (*e.g.,* executor, trustee or corporate officer)

**If needed, copy this page.**

B.3-001