### UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **JOSHUA DAVID SAPPI BIERING,** | § | |
| *Petitioner, Pro Se,* | § | Case No. 4:26-cv-00381-O-BP |
| **v.** | § | |
| **J.P. MORGAN SECURITIES, LLC,** | § | FINRA Case No. 24-01208 |
| **JPMORGAN CHASE & CO., and** | § | EEOC Charge No. 450-2024-04743 |
| **JPMORGAN CHASE BANK, N.A.,** | § | AAA Case No. 01-26-0000-7215 |
| *Respondents.* | § | |

# EXHIBIT D.01r
## JPMS Answer to First Amended Statement of Claim
## D.01r-001 – 021

**Description:**   JPMS's Answer to the First Amended Statement of Claim.

**Relevance:**   Respondent's pleading posture.

**Source:**   FINRA Case No. 24-01208 – JPMS Answer to First Amended SOC

**Petition Ref:**   App. A p. 51 ("JPMS Answer to First Amended SOC")

**Disclosures:**   None — reproduced as produced, no added markings

**Filing Status:**   Public - not sealed



**Jeffrey S. Dunlap, Esq. (Ohio Bar No. 0067923)**
**Emma M. Tomsick, Esq. (Ohio Bar No. 0101308)**
**UB GREENSFELDER LLP**
**Skylight Office Tower**
**1660 West 2nd Street, Suite 1100**
**Cleveland, Ohio 44113-1448**
**(216) 583-7000**
**(216) 583-7001 (Facsimile)**
**jdunlap@ubglaw.com**
**etomsick@ubglaw.com**

**Attorneys for Respondent J.P. Morgan Securities LLC**

**BEFORE THE ARBITRATION BOARD**
**OF THE**
**FINANCIAL INDUSTRY REGULATORY AUTHORITY**

|  |  |
|---|---|
| **In the Matter of the Arbitration Between** | X<br>:<br>:   **FINRA Case No. 24-01208** |
| **JOSHUA BIERING,** | :<br>: |
| **Claimant,** | :<br>: |
| **v.** | :<br>:<br>: |
| **J.P. MORGAN SECURITIES LLC,**<br>**JPMORGAN CHASE & CO., and**<br>**JPMORGAN CHASE BANK, N.A.,** | :<br>:<br>:<br>: |
| **Respondents.** | :<br>: |
|  | X |

---

**RESPONDENT J.P. MORGAN SECURITIES LLC'S STATEMENT OF ANSWER AND**
**AFFIRMATIVE DEFENSES**

---

Respondent J.P. Morgan Securities LLC ("JPMS"),[1] states as follows in response

to Claimant's First Amended Statement of Claim:

---

[1] JPMorgan Chase Bank, N.A., and JPMorgan Chase & Co. are not FINRA member firms, are not subject to FINRA's jurisdiction and do not agree to arbitrate claims against them in FINRA arbitration.

D.1r-001

05_Series_D_JPMS_Answers_and_HR_Policies.pdf  |  C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\

D.1r-002
4:26-cv-00381-O
*Biering v. JPMS, et al.*

1.      JPMS lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 1, and therefore denies the same, except to admit that Claimant was employed by JPMorgan Chase Bank, N.A. ("JPMorgan") from 2016 through December 2023.

2.      JPMS denies the allegations in Paragraph 2, except to admit that on October 28, 2023, Claimant provided JPMorgan with notice of his intent to resign his employment with JPMorgan, initiating his 60-day Notice Period during which (unless terminated by JPMorgan) he was still an employee of JPMorgan. JPMS further admits that JPMorgan terminated Claimant's employment on December 1, 2023.

3.      JPMS denies the allegations in Paragraph 3.

4.      JPMS denies the allegations in Paragraph 4.

5.      JPMS denies the allegations in Paragraph 5, except to admit that it filed Claimant's Form U5 on December 22, 2023 and that it accurately disclosed that Claimant was discharged from JPMorgan and therefore JPMS would no longer hold his registration. JPMS also admits that Claimant's Form U5 contains the following accurate disclosure in response to Question 3: "After RR submitted resignation, but before expiration of Notice Period, RR was terminated for inappropriate behavior. Not related to the sale of securities or any customer complains."

6.      JPMS denies the allegations in Paragraph 6.

7.      JPMS denies the allegations in Paragraph 7.

8.      JPMS lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8, and therefore denies the same.

9.      JPMS denies the allegations in Paragraph 9.

D.1r-002
05_Series_D_JPMS_Answers_and_HR_Policies.pdf  |  C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\

D.1r-003

4:26-cv-00381-O

*Biering v. JPMS, et al.*

10.     JPMS admits that Claimant is a veteran. JPMS lacks knowledge or sufficient to form a belief as to the truth of remaining the allegations in Paragraph 10, and therefore denies the same.

11.     JPMS lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11, and therefore denies the same.

12.     JPMS admits that throughout his employment with JPMorgan, Claimant held the titles of "Associate" and "Vice President." JPMS further admits that, at the time of his termination, Claimant was employed by JPMorgan as an Executive Director. JPMS lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 12, and therefore denies the same.

13.     JPMS denies the allegations in Paragraph 13, except to admit that Claimant worked at JPMorgan's Forth Worth, Texas Private Bank office from November 16, 2017 until he was terminated on December 1, 2023.

14.     JPMS denies that Claimant was promoted on an "accelerated basis." JPMS is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 14, and therefore denies the same.

15.     JPMS lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15, and therefore denies the same.

16.     JPMS admits that Claimant was one of approximately three other JPMorgan employees that Ms. ▮▮▮▮ was assigned to support.  JPMS lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 16, and therefore denies the same.

D.1r-003

05_Series_D_JPMS_Answers_and_HR_Policies.pdf  |  C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\



17.     JPMS lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 17, and therefore denies the same.

18.     JPMS denies that Claimant and Ms. ███████ received JPMorgan's approval to attend the charity event identified in Paragraph 18. JPMS admits that Claimant and Ms. ███████ attended an overnight charity event together in 2023.  JPMS lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 18, and therefore denies the same.

19.     JPMS lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19, and therefore denies the same.

20.     JPMS lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20, and therefore denies the same.

21.     JPMS denies the allegations in Paragraph 21.

22.     JPMS denies the allegations in Paragraph 22.

23.     JPMS denies the allegations in Paragraph 23.

24.     JPMS denies the allegations in Paragraph 24.

25.     JPMS denies the allegations in Paragraph 25.

26.     JPMS denies the allegations in Paragraph 26.

27.     JPMS lacks knowledge or information sufficient to form a belief as to whether Claimant "considered resigning *numerous* times from January 2023 through October 2023 …" as alleged in Paragraph 27.  JPMS denies the remaining allegations in Paragraph 27.

28.     JPMS lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28, and therefore denies the same.

29.     JPMS denies the allegations in Paragraph 29.

D.1r-004

05_Series_D_JPMS_Answers_and_HR_Policies.pdf  |  C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\

D.1r-005
4:26-cv-00381-O
*Biering v. JPMS, et al.*

30.    JPMS denies the allegations in Paragraph 30.

31.    JPMS lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31, and therefore denies the same.

32.    JPMS denies the allegations in Paragraph 32, except to admit that Claimant was placed on involuntary administrative leave effective October 27, 2023.

33.    JPMS lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 33, and therefore denies the same.

34.    JPMS admits that Claimant provided JPMorgan with notice of his intent to resign his employment with JPMorgan on October 28, 2023, initiating his 60-day Notice Period during which (unless terminated by JPMorgan) he was still an employee of JPMorgan.

35.    JPMS admits that Claimant provided JPMorgan with notice of his intent to resign his employment with JPMorgan on October 28, 2023, initiating his 60-day Notice Period during which (unless terminated by JPMorgan) he was still an employee of JPMorgan.

36.    JPMS admits that after Claimant provided JPMorgan with notice of his intent to resign his employment with JPMorgan, Claimant was required to honor a 60-day Notice Period, during which time he remained an employee of JPMorgan, unless he was terminated by JPMorgan. JPMS further admits that during the 60-day Notice Period Claimant was prohibited from, among other things, soliciting JPMorgan's clients.

37.    JPMS denies the allegations in Paragraph 37.

38.    JPMS denies the allegations in Paragraph 38, except to admit that JPMorgan had two open investigations into Claimant's conduct at the time he provided JPMorgan with notice of his intent to resign his employment on October 28, 2023.

5

39.     JPMS admits that, on or about November 2, 2023, JPMorgan Employee Investigator Jonathan Jacobs contacted Claimant to schedule an interview with him.

40.     JPMS denies the allegations in Paragraph 40, except to admit that Claimant was interviewed by Jonathan Jacobs on November 7, 2023.

41.     JPMS denies the allegations in Paragraph 41, except to admit that during the course of its internal investigation, JPMorgan learned facts regarding interactions between Claimant and Ms. ████████.

42.     JPMS denies the allegations in Paragraph 42.

43.     JPMS lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 43, and therefore denies the same.

44.     JPMS lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 44, and therefore denies the same.

45.     JPMS denies the allegations in Paragraph 45, except to admit that Claimant periodically contacted Mr. Jacobs seeking an update on the investigation Mr. Jacobs was conducting.

46.     JPMS admits that Claimant made multiple requests for various employment records during his Notice Period. JPMS lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 46, and therefore denies the same.

47.     JPMS admits that JPMorgan terminated Claimant's employment on December 1, 2023 because JPMorgan determined the Claimant violated JPMorgan's Code of Conduct and JPMorgan's Equal Opportunity, Anti-Discrimination and Anti-Harassment policy (the "Policy").

48.     JPMS denies the allegations in Paragraph 48.

49.     JPMS denies the allegations in Paragraph 49.

6

D.1r-006

05_Series_D_JPMS_Answers_and_HR_Policies.pdf  |  C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\



D.1r-007

4:26-cv-00381-O

*Biering v. JPMS, et al.*

50.    JPMS denies the allegations in Paragraph 50, except to admit that viol: Policy include, among other things, "engaging in conduct that creates a hostile or offensive environment, or can reasonably be expected to cause an individual to feel uncomfortable, intimidated, humiliated, or distressed" and "engaging in unwelcome sexual advances, requests for sexual favors and other verbal or nonverbal behavior or physical conduct of sexual nature."

51.    JPMS denies the allegations in Paragraph 51.

52.    JPMS denies the allegations in Paragraph 52.

53.    JPMS denies the allegations in Paragraph 53.

54.    JPMS denies the allegations in Paragraph 54.

55.    JPMS denies the allegations in Paragraph 55.

56.    JPMS denies the allegations in Paragraph 56.

57.    JPMS lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 57, and therefore denies the same.

58.    JPMS denies the allegations in Paragraph 58 except to admit that Claimant's counsel corresponded with JPMorgan attorney Rachel Tidwell-Neal and that the communications between counsel speak for themselves.

59.    JPMS denies the allegations in Paragraph 59, except to admit that Claimant's counsel corresponded with JPMorgan attorney Rachel Tidwell-Neal and that the communications between counsel speak for themselves.

60.    JPMS denies the allegations in Paragraph 60, except to admit that Claimant's counsel corresponded with JPMorgan attorney Rachel Tidwell-Neal and that the communications between counsel speak for themselves.

D.1r-007

05_Series_D_JPMS_Answers_and_HR_Policies.pdf  |  C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\

D.1r-008

4:26-cv-00381-O

*Biering v. JPMS, et al.*

61.    JPMS denies the allegations in Paragraph 61, except to admit that counsel corresponded with JPMorgan attorney Rachel Tidwell-Neal and that the communications between counsel speak for themselves.

62.    JPMS denies the allegations in Paragraph 62, except to admit that Claimant's counsel corresponded with JPMorgan attorney Rachel Tidwell-Neal and that the communications between counsel speak for themselves.

63.    JPMS denies the allegations in Paragraph 63, except to admit that Claimant's counsel corresponded with JPMorgan attorney Rachel Tidwell-Neal and that the communications between counsel speak for themselves.

64.    JPMS denies the allegations in Paragraph 64, except to admit that Claimant's counsel corresponded with JPMorgan attorney Rachel Tidwell-Neal and that the communications between counsel speak for themselves.

65.    JPMS denies the allegations in Paragraph 65, except to admit that Claimant's counsel corresponded with JPMorgan attorney Rachel Tidwell-Neal and that the communications between counsel speak for themselves.

66.    JPMS denies the allegations in Paragraph 66, except to admit that it did not implement all of the proposed redlined changes suggested by Claimant's counsel into Claimant's Form U5.

67.    JPMS admits that Claimant's Form U5 accurately reports that his employment with JPMorgan was discharged, and therefore JPMS would no longer hold his registration.

68.    JPMS admits that Claimant's Form U5 contains the following accurate Termination Explanation in Section 3 of Claimant's Form U5: "After RR submitted resignation, but before

D.1r-008

05_Series_D_JPMS_Answers_and_HR_Policies.pdf | C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\



D.1r-009
4:26-cv-00381-O
*Biering v. JPMS, et al.*

expiration of Notice Period, RR was terminated for inappropriate behavior. Not relate

of securities or any customer complaints."

69.     JPMS denies the allegations in Paragraph 69, except to admit that JPMS has not

made any changes to Claimant's Form U5 since it was filed on December 12, 2023.

70.     JPMS lacks knowledge or information sufficient to form a belief as to the truth of

the allegations in Paragraph 70, and therefore denies the same.

71.     JPMS lacks knowledge or information sufficient to form a belief as to the truth of

the allegations in Paragraph 71, and therefore denies the same.

72.     JPMS lacks knowledge or information sufficient to form a belief as to the truth of

the allegations in Paragraph 72, and therefore denies the same.

73.     JPMS lacks knowledge or information sufficient to form a belief as to the truth of

the allegations in Paragraph 73, and therefore denies the same.

74.     JPMS lacks knowledge or information sufficient to form a belief as to the truth of

the allegations in Paragraph 74, and therefore denies the same.

75.     JPMS lacks knowledge or information sufficient to form a belief as to the truth of

the allegations in Paragraph 75, and therefore denies the same.

76.     JPMS denies the allegations in Paragraph 76.

77.     Paragraph 77 does not contain any allegations of fact and thus does not require a

response. To the extent a response is required, JPMS denies that Claimant is entitled to the relief

he requests.

**COUNT ONE**
**DEFAMATION/DEFAMATION *PER SE* AND VIOLATION OF FINRA RULES**

78.     JPMS repeats and adopts by reference its answers to the allegations in Paragraphs

1 through 77 as if set forth herein.

9

D.1r-010
4:26-cv-00381-O
*Biering v. JPMS, et al.*

79.     JPMS denies the allegations in Paragraph 79.

80.     JPMS denies the allegations in Paragraph 80.

81.     JPMS denies the allegations in Paragraph 81.

82.     JPMS denies the allegations in Paragraph 82.

83.     JPMS denies the allegations in Paragraph 83.

84.     JPMS denies the allegations in Paragraph 84.

## COUNT TWO
## BUSINESS DISPARAGEMENT

85.     JPMS repeats and adopts by reference its answers to the allegations in Paragraphs

1 through 84 as if set forth herein.

86.     JPMS denies the allegations in Paragraph 86.

87.     JPMS denies the allegations in Paragraph 87.

88.     JPMS denies the allegations in Paragraph 88.

89.     JPMS denies the allegations in Paragraph 89.

## COUNT THREE
## TORTIOUS INTERFERENCE

90.     JPMS repeats and adopts by reference its answers to the allegations in Paragraphs

1 through 89 as if set forth herein.

91.     JPMS denies the allegations in Paragraph 91.

92.     JPMS denies the allegations in Paragraph 92.

93.     JPMS denies the allegations in Paragraph 93.

## COUNT FOUR
## UNFAIR COMPETITION

94.     JPMS repeats and adopts by reference its answers to the allegations in Paragraphs

1 through 93 as if set forth herein.

D.1r-010
05_Series_D_JPMS_Answers_and_HR_Policies.pdf  |  C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\



95.    JPMS denies the allegations in Paragraph 95.

96.    JPMS denies the allegations in Paragraph 96.

97.    JPMS denies the allegations in Paragraph 97.

## COUNT FIVE
## WRONGFUL DISCHARGE

98.    JPMS repeats and adopts by reference its answers to the allegations in Paragraphs 1 through 97 as if set forth herein.

99.    JPMS denies the allegations in Paragraph 99, except to admit that Claimant was employed by JPMorgan and that JPMorgan terminated Claimant's employment on December 1, 2023.

100.    JPMS denies the allegations in Paragraph 100.

## COUNT SIX
## WEAPONIZATION OF U5

101.    JPMS repeats and adopts by reference its answers to the allegations in Paragraphs 1 through 100 as if set forth herein.

102.    JPMS denies the allegations set forth in Paragraph 102, except to admit that the award in *Ulrich v. Wharton Whitaker & Eaton Vance Distributors* (NASD) speaks for itself.

103.    JPMS denies the allegations set forth in Paragraph 103, except to admit that the award in *Michael C. Nolan v. J.P. Morgan Securities LLC,* Case No. 23-00446 speaks for itself.

104.    JPMS denies the allegations set forth in Paragraph 104, except to admit that the award in *Liet Han v. J.P. Morgan Securities LLC,* Case No. 18-02978 speaks for itself.

105.    JPMS denies the allegations set forth in Paragraph 105, except to admit that the award in *Dustin B. Luckett v. J.P. Morgan Securities LLC,* Case No. 19-03075 speaks for itself.

D.1r-011
05_Series_D_JPMS_Answers_and_HR_Policies.pdf | C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\



D.1r-012
4:26-cv-00381-O
*Biering v. JPMS, et al.*

106.    JPMS denies the allegations set forth in Paragraph 106, except to ad

award in *Rose Mascarenhas v. J.P. Morgan Securities LLC*, Case No. 18-01879 speaks for itself.

107.    JPMS denies the allegations set forth in Paragraph 107, except to admit that the

award in *Mark Munizzi v. UBS Fin. Servs., Inc.,* Case No. 18-02179 speaks for itself.

108.    JPMS denies the allegations in Paragraph 108.

109.    JPMS denies the allegations in Paragraph 109.

110.    JPMS denies the allegations in Paragraph 110.

## COUNT SEVEN
## NEGLIGENT INVESTIGATION

111.    JPMS repeats and adopts by reference its answers to the allegations in Paragraphs

1 through 110 as if set forth herein.

112.    JPMS denies the allegations in Paragraph 112.

113.    JPMS denies the allegations in Paragraph 113.

114.    JPMS denies the allegations in Paragraph 114.

## COUNT EIGHT
## BREACH OF CONTRACT

115.    JPMS repeats and adopts by reference its answers to the allegations in Paragraphs

1 through 114 as if set forth herein.

116.    JPMS admits that Claimant was the subject of a customer complaint filed against

him in April 2022. JPMS further admits that JPMS, after conducting an internal review and

investigation, determined that the recommended investments were suitable based on the client's

profile, including risk tolerance, time horizon and investment experience. JPMS further admits

that the customer complaint remains on his Form U4 and that Biering has instituted an arbitration

to expunge the customer complaint.

D.1r-012
05_Series_D_JPMS_Answers_and_HR_Policies.pdf  |  C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\



D.1r-013
4:26-cv-00381-O
*Biering v. JPMS, et al.*

117.    JPMS denies the allegations in Paragraph 117.

118.    JPMS denies the allegations in Paragraph 118.

119.    JPMS denies the allegations in Paragraph 119.

## COUNT NINE
## SEX DISCRIMINATION

120.    JPMS repeats and adopts by reference its answers to the allegations in Paragraphs 1 through 119 as if set forth herein.

121.    JPMS has not previously agreed, and does not agree, to arbitrate Claimant's statutory employment discrimination claim in this forum. Accordingly, JPMS makes no response to the allegations contained in Paragraph 121.

122.    JPMS has not previously agreed, and does not agree, to arbitrate Claimant's statutory employment discrimination claim in this forum. Accordingly, JPMS makes no response to the allegations contained in Paragraph 122.

123.    JPMS has not previously agreed, and does not agree, to arbitrate Claimant's statutory employment discrimination claim in this forum. Accordingly, JPMS makes no response to the allegations contained in Paragraph 123.

124.    JPMS has not previously agreed, and does not agree, to arbitrate Claimant's statutory employment discrimination claim in this forum. Accordingly, JPMS makes no response to the allegations contained in Paragraph 124.

125.    JPMS has not previously agreed, and does not agree, to arbitrate Claimant's statutory employment discrimination claim in this forum. Accordingly, JPMS makes no response to the allegations contained in Paragraph 125.

D.1r-013
05_Series_D_JPMS_Answers_and_HR_Policies.pdf  |  C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\



**D.1r-014**
4:26-cv-00381-O
*Biering v. JPMS, et al.*

126.    JPMS has not previously agreed, and does not agree, to arbitrate statutory employment discrimination claim in this forum. Accordingly, JPMS makes no response to the allegations contained in Paragraph 126.

127.    JPMS has not previously agreed, and does not agree, to arbitrate Claimant's statutory employment discrimination claim in this forum. Accordingly, JPMS makes no response to the allegations contained in Paragraph 127.

**COUNT TEN**
**DISABILITY DISCRIMINATION**

128.    JPMS repeats and adopts by reference its answers to the allegations in Paragraphs 1 through 127 as if set forth herein.

129.    JPMS has not previously agreed, and does not agree, to arbitrate Claimant's statutory employment discrimination claim in this forum. Accordingly, JPMS makes no response to the allegations contained in Paragraph 129.

130.    JPMS has not previously agreed, and does not agree, to arbitrate Claimant's statutory employment discrimination claim in this forum. Accordingly, JPMS makes no response to the allegations contained in Paragraph 130.

131.    JPMS has not previously agreed, and does not agree, to arbitrate Claimant's statutory employment discrimination claim in this forum. Accordingly, JPMS makes no response to the allegations contained in Paragraph 131.

132.    JPMS has not previously agreed, and does not agree, to arbitrate Claimant's statutory employment discrimination claim in this forum. Accordingly, JPMS makes no response to the allegations contained in Paragraph 132.

14

D.1r-015

4:26-cv-00381-O

*Biering v. JPMS, et al.*

133.    JPMS has not previously agreed, and does not agree, to arbitrate statutory employment discrimination claim in this forum. Accordingly, JPMS makes no response to the allegations contained in Paragraph 133.

134.    JPMS has not previously agreed, and does not agree, to arbitrate Claimant's statutory employment discrimination claim in this forum. Accordingly, JPMS makes no response to the allegations contained in Paragraph 134.

## COUNT ELEVEN
## QUANTUM MERUIT AND UNJUST ENRICHMENT

135.    JPMS repeats and adopts by reference its answers to the allegations in Paragraphs 1 through 134 as if set forth herein.

136.    JPMS denies the allegations in Paragraph 136.

137.    JPMS denies the allegations in Paragraph 137.

138.    JPMS denies the allegations in Paragraph 138.

## COUNT TWELVE
## ILLEGAL FORFEITURE OF EARNED COMPENSATION

139.    JPMS repeats and adopts by reference its answers to the allegations in Paragraphs 1 through 138 as if set forth herein.

140.    JPMS denies the allegations in Paragraph 140.

141.    JPMS denies the allegations in Paragraph 141.

## COUNT THIRTEEN
## FORFEITURE OF DEFERRED COMPENSATION (VIOLATION OF ERISA)

142.    JPMS repeats and adopts by reference its answers to the allegations in Paragraphs 1 through 141 as if set forth herein.

143.    JPMS declines to arbitrate Claimant's Thirteenth Claim for Forfeiture of Deferred Compensation (Violation of ERISA) because the claim is subject to exclusive federal jurisdiction.

D.1r-015

05_Series_D_JPMS_Answers_and_HR_Policies.pdf  |  C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\



JPMS further declines to arbitrate this claim because the claim is improperly pled ag

Claimant was a participant in The JP Morgan Chase & Company 401(k) Savings Plan (the "Plan").

The Plan is not a party to this arbitration, is not a FINRA member, and a claim for forfeiture of

deferred compensation is not subject to FINRA's jurisdiction. Accordingly, JPMS makes no

response to the allegations in Paragraph 143.

144.    JPMS declines to arbitrate Claimant's Thirteenth Claim for Forfeiture of Deferred

Compensation (Violation of ERISA) because the claim is subject to exclusive federal jurisdiction.

JPMS further declines to arbitrate this claim because the claim is improperly pled against JPMS.

Claimant was a participant in The JP Morgan Chase & Company 401(k) Savings Plan (the "Plan").

The Plan is not a party to this arbitration, is not a FINRA member, and a claim for forfeiture of

deferred compensation is not subject to FINRA's jurisdiction. Accordingly, JPMS makes no

response to the allegations in Paragraph 144.[2]

## COUNT FOURTEEN
## VIOLATION OF TEXAS AND/OR NEW YORK LABOR AND WAGE LAWS

145.    JPMS repeats and adopts by reference its answers to the allegations in Paragraphs

1 through 144 as if set forth herein.

146.    JPMS denies the allegations in Paragraph 146.

147.    JPMS denies the allegations in Paragraph 147.

### ALTER EGO AND/OR PIERCING THE CORPORATE VEIL

148.    JPMS denies the allegations in Paragraph 148.

149.    JPMS admits the allegations in Paragraph 149.

---

[2] As set forth in response to Paragraphs 143 and 144, Count Thirteen is not properly before FINRA. To the extent that it is decided that this claim is properly before FINRA, JPMS reserves the right to amend its Statement of Answer to address the allegations set forth in Paragraphs 143 and 144.

16



150.    JPMS denies the allegations in Paragraph 150, except to admit that its i into Claimant's claims is ongoing and JPMS has not yet determined what evidence and/or testimony it will present in this Arbitration.

151.    JPMS denies the allegations in Paragraph 151.

## ATTORNEYS' FEES

152.    JPMS repeats and adopts by reference its answers to the allegations in Paragraphs 1 through 151 as if set forth herein.

153.    JPMS denies the allegations in Paragraph 153.

## PUNITIVE DAMAGES

154.    JPMS repeats and adopts by reference its answers to the allegations in Paragraphs 1 through 153 as if set forth herein.

155.    JPMS denies the allegations in Paragraph 155.

156.    JPMS denies the allegations in Paragraph 156.

157.    JPMS denies the allegations in Paragraph 157.

## EXPUNGEMENT

158.    JPMS denies that Claimant is entitled to any of the relief he seeks, including as set forth in Paragraph 158.

159.    JPMS denies the allegations in Paragraph 159, except to admit that Claimant's Form U5 disclosure is available on Claimant's CRD record.

160.    JPMS denies that Claimant is entitled to any of relief he seeks, including as set forth in Paragraph 160.

## REQUEST FOR RELIEF, DAMAGES, AND AWARD

161.    JPMS denies that Claimant is entitled to any of the relief he seeks.

17



## REPRESENTATION BY COUNSEL AND REPRESENTATIVE'S CURRENT

162.    JPMS admits that Claimant is represented by Attorneys Joshua Iacuone and Anna Richardson.

## VENUE

163.    JPMS admits that Claimant was employed by JPMorgan in Fort Worth, Texas. JPMS further admits that this matter should be heard in Texas.

## AMOUNT IN DISPUTE AND AMOUNT REQUESTED FOR DAMAGES, AWARD AND RELIEF

164.    JPMS denies that Claimant is entitled to any of the relief he seeks.

## RESERVATION OF RIGHTS

165.    JPMS denies that Claimant is entitled to amend his Statement of Claim to plead additional causes of action, claims and relief.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

JPMS denies each and every allegation except as expressly admitted herein.

### SECOND DEFENSE

The Statement of Claim, in whole or in part, fails to state a claim upon which relief can be granted.

### THIRD DEFENSE

Any alleged damages incurred by Claimant were caused, in whole or in part, by his own conduct.

### FOURTH DEFENSE

To the extent that Claimant has suffered any damages or injuries, which JPMS denies, he has failed to mitigate his alleged damages, and his claims are therefore barred.

18

**D.1r-019**

4:26-cv-00381-O

*Biering v. JPMS, et al.*



### FIFTH DEFENSE

Claimant's Ninth Claim (Sex Discrimination in Violation of Title VII of the Civil Rights Act of 1964 and the Texas Commission on Human Rights Act) and Tenth Claim (Disability Discrimination in Violation of the Americans with Disabilities Act and the Texas Commission on Human Rights Act) are not properly before FINRA pursuant to FINRA Rule 13201 because JPMS has not agreed and does not agree to arbitrate the claims in this forum.

### SIXTH DEFENSE

Claimant's Fifth Claim (Wrongful Discharge), Seventh Claim (Negligent Investigation), Fourth Claim (Violation of Cal. Labor Code §1050-Blacklisting), Twelfth Claim (Illegal Forfeiture of Earned Compensation), and Fourteenth Claim (Violation of Texas and/or New York Labor and Wage Laws) fail because Claimant was never employed by JPMS and Claimant's former employer, JPMorgan Chase Bank, N.A., is not a FINRA member firm and the claims are not subject to FINRA's jurisdiction.

### SEVENTH DEFENSE

Claimant's Thirteenth Claim (Forfeiture of Deferred Compensation (Violation of ERISA)) fails because the claim is subject to exclusive federal jurisdiction.

### EIGHTH DEFENSE

Claimant's Thirteenth Claim (Forfeiture of Deferred Compensation (Violation of ERISA)) fails because Claimant failed to name the JP Morgan Chase & Company 401(k) Savings Plan as a party to this action.

### NINTH DEFENSE

Claimant's Thirteenth Claim (Forfeiture of Deferred Compensation (Violation of ERISA)) fails because Claimant failed to exhaust his administrative remedies.

19

D.1r-019

05_Series_D_JPMS_Answers_and_HR_Policies.pdf  |  C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\



D.1r-020
4:26-cv-00381-O
*Biering v. JPMS, et al.*

## TENTH DEFENSE

The defamation claim is barred because the statements and disclosures made regarding Claimant on his Form U5 are privileged and/or justified.

## ELEVENTH DEFENSE

The defamation claim fails because the statements and disclosures made regarding Claimant on his Form U5 are true.

For the foregoing reasons, JPMS requests that the Panel deny Claimant Joshua Biering's claims; assess all costs and forum fees against Claimant; and award any other relief to JPMS that the Panel deems just and proper.

Respectfully submitted,

*Jeffrey S. Dunlap*
Jeffrey S. Dunlap, Esq. (Ohio Bar No. 0067923)
Emma M. Tomsick, Esq. (Ohio Bar No. 0101308)
UB GREENSFELDER LLP
Skylight Office Tower
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113-1448
(216) 583-7000
(216) 583-7001 (Facsimile)
jdunlap@ubglaw.com
etomsick@ubglaw.com

D.1r-020
05_Series_D_JPMS_Answers_and_HR_Policies.pdf | C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\



D.1r-021
4:26-cv-00381-O
*Biering v. JPMS, et al.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2024 a copy of the foregoing Statement of Answer

was filed on the FINRA DR Portal. Parties may access the filing through the FINRA DR Portal.

> *Emma M. Tomsick*
> Emma M. Tomsick
> *One of the attorneys for Respondent*
> *J.P. Morgan Securities LLC*

D.1r-021
05_Series_D_JPMS_Answers_and_HR_Policies.pdf  |  C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\

**UNITED STATES DISTRICT COURT**
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **JOSHUA DAVID SAPPI BIERING,** | § | |
| *Petitioner, Pro Se,* | § | Case No. 4:26-cv-00381-O-BP |
| **v.** | § | |
| **J.P. MORGAN SECURITIES, LLC,** | § | FINRA Case No. 24-01208 |
| **JPMORGAN CHASE & CO., and** | § | EEOC Charge No. 450-2024-04743 |
| **JPMORGAN CHASE BANK, N.A.,** | § | AAA Case No. 01-26-0000-7215 |
| *Respondents.* | § | |

# EXHIBIT D.02r

## JPMS Answer to Second Amended Statement of Claim

## D.02r-001 – 016

**Description:**      JPMS's Answer to the Second Amended Statement of Claim.

**Relevance:**       Respondent's operative pleading; frames the disputes decided in the Award.

**Source:**          FINRA Arbitration Filing, Answer; submitted October 31, 2024

**Petition Ref:**     ¶¶ 2, 3, 86 (Dkt. 11); App. A p. 51 ("JPMS Answer to Second Amended SOC (Oct. 31, 2024)")

**Disclosures:**     None — reproduced as produced, no added markings

**Filing Status:**    Public - not sealed



D.2r-001
4:26-cv-00381-O
*Biering v. JPMS, et al.*

**Jeffrey S. Dunlap, Esq. (Ohio Bar No. 0067923)**
**Emma M. Tomsick, Esq. (Ohio Bar No. 0101308)**
**UB GREENSFELDER LLP**
**Skylight Office Tower**
**1660 West 2nd Street, Suite 1100**
**Cleveland, Ohio 44113-1448**
**(216) 583-7000**
**(216) 583-7001 (Facsimile)**
**jdunlap@ubglaw.com**
**etomsick@ubglaw.com**

**Attorneys for Respondent J.P. Morgan Securities LLC**

## BEFORE THE ARBITRATION BOARD
## OF THE
## FINANCIAL INDUSTRY REGULATORY AUTHORITY

|  |  |
|---|---|
| **In the Matter of the Arbitration Between** | X : |
| **JOSHUA BIERING,** | : **FINRA Case No. 24-01208** : |
| **Claimant,** | : : |
| **v.** | : : |
| **J.P. MORGAN SECURITIES LLC, JPMORGAN CHASE & CO., and JPMORGAN CHASE BANK, N.A.,** | : : : : |
| **Respondents.** | : X |

## RESPONDENT J.P. MORGAN SECURITIES LLC'S STATEMENT OF ANSWER
## AND AFFIRMATIVE DEFENSES

Respondent J.P. Morgan Securities LLC ("JPMS"),[1] states as follows in response

to Claimant's Second Amended Statement of Claim:

---

[1] JPMorgan Chase Bank, N.A., and JPMorgan Chase & Co. are not FINRA member firms, are not subject to FINRA's jurisdiction and do not agree to arbitrate claims against them in FINRA arbitration.

D.2r-001

322

05_Series_D_JPMS_Answers_and_HR_Policies.pdf  |  C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\



**D.2r-002**
4:26-cv-00381-O
*Biering v. JPMS, et al.*

1.      JPMS admits that Claimant is a veteran. JPMS lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 1, and therefore denies the same,

2.      JPMS lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2, and therefore denies the same, except to admit that Claimant was employed by JPMorgan Chase Bank, N.A. ("JPMorgan") from 2016 through December 2023.

3.      JPMS denies the allegations in Paragraph 3.

4.      JPMS denies the allegations in Paragraph 4.

5.      JPMS denies the allegations in Paragraph 5, except to admit that on October 28, 2023, Claimant provided JPMorgan with notice of his intent to resign his employment with JPMorgan, initiating his 60-day Notice Period during which (unless terminated by JPMorgan) he was still an employee of JPMorgan. JPMS further admits that JPMorgan terminated Claimant's employment on December 1, 2023.

6.      JPMS denies the allegations in Paragraph 6.

7.      JPMS denies the allegations in Paragraph 7.

8.      JPMS denies the allegations in Paragraph 8, except to admit that it filed Claimant's Form U5 on December 22, 2023, that it accurately disclosed that Claimant was discharged from JPMorgan and, therefore that, JPMS would no longer hold his registration. JPMS also admits that Claimant's Form U5 contains the following accurate disclosure in response to Question 3: "After RR submitted resignation, but before expiration of Notice Period,

05_Series_D_JPMS_Answers_and_HR_Policies.pdf  |  C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\



**D.2r-003**
4:26-cv-00381-O
*Biering v. JPMS, et al.*

RR was terminated for inappropriate behavior. Not related to the sale of secur

customer complains."

9.     JPMS denies the allegations in Paragraph 9.

10.     JPMS denies the allegations in Paragraph 10.

11.     JPMS lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11, and therefore denies the same.

12.     JPMS denies the allegations in Paragraph 12.

13.     JPMS lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13, and therefore denies the same.

14.     JPMS lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14, and therefore denies the same.

15.     JPMS admits that throughout his employment with JPMorgan, Claimant held the titles of "Associate" and "Vice President." JPMS further admits that, at the time of his termination, Claimant was employed by JPMorgan as an Executive Director. JPMS lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 15, and therefore denies the same.

16.     JPMS lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16, and therefore denies the same

17.     Claimant's Second Amended Statement of Claim does not contain a Paragraph 17 and instead proceeds from Paragraph 16 to Paragraph 18.

18.     JPMS lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18, and therefore denies the same.

D.2r-003

324

05_Series_D_JPMS_Answers_and_HR_Policies.pdf  |  C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\



**D.2r-004**
4:26-cv-00381-O
*Biering v. JPMS, et al.*

19.     JPMS lacks knowledge or information sufficient to form a belief as

of the allegations in Paragraph 19, and therefore denies the same.

20.     JPMS lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in Paragraph 20, and therefore denies the same.

21.     JPMS lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in Paragraph 21, and therefore denies the same.

22.     JPMS lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in Paragraph 22, and therefore denies the same.

23.     JPMS lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in Paragraph 23, and therefore denies the same.

24.     JPMS denies the allegations in Paragraph 24.

25.     JPMS lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in Paragraph 25, and therefore denies the same.

26.     JPMS denies the allegations in Paragraph 26.

27.     JPMS denies the allegations in Paragraph 27.

28.     JPMS denies the allegations in Paragraph 28.

29.     JPMS denies the allegations in Paragraph 29.

30.     JPMS lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in Paragraph 30, and therefore denies the same.

31.     JPMS denies the allegations in Paragraph 31.

32.     JPMS lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in Paragraph 32, and therefore denies the same.

33.     JPMS denies the allegations in Paragraph 33.

05_Series_D_JPMS_Answers_and_HR_Policies.pdf  |  C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\



D.2r-005
4:26-cv-00381-O
*Biering v. JPMS, et al.*

34.     JPMS denies that Claimant informed Stewart of his intention to take

October 26 and 27, 2023. JPMS lacks knowledge or information sufficient to form a belief as to

the truth of the remaining allegations in Paragraph 34, and therefore denies the same, except to

admit that

35.     JPMS denies the allegations in Paragraph 35, except to admit that on October 28,

2023, Claimant provided JPMorgan with notice of his intent to resign his employment with

JPMorgan, initiating his 60-day Notice Period during which (unless terminated by JPMorgan)

he was still an employee of JPMorgan.

36.     JPMS denies the allegations in Paragraph 36.

37.     JPMS denies the allegations in Paragraph 37, except to admit that JPMorgan had

two open investigations into Claimant's conduct at the time he provided JPMorgan with notice

of his intent to resign his employment on October 28, 2023.

38.     JPMS denies the allegations in Paragraph 38, except to admit that on October 20,

2024, JPMorgan initiated an investigation into Claimant's use of his JPMorgan expense account.

39.     JPMS denies the allegations in Paragraph 39.

40.     JPMS denies the allegations in Paragraph 40, except to admit that JPMorgan

terminated Claimant's employment on December 1, 2023 because JPMorgan determined the

Claimant violated JPMorgan's Code of Conduct and JPMorgan's Equal Opportunity, Anti-

Discrimination and Anti-Harassment policy (the "Policy").

41.     JPMS denies the allegations in Paragraph 41.

42.     JPMS denies the allegations in Paragraph 42.

43.     JPMS denies the allegations in Paragraph 43.

44.     JPMS denies the allegations in Paragraph 44.

D.2r-005

326

05_Series_D_JPMS_Answers_and_HR_Policies.pdf | C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\



45. JPMS lacks knowledge or information sufficient to form a belief as of the allegations in Paragraph 45, and therefore denies the same.

46. JPMS denies the allegations in Paragraph 46.

47. JPMS denies the allegations in Paragraph 47.

48. JPMS denies the allegations in Paragraph 48, except to admit that Claimant's counsel corresponded with JPMorgan attorney Rachel Tidwell-Neal and that the communications between counsel speak for themselves.

49. JPMS denies the allegations in Paragraph 49, except to admit that JPMS has not made any changes to Claimant's Form U5 since it was filed on December 12, 2023.

50. JPMS denies the allegations in Paragraph 50.

51. JPMS denies the allegations in Paragraph 51.

52. JPMS lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 52, and therefore denies the same.

53. JPMS lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 53, and therefore denies the same.

54. JPMS lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 54, and therefore denies the same.

55. JPMS lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 55, and therefore denies the same.

56. JPMS lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 56, and therefore denies the same.

57. JPMS lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 57, and therefore denies the same.

D.2r-006

327

05_Series_D_JPMS_Answers_and_HR_Policies.pdf | C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\



58.    JPMS lacks knowledge or information sufficient to form a belief as

of the allegations in Paragraph 58, and therefore denies the same.

59.    JPMS denies the allegations in Paragraph 59.

60.    JPMS denies the allegations in Paragraph 60.

61.    Paragraph 61 does not contain any allegations of fact and thus does not require a

response. To the extent a response is required, JPMS denies that Claimant is entitled to the relief

he requests.

**COUNT ONE**
**DEFAMATION/DEFAMATION *PER SE* AND VIOLATION OF FINRA RULES**

62.    JPMS repeats and adopts by reference its answers to the allegations in Paragraphs

1 through 61 as if set forth herein.

63.    JPMS denies the allegations in Paragraph 63.

64.    JPMS denies the allegations in Paragraph 64.

65.    JPMS denies the allegations in Paragraph 65.

66.    JPMS denies the allegations in Paragraph 66.

67.    JPMS denies the allegations in Paragraph 67.

68.    JPMS denies the allegations in Paragraph 68.

**COUNT TWO**
**BUSINESS DISPARAGEMENT**

69.    JPMS repeats and adopts by reference its answers to the allegations in Paragraphs

1 through 68 as if set forth herein.

70.    JPMS denies the allegations in Paragraph 70.

71.    JPMS denies the allegations in Paragraph 71.

72.    JPMS denies the allegations in Paragraph 72.



73.    JPMS denies the allegations in Paragraph 73.

## COUNT THREE
## TORTIOUS INTERFERENCE

74.    JPMS repeats and adopts by reference its answers to the allegations in Paragraphs 1 through 73 as if set forth herein.

75.    JPMS denies the allegations in Paragraph 75.

76.    JPMS denies the allegations in Paragraph 76.

77.    JPMS denies the allegations in Paragraph 77.

## COUNT FOUR
## UNFAIR COMPETITION

78.    JPMS repeats and adopts by reference its answers to the allegations in Paragraphs 1 through 77 as if set forth herein.

79.    JPMS denies the allegations in Paragraph 79.

80.    JPMS denies the allegations in Paragraph 80.

81.    JPMS denies the allegations in Paragraph 81.

## COUNT FIVE
## WRONGFUL DISCHARGE

82.    JPMS repeats and adopts by reference its answers to the allegations in Paragraphs 1 through 81 as if set forth herein.

83.    JPMS denies the allegations in Paragraph 83, except to admit that Claimant was employed by JPMorgan and that JPMorgan terminated Claimant's employment on December 1, 2023.

84.    JPMS denies the allegations in Paragraph 84.

05_Series_D_JPMS_Answers_and_HR_Policies.pdf  |  C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\

## COUNT SIX
## WEAPONIZATION OF U5

85.     JPMS repeats and adopts by reference its answers to the allegations in Paragraphs 1 through 84 as if set forth herein.

86.     JPMS denies the allegations in Paragraph 86, except to admit that the award in *Ulrich v. Wharton Whitaker & Eaton Vance Distributors* (NASD) speaks for itself.

87.     JPMS denies the allegations in Paragraph 87, except to admit that the award in *Michael C. Nolan v. J.P. Morgan Securities LLC,* Case No. 23-00446 speaks for itself.

88.     JPMS denies the allegations in Paragraph 88, except to admit that the award in *Liet Han v. J.P. Morgan Securities LLC,* Case No. 18-02978 speaks for itself.

89.     JPMS denies the allegations in Paragraph 89, except to admit that the award in *Dustin B. Luckett v. J.P. Morgan Securities LLC,* Case No. 19-03075 speaks for itself.

90.     JPMS denies the allegations in Paragraph 90, except to admit that the award in *Rose Mascarenhas v. J.P. Morgan Securities LLC*, Case No. 18-01879 speaks for itself.

91.     JPMS denies the allegations in Paragraph 91, except to admit that the award in *Mark Munizzi v. UBS Fin. Servs., Inc.,* Case No. 18-02179 speaks for itself.

92.     JPMS denies the allegations in Paragraph 92.

93.     JPMS denies the allegations in Paragraph 93.

94.     JPMS denies the allegations in Paragraph 94.

## COUNT SEVEN
## BREACH OF CONTRACT

95.     JPMS repeats and adopts by reference its answers to the allegations in Paragraphs 1 through 94 as if set forth herein.

D.2r-009

330

05_Series_D_JPMS_Answers_and_HR_Policies.pdf  |  C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\



D.2r-010
4:26-cv-00381-O
*Biering v. JPMS, et al.*

96.     JPMS admits that Claimant was the subject of a customer complaint filed against him in April 2022. JPMS further admits that JPMS, after conducting an internal review and investigation, determined that the recommended investments were suitable based on the client's profile, including risk tolerance, time horizon and investment experience. JPMS further admits that the customer complaint remains on Claimant's Form U4 and that Biering instituted an arbitration to expunge the customer complaint. Biering's customer-complaint arbitration occurred on October 14, 2024.

97.     JPMS denies the allegations in Paragraph 97.

98.     JPMS denies the allegations in Paragraph 98.

99.     JPMS denies the allegations in Paragraph 99.

## COUNT EIGHT
## PROMISSORY ESTOPPEL

100.    JPMS repeats and adopts by reference its answers to the allegations in Paragraphs 1 through 99 as if set forth herein.

101.    JPMS admits that Claimant was the subject of a customer complaint filed against him in April 2022. JPMS further admits that JPMS, after conducting an internal review and investigation, determined that the recommended investments were suitable based on the client's profile, including risk tolerance, time horizon and investment experience. JPMS further admits that the customer complaint remains on Claimant's Form U4 and that Biering instituted an arbitration to expunge the customer complaint. Biering's customer-complaint arbitration occurred on October 14, 2024.

102.    JPMS denies the allegations in Paragraph 102.

103.    JPMS denies the allegations in Paragraph 103.

104.    JPMS denies the allegations in Paragraph 104.

05_Series_D_JPMS_Answers_and_HR_Policies.pdf | C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\



105.    JPMS denies the allegations in Paragraph 105.

## COUNT NINE
## QUANTUM MERUIT AND UNJUST ENRICHMENT

106.    JPMS repeats and adopts by reference its answers to the allegations in Paragraphs 1 through 105 as if set forth herein.

107.    JPMS denies the allegations in Paragraph 107.

108.    JPMS denies the allegations in Paragraph 108.

109.    JPMS denies the allegations in Paragraph 109.

## COUNT TEN
## ILLEGAL FORFEITURE OF EARNED COMPENSATION

110.    JPMS repeats and adopts by reference its answers to the allegations in Paragraphs 1 through 109 as if set forth herein.

111.    JPMS denies the allegations in Paragraph 111.

112.    JPMS denies the allegations in Paragraph 112.

## COUNT ELEVEN
## FORFEITURE OF DEFERRED COMPENSATION (VIOLATION OF ERISA)

113.    JPMS repeats and adopts by reference its answers to the allegations in Paragraphs 1 through 112 as if set forth herein.

114.    JPMS declines to arbitrate Claimant's Eleventh Claim for Forfeiture of Deferred Compensation (Violation of ERISA) because the claim is subject to exclusive federal jurisdiction. JPMS further declines to arbitrate this claim because the claim is improperly pled against JPMS. Claimant was a participant in The JP Morgan Chase & Company 401(k) Savings Plan (the "Plan"). The Plan is not a party to this arbitration, is not a FINRA member, and a claim for forfeiture of deferred compensation is not subject to FINRA's jurisdiction. Accordingly, JPMS makes no response to the allegations in Paragraph 114.

05_Series_D_JPMS_Answers_and_HR_Policies.pdf  |  C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\



**D.2r-012**
4:26-cv-00381-O
*Biering v. JPMS, et al.*

115.    JPMS declines to arbitrate Claimant's Eleventh Claim for Forfeiture Compensation (Violation of ERISA) because the claim is subject to exclusive federal jurisdiction. JPMS further declines to arbitrate this claim because the claim is improperly pled against JPMS. Claimant was a participant in The JP Morgan Chase & Company 401(k) Savings Plan (the "Plan"). The Plan is not a party to this arbitration, is not a FINRA member, and a claim for forfeiture of deferred compensation is not subject to FINRA's jurisdiction. Accordingly, JPMS makes no response to the allegations in Paragraph 115.

## COUNT TWELVE
## VIOLATION OF TEXAS AND/OR NEW YORK LABOR AND WAGE LAWS

116.    JPMS repeats and adopts by reference its answers to the allegations in Paragraphs 1 through 115 as if set forth herein.

117.    JPMS denies the allegations in Paragraph 117.

118.    JPMS denies the allegations in Paragraph 118.

## ALTER EGO AND/OR PIERCING THE CORPORATE VEIL

119.    JPMS denies the allegations in Paragraph 119.

120.    JPMS admits the allegations in Paragraph 120.

121.    JPMS denies the allegations in Paragraph 121, except to admit that its investigation into Claimant's claims is ongoing, and JPMS has not yet determined what evidence and/or testimony it will present in this Arbitration.

122.    JPMS denies the allegations in Paragraph 122.

## ATTORNEYS' FEES

123.    JPMS repeats and adopts by reference its answers to the allegations in Paragraphs 1 through 122 as if set forth herein.

124.    JPMS denies the allegations in Paragraph 124.

05_Series_D_JPMS_Answers_and_HR_Policies.pdf  |  C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\



## PUNITIVE DAMAGES

125.    JPMS repeats and adopts by reference its answers to the allegations in Paragraphs 1 through 124 as if set forth herein.

126.    JPMS denies the allegations in Paragraph 126.

127.    JPMS denies the allegations in Paragraph 127.

128.    JPMS denies the allegations in Paragraph 128.

## EXPUNGEMENT

129.    JPMS denies that Claimant is entitled to any of the relief he seeks, including as set forth in Paragraph 129.

130.    JPMS denies the allegations in Paragraph 130, except to admit that Claimant's Form U5 disclosures is available on Claimant's CRD record.

131.    JPMS denies that Claimant is entitled to any of the relief he seeks, including as set forth in Paragraph 131.

## REQUEST FOR RELIEF, DAMAGES, AND AWARD

132.    JPMS denies that Claimant is entitled to any of the relief he seeks.

## REPRESENTATION BY COUNSEL AND REPRESENTATIVE'S CURRENT ADDRESS

133.    JPMS admits that Claimant is represented by Attorneys Joshua Iacuone and Anna Richardson.

## VENUE

134.    JPMS admits that Claimant was employed by JPMorgan in Fort Worth, Texas. JPMS further admits that this matter should be heard in Texas.

05_Series_D_JPMS_Answers_and_HR_Policies.pdf | C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\



## AMOUNT IN DISPUTE AND AMOUNT REQUESTED FOR DAMAGES, AND RELIEF

135.    JPMS denies that Claimant is entitled to any of the relief he seeks.

### RESERVATION OF RIGHTS

136.    JPMS denies that Claimant is entitled to amend his Statement of Claim to plead additional causes of action, claims and relief.

### AFFIRMATIVE DEFENSES

#### FIRST DEFENSE

JPMS denies each and every allegation except as expressly admitted herein.

#### SECOND DEFENSE

The Statement of Claim, in whole or in part, fails to state a claim upon which relief can be granted.

#### THIRD DEFENSE

Any alleged damages incurred by Claimant were caused, in whole or in part, by his own conduct.

#### FOURTH DEFENSE

To the extent that Claimant has suffered any damages or injuries, which JPMS denies, he has failed to mitigate his alleged damages, and his claims are therefore barred.

#### FIFTH DEFENSE

Claimant's Eleventh Claim (Forfeiture of Deferred Compensation (Violation of ERISA)) fails because Claimant failed to exhaust his administrative remedies, because the claim is subject to exclusive federal jurisdiction, and because the proper part against which to bring that claim is not a FINRA Member Firm and does not agree to arbitrate in FINRA.

D.2r-014

335

05_Series_D_JPMS_Answers_and_HR_Policies.pdf | C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\



## SIXTH DEFENSE

The defamation claim is barred because the statements and disclosures made regarding Claimant on his Form U5 are privileged and/or justified.

## SEVENTH DEFENSE

The defamation claim fails because the statements and disclosures made regarding Claimant on his Form U5 are true.

For the foregoing reasons, JPMS requests that the Panel deny Claimant Joshua Biering's claims; assess all costs and forum fees against Claimant; and award any other relief to JPMS that the Panel deems just and proper.

Respectfully submitted,

*Jeffrey S. Dunlap*
Jeffrey S. Dunlap, Esq. (Ohio Bar No. 0067923)
Emma M. Tomsick, Esq. (Ohio Bar No. 0101308)
UB GREENSFELDER LLP
Skylight Office Tower
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113-1448
(216) 583-7000
(216) 583-7001 (Facsimile)
jdunlap@ubglaw.com
etomsick@ubglaw.com

*Attorneys for Respondent J.P. Morgan Securities LLC*

D.2r-015

336

05_Series_D_JPMS_Answers_and_HR_Policies.pdf | C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\



**D.2r-016**
4:26-cv-00381-O
*Biering v. JPMS, et al.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 31, 2024 a copy of the foregoing Statement of Answer

was filed on the FINRA DR Portal. Parties may access the filing through the FINRA DR Portal.

<u>*Emma M. Tomsick*</u>
Emma M. Tomsick

*One of the Attorneys for Respondent J.P. Morgan*
*Securities LLC*

D.2r-016

337

05_Series_D_JPMS_Answers_and_HR_Policies.pdf  |  C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| **JOSHUA DAVID SAPPI BIERING,** | § | |
| *Petitioner, Pro Se,* | § | Case No. 4:26-cv-00381-O-BP |
| **v.** | § | |
| **J.P. MORGAN SECURITIES, LLC,** | § | FINRA Case No. 24-01208 |
| **JPMORGAN CHASE & CO., and** | § | EEOC Charge No. 450-2024-04743 |
| **JPMORGAN CHASE BANK, N.A.,** | § | AAA Case No. 01-26-0000-7215 |
| *Respondents.* | § | |

---

# EXHIBIT D.03ar
## D.03ar-001 – D.03ar-010

---

**Description:** JPMS's position statement filed with the EEOC in response to Petitioner's charge of discrimination.

**Relevance:** Captures JPMS's contemporaneous framing of the termination-and-performance narrative outside the FINRA forum.

**Source:** EEOC Charge No. 450-2024-04743 – JPMS Position Statement (May 24, 2024)

**Petition Ref:** Dkt. 11 ¶ 3; App. A p. 51 ("JPMS EEOC Position Statement")

**Disclosures:** None — reproduced as produced, no added markings

**Filing Status:** Public – not sealed



D.03ar-001
4:26-cv-00381-O
*Biering v. JPMS, et al.*

**Jeffrey S. Dunlap**
Partner

DIRECT    216.583.7026
DIRECT FAX    216.583.7027
EMAIL    jdunlap@ubglaw.com

May 24, 2024

U.S. Equal Employment Opportunity Commission
Dallas District Office
207 S. Houston Street, 3rd Floor
Dallas, TX  75202

**RE:    *Joshua Biering v. JPMorgan Chase Bank, N.A.***
**EEOC Charge No. 450-2024-04743**

Dear Investigator:

JPMorgan Chase Bank, N.A. ("JPMorgan") respectfully submits this Position Statement in response to the above-reference Charge of Discrimination ("Charge") filed by Joshua Biering ("Mr. Biering"), alleging that he was subjected to discrimination and retaliation on the basis of his race, sex, national origin, and disability. JPMorgan terminated Mr. Biering in December 2023 after he violated the JPMorgan Code of Conduct (the "Code of Conduct") and JPMorgan's Equal Opportunity, Anti-Discrimination and Anti-Harassment Policy (the "Policy").  JPMorgan did not discriminate or retaliate against Mr. Biering on the basis of his race, sex, national origin, disability, or any other status protected by applicable law. JPMorgan requests that the Equal Employment Opportunity Commission ("EEOC") dismiss this Charge after its review of the facts.

## I.    Introduction

JPMorgan did not discriminate against or retaliate against Mr. Biering on the basis of his race, sex, national origin, or disability, and Mr. Biering does not allege any facts or provide any evidence to support his claims. JPMorgan's decision to terminate Mr. Biering's employment was based on a legitimate, non-discriminatory and non-retaliatory reason that was entirely unrelated to any status protected by applicable law.

JPMorgan terminated Mr. Biering in December 2023 after it became aware that Mr. Biering sexually harassed a female colleague over whom he had quasi-supervisory authority. JPMorgan became aware of Mr. Biering's conduct on October 26, 2023 when the female colleague reported it to her mentor and after JPMorgan's Employee Relations department initiated an internal investigation. That investigation confirmed that Mr. Biering engaged in conduct that violated the Code of Conduct and the Policy. As a result, JPMorgan terminated Mr. Biering's employment. Any suggestion by Mr. Biering that he was subjected to discrimination and retaliation on the basis of his race, sex, national origin, and disability are meritless. Mr. Biering's Charge should be dismissed.

ST. LOUIS

CLEVELAND

CINCINNATI

CHICAGO

COLUMBUS, OH

SO. ILLINOIS

CLAYTON, MO

NEW YORK

BOCA RATON

WASHINGTON DC

UBGLAW.COM

1660 West 2nd Street
Suite 1100
Cleveland, OH 44113

D.03ar-001

AAA-000741

05_Series_D_JPMS_Answers_and_HR_Policies.pdf  |  C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\



D.03ar-002

4:26-cv-00381-O

*Biering v. JPMS, et al.*

# UB Greensfelder

U.S. Equal Employment Opportunity Commission
May 24, 2024
Page 2

## II.    JPMorgan's Commitment to Providing Equal Employment Opportunities

JPMorgan is an equal opportunity employer and is firmly committed to the equal hiring, promotion and treatment of all qualified individuals without regard for race, religion, or any other status protected by law. JPMorgan makes employment decisions based on legitimate business criteria and the qualifications, skills, and experience of individual applicants. JPMorgan is committed to creating and maintaining an inclusive and diverse organization. JPMorgan recruits individuals with unique experiences and diverse backgrounds because it believes and understands that different perspectives bring strength and creativity to the firm and lead to the best solutions for its customers. JPMorgan is dedicated to maintaining a safe, productive, diverse, professional, collegial, and secure work environment in which all individuals are treated with respect and dignity. Discrimination, harassment, and inappropriate conduct are not tolerated by or against employees, customers, vendors, contractors or any other individuals who conduct business with JPMorgan.

In its policies, JPMorgan expressly prohibits all forms of discrimination and harassment and explains its commitment to providing a discrimination-free and harassment-free work environment for all employees. The Policy states that the firm will not tolerate any form of discrimination on any basis. *See* Exhibit A (Equal Opportunity, Anti-Discrimination and Anti-Harassment Policy). JPMorgan requires employees to review the Policy upon hire and again periodically during their employment with JPMorgan. The Policy is made available to all employees on the firm's intranet site.

The Code of Conduct similarly prohibits any form of discriminatory, harassing, abusive, or otherwise inappropriate conduct. *See* Exhibit B (Code of Conduct, §3.2). The Code of Conduct explains that discrimination and harassment are not tolerated, and any behavior that creates an intimidating, hostile or offensive work environment is prohibited. Mr. Biering received yearly training on the JPMorgan Code of Conduct. Most recently, on July 12, 2023, Mr. Biering affirmed that he read, understood and was in compliance with the Code. The Code of Conduct and the Policy further explain that any employees who believe that they or any other employees have been subject to unlawful discrimination or harassment have the responsibility to report it to a manager, Human Resources, or via the Code of Conduct Reporting Hotline.

## III.    Factual Background

### A.    Mr. Biering began his employment with JPMorgan in 2016.

JPMorgan hired Mr. Biering on February 18, 2016 as a Military Officer Executive Program Associate. Mr. Biering started working for JPMorgan on May 23, 2016. At the time of his termination, Mr. Biering worked as an Executive Director at the Downtown Fort Worth branch located in Fort Worth, Texas. Mr. Biering's position required him to develop and maintain close relationships with JPMorgan's customers to assist them in reaching their short-term and long-

D.03ar-002

AAA-000742

05_Series_D_JPMS_Answers_and_HR_Policies.pdf  |  C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\

**UB Greensfelder**

U.S. Equal Employment Opportunity Commission
May 24, 2024
Page 3

term financial goals. To successfully fulfill his role, he also had to develop and maintain positive working relationships with his colleagues.

**B.      JPMorgan opened an investigation into Mr. Biering's use of his JPMorgan expense account.**

In connection with Mr. Biering's employment, JPMorgan allowed Mr. Biering to use an expense account for client and business development purposes. On October 20, 2023, JPMorgan initiated an investigation into Mr. Biering's use of his JPMorgan expense account.

Mr. Biering's manager, Ben Stewart, received a weekly email containing a summary of all of his subordinate employees' submitted expenses. Stewart was responsible for reviewing the receipts submitted in connection with each expense report and making determinations regarding whether the expenses were appropriately refundable to the employee. During his review of Mr. Biering's submitted expenses between August 31, 2023 and September 17, 2023, Stewart noticed expenses that he believed to be suspicious and contacted Human Resources Business Advisor ("HRBA") Stephanie Stainback for assistance. Ms. Stainback notified JPMorgan's Global Security ("GS") team on October 20, 2023 to open an investigation.[1]

On October 25, 2020, Stewart emailed Ms. Stainback and GS investigator Nadia Muraira a summary of the entries in Biering's expense report that most concerned him. Stewart raised concerns regarding the use of company funds to pay for substantial amounts of alcohol and golf club fees. Stewart was also suspicious of expenses that indicated that Biering entertained the same group of clients on two consecutive days, and in one instance on a bank holiday where it would be unusual to entertain clients. The aggregate amount of firm funds at issue was $8,061.36.

Ultimately, GS found that the allegations into Mr. Biering's misuse of company funds were "unsubstantiated." GS reached this decision because the next step in its investigative process would have required JPMorgan to contact the customers identified in Mr. Biering's submitted expense report. For business reasons, GS determined that it did not wish to pursue the investigation in this way and, therefore, GS closed the investigation.[2]

---

[1] GS is the JPMorgan entity that is responsible for conducting internal investigations.

[2] GS does not reach out to customers to involve them in internal investigations unless there is an ongoing risk of future vi

**UB**Greensfelder

U.S. Equal Employment Opportunity Commission
May 24, 2024
Page 4

    **C.**    **JPMorgan terminated Mr. Biering because he violated the Code of Conduct and the Policy** ███████████████

As a JPMorgan employee, Claimant was required to comply with all of JPMorgan's policies and procedures, including the JPMorgan Code of Conduct. In relevant part, the Code of Conduct instructs:

> JPMorgan Chase is committed to ensuring employees act with honestly and integrity, treat customers fairly, and exercise sound judgment. This means doing the right thing, and speaking up, at all times, even when it is not easy or expedient. Our commitment to ethical business practices preserves our firm's reputation and creates a safe, healthy, productive, and collaborative work environment. **Personal accountability and ownership are priorities at our firm. We expect you to hold yourself to the highest standards of ethical conduct. Always conduct yourself appropriately when acting on behalf of our firm – both inside and outside of the workplace. Your actions should reflect the firm's culture of integrity, respect, and inclusivity.**

*See* Exhibit B at §1.1. (emphasis added). The Code of Conduct further mandates:

> We are committed to a working environment free of threats, intimidation and physical harm. A non-violent, safe, and healthy workspace is critical to our well-being. We rely on you to promptly report any acts or threats of violence, or situations that could pose a threat to others. **All workforce members are expected to comply with applicable laws and firm policies as they relate to the health, safety, and security of our workforce, our customers, and others who may be present on our premises. Always conduct yourself appropriately when acting on behalf of our firm – both inside and outside of the office. Your conduct matters and can be perceived as a reflection of our firm's standards.**

Exhibit B at §3.1. (emphasis added).  As an Executive Director with managerial responsibilities, Mr. Biering had to comply with portions of the Code of Conduct directed specifically at managers. For instance, by Section 1.3.1, the Code of Conduct explains:

> **Managers have an even greater level of responsibility. They must set the example, leading with integrity and reinforcing the firm's ethical culture through their words and actions.**

AAA-000744



UBGreensfelder

U.S. Equal Employment Opportunity Commission
May 24, 2024
Page 5

> Managers are often the first resource for employees who have questions on ethical issues or potential violations of firm policy. If unsure of the best course of action, managers are responsible for directing their employees to the correct resource. They may be held responsible for their failure to report misconduct, escalate appropriately, or take steps to address or remediate an issue. **Managers must create an environment where others feel comfortable sharing concerns and ensure their employees are protected from retaliation for such concerns.**

Exhibit B, §1.3.1. (emphasis added). As set forth above, Mr. Biering affirmed his compliance with the JPMorgan Code of Conduct on an annual basis, and most recently on July 12, 2023, Claimant signed a Code of Conduct Affirmation which states in relevant part: "I hereby affirm that I have read, understand, and am in compliance with the JPMorgan Chase "JPMC" Code of Conduct and all internal JPMC policies that apply to me. **I agree, as a condition of my employment, to remain in compliance with the Code of Conduct and all applicable JPMC policies**." (emphasis added).

The Policy also strictly prohibits sexual harassment. The Policy prohibits "unwelcome sexual advances, requests for sexual favors and other verbal or nonverbal behavior or physical contact of a sexual nature – regardless of how the overture is communicated." Prohibited conduct includes, but is not limited to:

- Inappropriate physical contact such as offensive, sexual or overly-familiar touching of another individual; and

- Making sexual remarks, innuendoes, propositions or advances.

Exhibit A at §5.1. The Policy also makes clear that "[h]arassment and/or inappropriate conduct are often defined by the impact to the recipient, rather than the intent of the person." *Id.*

On October 26, 2023 HRBA Stainback received a report of ████████████████ from Head of Investments and Advice (Fort Worth Market), Kyle Hitchcock. Hitchcock advised Stainback that his mentee, ████████████████████ reported to him that Mr. Biering ████████████████████████. Stainback immediately escalated the report to JPMorgan's Employee Relations team for further investigation. On October 27, 2023, Employee Relations investigator Jonathan Jacobs, accompanied by GS Investigator Chris Magee, interviewed ████████████████



![UBGreensfelder]

U.S. Equal Employment Opportunity Commission
May 24, 2024
Page 6



███████████████ October 27, 2023 interview, JPMorgan, through Jacobs, placed Mr. Biering on paid administrative leave effective end of day October 27, 2023. Jacobs contacted Mr. Biering's manager, Stewart, and directed him to inform Mr. Biering of JPMorgan's decision to place him on paid leave.

On following day, Saturday October 28, 2023, Mr. Biering sent an email to his supervisors resigning his employment. As an Executive Director, Mr. Biering was bound by JPMorgan's Notice Period Policy[5], which requires certain employees to provide their manager with advance notice of the resignation of their employment. Exhibit C (Notice Period Policy). As an Executive Director, Mr. Biering's Notice Period was 60 days. *Id.* During this time, Mr. Biering remained a JPMorgan employee, was paid at his then-current base salary rate, and remained eligible for benefits. *Id.*

Following his resignation, on November 7, 2023, Jacobs and McGee interviewed Mr. Biering

████████████████████████████

███████████████████████████████████████

███████████████████████

---

[5] The Notice Period Policy defines "Notice Period" as the number of calendar days of advance written notice of resignation of employment covered employees are required to provide their manager. Exhibit C.

D.03ar-006

AAA-000746

05_Series_D_JPMS_Answers_and_HR_Policies.pdf  |  C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\

**UB**Greensfelder

U.S. Equal Employment Opportunity Commission
May 24, 2024
Page 7

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
████████████████████████████████████

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
██████████████████████████████████

### IV.    The Lack of Merit to Mr. Biering's Discrimination and Retaliation Claims

Mr. Biering's race, sex, national origin and disability discrimination claims have no merit. To establish a *prima facie* case of discrimination, a charging party must show: (1) he is a member of protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees outside the protected class(es). *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 142 (2000). If the charging party establishes a *prima facie* case, then the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse action. *Id.* The charging party must then show that the employer's proffered reason was pretext for a discriminatory motive. *Id.*

### A.    Mr. Biering's discrimination claim does not survive the *prima facie* stage.

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
██████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

D.03ar-007                                                                        AAA-000747

05_Series_D_JPMS_Answers_and_HR_Policies.pdf  |  C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\

**UB** Greensfelder

D.03ar-008
4:26-cv-00381-O
*Biering v. JPMS, et al.*

U.S. Equal Employment Opportunity Commission
May 24, 2024
Page 8



**B.**     **Mr. Biering's retaliation claim does not survive the *prima facie* stage.**

To make out a *prima facie* case of retaliation, the charging party must show that (1) he engaged in an activity protected by Title VII; (2) his employer took an adverse action against him; and (3) a causal connection existed between the protected activity and the materially adverse action. *Davis v. Fort Bend County,* 765 F.3d 480, 490 (5th Cir. 2014) Like Mr. Biering's alleged discrimination claims, if he can establish a *prima facie* case of retaliation, the burden then shifts to JPMorgan to articulate a legitimate, non-retaliatory reason for its conduct. *Id.* at 491. If JPMorgan does so, the burden shifts back to Mr. Biering to show that the reason articulated by JPMorgan was pre-text for unlawful retaliation. *Id.*

Mr. Biering's retaliation claim fails at the first prong of the *prima facie* case because he has not alleged any facts suggesting that he engaged in any activity protected by Title VII. Mr. Biering alleges that he was subjected to retaliation in two ways. First, Mr. Biering claims that he was retaliated against because JPMorgan audited his expense report "following his resignation." Charge at 2. Second, Mr. Biering claims that JPMorgan "intentionally and knowingly"

UB**Greensfelder**

U.S. Equal Employment Opportunity Commission
May 24, 2024
Page 9

mismarked his Form U5 that was filed with FINRA. *Id.* An employee engages in protected activity when he "has (1) opposed any practice made an unlawful employment practice by Title VII or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under Title VII." *Riley v. Napolitano,* 537 Fed. Appx. 391, 392 (5th Cir. 2013). JPMorgan's investigation into Mr. Biering's use of a JPMorgan expense account is not an activity protected by Title VII, nor was he subjected to retaliation when J.P. Morgan Securities LLC[6] filed Mr. Biering's Form U5.

### C. JPMorgan had a legitimate, non-discriminatory and non-retaliatory reason for terminating Mr. Biering.

Mr. Biering cannot point to any evidence that JPMorgan discriminated against him or subjected him to retaliation, and thus, his claims fail at the *prima facie* stage. However, even if he could establish either *prima facie* case, JPMorgan had a legitimate, non-discriminatory and non-retaliatory reason for its decision to terminate Mr. Biering's employment. As set forth in detail above, JPMorgan terminated Mr. Biering after an internal investigation into his conduct revealed that ███████████████████████ behavior in violation of JPMorgan's Code of Conduct and the Policy. It was for this reason — and this reason alone — that JPMorgan terminated Mr. Biering's employment on December 1, 2023.

### D. There is no evidence that JPMorgan's proffered legitimate, non-discriminatory and non-retaliatory reasons for termination are pre-text for unlawful discrimination and/or retaliation.

Once an employer has articulated a legitimate, non-discriminatory reason for its actions, a charging party must show that the employer's reason was pretext by offering evidence that the proffered reason had no basis in fact; that the reason did not actually motivate the discharge; or that the reason was insufficient to motivate the discharge. *See Gary v. Combined Group*

---

[6] Mr. Biering was employed by JPMorgan Chase Bank, N.A. ("Chase"). JPMorgan's affiliate, J.P. Morgan Securities LLC ("JPMS") held Mr. Biering's securities licenses. JPMS is a member of the Financial Industry Regulatory Authority ("FINRA"). JPMorgan is not a member of FINRA. FINRA requires all member firms to timely file an accurate Form U5 for all licensed representatives when their registration with JPMS ends. FINRA requires member firms to state on the Form U5 the reason for the employee's registration termination. FINRA requires firms to file the Form U5 for multiple reasons. FINRA uses the information to identify individuals who may have violated FINRA rules. Regulatory authorities use the information to make informed registration and licensing decisions. FINRA member firms use the information to make informed employment decisions. Investors may use the information when deciding whether to do business with a registered person. JPMS is subject to administrative and civil penalties if it does not file a timely, complete, and accurate Form U5. To the extent that Mr. Biering included allegations related to his Form U5 in an effort to have the EEOC adjudicate JPMS's conduct, he has done so erroneously because disputes over Form U5 reporting must be adjudicated in FINRA arbitration. JPMS's regulatory obligation to file a timely, accurate and complete Form U5 cannot and does not support his allegation that JPMorgan "retaliated" against him.

D.03ar-009

AAA-000749

05_Series_D_JPMS_Answers_and_HR_Policies.pdf | C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\

**UB Greenfelder**

U.S. Equal Employment Opportunity Commission
May 24, 2024
Page 10

*Ins. Servs.,* No. 3:08-cv-00228, 2009 U.S. Dist. LEXIS 80635 (N.D. Tex. July 27, 2009); *Stephens v. City of Austin,* No. 1:12-cv-659, 2014 U.S. Dist. LEXIS 104439 (W.D. Tex. July 31, 2014). Mr. Biering has not established and cannot establish that JPMorgan's decision to terminate his employment was pre-textual. Employee Relations investigated Mr. Biering's conduct and determined that he violated the Code of Conduct and the Policy ███████. Thus, JPMorgan terminated his employment. Mr. Biering's disagreement with JPMorgan's decision to terminate his employment alone does not establish pretext.

JPMorgan did not terminate Mr. Biering's employment based on his race, sex, national origin or disability status, nor can Mr. Biering demonstrate that any of these statuses were motivating factors in the termination decision. Likewise, Mr. Biering has not set forth any facts to support the conclusion that JPMorgan retaliated against him in any manner that is prohibited by law. Therefore, Mr. Biering's discrimination claims must be dismissed.

## V.    Conclusion

Mr. Biering's race, sex, national origin and/or disability had nothing to do with JPMorgan's decision to terminate his employment, and there is no evidence to support his claims. JPMorgan made all decisions related to Mr. Biering's employment for legitimate, non-discriminatory and non-retaliatory reasons. Through this Position Statement, JPMorgan has attempted to respond to the most significant or meaningful allegations in the Charge. However, to the extent that there are any other allegations contained in Mr. Biering's Charge that have not been addressed to the EEOC's satisfaction, those allegations are categorically denied. Based on the foregoing, JPMorgan respectfully requests that the EEOC dismiss this Charge.

If you have any questions or need additional information, please contact me at 216-583-7026.

Sincerely,

*/s/ Jeffrey S. Dunlap*

Jeffrey S. Dunlap

cc:    Emma Tomsick

D.03ar-010

AAA-000750

05_Series_D_JPMS_Answers_and_HR_Policies.pdf  |  C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\

### UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **JOSHUA DAVID SAPPI BIERING,** | § | |
| *Petitioner, Pro Se,* | § | Case No. 4:26-cv-00381-O-BP |
| **v.** | § | |
| **J.P. MORGAN SECURITIES, LLC,** | § | FINRA Case No. 24-01208 |
| **JPMORGAN CHASE & CO., and** | § | EEOC Charge No. 450-2024-04743 |
| **JPMORGAN CHASE BANK, N.A.,** | § | AAA Case No. 01-26-0000-7215 |
| *Respondents.* | § | |

# EXHIBIT D.03b
## D.03b-001 – D.03b-008

**Description:**   JPMorgan Chase firmwide anti-harassment and non-discrimination policy produced as part of JPMS's EEOC position statement.

**Relevance:**   Establishes the employer's own published standards that JPMS failed to follow in its treatment of Petitioner, supporting the hostile-work-environment and retaliation claims.

**Source:**   EEOC Charge No. 450-2024-04743 – Attachment to JPMS Position Statement

**Petition Ref:**   Dkt. 11 ¶¶ 55–62; App. A p. 7 ("Hostile Work Environment")

**Disclosures:**   None — reproduced as produced, no added markings

**Filing Status:**   Public – not sealed



**D.03b-001**
4:26-cv-00381-O
*Biering v. JPMS, et al.*



Policy

# Equal Opportunity, Anti-Discrimination and Anti-Harassment Policy

Current Effective Date: March 3, 2023

## TABLE OF CONTENTS

1. Summary or Rationale ................................................................................ 2

2. Scope ......................................................................................................... 2

   2.1. Included in Scope ............................................................................... 2

3. Changes from Previous Version ................................................................ 2

4. Policy Statements ..................................................................................... 2

5. Equal Opportunity: Prohibition Against Discrimination and Harassment ..................... 3

   5.1. Prohibited Harassment ...................................................................... 4

6. Reporting ................................................................................................... 5

   6.1. Investigation Procedures/Obligation to Cooperate ............................ 6

7. Non-Retaliation ......................................................................................... 6

8. Culture and Conduct Workplace Training .................................................. 6

9. Country Specific Policies and Guidelines ................................................. 7

10. Defined Terms ........................................................................................... 7

11. Legal and Other References ...................................................................... 7

12. Firm References ........................................................................................ 7

13. Document Information ................................................................................ 8

HUMAN RESOURCES

ternal Use Only

D.03b-001

AAA-000751

05_Series_D_JPMS_Answers_and_HR_Policies.pdf  |  C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\

D.03b-002
4:26-cv-00381-O
*Biering v. JPMS, et al.*

# 1. Summary or Rationale

JPMorgan Chase ("the firm") is committed to maintaining a productive, diverse, inclusive, professional, collegial, safe and secure work environment where all individuals are treated with respect. The firm does not tolerate discrimination, harassment or inappropriate conduct by or against employees, customers, clients, vendors, contractors or any other individuals who conduct business with the firm.

This policy applies to conduct in the firm's offices, work locations, and while engaged in work-related activities outside the workplace, such as business-related meetings, conferences, trips, social events and communications.

The firm expects that every employee shares in the responsibilities for supporting and upholding this policy, including reporting concerns.  This is also an expectation of employees under our Code of Conduct.

# 2. Scope

| | Subject To | Role to Play |
|---|---|---|
| **Lines of Business** | • All | • |
| **Function(s)** | • All | • Human Resources |
| **Locations** | • All | |
| **Legal Entities** | • All | |

## 2.1. Included in Scope

This policy applies to all employees, customers, clients, vendors, contractors or any other individuals who conduct business with the firm.

# 3. Changes from Previous Version

Additional clarification has been provided throughout the policy as part of the 2023 re-approval.

# 4. Policy Statements

*Equal Opportunity: Prohibition against Discrimination and Harassment*.  The firm prohibits discrimination, harassment, bias, prejudice and inappropriate conduct in the workplace.

*Reporting*. Employees who are aware of possible policy violations must immediately contact their manager, the JPMC Conduct Hotline or Employee Relations through the online HR Answers app.

*Non-Retaliation*. The firm prohibits intimidation of or retaliation against any individual because they objected to prohibited behavior, reported a concern in good faith, or assisted with an inquiry or investigation.

HUMAN RESOURCES

2

ternal Use Only

**D.03b-003**
4:26-cv-00381-O
*Biering v. JPMS, et al.*

*Policy Violations.* An employee found to have violated this policy will be subject t disciplinary action, up to and including employment termination, subject to appl

*Culture and Conduct Training:* The firm requires employees and some contractors (based on location) to complete training on the firm's culture of respect and inclusion, as well as expected conduct, when assigned to them.

*Country Specific Policies and Guidelines.* Some countries or jurisdictions may have local policies/guidelines that include country-specific requirements, information, procedures or practices not described in this policy.

## 5.  Equal Opportunity: Prohibition Against Discrimination and Harassment

The firm does not tolerate discrimination, harassment, inappropriate or abusive conduct in any form, by or against employees, customers, vendors, clients, contractors or any other individuals who conduct business with the firm.

All employees, including managers and employees in non-managerial positions, are required to promote equal opportunity and prevent discrimination, harassment and inappropriate and abusive conduct.  They are also expected to help create and maintain an atmosphere where concerns can be raised without fear of retaliation or intimidation.

Violations may result in disciplinary action, up to and including immediate employment termination, subject to local law, or possible termination of other contractual arrangements for non-employees such as vendors, contractors and contingent workers.

The firm is committed to providing equal opportunity in accordance with applicable local law in all areas of people management, including recruitment, employment, assignment, transfer, promotion, compensation, benefits and training.

The firm makes employment decisions based upon legitimate business criteria and the qualifications, skills and experience of individuals. The firm may also take positive actions based on gender, disability, or other characteristics, for example in hiring practices, where required under local law that would not be considered a violation of this policy. Employees may refer to Section 12 for local information links.

The firm prohibits discrimination, harassment, bias or prejudice in its terms and conditions of employment based on an individual's:

| | | | |
|---|---|---|---|
| • Race | • Age | • Color | • Creed |
| • National Origin/Ancestry | • Sex or Gender | • Transgender Status | • Military/Veteran Status |
| • Intersex status | • Sexual Orientation | • Gender Identity or Expression | • Religion |
| • Ethnic Origin | • Marital or Relationship Status | • Physical/Mental Disability | • Religious Affiliation |
| • Citizenship Status | • Civil Partnership | • Genetic Information | • An individual being the victim of, or witness to a crime |
| • Pregnancy, maternity, paternity or caring responsibilities, or reproductive health decisions | | | |
| • An individual being the victim of domestic violence, sexual assault or abuse | | | |
| • Membership in the Traveller community or any community group protected by law | | | |

HUMAN RESOURCES

3

D.03b-003

05_Series_D_JPMS_Answers_and_HR_Policies.pdf  |  C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\

**D.03b-004**

4:26-cv-00381-O

*Biering v. JPMS, et al.*

- Any other protected status under applicable local law

In addition, the firm makes reasonable accommodations for applicants' and employees' religious practices and beliefs, mental and physical disabilities, and for pregnancy, childbirth and related medical conditions, including lactation, in accordance with applicable local law.

### 5.1. Prohibited Harassment

Harassment is any unwelcome conduct -- verbal, nonverbal or physical -- that has the purpose or effect of creating a hostile or offensive environment or can reasonably be expected to cause an individual to feel uncomfortable, intimidated, threatened, bullied, humiliated, offended, denigrated or distressed.

The following lists some of the behaviors prohibited by this policy:

| Prohibited Behavior |
| --- |
| comments, jokes or stereotyping made through any form of communication (including email, social media, communication apps, Zoom, etc.) that are insulting, degrading, exploitative, derogatory or discriminatory in nature; |
| making threats or intimidating remarks or creating or circulating materials that denigrate or show hostility or aversion toward an individual or group of people based on a legally protected characteristic or classification; |
| accessing, viewing, or displaying or circulating discriminatory or sexually explicit or suggestive materials, including pornography, cartoons, calendars, drawings and e-mails, during working hours or on JPMC systems or devices |
| circulating discriminatory or sexually explicit or suggestive materials, including pornography, cartoons, calendars, drawings and emails to other JPMC employees or displaying such materials in a way that other JPMC employees could see or hear them; |
| repeatedly requesting a personal relationship when the recipient of the request has declined; or |
| any inappropriate or abusive conduct that unreasonably interferes with another's work performance or creates an intimidating, offensive or hostile environment and which is inconsistent with the firm's standards of professionalism and conduct for employees and others with whom JPMorgan Chase does business. |

This policy also specifically prohibits unwelcome sexual advances, requests for sexual favors and other verbal or nonverbal behavior or physical contact of a sexual nature -- regardless of how the overture is communicated. This includes:

| |
| --- |
| when submission to an advance is made explicitly or implicitly a condition of the individual's hiring or employment; |
| when submission to or rejection of the overture is used for employment decisions that affect the individual, including compensation, promotions or terms and conditions of employment; |
| inappropriate physical contact such as offensive, sexual or overly-familiar touching of another individual; |
| making sexual remarks, innuendoes, propositions or advances. |

HUMAN RESOURCES

D.03b-004

05_Series_D_JPMS_Answers_and_HR_Policies.pdf  |  C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\

**D.03b-005**

4:26-cv-00381-O

*Biering v. JPMS, et al.*

It is important to understand that:

- Inappropriate conduct may involve individuals of the same or different sex or gender and is prohibited regardless of sex, gender identity or whether the individual submits to it or rejects it.
- Harassment and/or inappropriate conduct are often defined by the impact to the recipient, rather than by the intent of the other person.

The firm does not allow inappropriate behavior to be excused or justified by claiming that it was unintentional, humorous or occurred under the influence of alcohol or other substances. Employees who are responsible for hosting social events should be mindful in selecting a venue that is inclusive and comfortable for all employees.

Employees should also be aware that sexual or romantic relationships with other employees, customers, vendors, contractors or individuals who conduct business with the firm may create risks, concerns and/or conflicts of interest under the Code of Conduct.

Employees are reminded of the procedures to report these relationships to Employee Relations through the online HR Answers app and for managers to immediately report this information to Employee Relations via the online HR Answers app. This procedure must be adhered to in all cases, subject to local legal requirements. The firm reserves the right to take appropriate action to address these risks, concerns and/or conflicts of interest.

Refer to the <u>Employment of Relatives and Employees in Personal Relationships Policy - Firmwide</u> and the <u>Code of Conduct</u> for further details.

### 5.2. Pay Transparency

U.S. employees should refer to the <u>U.S. Pay Transparency Policy Statement</u> for additional details about their obligations regarding compensation discussions.

## 6.    Reporting

Unless otherwise provided in a country-specific policy listed in Section 12, employees who are aware of possible violations of this policy must immediately report it to:

- Their manager;
- The <u>JPMC Conduct Hotline; or</u>
- Employee Relations via the online <u>HR Answers app</u>

When using the JPMC Conduct Hotline, employees can report and identify themselves or remain anonymous, where permissible by law. If employees choose to remain anonymous, they should provide as much detail as possible so the firm can properly review the issue. When employees identify themselves on the online HR Answers app, the firm will share their identity only with those who have a business need to know to review the issue.

Managers who become aware of potential violations must immediately report the information to the Conduct Hotline or Employee Relations via HR Answers.

Employees concerned about their own safety or the safety of others in the workplace must immediately report their concerns to the Global Security Operations Center, as outlined in

HUMAN RESOURCES

D.03b-005

05_Series_D_JPMS_Answers_and_HR_Policies.pdf  |  C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\

D.03b-006
4:26-cv-00381-O
*Biering v. JPMS, et al.*

the Violence-Free Workplace Policy.  In a life-threatening emergency, immediate your local police or emergency services first.

Your obligations to report to the firm do not prevent you from reporting to the government or regulators conduct that you believe to be in violation of the law.

### 6.1. Investigation Procedures/Obligation to Cooperate

The firm is committed to promptly and effectively reviewing all potential violations of this policy and, where appropriate, may conduct an inquiry or investigation.  An investigation will generally include the following:

- The investigation will be conducted by an independent member of Human Resources, Employee Relations, Global Security, and/or another corporate function, or such other independent person as determined by JPMorgan Chase.
- Managers should not attempt to conduct an inquiry or investigation on their own.
- Employees have an obligation to cooperate fully with any inquiry or investigation. Those who fail to do so may be subject to disciplinary action up to and including termination of employment, subject to applicable local law.
- The firm will maintain confidentiality to the extent possible in conducting a thorough inquiry or investigation and responding where appropriate.
- The firm will conduct inquiries and investigations of potential violations as quickly as possible without compromising the integrity of the process.
- If the firm finds a violation, it will take any appropriate remedial action.
- Current employees who report concerns generally will be informed that the investigation has concluded and any next steps, as appropriate. However, the reporting employee typically won't be informed of specific actions taken with other employees.

## 7.  Non-Retaliation

The firm prohibits intimidation of or retaliation against an individual because they objected to behavior, reported a concern in good faith, or assisted with an inquiry or investigation under this policy.

It is the responsibility of every employee who has concerns about or is aware of possible retaliatory action to contact their manager, Conduct Hotline or Employee Relations.

## 8.  Culture and Conduct Workplace Training

All employees must complete the firm's training when it's assigned.

In addition, and as part of this training, employees located in Australia, India and the Philippines, as well as U.S. employees located in California; Connecticut; Delaware; Chicago, Illinois; state of Illinois; Maine; New York City; New York state; and Oregon should review the appropriate Location Specific Anti-Harassment Supplemental Information to learn more about definitions, requirements and resources available in that location.

HUMAN RESOURCES

D.03b-006

05_Series_D_JPMS_Answers_and_HR_Policies.pdf  |  C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\

D.03b-007
4:26-cv-00381-O
*Biering v. JPMS, et al.*

## 9. Country Specific Policies and Guidelines

Employees may refer to the Firm References section below as well as their local HR policies for any country-specific information.

## 10. Defined Terms

| | |
|---|---|
| **Abusive Conduct** | Conduct that a reasonable person would find hostile, offensive, and unrelated to the employer's legitimate business interests (or as otherwise defined in applicable local laws). |
| **Gender Identity** | The term "gender identity," distinct from the term "sexual orientation" refers to a person's innate, deeply felt psychological identification, which may or may not correspond to the person's assigned sex at birth (meaning what sex was originally listed in a person's birth certificate). |
| **Intersex** | Intersex is an individual born with any of several variations in sex characteristics including chromosomes, gonads, sex hormones, or genitals that, according to the UN Office of the High Commissioner for Human Rights, "do not fit the typical definitions for male or female bodies". |
| **Sexual Orientation** | The internal experience of sexual/romantic/emotional desire one feels for others |
| **Traveller** | Travellers are a traditionally itinerant ethnic group who maintain a set of traditions. |
| **Unwelcomed Conduct** | Conduct that is not requested, wanted or invited by an individual and that the individual regarded as undesirable or offensive. |

## 11. Legal and Other References

| | |
|---|---|
| **Enterprise Library Application (ELA) Link** | • n/a |
| **Statutes, Laws, Rules, Regulations or External Guidance** | • None |

## 12. Firm References

| | |
|---|---|
| **Other Firm Policies or Standards** | • Affirmative Action Program<br>• Accommodating Disabilities and Temporary Work Restrictions - US<br>• Code of Conduct<br>• Equal Opportunity, Anti-Discrimination and Anti-Harassment Policy Supplement – UK<br>• Employment of Relatives and Employees in Personal Relationships Policy - Firmwide<br>• Human Rights and Employment Equity - Canada<br>• Local Code of Conduct & IT Charter- France (JPMCB)<br>• Local Code of Conduct & IT Charter - France (JPMS)<br>• Local Code of Conduct & IT Charter - France (JPMAME)<br>• Prevention of Sexual Harassment at Work Place – India Supplement<br>• Harassment-Free Workplace Policy Supplement – Philippines<br>• Anti-Harassment Policy – Saudi Arabia (English)<br>• Anti-Harassment Policy – Saudi Arabia (Arabic)<br>• Igualdad de Oportunidades, Anti-Acoso y Anti-Discriminacion – Perú<br>• Work Environment Policy - Firmwide<br>• Human Rights and Employment Equity - Canada |
| **Procedures, and Other Documents** | • How to Request a Religious Accommodation<br>• Location-specific Anti-Harassment Supplements<br>• Infographic: Equal Opportunity, Anti-Harassment and Anti-Discrimination Policy |
| **Forms and Systems** | • Code of Conduct Complaint Form |

HUMAN RESOURCES

7

ternal Use Only

D.03b-008
4:26-cv-00381-O
*Biering v. JPMS, et al.*

## 13. Document Information

| | | | |
|---|---|---|---|
| **Policy Level** | Level 2 | | |
| **Policy Type** | Firmwide | | |
| **Document Owner-Approver \| Function or Line of Business \|Country** | Pat Press, E098241, Managing Director | Global Employee Relations | United States |
| **Document Primary Contact** | Online: HR Answers app | | |
| **Document Manager** | Lynda Cantatore, U374562, Global Policy and Standards Manager | | |
| **Annual Approval Date** | March 3, 2023 | | |
| **Initial Effective Date** | May 19, 2014 | | |
| **Off-cycle Update Date** | n/a | | |
| **Additional Contacts** | Online: HR Answers app | | |

HUMAN RESOURCES

D.03b-008
05_Series_D_JPMS_Answers_and_HR_Policies.pdf | C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| **JOSHUA DAVID SAPPI BIERING,** | § | |
| *Petitioner, Pro Se,* | § | Case No. 4:26-cv-00381-O-BP |
| **v.** | § | |
| **J.P. MORGAN SECURITIES, LLC,** | § | FINRA Case No. 24-01208 |
| **JPMORGAN CHASE & CO., and** | § | EEOC Charge No. 450-2024-04743 |
| **JPMORGAN CHASE BANK, N.A.,** | § | AAA Case No. 01-26-0000-7215 |
| *Respondents.* | § | |

# EXHIBIT D.03c
## D.03c-001 – D.03c-018

**Description:**   JPMorgan Chase firmwide Code of Conduct produced as part of JPMS's EEOC position statement. Heavily redacted by JPMS.

**Relevance:**   Documents the behavioral and ethical standards JPMS employees are held to; relevant to evaluating JPMS's own compliance with its stated policies.

**Source:**   EEOC Charge No. 450-2024-04743 – Attachment to JPMS Position Statement

**Petition Ref:**   Dkt. 11 ¶¶ 55–62; App. A p. 7 ("Hostile Work Environment")

**Disclosures:**   None — reproduced as produced, no added markings

**Filing Status:**   Public – not sealed

EXHIBIT B











**Culture:**
It's How We Do Business.









JPMorgan Chase & Co.

Case 4:26-cv-00381-O-BP   Document 20-5   Filed 04/29/26   Page 61 of 84   PageID 529

CONFIDENTIAL

D.03c-001

4:26-cv-00381-O
Biering v. JPMS, et al.

AAA-000759

CONFIDENTIAL



# Code of Conduct – Your Actions Matter

JPMorgan Chase is deeply committed to being ethical, accountable and honest in all of our business dealings across the globe.

The Code of Conduct represents our shared obligation to operate with the highest level of integrity and ethical conduct. We do the right thing – even when it's not expedient. We abide by the letter and spirit of the laws and regulations everywhere we do business and have zero tolerance for unethical behavior. Personal accountability and ownership are priorities at our firm.

Our Code of Conduct and firm policies are designed to encourage honest business relationships, enabling us to continually build on our proud heritage. We must act with integrity and be responsible for our actions, showing respect for each other as well as those with whom we do business.

We all must do our part to preserve the values that have made JPMorgan Chase the respected company it is today. That's why it's important to speak up when you see something that doesn't seem right. If you encounter or suspect illegal or unethical conduct, report it immediately.

Remember, your actions matter.



Jamie Dimon
July 2023

Contents    Report        1.0  2.0  3.0

AAA-000760

CONFIDENTIAL

# Table of Contents

About This Document

Report a Potential Violation or Concern

ing with Integrity   3
1.1 Our Ethics   3
1.2 Compliance with the Law and Firm Policies   4
1.3 Personal Integrity and Ethical Decision Making   5
     1.3.1 Manager Responsibilities   5
1.4 Sharing Concerns   6
     1.4.1 Our Commitment to Non-Retaliation   6

ing Conflicts and Managing Information   7
2.1 Avoiding Conflicts of Interest   7
     2.1.1 Outside Interests and External Activities   7
     2.1.2 Personal Relationships   7
     2.1.3 Gifts and Business Hospitality   8
     2.1.4 Political Engagement   8
     2.1.5 Personal Finances   8
2.2 Managing Information   9
     2.2.1 Communicating Responsibly   9
     2.2.2 Maintaining Data   10
     2.2.3 Using Firm Assets   10

inning Culture   11
3.1 A Dynamic and Thriving Workplace   11
3.2 Diversity and Inclusion is a Priority   12

Closing Thoughts   13

05_Series_D_JPMS_Answers_and_HR_Policies.pdf | C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\

D.03c-003

AAA-000761

  
D.03c-003
4:26-cv-00381-O
Biering v. JPMS, et al.

CONFIDENTIAL

# About This Document

The Code of Conduct ("Code") sets forth the expectation that employees conduct themselves with integrity, at all times. It provides employees with the principles to help govern their conduct with clients, customers, suppliers, vendors, shareholders, fellow employees, regulators, markets, and the communities in which we operate. The Code applies to the employees and directors of JPMorgan Chase & Co. ("firm" or "JPMorgan Chase") and its direct and indirect subsidiaries.

The Code is designed to be consistent with the regulatory and legal framework that governs our industry. It may be amended as required by law or regulation. All amendments are effective immediately upon posting.

The Code is administered by Code of Conduct Compliance. The most current version can be accessed on our firm's internal and external websites.

Code of Conduct Compliance can provide interpretative guidance on the principles in the Code, in consultation with LOB Compliance, the Chief Compliance Officer or the General Counsel, as appropriate. Any waiver of the provisions of this Code or internal policy for a member of the JPMorgan Chase Operating Committee or a director must be reported to the Office of the Secretary for Board of Directors approval and prompt disclosure to JPMorgan Chase stockholders.

In general, consultants, agents and contract or temporary workers are expected to comply with the underlying principles of the Code as well as the Supplier Code of Conduct. The Code does not create any rights to continued employment and is not an employment contract.



Contents | Report | 1.0 | 2.0 | 3.0

  

# Report a Potential Violation or Concern

Every JPMorgan Chase employee has the right and the obligation to report actual and potential violations of our Code and firm policies, as well as laws and regulations that govern JPMorgan Chase business.

e several ways to report a potential or actual violation or raise a concern. Reporting can be done anonymously, where permitted by law. Translation are also available.

n Chase strictly prohibits intimidation or retaliation against anyone who shares a potential or actual violation of our Code of Conduct, in good faith, s with an investigation or inquiry.

report concerns to the JPMC Conduct Hotline in three ways:

| PHONE | ONLINE | MOBILE |
|---|---|---|
| **1-855-JPMCODE**<br>(U.S. and Canada Only)<br><br>All others - Click here | **Submit here** | **Scan**<br> |

For concerns that are specifically related to accounting, internal controls, auditing matters or financial reporting practices, contact the JPMC Conduct Hotline, or the General Counsel of JPMorgan Chase & Co. Office of the General Counsel: 383 Madison Avenue, New York, NY 10179.

 

CONFIDENTIAL

**D.03c-006**
4:26-cv-00381-O
*Biering v. JPMS, et al.*

## 1.0 Leading with Integrity








D.03c-006

AAA-000764

CONFIDENTIAL

## 1.1 Our Ethics

JPMorgan Chase is committed to ensuring employees act with honesty and integrity, treat customers fairly, and exercise sound judgment. This means doing the right thing, and speaking up, at all times, even when it is not easy or expedient. Our commitment to ethical business practices preserves our 's reputation and creates a safe, healthy, productive, and collaborative k environment.

onal accountability and ownership are priorities at our firm. We expect to hold yourself to the highest standards of ethical conduct. Always uct yourself appropriately when acting on behalf of our firm – both e and outside of the workplace. Your actions should reflect the firm's re of integrity, respect, and inclusivity.

## mpliance with the Law and Firm Policies

financial industry is highly regulated. Being aware of and complying with laws and regulations under which we operate is not just a critical part of business, but fundamental to who we are. It is important to comply with letter, spirit, and intent of laws, regulations, and firm policies. Violating law or engaging in unfair, deceptive, and abusive acts or practices may ken customer confidence, put our reputation at risk, impact market grity, or result in regulator criticism, legal action, fines or penalties, or r negative repercussions.

are expected to know and comply with the laws, regulations and firm ies that apply to you. Always follow the Code. If your business unit adopts policies that are more specific than the Code, you must follow those policies. In the event of a conflict with any provision of the Code and local law, you should always follow the law.

## 1.3 Personal Integrity and Ethical Decision Making

The Code will help guide you in making ethical decisions, but you won't find the answer to every situation. In the absence of a specific policy or procedure, you have a responsibility to use good judgment, comply with the spirit and the intent of the Code, and seek help from your manager or Compliance Officer.

Always deal fairly and in good faith with our customers, suppliers, competitors, business partners, regulators, and other employees. Never take unfair advantage of anyone through manipulation, concealment, abuse of privileged or confidential information, misrepresentation of material fact, or any other unfair dealings or practices.

Our competitive advantage comes through our superior products and services, never through unethical or illegal business practices. JPMorgan Chase is committed to complying with both the laws and regulations that address market integrity. Be mindful of sharing information and your interactions with competitors and refrain from any action that may prevent, restrict, or alter fair competition. Do not compromise our firm's reputation or your own by engaging or appearing to engage in any form of corruption. Never give, offer, promise, solicit, or accept anything of value - whether directly or indirectly through others such as third-party intermediaries – if it is intended or could be perceived as intended to improperly influence decisions on behalf of our firm. Be alert and escalate activities that are designed to hinder or prevent the detection of improper or illegal activity (e.g., money laundering, tax evasion, bribery, etc.).

Take ownership – anticipate, identify, and manage the risk and impacts of the decisions and actions you take at work. You are in charge of your decisions. No one has the authority to tell you to do something unethical or illegal.

 

D.03c-008

05_Series_D_JPMS_Answers_and_HR_Policies.pdf | C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\

AAA-000766

CONFIDENTIAL

You must do the right thing when it comes to your own conduct, and you must speak up about conduct by others that might violate our Code or firm policies. This includes cooperating as directed by our firm with any investigation or inquiry.

We all have a responsibility to understand and uphold the principles of the de. Compliance with the Code is a condition of employment. Action may taken against employees who violate the Code or who fail to report the lations of others, up to and including termination of employment.

## anager Responsibilities

nagers have an even greater level of responsibility. They must set the mple, leading with integrity and reinforcing the firm's ethical culture ough their words and actions. Managers are often the first resource for ployees who have questions on ethical issues or potential violations of policy. If unsure of the best course of action, managers are responsible directing their employees to the correct resource. They may be held ponsible for their failure to report misconduct, escalate appropriately, take steps to address or remediate an issue. Managers must create an vironment where others feel comfortable sharing concerns and ensure ir employees are protected from retaliation for reporting such concerns.

### rinciples In Practice

m covering a new client and see a customer transaction that seems d. I don't know if I should escalate. What should I do?

u should escalate to your manager and, if necessary, your Compliance Officer for assistance. Every employee is responsible for escalating unusual or potentially suspicious transactions or activities. Doing so will protect you and our firm from involvement in questionable or illegal activities.

## 1.4 Sharing Concerns

Use your voice and escalate your concerns, regardless of whether it directly affects you or your line of business. Promptly report any potential or actual violations of the Code, firm policy, law, or regulation related to our business. You are encouraged to ask questions and have open conversations with your manager on business and conduct issues. We rely on you to speak up when something is unclear.

If you see or suspect that something is illegal or unethical, you have the right and an obligation to share your concerns. You must also immediately report to Human Resources certain charges or arrests that involve you personally, whether they relate to the business of our firm or not.

There are several ways to report your concerns. You can raise issues with your manager, your Compliance Officer, Global Security or Human Resources. You can also call the JPMC Conduct Hotline toll-free at 1-855-JPMCODE (1-855-576-2633). The Hotline is operated by an independent third-party service and is available any time, night or day. You can also file a report online at www.tnwgrc.com/jpmc. Where permitted by applicable law, you may report anonymously. For more information on who to contact, refer to the Report a Potential Violation or Other Concern page.

You are required to report violations whether they involve you or someone else, including other employees, consultants, contract or temporary workers, business partners or agents, or our customers or suppliers. Do not investigate potential violations yourself. Report it and the matter will be investigated by the appropriate parties. You must cooperate as directed by our firm in any investigation or inquiry.

Just as you will be held responsible for your own actions, you can also be held responsible for not reporting actions you knew or should have known were in violation of any applicable policy, law, or regulation. Rep our firm does not prevent you from reporting conduct that you b an actual or potential violation of law to the government or regu

D.03c-008

-00381-O
Biering v. JPMS, et al.




## 1.4.1 Our Commitment to Non-Retaliation

Don't be afraid to speak up. JPMorgan Chase policies and restrictions on disclosing confidential information do not prevent you from reporting concerns to the government, a regulator, your attorney, or a court under seal. Our firm strictly prohibits intimidation or retaliation against anyone who makes a good faith report about a potential or actual violation of the Code, policy, or any law or regulation governing our business. We also strictly hibit intimidation or retaliation against anyone who assists with an inquiry nvestigation of any such violation.

ssured that the information you provide will be handled discreetly and shared with those we must inform, such as regulators and those involved vestigating, resolving, and remediating the issue. Employees who have cerns about or are aware of possible retaliatory action must report it, er to their manager, Human Resources, or the JPMC Conduct Hotline.

### inciples In Practice

verheard a colleague discussing something that I think may violate the de of Conduct. I'm not sure I should report it since it doesn't directly ect me.

t complying with the Code can cause immeasurable damage to our utation and put your co-workers, our customers, and our firm at risk. an also lead to regulatory and legal consequences. Where permitted law, you may report concerns anonymously for additional peace of nd. Not reporting concerns is also a violation of the Code and could lead to disciplinary consequences. Your voice helps promote our ethical culture. Use it!



D.03c-010

4:26-cv-00381-O

*Biering v. JPMS, et al.*

## 2.0 Avoiding Conflicts and Managing Information








D.03c-010

AAA-000768

05_Series_D_JPMS_Answers_and_HR_Policies.pdf  |  C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\

05_Series_D_JPMS_Answers_and_HR_Policies.pdf | C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\

## 2.1 Avoiding Conflicts of Interests

Your personal interests should never conflict – or appear to conflict – with our firm's interests. Avoid activities or relationships that might affect your objectivity in making decisions on behalf of our firm or undermine your credibility. Conflicts may damage the firm's reputation, cause loss of business, and lead to increased regulatory scrutiny or litigation risk.

firm often has fiduciary obligations to our clients to act in their best est. Always escalate perceived and actual conflicts of interest so that the er review is completed, and the required steps are taken to help mitigate onflict. Never place personal interests ahead of our clients.

e conflicts may be obvious while others are more subtle, but both have lasting effects. Potential conflicts may arise in a variety of ways, ding through: (1) Outside Interests and other external activities; (2) onal and business relationships; (3) the exchange of gifts and business itality; (4) political engagement; and (5) personal finances.

ot possible to list every situation that could present a potential conflict, you should be familiar with the risks associated with the activities listed e. Use good judgment and ask for help whenever you are unsure of the er course of action. Appropriately addressing conflicts helps protect the by preventing the misuse of confidential information and firm assets.

onal accountability and ownership are priorities at JPMorgan Chase. ys anticipate the impact of your decisions. Your actions may lead to unfair t or customer outcomes, impact market integrity, compromise our firm's tation, or negatively affect our firm's culture. Our policies are designed to honest business relationships and promote fairness in the marketplace. Use firm resources to help guide your decisions.

**Whether big or small, all conflicts need to be addressed.**

## 2.1.1 Outside Interests and Other External Activities

Your Outside Interests and other external activities cannot restrict the firm's business opportunities, reflect adversely on our firm (e.g., create exposure to regulatory, reputational, or financial risk), or create a perceived or actual conflict of interest with our firm, clients or suppliers. You are expected to put your job at our firm ahead of personal business opportunities, government service or second jobs.

We encourage you to become involved in your community and with charitable organizations that support your personal philanthropic goals. Be sure to follow the firm's policies governing personal activity to ensure that your charitable work and the Firm's interests are not in conflict. Soliciting customers, suppliers, and fellow employees or using firm assets in connection with your Outside Interests is generally prohibited.

## 2.1.2 Personal Relationships

It is always important to remain objective in your business dealings. Personal relationships with someone you know inside or outside of work can create a conflict of interest or raise the appearance of a conflict. Personal conflicts of interest may occur when your interests (or the interest of someone you know personally) conflict with the interests of JPMorgan Chase or one of its clients.

Don't engage in self-dealing or act for the firm in any transaction or business relationship that involves yourself, members of your family, or other people or organizations where you or your family have a significant personal connection or financial interest.

CONFIDENTIAL





D.03c-011
4:26-cv-00381-O
Biering v. JPMS, et al.

D.03c-012

05_Series_D_JPMS_Answers_and_HR_Policies.pdf | C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\

AAA-000770

CONFIDENTIAL

## 2.1.3 Gifts and Business Hospitality

While the exchange of gifts and business hospitality may be common business practices, such activity can be misinterpreted or suggest the appearance of something improper, even when there is no improper intent. Avoid accepting or providing gifts and business hospitality to customers, suppliers, and business partners of the firm if it creates a perceived or actual conflict of est or violates laws, regulations, or our firm's policies. Employees should r solicit, suggest, or request gifts or business hospitality in exchange for business or an unfair advantage.

## olitical Engagement

espect your right to engage in personal political activity. Your political ities are personal endeavors, but you must be mindful of potential impact e firm's reputation. Your contributions and activities must be lawful, istent with firm policies, and may not involve the use of firm time or urces (including staff, facilities, equipment, stationery, email, phones, lies or mailing lists).

may not invite government officials or political figures to speak at or nd firm events unless you comply with our firm's policy requirements. Do promise or imply firm sponsorship, contributions, or other support. You not use firm funds to contribute to or make expenditures or election- ed communications on behalf of candidates, political party committees or ical action committees.

## 2.1.5 Your Personal Finances

You must comply with all applicable laws, regulations and firm policies when managing your personal finances and investment activities. Our firm expects you to handle your personal finances responsibly and with integrity, and to base your personal investment decisions with long-term objectives in mind. Investing in the business of a client or supplier with whom you have – or recently had – dealings with, in your role at the firm, can raise significant conflicts.

In addition, the improper handling of your personal finances could undermine your credibility and the firm's or lead to increased regulatory scrutiny. Engaging in financial transactions (e.g., borrowing, joint investments, gambling or betting, etc.) with fellow employees, customers, suppliers is prohibited for these reasons.

As an employee of a publicly traded company, you may have access to confidential or non-public information about our firm, clients and other companies that conduct or seek to do business with us. You must protect this information from unauthorized use, including from other employees who do not have a legitimate and continuous business need to access the information. Insider trading is illegal and strictly prohibited by firm policies. You must never use privileged or confidential information for personal gain or tell, "tip", or share information you learned through work with others.

D.03c-012

4:26-cv-00381-O

Biering v. JPMS, et al.

CONFIDENTIAL

## 2.2 Managing Information

Customers, suppliers, employees, and others who do business with our firm trust us to be good stewards of their financial, personal, and business information. No matter the format, protect information you manage on behalf of the firm from theft, loss, or unauthorized access or disclosure. Do not discuss, access or use confidential information unless you have a legitimate ness need to do so.

duty to protect confidential information includes taking precautions re sharing it with anyone. Confidential information should never be osed to anyone inside or outside our firm except as permitted by law, e proper conduct of our business, where disclosure is required by l process, or where the Compliance or the Legal Department otherwise rmines it is appropriate. The loss or unauthorized disclosure of confidential mation may harm our firm and its clients and can result in termination.

ing remotely should be considered an extension of the workplace. cise the same degree of care in protecting confidential information away the office as you do when working in the office. Only use approved munication channels to conduct JPMorgan Chase business.

responsibility to protect confidential information also applies to work may have done before coming to JPMorgan Chase. Sharing confidential mation from a former employer is unethical and can expose you and rgan Chase to legal liabilities.

rgan Chase policies and restrictions on disclosing confidential information ot prevent employees from reporting concerns of any potential or al violation to our firm's management or directors, the government, a regulator, employees' attorneys, or a court under seal. They also do not prevent employees from reporting retaliation for reporting such concerns or responding truthfully to questions or requests from the government, a regulator, or in a court of law.

## 2.2.1 Communicating Responsibly

JPMorgan Chase is committed to making sure communications about our firm and its business are accurate and made by employees who are authorized to speak on our behalf. We also recognize our obligation to protect the confidentiality of our business and customer information.

Be alert to situations where you may be perceived as representing or speaking on behalf of JPMorgan Chase. Making recommendations or referring people or companies that do or have done business with our firm may be considered a firm endorsement, which is not allowed. Know the limits on your authority to speak, sign, or otherwise act on behalf of our firm, and don't take any action that exceeds those limits. Remember to seek preclearance before speaking about JPMC's business or your role and responsibilities at the firm, in any public forum or publication.

The firm respects your right to engage in social, professional, and political dialogue outside of work. You must use good judgment when making personal statements in public, including on your personal social media accounts. Also use care in internal communications and be responsible with your comments on intranet postings.

Nothing in the Code should be interpreted to prevent employees from engaging in activities that are protected under laws and regulations that allow employees to discuss or disclose their personal compensation information.

### Principles In Practice

I want to start a financial blog. I don't plan to disclose that I'm an employee. Is this permitted?

You may not opine on or provide information relating to our firm's business, your role or job responsibilities in a public forum un are specifically authorized to do so. This applies whether you yourself as an employee or blog on your personal time. Your c should not have an adverse impact on our firm.



CONFIDENTIAL

## 2.2.2 Maintaining Data

Creating and maintaining accurate and complete data is essential for our ability to meet our business needs as well as legal and regulatory requirements. Make sure any disclosure we make to the government, regulatory authorities and investors meet these standards, and never falsify any data. You are responsible for maintaining the integrity of firm data, and plying with all recordkeeping policies, controls, and procedures we have ace.

## sing Firm Assets

assets are the resources we use to conduct firm business. Use firm assets egitimate firm business and appropriately safeguard them against cyber-ed risk and attack, theft, loss, waste, or abuse. By protecting our assets, rotect our competitive advantage in the marketplace. You also have a onsibility to extend the same degree of care to assets entrusted to our by others. It is essential that you respect and protect the firm's physical intellectual property.

d using JPMorgan Chase assets, including technology and information urces, for your personal activities. Personal use of our devices, nology and assets should be kept to a minimum and should never fere with your business obligations, burden firm assets, introduce tional risk to our firm, or negatively impact or disrupt colleagues.

 

D.03c-015
4:26-cv-00381-O
*Biering v. JPMS, et al.*

## 3.0 Our Winning Culture



   

D.03c-015

AAA-000773

05_Series_D_JPMS_Answers_and_HR_Policies.pdf  |  C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\

CONFIDENTIAL

## 3.1 A Dynamic and Thriving Workplace

Nothing is more vital to the long-term growth of JPMorgan Chase than our ability to attract and retain talented and dedicated employees. You are our most valuable asset. Always treat each other, and our customers and suppliers, respectfully and fairly. Stay true to the principles embedded in our culture: honesty, integrity, accountability, diversity, and inclusion.

re committed to a working environment free of threats, intimidation, and ical harm. A non-violent, safe, and healthy workplace is critical to our -being. We rely on you to promptly report any acts or threats of violence, tuations that could pose a threat to others. All workforce members are cted to comply with applicable laws and firm policies as they relate to the th, safety and security of our workforce, our customers, and others who be present on our premises.

ys conduct yourself appropriately when acting on behalf of our firm th inside and outside of the office. Your conduct matters and can be eived as a reflection of our firm's standards.

### Principles In Practice

I noticed that some of my co-workers aren't following the posted guidelines to maintain a clean work environment. What should I do?

If you observe behavior that does not align with guidelines, you can raise directly with the individual if you feel comfortable doing so. You can also escalate to your manager, contact Human Resources or report to the JPMC Conduct Hotline.

## 3.2 Diversity and Inclusion is a Priority

A diverse network of people, a vibrant mix of cultures, a broad range of skills and experiences – we celebrate all the people of JPMorgan Chase around the world. A diversity of colleagues means diverse ideas and a more inclusive work experience. It also means that our workforce reflects the diverse set of customers we serve and helps us to address – and respond to – a wide variety of needs and opportunities in the marketplace.

We prohibit discrimination, harassment, bias and prejudice in our workplace and against our workforce based on an individual's race, color, national origin or ancestry, ethnic origin, citizenship status, creed, religion, religious affiliation, age, sex, gender, pregnancy, maternity, paternity, caring responsibilities, marital status, relationship status, civil partnership, sexual orientation, transgender status, gender identity, gender expression, intersex status, genetic information, physical or mental disability or protected condition, military or veteran status, an individual having been a victim of domestic violence, sexual assault or abuse, an individual being the victim of a crime, any other community group protected under applicable law, or any other status protected under applicable local law.

We do not tolerate discrimination, harassment, or inappropriate or abusive conduct by or against employees, customers, suppliers, contractors, or any other individuals who conduct business or seek to do business with our firm.

We take all allegations of discrimination or harassment seriously. It is each employee's responsibility to report any concern or conduct that is or may be unlawful, abusive, or otherwise violates firm policies.



CONFIDENTIAL

# Closing Thoughts



Our core values are at the heart of what we do. Managers set the "tone from-the top" and remind employees that it is paramount for each of us to be culture carriers. You must always maintain your personal integrity and never lower your standards. Always provide first-class service in a first-class way.

The people, products and services, and dedication to integrity have made JPMorgan Chase one of the largest and most successful financial institutions in the world. Just as we are a leader in the financial industry, we want to be known as a leader in ethics.

Our collective commitment to being accountable, straightforward, and honest in all of our business dealings makes JPMorgan Chase a respected company. Encourage others to deal fairly with clients and suppliers, be good stewards of the firm's resources and foster a diverse and inclusive work environment.

Remember, it is your responsibility to report any violations you know about and those you suspect. JPMorgan Chase doesn't tolerate retaliation against anyone who raises an issue or concern in good faith.

If you have questions about the Code of Conduct or any firm policy, ask your manager, Human Resources, or local Compliance Officer for guidance.

Our continued success is based on your ability to do the right thing.

Be a leader and proud culture carrier. We depend on YOU!

   

D.03c-018
4:26-cv-00381-O
*Biering v. JPMS, et al.*

© 2023 JPMorgan Chase & Co.
All rights reserved.
July 2023

D.03c-018

AAA-000776

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| **JOSHUA DAVID SAPPI BIERING,** | § | |
| *Petitioner, Pro Se,* | § | Case No. 4:26-cv-00381-O-BP |
| **v.** | § | |
| **J.P. MORGAN SECURITIES, LLC,** | § | FINRA Case No. 24-01208 |
| **JPMORGAN CHASE & CO., and** | § | EEOC Charge No. 450-2024-04743 |
| **JPMORGAN CHASE BANK, N.A.,** | § | AAA Case No. 01-26-0000-7215 |
| *Respondents.* | § | |

# EXHIBIT D.03d

## D.03d-001 – D.03d-005

**Description:**   JPMorgan Chase Notice Period Policy governing resignation and garden-leave procedures, produced as part of JPMS's EEOC position statement.

**Relevance:**   Directly relevant to JPMS's treatment of Petitioner's resignation and the garden-period restrictions imposed before termination.

**Source:**   EEOC Charge No. 450-2024-04743 – Attachment to JPMS Position Statement

**Petition Ref:**   Dkt. 11 ¶¶ 74–79; App. A p. 9 ("Resignation and Garden Leave")

**Disclosures:**   None — reproduced as produced, no added markings

**Filing Status:**   Public – not sealed




**D.03d-001**
4:26-cv-00381-O
*Biering v. JPMS, et al.*

Policy

# Notice Period Policy - U.S.

Current Effective Date: June 20, 2023

## TABLE OF CONTENTS

1. Summary or Rationale ................................................................. 2
2. Scope ........................................................................................ 2
3. Changes from Previous Version ................................................ 2
4. Policy Statements ..................................................................... 2
5. Notice Period ............................................................................ 2
   5.1. Employee's Responsibilities During the Notice Period ........ 3
   5.2. Consequences of Breach/Remedies .................................. 3
   5.3. Employment-At-Will .......................................................... 4
6. Defined Terms .......................................................................... 4
7. Legal and Other ....................................................................... 4
8. Firm References ....................................................................... 4
9. Document Information ............................................................... 4

HUMAN RESOURCES

1

ternal Use Only

D.03d-001

AAA-000777

05_Series_D_JPMS_Answers_and_HR_Policies.pdf  |  C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\

D.03d-002
4:26-cv-00381-O
*Biering v. JPMS, et al.*

## 1. Summary or Rationale

JPMorgan Chase operates in a highly competitive industry. Our success is based, in large part, on our employees' efforts to build and maintain client relationships both internally and outside the organization. As a result, it's critical that the firm protect its ability to sustain those client relationships and ensure business continuity in times of employee transition.

## 2. Scope

| | Subject To | Role to Play |
|---|---|---|
| **Lines of Business** | • Refer to the Notice Period Policy Overview Chart | • n/a |
| **Function(s)** | • Refer to the Notice Period Policy Overview Chart | • Human Resources |
| **Locations** | • United States | |
| **Legal Entities** | • All | |

## 3. Changes from Previous Version

There are no significant changes as a result of the re-approval of the policy.

## 4. Policy Statements

Notice Period. JPMorgan Chase requires that all identified employees (as outlined in section 5) provide the Firm with advance notice of the resignation of their employment.

## 5. Notice Period

The firm requires that certain employees at or above the level of Vice President or the equivalent, provide their manager advance notice of the resignation of their employment. Some employees below the Vice President level may also have a notice period requirement. Employees should provide this notice in writing. In addition, employees should submit their resignation via  me@jpmc.

Additionally, if you have a separate agreement or terms for your business area that provides for a longer notice period than is stated under this Policy, the longer notice period will apply.

To determine if you are subject to this Notice Period Policy and, if so, the number of days of advance notice (referred to as "Notice Period") you are required to provide, please click on the link below:

Notice Period Policy Overview Chart

The notice period will start the day you provide your resignation. For instance, if you submit your resignation on 6/1 and have a 30-day notice period requirement, then the end of the notice period would be on 6/30.

HUMAN RESOURCES

2                                                                                       ternal Use Only

D.03d-002

05_Series_D_JPMS_Answers_and_HR_Policies.pdf  |  C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\



Generally, the firm will seek to enforce its Notice Period Policy. In certain cases, however, the firm may, in its sole discretion, decide to waive all or any part of your Notice Period and set an earlier termination date. If this occurs, you will be paid in lieu of notice and will receive a lump-sum payment equivalent to your base salary for all or the remaining part of the applicable Notice Period (less applicable deductions).

Line of business (LOB) managers may not waive notice period requirements. In very rare circumstances where an exception to the Notice Period is considered, the exception **must** be approved by the LOB Head (OC Member), the HR LOB Executive (HR OC Member) and, if applicable, the Regional HR Executive (HR OC Member); or in leave of absence scenarios, the HR LOB Executive.

### 5.1.  Employee's Responsibilities During the Notice Period

During the Notice Period, you will remain an employee of the firm and will be prohibited from working for, or performing any services for, another employer or from being self-employed. You will continue to be paid at your current base salary throughout your Notice Period and will remain benefits eligible. Once you provide notice of your resignation, you will no longer be eligible for any discretionary incentive compensation or equity award, even if your Notice Period includes the date on which such an award would otherwise be granted or paid.

As an employee of JPMorgan Chase, you will have a continuing duty of loyalty to the firm throughout your Notice Period and will remain bound by the provisions of the firm's Code of Conduct, including its requirements regarding confidential and proprietary information, non-solicitation of employees and customers, and no-hire obligations, as well as any other applicable employment policies.

It's within the firm's sole discretion to determine whether you will be expected to continue to perform your duties or otherwise provide services during the Notice Period. The firm may remove you from any assigned duties, assign other duties to you, require you to refrain from performing any job duties or from reporting to work, and may prohibit you from directly or indirectly contacting its customers, suppliers or employees until your employment ends. Regardless of the extent to which the firm directs you to perform your duties or report to work during the Notice Period, you will be expected to be available as reasonably necessary and will continue to work cooperatively and professionally with the firm to ensure an effective transition of your responsibilities.

In addition, you remain obligated to cooperate fully with, and provide full and accurate information to JPMorgan Chase and its counsel and other advisors in connection with any matter (including any audit, tax proceeding, litigation, investigation, governmental or regulatory proceeding) with respect to which you may have knowledge or information.

### 5.2. Consequences of Breach/Remedies

Failure to comply with this policy constitutes a breach of a term of your employment with the firm and may impact your eligibility for rehire.  JPMorgan Chase reserves its rights to pursue any legal and equitable remedies to which it may be entitled.

HUMAN RESOURCES

D.03d-003

05_Series_D_JPMS_Answers_and_HR_Policies.pdf  |  C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\

**D.03d-004**
4:26-cv-00381-O
*Biering v. JPMS, et al.*

### 5.3. Employment-At-Will

At all times you remain an employee at will, which is to say that the firm can alter the terms of your employment and end your employment at any time.

This Notice Period Policy shall supersede any prior notice period policies set forth in any previous communications, except that, to the extent you have a separate specific agreement that provides for a longer notice period than is provided under this Policy for your business area, the longer notice period will continue to apply.

By continuing your employment, you agree to provide the required notice and to abide by the terms and conditions of this Policy as described above. This requirement is also included in the terms and conditions of any equity awards you may receive.

## 6.  Defined Terms

| | |
|---|---|
| **Notice Period** | The number of calendar days of advance written notice of resignation of employment covered employees are required to provide to their manager. Certain responsibilities apply during the Notice Period. See Section 5.1 |

## 7.  Legal and Other

| | |
|---|---|
| **Enterprise Library Application (ELA) Link** | • n/a |
| **Statutes, Laws, Rules, Regulations or External Guidance** | • None |

## 8.  Firm References

| | |
|---|---|
| **Other Firm Policies or Standards** | • Notice Period Policy |
| **Policy Supplements, Procedures, and Other Documents** | • Code of Conduct<br><br>Notice Period Policy Overview Chart |
| **Forms and Systems** | • |

## 9.  Document Information

| | | | |
|---|---|---|---|
| **Policy Level** | Level 3 | | |
| **Policy Type** | Country | | |
| **Document Owner-Approver \| Function or Line of Business \|Country** | Lynda Cantatore, U374562, Executive Director | Human Resources | United States |

HUMAN RESOURCES

ternal Use Only

D.03d-004

05_Series_D_JPMS_Answers_and_HR_Policies.pdf  |  C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\

D.03d-005
4:26-cv-00381-O
*Biering v. JPMS, et al.*

| | |
|---|---|
| **Document Primary Contact** | HR Answers |
| **Document Manager** | Tracy Peterson, N619222, Vice President |
| **Annual Approval Date** | June 20, 2023 |
| **Initial Effective Date** | March 1, 2014 |
| **Additional Contacts** | HR Answers |

HUMAN RESOURCES

ternal Use Only

05_Series_D_JPMS_Answers_and_HR_Policies.pdf | C:\Users\JDSB\OneDrive - Green Bier Capital\JB Legal - Working Teams - JB v JPMS - Workspace\+00.00 - USDCNT_5thCirc_AAA\00_NDTX\Docket\00_Docketed\