## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| **JOSHUA DAVID SAPPI BIERING,** | § | |
| *Petitioner, Pro Se,* | § | Case No. 4:26-cv-00381-O-BP |
| **v.** | § | |
| **J.P. MORGAN SECURITIES, LLC,** | § | FINRA Case No. 24-01208 |
| **JPMORGAN CHASE & CO., and** | § | EEOC Charge No. 450-2024-04743 |
| **JPMORGAN CHASE BANK, N.A.,** | § | AAA Case No. 01-26-0000-7215 |
| *Respondents.* | § | |

# EXHIBIT E.03

# Form U4 – Post-Complaint Amendment (Dec. 19, 2023)
# E.03-001 – 016

**Description:** Form U4 Amendment filed by JPMS on December 19, 2023, after Petitioner's internal complaint, with the disputed disclosure entries.

**Relevance:** Establishes the post-complaint Form U4 record relied upon by JPMS and later admitted by JPMS to contain entries 'filed in error.' Forms part of the petition's argument on the U4/U5 disclosure record.

**Source:** JPMS production JPMS000061-000076; filed via FINRA CRD on Dec. 19, 2023.

**Petition Ref:** App. A E.3 (Dkt. 11 p. 51) – Form U4 post-complaint (Dec. 19, 2023).

**Disclosures:** Annotations: None — reproduced as produced, no added markings

**Filing Status:** Public — not sealed

E.03-001

4:26-cv-00381-O

*Biering v. JPMS, et al.*

# FORM U4
# UNIFORM APPLICATION FOR SECURITIES INDUSTRY REGISTR
## TRANSFER

**J.P. MORGAN SECURITIES LLC(79)**                          **Rev. Form U4 (05/2009)**

**Individual Name: Biering, Joshua D. (6883842)**           **U4 Amendment - Filing ID: 63218684**

**Filing Date: 12/19/2023**

---

### 1. General Information

| First Name: | Middle Name: | Last Name: | Suffix: |
|---|---|---|---|
| Joshua | D. | Biering | |

| *Firm* CRD #: | *Firm* Name: | Employment Date (MM/DD/YYYY): |
|---|---|---|
| 79 | J.P. MORGAN SECURITIES LLC | 11/16/2017 |

| *Firm* Billing Code: | *Individual* CRD #: | Individual SSN: |
|---|---|---|
| JPM-HNW | 6883842 | xxx-xx-xxxx |

**Do you have an independent contractor relationship with the above named *firm*?:**

○ Yes  ◉ No

**Office of Employment Address:**

| CRD Branch # | NYSE Branch Code # | Firm Billing Code | Address | Private Residence | Type of Office | Start Date | End Date |
|---|---|---|---|---|---|---|---|
| 382178 | HNW-382178 | JPM | 500 EAST BORDER STREET 2ND FLOOR ARLINGTON, TX 76010 United States | No | Located At | 11/16/2017 | 10/31/2019 |
| 382170 | USPB-382170 | JPM | 420 Throckmorton St Floor 03 Fort Worth, TX 76102 United States | No | Located At | 11/01/2019 | |

---

### 2. Fingerprint Information

Electronic Filing Representation

◉ By selecting this option, I represent that I am submitting, have submitted, or promptly will submit to the appropriate *SRO* a fingerprint card as required under applicable *SRO* rules; or

Fingerprint card barcode

○ By selecting this option, I represent that I have been employed continuously by the *filing firm* since the last submission of a fingerprint card to CRD and am not required to resubmit a fingerprint card at this time; or,

○ By selecting this option, I represent that I have been employed continuously by the *filing firm* and my fingerprints have been processed by an *SRO* other than FINRA. I am submitting, have submitted, or promptly will submit the processed results for posting to CRD.

Exceptions to the Fingerprint Requirement

○ By selecting one or more of the following two options, I affirm that I am exempt from the federal fingerprint requirement because I/*filing firm* currently satisfy(ies) the requirements of at least one of the permissive exemptions indicated below pursuant to Rule 17f-2 under the Securities Exchange Act of 1934, including any notice or application requirements specified therein:

☐ Rule 17f-2(a)(1)(i)

☐ Rule 17f-2(a)(1

Investment Adviser Repr

E.03-001                                                                JPMS000061

E.03-002

4:26-cv-00381-O

*Biering v. JPMS, et al.*

○ I affirm that I am applying only as an investment adviser representative and that I am not also applying applied with this *firm* to become a broker-dealer representative. If this radio button/box is selected, conti

    ○ I am applying for registration only in *jurisdiction*s that do not have fingerprint card filing requirement

    ○ I am applying for registration in *jurisdictions* that have fingerprint card filing requirements and I am submitting, have submitted, or promptly will submit the appropriate fingerprint card directly to the *jurisdictions* for processing pursuant to applicable *jurisdiction* rules.

---

### 3. Registration With Unaffiliated Firms

Some *jurisdiction*s prohibit "dual registration", which occurs when an individual chooses to maintain a concurrent registration as a representative/agent with two or more *firm*s (either BD or IA *firm*s) that are not affiliated. *Jurisdiction*s that prohibit dual registration would not, for example, permit a broker-dealer agent working with brokerage *firm* A to maintain a registration with brokerage *firm* B if *firm*s A and B are not owned or controlled by a common parent. Before seeking a dual registration status, you should consult the applicable rules or statutes of the *jurisdiction*s with which you seek registration for prohibitions on dual registrations or any liability provisions.

Please indicate whether the individual will maintain a "dual registration" status by answering the questions in this section. (Note: An individual should answer 'yes' only if the individual is currently registered and is seeking registration with a *firm* (either BD or IA) that is not affiliated with the individual's current employing *firm*. If this is an initial application, an individual must answer 'no' to these questions; a "dual registration" may be initiated only after an initial registration has been established).

Answer "yes" or "no" to the following questions:

|   |   | Yes | No |
|---|---|---|---|
| **A.** | Will *applicant* maintain registration with a broker-dealer that is not *affiliated* with the *filing firm*? If you answer "yes", list the *firm*(s) in Section 12 (Employment History). | ○ | ◉ |
| **B.** | Will *applicant* maintain registration with an investment adviser that is not *affiliated* with the *filing firm*? If you answer "yes", list the *firm*(s) in Section 12 (Employment History). | ○ | ◉ |

---

### 4. SRO Registrations

**Select appropriate *SRO* Registration requests.**
**Qualifying examinations will be automatically scheduled if needed. If you are only scheduling or rescheduling an exam, skip this section and complete Section 7 (EXAMINATION REQUESTS).**

#### REPRESENTATIVE LEVEL REGISTRATION CATEGORIES

| REGISTRATION CATEGORIES | FINRA | NYSE | NYSE-AMER | NYSE-ARCA | NYSE-CHI | NYSE-NAT | CBOE | CBOE C2 | CBOE BYX | CBOE BZX | CBOE EDGA | CBOE EDGX | NQX | BX | ISE | ISE GEMX | ISE MRX | PHLX | MIAX Emerald | MIAX Options | MIAX PEARL | BOX | IEX | LTSE | MEMX |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| IR - Investment Company and Variable Contracts Products Rep. (S6TO) | ☐ | | | | | | | | | | | | | | | | | | | | | | | | |
| GS - Full Registration/General Securities Representative (S7TO) | ☑ | ☑ | ☑ | ☑ | ☑ | ☑ | ☑ | ☑ | ☑ | ☑ | ☑ | ☑ | ☑ | ☑ | ☑ | ☑ | ☑ | ☑ | ☑ | ☑ | ☑ | ☑ | ☑ | ☑ | ☑ |
| DR - Direct Participation Program Representative (S22TO) | ☐ | | | | | | | | | | | | | | | | | | | | | | | | |
| MR - Municipal Securities Representative (S52TO) | ☐ | ☐ | ☐ | | | ☐ | | | | | | | | | | | | | | | | | | | |

E.03-003

4:26-cv-00381-O

*Biering v. JPMS, et al.*

| REGISTRATION CATEGORIES | | |
| --- | --- | --- |
| TD - Securities Trader (S57TO) | ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ | |
| IB - Investment Banking Representative (S79TO) | ☐ | |
| PR - Limited Representative - Private Securities Offerings (S82TO) | ☐ | |
| RS - Research Analyst (S86 and S87) | ☐ ☐ ☐ | |
| OS - Operations Professional (S99TO) | ☐ | |
| Other _____ (Paper Form Only) | | |

**RETIRED REGISTRATION CATEGORIES**

| Category | Checkboxes |
| --- | --- |
| AR - Assistant Representative/Order Processing | ☐ (FINRA) ... ☐ (NYSE-CHI) ☐ (NYSE-NAT) ... ☐ (NQX) |
| CD - Canada-Limited General Securities Registered Representative | ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ... ☐ ☐ ☐ ... ☐ ☐ ☐ ☐ ☐ ☐ ☐ |
| CN - Canada-Limited General Securities Registered Representative | ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ... ☐ ☐ ☐ ☐ ☐ ☐ ☐ |
| CS - Corporate Securities Representative | ☐ ☐ ☐ ... ☐ ☐ ... ☐ (NQX) |
| FA - Foreign Associate | ☐ |
| IE - United Kingdom - Limited General Securities Registered Representative | ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ |
| OR - Options Representative | ☐ (FINRA) ... ☐ (NQX) ☐ (BX) ... ☐ (BOX) |
| RG - Government Securities Representative | ☐ (FINRA) |

---

## PRINCIPAL LEVEL REGISTRATION CATEGORIES

| REGISTRATION CATEGORIES | FINRA | NYSE | NYSE-AMER | NYSE-ARCA | NYSE-CHI | NYSE-NAT | CBOE | CBOE C2 | CBOE BYX | CBOE BZX | CBOE EDGA | CBOE EDGX | NQX | BX | ISE | ISE GEMX | ISE MRX | PHLX | MIAX Emerald | MIAX Options | MIAX PEARL | BOX | IEX | LTSE | MEMX |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |

JPMS000063

E.03-003

E.03-004

4:26-cv-00381-O

*Biering v. JPMS, et al.*

| Registration Category | | | | | | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| OP - Registered Options Principal (S4) | ☐ | | ☐ | ☐ | | | ☐ | ☐ | | ☐ | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | | | | | ☐ |
| SU - General Securities Sales Supervisor (S9 and S10) | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | | | | | | | ☐ |
| CO - Compliance Official (S14) | | ☐ | ☐ | ☐ | ☐ | ☐ | | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | | | ☐ |
| CR - Compliance Officer (S14) | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | | | | | | | | | | | | | | | ☐ | | | | |
| SA - Supervisory Analyst (S16) | ☐ | ☐ | ☐ | | | | | | | | | | | | | | | | | | | | | | | | |
| GP - General Securities Principal (S24) | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| RP - Research Principal (S24) | ☐ | | | | | | | | | | | | | | | | | | | | | | | | | | |
| BP - Investment Banking Principal (S24) | ☐ | | | | | | | | | | | | | | | | | | | | | | | | | | |
| TP - Securities Trader Principal (S24) | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| PO - Private Securities Offerings Principal (S24) | ☐ | | | | | | | | | | | | | | | | | | | | | | | | | | |
| IP - Investment Company and Variable Contracts Products Principal (S26) | ☐ | | | | | | | | | | | | | | | | | | | | | | | | | | |
| FN - Financial and Operations Principal (S27) | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| FI - Introducing Broker-Dealer/Financial and Operations Principal (S28) | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | | | | | | | | | | | | | | | | | | ☐ | ☐ | | |
| DP - Direct Participation Program Principal (S39) | ☐ | | | | | | | | | | | | | | | | | | | | | | | | | | |
| FP - Municipal Fund (S51) | ☐ | | | | | | | | | | | | | | | | | | | | | | | | | | |
| MP - Municipal Securities Principal (S53) | ☐ | ☐ | ☐ | | ☐ | | | | | | | | | | | | | | | | | | | | | | |
| PG - Government Securities Principal | ☐ | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Other _____ (Paper Form Only) | | | | | | | | | | | | | | | | | | | | | | | | | | | |

**RETIRED REGISTRATION**

E.03-004

JPMS000064

E.03-005

4:26-cv-00381-O

*Biering v. JPMS, et al.*

**CATEGORIES**

| | | |
|---|---|---|
| SM - Securities Manager | ☐ | ☐ |

## EXCHANGE-SPECIFIC REGISTRATION CATEGORIES

| REGISTRATION CATEGORIES | FINRA | NYSE | NYSE-AMER | NYSE-ARCA | NYSE-CHI | NYSE-NAT | CBOE | CBOE C2 | CBOE BYX | CBOE BZX | CBOE EDGA | CBOE EDGX | NQX | BX | ISE | ISE GEMX | ISE MRX | PHLX | MIAX Emerald | MIAX Options | MIAX PEARL | BOX | IEX | LTSE | MEMX |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AP - Approved Person | | ☐ | ☐ | ☐ | | | | | | | | | | | | | | | | | | ☐ | | | |
| CF - Compliance Official Specialist | | ☐ | ☐ | | | | | | | | | | | | | | | | | | | | | | |
| FE - Floor Employee | | ☐ | ☐ | ☐ | | | | | | | | | | | | | | ☐ | | | | ☐ | | | |
| LE - Securities Lending Representative | | ☐ | ☐ | | | | | | | | | | | | | | | | | | | | | | |
| LS - Securities Lending Supervisor | | ☐ | ☐ | | | | | | | | | | | | | | | | | | | | | | |
| ME - Member Exchange | | ☐ | | | ☐ | | | | | | | | | | | | | ☐ | | | | ☐ | | | |
| MT - Market Maker Authorized Trader-Equities | | ☐ | ☐ | ☐ | | ☐ | | | ☐ | ☐ | ☐ | ☐ | | | | | | | | | | | | | ☐ |
| OM - Options Member (S57TO) | | | ☐ | ☐ | | | | | | | | | | | | | | | | | | | | | |
| CT - Securities Trader Compliance Officer (S14) | | | | | ☐ | | ☐ | ☐ | ☐ | ☐ | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | | | ☐ |
| FL - Floor Clerk - Equities (S19) | | ☐ | | | | | | | | | | | | | | | | | | | | | | | |

---

### 5. Jurisdiction Registration

**Check appropriate *jurisdiction(s)* for broker-dealer agent (AG) and/or investment adviser representative (RA) registration requests.**

| JURISDICTION | AG | RA | JURISDICTION | AG | RA | JURISDICTION | AG | RA | JURISDICTION | AG | RA |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Alabama | ☑ | ☐ | Illinois | ☑ | ☐ | Montana | ☑ | ☐ | Puerto Rico | ☑ | ☐ |
| Alaska | ☑ | ☐ | Indiana | ☑ | ☐ | Nebraska | ☑ | ☐ | Rhode Island | ☑ | ☐ |
| Arizona | ☑ | ☐ | Iowa | ☑ | ☐ | Nevada | ☑ | ☐ | South Carolina | ☑ | ☐ |
| Arkansas | ☑ | ☐ | Kansas | ☑ | ☐ | New Hampshire | ☑ | ☐ | South Dakota | ☑ | ☐ |
| California | ☑ | ☐ | Kentucky | ☑ | ☐ | New Jersey | ☑ | ☐ | Tennessee | ☑ | ☐ |
| Colorado | ☑ | ☐ | Louisiana | ☑ | ☐ | New Mexico | ☑ | ☐ | Texas | ☑ | ☑ |
| Connecticut | ☑ | ☐ | Maine | ☑ | ☐ | New York | ☑ | ☐ | Utah | ☑ | ☐ |
| Delaware | ☑ | ☐ | Maryland | ☑ | ☐ | North Carolina | ☑ | ☐ | Vermont | ☑ | ☐ |
| District of Columbia | ☑ | ☐ | Massachusetts | ☑ | ☐ | North Dakota | ☑ | ☐ | Virgin Islands | ☑ | ☐ |
| Florida | ☑ | ☐ | | ☑ | ☐ | | ☑ | ☐ | inia | ☑ | ☐ |

E.03-005    JPMS000065

**CONFIDENTIAL**

Case 4:26-cv-00381-O-BP    Document 33-1    Filed 05/06/26    Page 7 of 191    PageID 1570

8/19/24, 7:56 AM
Web CRD - Form U4, All Sections [User Name: mhunt79, OrgID: 79]

E.03-006
4:26-cv-00381-O
*Biering v. JPMS, et al.*

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Georgia | ☑ ☐ | Minnesota | ☑ ☐ | Oklahoma | ☑ ☐ | Washingt | ☑ ☐ |
| Hawaii | ☑ ☐ | Mississippi | ☑ ☐ | Oregon | ☑ ☐ | West Virg | ☑ ☐ |
| Idaho | ☑ ☐ | Missouri | ☑ ☐ | Pennsylvania | ☑ ☐ | Wisconsi | ☑ ☐ |
| | | | | | | Wyoming | ☑ ☐ |

**AGENT OF THE ISSUER REGISTRATION (AI)** ☐ Indicate 2 letter *jurisdiction* code(s):_____

---

### 6. Registration Requests with Affiliated Firms

Will *applicant* maintain registration with *firm*(s) under common ownership or control with the *filing firm*?
If "yes", fill in the details to indicate a request for registration with additional *firm*(s).          ○ Yes   ● No

---

### 7. Examination Requests

**Scheduling or Rescheduling Examinations** Complete this section only if you are scheduling or rescheduling an examination or continuing education session. Do not select the Series 63 (S63) or Series 65 (S65) examinations in this section if you have completed Section 5 (JURISDICTION REGISTRATION) and have selected registration in a *jurisdiction*. If you have completed Section 5 (JURISDICTION REGISTRATION), and requested an AG registration in a *jurisdiction* that requires that you pass the S63 examination, an S63 examination will be automatically scheduled for you upon submission of this Form U4. If you have completed Section 5 (JURISDICTION REGISTRATION), and requested an RA registration in a *jurisdiction* that requires that you pass the S65 examination, an S65 examination will be automatically scheduled for you upon submission of this Form U4.

| | | | | |
|---|---|---|---|---|
| ☐ SIE | ☐ S14 | ☐ S28 | ☐ S51 | ☐ S66 |
| ☐ S3 | ☐ S16 | ☐ S30 | ☐ S52TO | ☐ S79TO |
| ☐ S4 | ☐ S22TO | ☐ S31 | ☐ S53 | ☐ S82TO |
| ☐ S6TO | ☐ S23 | ☐ S32 | ☐ S54 | ☐ S86 |
| ☐ S7TO | ☐ S24 | ☐ S34 | ☐ S57TO | ☐ S87 |
| ☐ S9 | ☐ S26 | ☐ S39 | ☐ S63 | ☐ S99TO |
| ☐ S10 | ☐ S27 | ☐ S50 | ☐ S65 | |

Other _____ (Paper Form Only)
OPTIONAL: Foreign Exam City _____          Date (MM/DD/YYYY) _____

---

### 8. Professional Designations

**Select each designation you currently maintain.**

☐ Certified Financial Planner

☐ Chartered Financial Consultant (ChFC)

☐ Personal Financial Specialist (PFS)

☐ Chartered Financial Analyst (CFA)

☐ Chartered Investment Counselor (CIC)

---

### 9. Identifying Information/Name Change

| First Name: | Middle Name: | Last Name: | Suffix: |
|---|---|---|---|
| Joshua | | | |

**State of Birth**

E.03-006

JPMS000066

E.03-007

4:26-cv-00381-O

*Biering v. JPMS, et al.*

South Carolina                    Columbia                    United States

| Date of Birth(MM/DD/YYYY) | Sex | Hair Color | Eye Color |
|---|---|---|---|
| ▮▮▮▮▮▮ | ⦿ Male ○ Female | Brown | Brown |

| Height (ft) | Height (in) | Weight (lbs) |
|---|---|---|
| 5 | 7 | 160 |

## 10. Other Names

| Other Names |
|---|
| Biering, Joshua David Sappi |
| Biering, Josh |
| BIERING, JOHS |
| BIERING, JOSHUA DAVID |

## 11. Residential History

| From | To | Street Address | |
|---|---|---|---|
| 02/2022 | PRESENT | ██████████████████ | |
| 10/2017 | 02/2022 | ██████████████████ | |
| 05/2017 | 10/2017 | ██████████████████ | |
| 05/2016 | 05/2017 | ██████████████████ | |
| 07/2013 | 05/2016 | ██████████████████ | |
| 11/2011 | 07/2013 | ██████████████████ | |

## 12. Employment History

| From | To | Name of Firm or Company | Address | Investment Related | Position Held |
|---|---|---|---|---|---|
| 11/2017 | PRESENT | JPMORGAN CHASE BANK NA | FORT WORTH, TX United States | Yes | BANKER |
| 11/2017 | PRESENT | JPMORGAN SECURITIES LLC | FORT WORTH, TX United States | Yes | BANKER |
| 05/2016 | 11/2017 | JPMorgan Chase | Irving, TX United States | No | Associate |
| 05/2011 | 05/2016 | US Army | Fort Stewart, GA United States | No | Engineer |
| 06/2007 | 05/2011 | USMA | West Point, NY United States | No | Student/Cadet |

## 13. Other Business

Are you <u>currently</u> engaged in any other business either as a proprietor, partner, officer, director, employee, trustee, agent or otherwise? (Please exclude non *investment-related* activity that is exclusively charitable, civic, religious or fraternal and is recognized as tax exempt.) IF YES, please provide the following details: the name of the other business, whether the business is *investment-related*, the address of the other business, the nature of the other business, your position, title, or relationship with the other business, the start date of your relationship, the approximate number of hours/month you devote to the other business, the number of hours you devote to the other business during securities trading hours, and briefly describe your duties relating to the other business.

○ Yes  ⦿ No

If 'Yes', please enter details below.

## 14. Disclosure Questions

IF THE ANSWER TO A                                    L EVENTS OR
PROCEEDINGS ON AP

E.03-007

JPMS000067

E.03-008
4:26-cv-00381-O
*Biering v. JPMS, et al.*

REFER TO THE EXPLANATION OF TERMS SECTION OF FORM U4 INSTRUCTIONS FOR EXPLANATIO
TERMS.

### Criminal Disclosure

**14A. (1) Have you ever:**

    (a) been convicted of or pled guilty or nolo contendere ("no contest") in a domestic, foreign, or military court to any *felony*?  ○ ◉

    (b) been *charged* with any *felony*?  ○ ◉

**(2) Based upon activities that occurred while you exercised *control* over it, has an organization ever:**

    (a) been convicted of or pled guilty or nolo contendere ("no contest") in a domestic or foreign court to any *felony*?  ○ ◉

    (b) been *charged* with any *felony*?  ○ ◉

**14B. (1) Have you ever:**    Yes No

    (a) been convicted of or pled guilty or nolo contendere ("no contest") in a domestic, foreign or military court to a *misdemeanor involving*: investments or an *investment-related* business or any fraud, false statements or omissions, wrongful taking of property, bribery, perjury, forgery, counterfeiting, extortion, or a conspiracy to commit any of these offenses?  ○ ◉

    (b) been *charged* with a *misdemeanor* specified in 14B(1)(a)?  ○ ◉

**(2) Based upon activities that occurred while you exercised *control* over it, has an organization ever:**

    (a) been convicted of or pled guilty or nolo contendere ("no contest") in a domestic or foreign court to a *misdemeanor* specified in 14B(1)(a)?  ○ ◉

    (b) been *charged* with a *misdemeanor* specified in 14B(1)(a)?  ○ ◉

### Regulatory Action Disclosure

**14C. Has the U.S. Securities and Exchange Commission or the Commodity Futures Trading Commission ever:**    Yes No

    (1) *found* you to have made a false statement or omission?  ○ ◉

    (2) *found* you to have been *involved* in a violation of its regulations or statutes?  ○ ◉

    (3) *found* you to have been a cause of an *investment-related* business having its authorization to do business denied, suspended, revoked, or restricted?  ○ ◉

    (4) entered an *order* against you in connection with *investment-related* activity?  ○ ◉

    (5) imposed a civil money penalty on you, or *ordered* you to cease and desist from any activity?  ○ ◉

    (6) *found* you to have willfully violated any provision of the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Advisers Act of 1940, the Investment Company Act of 1940, the Commodity Exchange Act, or any rule or regulation under any of such Acts, or any of the rules of the Municipal Securities Rulemaking Board, or *found* you to have been unable to comply with any provision of such Act, rule or regulation?  ○ ◉

    (7) *found* you to have willfully aided, abetted, counseled, commanded, induced, or procured the violation by any person of any provision of the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Advisers Act of 1940, the Investment Company Act of 1940, the Commodity Exchange Act, or any rule or regulation under any of such Acts, or any of the rules of the Municipal Securities Rulemaking Board?  ○ ◉

    (8) *found* you to have failed reasonably to supervise another person subject to your supervision, with a view to preventing the violation of any provision of the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Advisers Act of 1940, the Investment Company Act of 1940, the Commodity Exchange Act, or any rule or regulation under any of such Acts, or any of the rules of the Municipal Securities Rulemaking Board?  ○ ◉

**14D. (1) Has any other Federal regulatory agency or any state regulatory agency or *foreign financial regulatory authority* ever:**    Yes No

    (a) *found* you to have made a false statement or omission or been dishonest, unfair or unethical?  ○ ◉

    (b) *found* you to have been *involved* in a violation of *investment-related* regulation(s) or statute(s)?  ○ ◉

    (c) *found* you to have been a cause of an *investment-related* business having its authorization to do business  ○ ◉

E.03-008

JPMS000068

E.03-009

4:26-cv-00381-O

*Biering v. JPMS, et al.*

(d) entered an *order* against you in connection with an *investment-related* activity?   ○ ◉

(e) denied, suspended, or revoked your registration or license or otherwise, by *order*, prevented y associating with an *investment-related* business or restricted your activities?   ○ ◉

**(2) Have you been subject to any *final order* of a state securities commission (or any agency officer performing like functions), state authority that supervises or examines banks, savings associations, or credit unions, state insurance commission (or any agency or office performing like functions), an appropriate *federal banking agency*, or the National Credit Union Administration, that:**

(a) bars you from association with an entity regulated by such commission, authority, agency, or officer, or from engaging in the business of securities, insurance, banking, savings association activities, or credit union activities; or   ○ ◉

(b) constitutes a *final order* based on violations of any laws or regulations that prohibit fraudulent, manipulative, or deceptive conduct?   ○ ◉

**14E.  Has any *self-regulatory organization* ever:**   **Yes No**

(1) *found* you to have made a false statement or omission?   ○ ◉

(2) *found* you to have been *involved* in a violation of its rules (other than a violation designated as a "*minor rule violation*" under a plan approved by the U.S. Securities and Exchange Commission)?   ○ ◉

(3) *found* you to have been the cause of an *investment-related* business having its authorization to do business denied, suspended, revoked or restricted?   ○ ◉

(4) disciplined you by expelling or suspending you from membership, barring or suspending your association with its members, or restricting your activities?   ○ ◉

(5) *found* you to have willfully violated any provision of the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Advisers Act of 1940, the Investment Company Act of 1940, the Commodity Exchange Act, or any rule or regulation under any of such Acts, or any of the rules of the Municipal Securities Rulemaking Board, or *found* you to have been unable to comply with any provision of such Act, rule or regulation?   ○ ◉

(6) *found* you to have willfully aided, abetted, counseled, commanded, induced, or procured the violation by any person of any provision of the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Advisers Act of 1940, the Investment Company Act of 1940, the Commodity Exchange Act, or any rule or regulation under any of such Acts, or any of the rules of the Municipal Securities Rulemaking Board?   ○ ◉

(7) *found* you to have failed reasonably to supervise another person subject to your supervision, with a view to preventing the violation of any provision of the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Advisers Act of 1940, the Investment Company Act of 1940, the Commodity Exchange Act, or any rule or regulation under any of such Acts, or any of the rules of the Municipal Securities Rulemaking Board?   ○ ◉

**14F.  Have you ever had an authorization to act as an attorney, accountant or federal contractor that was revoked or suspended?**   ○ ◉

**14G.  Have you been notified, in writing, that you are now the subject of any:**   **Yes No**

(1) regulatory complaint or *proceeding* that could result in a "yes" answer to any part of 14C, D or E? (If "yes", complete the *Regulatory Action* Disclosure Reporting Page.)   ○ ◉

(2) *investigation* that could result in a "yes" answer to any part of 14A, B, C, D or E? (If "yes", complete the *Investigation* Disclosure Reporting Page.)   ○ ◉

**Civil Judicial Disclosure**

**14H. (1) Has any domestic or foreign court ever:**   **Yes No**

(a) *enjoined* you in connection with any *investment-related* activity?   ○ ◉

(b) *found* that you were *involved* in a violation of any *investment-related* statute(s) or regulation(s)?   ○ ◉

(c) dismissed, pursuant to a settlement agreement, an *investment-related* civil action brought against you by a state or *foreign financial regulatory authority*?   ○ ◉

**(2) Are you named in any pending *investment-related* civil action that could result in a "yes" answer to any part**   ○ ◉

E.03-009                                                                                  JPMS000069

E.03-010
4:26-cv-00381-O
*Biering v. JPMS, et al.*

### Customer Complaint/Arbitration/Civil Litigation Disclosure

**14I.** **(1)** **Have you ever been named as a respondent/defendant in an *investment-related*, consu** initiated arbitration or civil litigation which alleged that you were *involved* in one or mor *practice violations* and which:

    (a) is still pending, or;

    (b) resulted in an arbitration award or civil judgment against you, regardless of amount, or;

    (c) was settled, prior to 05/18/2009, for an amount of $10,000 or more, or;

    (d) was settled, on or after 05/18/2009, for an amount of $15,000 or more?

**(2)** **Have you ever been the subject of an *investment-related*, consumer-initiated (written or oral) complaint, which alleged that you were *involved* in one or more *sales practice violations*, and which:**

    (a) was settled, prior to 05/18/2009 for an amount of $10,000 or more, or;

    (b) was settled, on or after 05/18/2009, for an amount of $15,000 or more?

**(3)** **Within the past twenty four (24) months, have you been the subject of an *investment-related*, consumer-initiated, written complaint, not otherwise reported under question 14I(2) above, which:**

    (a) alleged that you were *involved* in one or more *sales practice violations* and contained a claim for compensatory damages of $5,000 or more (if no damage amount is alleged, the complaint must be reported unless the *firm* has made a good faith determination that the damages from the alleged conduct would be less than $5,000), or;

    (b) alleged that you were *involved* in forgery, theft, misappropriation or conversion of funds or securities?

**Answer questions (4) and (5) below only for arbitration claims or civil litigation filed on or after 05/18/2009.**

**(4)** **Have you ever been the subject of an *investment-related*, consumer-initiated arbitration claim or civil litigation which alleged that you were *involved* in one or more *sales practice violations*, and which:**

    (a) was settled for an amount of $15,000 or more, or;

    (b) resulted in an arbitration award or civil judgment against any named respondent(s)/defendant(s), regardless of any amount?

**(5)** **Within the past twenty four (24) months, have you been the subject of an *investment-related*, consumer-initiated arbitration claim or civil litigation not otherwise reported under questions 14I(4) above, which:**

    (a) alleged that you were *involved* in one or more *sales practice violations* and contained a claim for compensatory damages of $5,000 or more (if no damage amount is alleged, the arbitration claim or civil litigation, must be reported unless the *firm* has made a good faith determination that the damages from the alleged conduct would be less than $5,000), or;

    (b) alleged that you were *involved* in forgery, theft, misappropriation or conversion of funds or securities?

### Termination Disclosure

**14J.** **Have you ever voluntarily *resigned*, been discharged or permitted to *resign* after allegations were made that accused you of:**    Yes No

    (1) violating *investment-related* statutes, regulations, rules, or industry standards of conduct?

    (2) fraud or the wrongful taking of property?

    (3) failure to supervise in connection with *investment-related* statutes, regulations, rules or industry standards of conduct?

### Financial Disclosure

**14K.** **Within the past 10 years:**    Yes No

    (1) have you made a compromise with creditors, filed a bankruptcy petition or been the subject of an involuntary bankruptcy petition?

    (2) based upon events that occurred while you exercised *control* over it, has an organization made a compromise with creditors, filed a bankruptcy petition or been the subject of an involuntary bankruptcy petition?

JPMS000070

E.03-010

E.03-011

4:26-cv-00381-O

*Biering v. JPMS, et al.*

    (3) based upon events that occurred while you exercised *control* over it, has a broker or dealer be subject of an involuntary bankruptcy petition, or had a trustee appointed, or had a direct paym procedure initiated under the Securities Investor Protection Act?

**14L.  Has a bonding company ever denied, paid out on, or revoked a bond for you?**

**14M. Do you have any unsatisfied judgments or liens against you?**

---

### 15. Signatures

Please Read Carefully

All signatures required on this Form U4 filing must be made in this section.

A "signature" includes a manual signature or an electronically transmitted equivalent. For purposes of an electronic form filing, a signature is effected by typing a name in the designated signature field. By typing a name in this field, the signatory acknowledges and represents that the entry constitutes in every way, use, or aspect, his or her legally binding signature.

15A  INDIVIDUAL/APPLICANT'S ACKNOWLEDGMENT AND CONSENT

    This section must be completed on all initial or Temporary Registration form filings.

15B  FIRM/APPROPRIATE SIGNATORY REPRESENTATIONS

    This section must be completed on all initial or Temporary Registration form filings.

15C  TEMPORARY REGISTRATION ACKNOWLEDGMENT

    This section must be completed on Temporary Registration form filings to be able to receive Temporary Registration.

15D  INDIVIDUAL/APPLICANT'S AMENDMENT ACKNOWLEDGMENT AND CONSENT

    This section must be completed on any amendment filing that amends any information in Section 14 (Disclosure Questions) or any Disclosure Reporting Page (DRP).

15E  FIRM/APPROPRIATE SIGNATORY AMENDMENT REPRESENTATIONS

    This section must be completed on all amendment form filings.

15F  FIRM/APPROPRIATE SIGNATORY CONCURRENCE

    This section must be completed to concur with a U4 filing made by another *firm* (IA/BD) on behalf of an individual that is also registered with that other *firm* (IA/BD).

#### 15C. TEMPORARY REGISTRATION ACKNOWLEDGMENT

If an *applicant* has been registered in a *jurisdiction* or <u>self regulatory organization</u> (SRO) in the 30 days prior to the date an application for registration is filed with the Central Registration Depository or Investment Adviser Registration Depository, he or she may qualify for a Temporary Registration to conduct securities business in that *jurisdiction* or SRO if this acknowledgment is executed and filed with the Form U4 at the *applicant*'s *firm*.

This acknowledgment must be signed only if the *applicant* intends to apply for a Temporary Registration while the application for registration is under review.

I request a Temporary Registration in each *jurisdiction* and/or SRO requested on this Form U4, while my registration with the *jurisdiction*(s) and/or SRO(s) requested is under review;

I am requesting a Temporary Registration with the *firm* filing on my behalf for the *jurisdiction*(s) and/or SRO(s) noted in Section 4 (SRO REGISTRATION) and/or Section 5 (JURISDICTION REGISTRATION) of this Form U4;

I understand that I may request a Temporary Registration only in those *jurisdiction*(s) and/or SRO(s) in which I have been registered with my prior *firm* within the previous 30 days;

I understand that I may not engage in any securities activities requiring registration in a *jurisdiction* and/or SRO until I have received notice from the CRD or IARD that I have been granted a Temporary Registration in that *jurisdiction* and/or SRO;

I agree that until the Temporary Registration has been replaced by a registration, any *jurisdiction* and/or SRO in which I have applied for registration may withdraw the Temporary Registration;

If a *jurisdiction* or SRO withdraws my Temporary Registration, my application will then be held pending in that *jurisdiction* and/or SRO until its review is complete and the registration is granted or denied, or the application is withdrawn;

I understand and agree that, in the event my Temporary Registration is withdrawn by a *jurisdiction* and/or SRO, I must immediately cease any securities activities requiring a registration in that *jurisdiction* and/or SRO until it grants my registration;

I understand that by executing this Acknowledgment I am agreeing not to challenge the withdrawal of a Temporary Registration; however, I do not waive                   by that *jurisdiction* and/or SRO to deny my

E.03-011

JPMS000071

E.03-012

4:26-cv-00381-O

*Biering v. JPMS, et al.*

| Date (MM/DD/YYYY) | Signature of *Applicant* |
|---|---|
| | Signature _____ |

### 15D. AMENDMENT INDIVIDUAL/*APPLICANT*'S ACKNOWLEDGMENT AND CONSENT

| Date (MM/DD/YYYY) | Signature of *Applicant* |
|---|---|
| | Signature _____ |

### 15E. *FIRM/APPROPRIATE SIGNATORY* AMENDMENT REPRESENTATIONS

| Date (MM/DD/YYYY) | Signature of *Appropriate Signatory* |
|---|---|
| 12/19/2023 | Gabrielle Curran |
| | Signature _____ |

### Bankruptcy / SIPC / Compromise with Creditors

No Information Filed

### Bond DRP

No Information Filed

### Civil Judicial DRP

No Information Filed

### Criminal DRP

No Information Filed

### Customer Complaint DRP

**Check the question(s) you are responding to, regardless of whether you are answering the question(s) "yes" or amending the answer(s) to "no":**

| Customer Complaint/Arbitration/Civil Litigation | | | | Rev. DRP (05/2009) |
|---|---|---|---|---|
| ☐ 14I(1)(a) | ☐ 14I(2)(a) | ☑ 14I(3)(a) | ☐ 14I(4)(a) | ☐ 14I(5)(a) |
| ☐ 14I(1)(b) | ☐ 14I(2)(b) | ☐ 14I(3)(b) | ☐ 14I(4)(b) | ☐ 14I(5)(b) |
| ☐ 14I(1)(c) | | | | |
| ☐ 14I(1)(d) | | | | |

Click here to view question text

☐ **By selecting this box, I hereby request that the data on this Form U4 filing be used to satisfy my firm's reporting obligation pursuant to the applicable provision of FINRA Rule 4530(a)(1).**

One matter may result in                                                    ort details relating to a
particular matter (i.e., a                                                  DRP for each matter.

E.03-012

JPMS000072

E.03-013

4:26-cv-00381-O

*Biering v. JPMS, et al.*

DRP Instructions:

- Complete items 1-6 for all matters (i.e., customer complaints, arbitrations/CFTC reparations and civil l customer alleges that you were *involved* in *sales practice violations* and you are <u>not</u> named as a party, as well as arbitrations/CFTC reparations and civil litigation in which you <u>are</u> named as a party).
- If the matter involves a customer complaint, or an arbitration/CFTC reparation or civil litigation in which a customer alleges that you were *involved* in *sales practice violations* and you are <u>not</u> named as a party, complete items 7-11 as appropriate.
- If a customer complaint has evolved into an arbitration/CFTC reparation or civil litigation, amend the existing DRP by completing items 9 and 10.
- If the matter involves an arbitration/CFTC reparation in which you are a named party, complete items 12-16, as appropriate.
- If the matter involves a civil litigation in which you are a named party, complete items 17-23.
- Item 24 is an optional field and applies to all event types (i.e., customer complaint, arbitration/CFTC reparation, civil litigation).

Complete items 1-6 for all matters (i.e., customer complaints, arbitrations/CFTC reparations, civil litigation).

1. Customer Name(s):
   FLOYD THOMAS BRADSHAW

2. A. Customer(s) State of Residence (select "not on list" when the customer's residence is a foreign address):
   ▮
   B. Other state(s) of residence/detail:

3. Employing *Firm* when activities occurred which led to the customer complaint, arbitration, CFTC reparation or civil litigation:
   J.P. MORGAN SECURITIES LLC

4. Allegation(s) and a brief summary of events related to the allegation(s) including dates when activities leading to the allegation(s) occurred:
   Customer alleges unsuitable recommendation regarding mutual fund investment. Activity dates 1.26.22 - 1.26.22.

5. Product Type(s): (select all that apply)

   | | | |
   |---|---|---|
   | ☐ No Product | ☐ Derivative | ☑ Mutual Fund |
   | ☐ Annuity-Charitable | ☐ Direct Investment-DPP & LP Interests | ☐ Oil & Gas |
   | ☐ Annuity-Fixed | ☐ Equipment Leasing | ☐ Options |
   | ☐ Annuity-Variable | ☐ Equity Listed (Common & Preferred Stock) | ☐ Penny Stock |
   | ☐ Banking Products (other than CDs) | ☐ Equity-OTC | ☐ Prime Bank Instrument |
   | ☐ CD | ☐ Futures Commodity | ☐ Promissory Note |
   | ☐ Commodity Option | ☐ Futures-Financial | ☐ Real Estate Security |
   | ☐ Debt-Asset Backed | ☐ Index Option | ☐ Security Futures |
   | ☐ Debt-Corporate | ☐ Insurance | ☐ Unit Investment Trust |
   | ☐ Debt-Government | ☐ Investment Contract | ☐ Viatical Settlement |
   | ☐ Debt-Municipal | ☐ Money Market Fund | ☐ Other: |

6. Alleged Compensatory Damage Amount:
   $ 109,697.16

   ◉ Exact  ○ Explanation (If no damage amount is alleged, the complaint must be reported unless the *firm* has made a good faith determination that the damages from the alleged conduct would be less than $5,000):

If the matter involves a customer complaint, arbitration/CFTC reparation or civil litigation in which a customer alleges that you were *involved* in *sales practice violations* and you are <u>not</u> named as a party, complete items 7-11 as appropriate.

Note: Report in Items 12-16, or 17-23, as appropriate, only arbitrations/CFTC reparations or civil litigation in which you <u>are</u> named as a party.

E.03-013                                                                              JPMS000073

E.03-014

4:26-cv-00381-O

*Biering v. JPMS, et al.*

7.   A. Is this an oral complaint?

○ Yes  ◉ No

B. Is this a written complaint?

◉ Yes  ○ No

C. Is this an arbitration/CFTC reparation or civil litigation?

○ Yes  ◉ No

   If yes, provide:
   i. Arbitration/reparation forum or court name and location:


   ii. Docket/Case#:


   iii. Filing date of arbitration/CFTC reparation or civil litigation (MM/DD/YYYY):

D. Date received by/served on *firm* (MM/DD/YYYY):

04/13/2022  ◉ Exact   ○ Explanation
If not exact, provide explanation:


8.   Is the complaint, arbitration/CFTC reparation or civil litigation pending?

○ Yes  ◉ No

If "No", complete item 9.

9.   If the complaint, arbitration/CFTC reparation or civil litigation is not pending, provide status:

☐ Closed/No Action          ☐ Withdrawn          ☑ Denied          ☐ Settled

☐ Arbitration Award/Monetary Judgment (for claimants/plaintiffs)

☐ Arbitration Award/Monetary Judgment (for respondents/defendants)

☐ Evolved into Arbitration/CFTC reparation (you are a named party)

☐ Evolved into Civil litigation (you are a named party)

If status is arbitration/CFTC reparation in which you are <u>not</u> a named party, provide details in item 7C.
If status is arbitration/CFTC reparation in which you are a named party, complete items 12-16.
If status is civil litigation in which you are a named party, complete items 17-23.

10.  Status Date (MM/DD/YYYY):

05/13/2022  ◉ Exact   ○ Explanation
If not exact, provide explanation:


11.  Settlement/Award/Monetary Judgment:
     A. Settlement/Award/Monetary Judgment amount:
     $
     B. Your Contribution Amount:
     $

If the matter involves arbitration or CFTC reparation in which you are a named respondent, complete items 12-16, as appropriate.

12.  A. Arbitration/CFTC reparation claim filed with (FINRA, AAA, CFTC, etc.):


     B. Docket/Case#:

     C. Date notice/process was served (MM/DD/YYYY):

     ○ Exact   ○ Explanation
     If not exact, provide explanation:

E.03-014

JPMS000074

E.03-015

4:26-cv-00381-O

*Biering v. JPMS, et al.*

13. Is arbitration/ CFTC reparation pending?

   ○ Yes ○ No

If "No", complete item 14.

14. If the arbitration/CFTC reparation is not pending, what was the disposition?

☐ Award to Applicant (Agent/Representative)   ☐ Award to Customer   ☐ Denied   ☐ Dismissed

☐ Judgment (other than monetary)   ☐ No Action   ☐ Settled   ☐ Withdrawn

☐ Other :

15. Disposition Date (MM/DD/YYYY):

   ○ Exact ○ Explanation
If not exact, provide explanation:

16. Monetary Compensation Details (award, settlement, reparation amount):
A. Total Amount:
$
B. Your Contribution Amount:
$

If the matter involves a civil litigation in which you are a defendant, complete items 17-23.

17. Court in which case was filed:

   ○ Federal Court   ○ State Court   ○ Foreign Court   ○ Military Court   ○ Other :

A. Name of Court:

B. Location of Court (City or County <u>and</u> State or Country):

C. Docket/Case#:

18. Date notice/process was served (MM/DD/YYYY):

   ○ Exact ○ Explanation
If not exact, provide explanation:

19. Is the civil litigation pending?

   ○ Yes ○ No

If "No", complete item 20.

20. If the civil litigation is not pending, what was the disposition?

☐ Denied   ☐ Dismissed   ☐ Judgment (other than monetary)

☐ Monetary Judgment to Applicant (Agent/Representative)   ☐ Monetary Judgment to Customer

☐ No Action   ☐ Settled   ☐ Withdrawn

☐ Other :

21. Disposition Date (MM/DD/YYYY):

   ○ Exact ○ Explanation
If not exact, provide explanation:

22. Monetary Compensation Details (judgment, restitution, settlement amount):
A. Total Amount:
$
B. Your Contribution Amount:
$

23. If action is currentl

E.03-015

JPMS000075

E.03-016

4:26-cv-00381-O

*Biering v. JPMS, et al.*

A. Enter date appeal filed (MM/DD/YYYY):

○ Exact  ○ Explanation
If not exact, provide explanation:

B. Court appeal filed in:

○ Federal Court    ○ State Court    ○ Foreign Court    ○ Military Court    ○ Other :
i. Name of Court:

ii. Location of Court (City or County <u>and</u> State or Country):

iii. Docket/Case#:

24. Comment (Optional). You may use this field to provide a brief summary of the circumstances leading to the customer complaint, arbitration/CFTC reparation and/or civil litigation as well as the current status or final disposition(s). Your information must fit within the space provided.
After an internal review and investigation, it was determined that the recommended investments were suitable based on the client's profile, including risk tolerance, time horizon and investment experience.

### Investigation DRP

No Information Filed

### Judgment Lien DRP

No Information Filed

### Regulatory Action DRP

No Information Filed

### Termination DRP

No Information Filed

© 2024 FINRA. All rights reserved. FINRA is a registered trademark of the Financial Industry Regulatory Authority, Inc.
Privacy │ Legal │ Terms & Conditions

E.03-016

JPMS000076

**UNITED STATES DISTRICT COURT**
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **JOSHUA DAVID SAPPI BIERING,** | § | |
| *Petitioner, Pro Se,* | § | Case No. 4:26-cv-00381-O-BP |
| **v.** | § | |
| **J.P. MORGAN SECURITIES, LLC,** | § | FINRA Case No. 24-01208 |
| **JPMORGAN CHASE & CO., and** | § | EEOC Charge No. 450-2024-04743 |
| **JPMORGAN CHASE BANK, N.A.,** | § | AAA Case No. 01-26-0000-7215 |
| *Respondents.* | § | |

# EXHIBIT E.04a

## BrokerCheck – Individual (Biering, CRD 6883842)

## E.04a-001 – 012

**Description:**     FINRA BrokerCheck individual record for Petitioner.

**Relevance:**       Public-facing CRD record reflecting the disputed Form U5 disclosures.

**Source:**          FINRA BrokerCheck (public) – CRD 6883842 (Biering).

**Petition Ref:**    App. A E.4a (Dkt. 11 p. 51).

**Disclosures:**     Annotations: None — reproduced as produced, no added markings

**Filing Status:**   Public — not sealed

E.04a-001
4:26-cv-00381-O
*Biering v. JPMS, et al.*

**BrokerCheck Report**

# Joshua D. Biering

CRD# 6883842

| **Section Title** | **Page(s)** |
|---|---|
| Report Summary | 1 |
| Broker Qualifications | 2 - 6 |
| Registration and Employment History | 8 - 9 |

 When communicating online or investing with any professional, make sure you know who you're dealing with. Imposters might link to sites like BrokerCheck from phishing or similar scam websites, or through social media, trying to steal your personal information or your money.

Please contact FINRA with any concerns.

E.04a-001

E.04a-002
4:26-cv-00381-O
*Biering v. JPMS, et al.*

**About BrokerCheck®**

BrokerCheck offers information on all current, and many former, registered securities brokers, and all current registered securities firms. FINRA strongly encourages investors to use BrokerCheck to check the backgrou securities brokers and brokerage firms before deciding to conduct, or continue to conduct, business with the

- **What is included in a BrokerCheck report?**
- BrokerCheck reports for individual brokers include information such as employment history, professional qualifications, disciplinary actions, criminal convictions, civil judgments and arbitration awards. BrokerCheck reports for brokerage firms include information on a firm's profile, history, and operations, as well as many of the same disclosure events mentioned above.
- Please note that the information contained in a BrokerCheck report may include pending actions or allegations that may be contested, unresolved or unproven. In the end, these actions or allegations may be resolved in favor of the broker or brokerage firm, or concluded through a negotiated settlement with no admission or finding of wrongdoing.
- **Where did this information come from?**
- The information contained in BrokerCheck comes from FINRA's Central Registration Depository, or CRD® and is a combination of:
    - information FINRA and/or the Securities and Exchange Commission (SEC) require brokers and brokerage firms to submit as part of the registration and licensing process, and
    - information that regulators report regarding disciplinary actions or allegations against firms or brokers.
- **How current is this information?**
- Generally, active brokerage firms and brokers are required to update their professional and disciplinary information in CRD within 30 days. Under most circumstances, information reported by brokerage firms, brokers and regulators is available in BrokerCheck the next business day.
- **What if I want to check the background of an investment adviser firm or investment adviser representative?**
- To check the background of an investment adviser firm or representative, you can search for the firm or individual in BrokerCheck. If your search is successful, click on the link provided to view the available licensing and registration information in the SEC's Investment Adviser Public Disclosure (IAPD) website at https://www.adviserinfo.sec.gov. In the alternative, you may search the IAPD website directly or contact your state securities regulator at http://www.finra.org/Investors/ToolsCalculators/BrokerCheck/P455414.
- **Are there other resources I can use to check the background of investment professionals?**
- FINRA recommends that you learn as much as possible about an investment professional before deciding to work with them. Your state securities regulator can help you research brokers and investment adviser representatives doing business in your state.
-

**Thank you for using FINRA BrokerCheck.**



Using this site/information means that you accept the FINRA BrokerCheck Terms and Conditions. A complete list of Terms and Conditions can be found at

brokercheck.finra.org



For additional information about the contents of this report, please refer to the User Guidance or www.finra.org/brokercheck.  It provides a glossary of terms and a list of frequently asked questions, as well as additional resources. For more information about FINRA, visit www.finra.org.

E.04a-002

E.04a-003
4:26-cv-00381-O
*Biering v. JPMS, et al.*

## Joshua D. Biering

CRD# 6883842

**Currently employed by and registered with the following Firm(s):**

**IA RAYMOND JAMES & ASSOCIATES, INC.**
3230 Camp Bowie Blvd
Suites 400 and 775
Fort Worth, TX  76107
CRD# 705
Registered with this firm since: 01/11/2024

**B RAYMOND JAMES & ASSOCIATES, INC.**
3230 Camp Bowie Blvd
Suites 400 and 775
Fort Worth, TX  76107
CRD# 705
Registered with this firm since: 01/11/2024

## Report Summary for this Broker

This report summary provides an overview of the brok   round and co
information can be found in the detailed report.

### Broker Qualifications

**This broker is registered with:**

- 9 Self-Regulatory Organizations
- 53 U.S. states and territories

**This broker has passed:**

- 0 Principal/Supervisory Exams
- 2 General Industry/Product Exams
- 2 State Securities Law Exams

### Registration History

**This broker was previously registered with the following securities firm(s):**

**IA J.P. MORGAN SECURITIES LLC**
CRD# 79
NEW YORK, NY
11/2022 - 12/2023

**B J.P. MORGAN SECURITIES LLC**
CRD# 79
Fort Worth, TX
12/2017 - 12/2023

### Disclosure Events

All individuals registered to sell securities or provide investment advice are required to disclose customer complaints and arbitrations, regulatory actions, employment terminations, bankruptcy filings, and criminal or civil judicial proceedings.

Are there events disclosed about this broker?  **No**

www.finra.org/brokercheck

E.04a-004
4:26-cv-00381-O
Biering v. JPMS, et al.

**Broker Qualifications**

## Registrations

This section provides the self-regulatory organizations (SROs) and U.S. states/territories the broker is currently registered and licensed with, the category of each license, and the date on which it became effective. This section also provides, for every brokerage firm with which the broker is currently employed, the address of each branch where the broker works.

**This individual is currently registered with 9 SROs and is licensed in 53 U.S. states and territories through his or her employer.**

## Employment 1 of 1

Firm Name:           **RAYMOND JAMES & ASSOCIATES, INC.**

Main Office Address:  **880 CARILLON PARKWAY**
                      **ST. PETERSBURG, FL  33716**

Firm CRD#:           **705**

| | SRO | Category | Status | Date |
|---|---|---|---|---|
| B | FINRA | General Securities Representative | Approved | 01/11/2024 |
| B | Investors' Exchange LLC | General Securities Representative | Approved | 09/30/2025 |
| B | MEMX LLC | General Securities Representative | Approved | 09/30/2025 |
| B | NYSE American LLC | General Securities Representative | Approved | 01/11/2024 |
| B | NYSE Arca, Inc. | General Securities Representative | Approved | 09/30/2025 |
| B | NYSE Texas, Inc. | General Securities Representative | Approved | 09/30/2025 |
| B | Nasdaq PHLX LLC | General Securities Representative | Approved | 01/11/2024 |
| B | Nasdaq Stock Market | General Securities Representative | Approved | 01/11/2024 |
| B | New York Stock Exchange | General Securities Representative | Approved | 01/11/2024 |

| | U.S. State/ Territory | Category | Status | Date |
|---|---|---|---|---|
| B | Alabama | Agent | Approved | 01/12/2024 |
| B | Alaska | Agent | Approved | 01/11/2024 |
| B | Arizona | | | 01/11/2024 |
| B | Arkansas | | | 01/11/2024 |

# Broker Qualifications

E.04a-005
4:26-cv-00381-O
*Biering v. JPMS, et al.*

## Employment 1 of 1, continued

| | U.S. State/ Territory | Category | Status | Date |
|---|---|---|---|---|
| B | California | Agent | Approved | 01/11/2024 |
| B | Colorado | Agent | Approved | 02/09/2024 |
| B | Connecticut | Agent | Approved | 01/11/2024 |
| B | Delaware | Agent | Approved | 01/11/2024 |
| B | District of Columbia | Agent | Approved | 01/11/2024 |
| B | Florida | Agent | Approved | 01/11/2024 |
| B | Georgia | Agent | Approved | 01/11/2024 |
| B | Hawaii | Agent | Approved | 02/21/2024 |
| B | Idaho | Agent | Approved | 01/11/2024 |
| B | Illinois | Agent | Approved | 01/11/2024 |
| B | Indiana | Agent | Approved | 01/11/2024 |
| B | Iowa | Agent | Approved | 01/11/2024 |
| B | Kansas | Agent | Approved | 01/11/2024 |
| B | Kentucky | Agent | Approved | 01/11/2024 |
| B | Louisiana | Agent | Approved | 01/11/2024 |
| B | Maine | Agent | Approved | 01/11/2024 |
| B | Maryland | Agent | Approved | 01/11/2024 |
| B | Massachusetts | Agent | Approved | 01/31/2024 |
| B | Michigan | Agent | Approved | 01/11/2024 |
| B | Minnesota | | | 01/12/2024 |
| B | Mississippi | | | 01/11/2024 |

E.04a-006
4:26-cv-00381-O
*Biering v. JPMS, et al.*

# Broker Qualifications

## Employment 1 of 1, continued

| | U.S. State/ Territory | Category | Status | Date |
|---|---|---|---|---|
| B | Missouri | Agent | Approved | 01/31/2024 |
| B | Montana | Agent | Approved | 01/18/2024 |
| B | Nebraska | Agent | Approved | 01/11/2024 |
| B | Nevada | Agent | Approved | 01/11/2024 |
| B | New Hampshire | Agent | Approved | 01/11/2024 |
| B | New Jersey | Agent | Approved | 01/11/2024 |
| B | New Mexico | Agent | Approved | 01/11/2024 |
| B | New York | Agent | Approved | 01/11/2024 |
| B | North Carolina | Agent | Approved | 01/12/2024 |
| B | North Dakota | Agent | Approved | 01/11/2024 |
| B | Ohio | Agent | Approved | 01/11/2024 |
| B | Oklahoma | Agent | Approved | 01/11/2024 |
| B | Oregon | Agent | Approved | 01/11/2024 |
| B | Pennsylvania | Agent | Approved | 01/11/2024 |
| B | Puerto Rico | Agent | Approved | 01/11/2024 |
| B | Rhode Island | Agent | Approved | 01/11/2024 |
| B | South Carolina | Agent | Approved | 01/11/2024 |
| B | South Dakota | Agent | Approved | 01/11/2024 |
| B | Tennessee | Agent | Approved | 01/11/2024 |
| B | Texas | | | 01/11/2024 |
| IA | Texas | | | 01/11/2024 |

www.finra.org/brokercheck

## Broker Qualifications

### Employment 1 of 1, continued

| U.S. State/ Territory | Category | Status | Date |
|---|---|---|---|
| Utah | Agent | Approved | 01/11/2024 |
| Vermont | Agent | Approved | 01/11/2024 |
| Virgin Islands | Agent | Approved | 01/11/2024 |
| Virginia | Agent | Approved | 01/11/2024 |
| Washington | Agent | Approved | 01/11/2024 |
| West Virginia | Agent | Approved | 01/11/2024 |
| Wisconsin | Agent | Approved | 01/11/2024 |
| Wyoming | Agent | Approved | 01/11/2024 |

### Branch Office Locations

**RAYMOND JAMES & ASSOCIATES, INC.**
3230 Camp Bowie Blvd
Suites 400 and 775
Fort Worth, TX  76107

**RAYMOND JAMES & ASSOCIATES, INC.**
Fort Worth, TX

E.04a-008
4:26-cv-00381-O
*Biering v. JPMS, et al.*

# Broker Qualifications

## Industry Exams this Broker has Passed

This section includes all securities industry exams that the broker has passed. Under limited circumstances, a broker may attain a registration after receiving an exam waiver based on exams the broker has passed and/or qualifying work experience. Any exam waivers that the broker has received are not included below. A passed exam or exam waiver does not permit a broker to do business without an active SRO or state registration.

**This individual has passed 0 principal/supervisory exams, 2 general industry/product exams, and 2 state securities law exams.**

### Principal/Supervisory Exams

| Exam | Category | Date |
|---|---|---|
| No information reported. | | |

### General Industry/Product Exams

| Exam | Category | Date |
|---|---|---|
| B Securities Industry Essentials Examination | SIE | 10/01/2018 |
| B General Securities Representative Examination | Series 7 | 12/15/2017 |

### State Securities Law Exams

| Exam | Category | Date |
|---|---|---|
| IA Uniform Investment Adviser Law Examination | Series 65 | 11/22/2022 |
| B Uniform Securities Agent State Law Examination | Series 63 | 12/30/2017 |

Additional information about the above exams or other exams FINRA administers to brokers and other securities professionals can be found at www.finra.org/brokerqualifications/registeredrep/.

E.04a-009

4:26-cv-00381-O

*Biering v. JPMS, et al.*

## Professional Designations

This section details that the representative has reported **0** professional designation(s).

No information reported.

www.finra.org/brokercheck

**CONFIDENTIAL**

Case 4:26-cv-00381-O-BP    Document 33-1    Filed 05/06/26    Page 28 of 191    PageID 1591

E.04a-010
4:26-cv-00381-O
*Biering v. JPMS, et al.*

## Registration and Employment History

## Registration History

The broker previously was registered with the following firms:

| | Registration Dates | Firm Name | CRD# | Branch Location |
|---|---|---|---|---|
| IA | 11/2022 - 12/2023 | J.P. MORGAN SECURITIES LLC | 79 | Fort Worth, TX |
| B | 12/2017 - 12/2023 | J.P. MORGAN SECURITIES LLC | 79 | Fort Worth, TX |

## Employment History

This section provides up to 10 years of an individual broker's employment history as reported by the individual broker on the most recently filed Form U4.

Please note that the broker is required to provide this information only while registered with FINRA or a national securities exchange and the information is not updated via Form U4 after the broker ceases to be registered. Therefore, an employment end date of "Present" may not reflect the broker's current employment status.

| Employment | Employer Name | Position | Investment Related | Employer Location |
|---|---|---|---|---|
| 01/2024 - Present | Raymond James & Associates | Registered Representative | Y | Fort Worth, TX, United States |
| 11/2017 - 12/2023 | JPMORGAN CHASE BANK NA | BANKER | Y | FORT WORTH, TX, United States |
| 11/2017 - 12/2023 | JPMORGAN SECURITIES LLC | BANKER | Y | FORT WORTH, TX, United States |
| 05/2016 - 11/2017 | JPMorgan Chase | Associate | N | Irving, TX, United States |

## Other Business Activities

This section includes information, if any, as provided by the broker regarding other business activities the broker is currently engaged in either as a proprietor, partner, officer, director, employee, trustee, agent or otherwise. This section does not include non-investment related activity that is exclusively charitable, civic, religious or fraternal and is recognized as tax exempt.

(1)Name of Business: Folds of Honor North Texas Address: 3900 Bent Elm Lane, Fort Worth, TX, 76109, United States Activity Type: Non profit Position/Title: Board Member, Finance/Investment Committee Member Investment Related: Yes Start Date: 06/01/2017 Hours per month devoted to this business: 2-10 Hours per month devoted to this business during trading hours: 0-1 Description of duties: Advisory Board Member- attend monthly board meetings to discuss strategy and event planning for fundraising. \n\nInvestment/ Finance Committee- review cash flow and partner with CPA/Bookkeeper to help track down receivables. Also provide observations/thoughts on near term liquidity/ management of short term cash equivalents.
(2)Name of Business: Green Bier Inves                                          ype: Business
Owner Position/Title: Partner, Owner/P                                      evoted to this
                                                                            , single purpose

www.finra.org/brokercheck

CONFIDENTIAL

Case 4:26-cv-00381-O-BP    Document 33-1    Filed 05/06/26    Page 29 of 191    PageID 1592

E.04a-011
4:26-cv-00381-O
*Biering v. JPMS, et al.*

## Registration and Employment History

### Other Business Activities, continued

LLC wholly owned by my Revocable Living Trust. I am the sole manager and signer on the entity/LLC. I'm p                    to serve as m personal investment company/entity in which I invest in future deals/private investments.. .in which I also understand and plan to submit separate requests for approval as I explore or invest in separate deals as a passive investor.

www.finra.org/brokercheck

**CONFIDENTIAL**

Case 4:26-cv-00381-O-BP    Document 33-1    Filed 05/06/26    Page 30 of 191    PageID 1593
**End of Report**

E.04a-012
4:26-cv-00381-O
*Biering v. JPMS, et al.*

This page is intentionally left blank.

**UNITED STATES DISTRICT COURT**
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **JOSHUA DAVID SAPPI BIERING,** | § | |
| *Petitioner, Pro Se,* | § | Case No. 4:26-cv-00381-O-BP |
| **v.** | § | |
| **J.P. MORGAN SECURITIES, LLC,** | § | FINRA Case No. 24-01208 |
| **JPMORGAN CHASE & CO., and** | § | EEOC Charge No. 450-2024-04743 |
| **JPMORGAN CHASE BANK, N.A.,** | § | AAA Case No. 01-26-0000-7215 |
| *Respondents.* | § | |

# EXHIBIT E.04b

## BrokerCheck – Firm (J.P. Morgan Securities, CRD 79)

## E.04b-001 – 013

| | |
|---|---|
| **Description:** | FINRA BrokerCheck firm record for J.P. Morgan Securities LLC (CRD 79) during the relevant disclosure period. |
| **Relevance:** | Public-facing firm CRD record relevant to the U4/U5 disclosure and supervisory-history arguments. |
| **Source:** | FINRA BrokerCheck (public) – CRD 79 (J.P. Morgan Securities LLC). |
| **Petition Ref:** | App. A E.4b (Dkt. 11 p. 51). |
| **Disclosures:** | Annotations: None — reproduced as produced, no added markings |
| **Filing Status:** | Public — not sealed |

CONFIDENTIAL

E.04b-001
4:26-cv-00381-O
*Biering v. JPMS, et al.*

**BrokerCheck Report**

# J.P. MORGAN SECURITIES LLC

CRD# 79

| Section Title | Page(s) |
| --- | --- |
| Report Summary | 1 |
| Firm Profile | 2 - 10 |
| Firm History | 11 |
| Firm Operations | 12 - 58 |
| Disclosure Events | 59 |

 When communicating online or investing with any professional, make sure you know who you're dealing with. Imposters might link to sites like BrokerCheck from phishing or similar scam websites, or through social media, trying to steal your personal information or your money.

Please contact FINRA with any concerns.

E.04b-001

E.04b-002
4:26-cv-00381-O
*Biering v. JPMS, et al.*

**About BrokerCheck®**

BrokerCheck offers information on all current, and many former, registered securities brokers, and all current registered securities firms. FINRA strongly encourages investors to use BrokerCheck to check the backgrou securities brokers and brokerage firms before deciding to conduct, or continue to conduct, business with the

- **What is included in a BrokerCheck report?**
- BrokerCheck reports for individual brokers include information such as employment history, professional qualifications, disciplinary actions, criminal convictions, civil judgments and arbitration awards. BrokerCheck reports for brokerage firms include information on a firm's profile, history, and operations, as well as many of the same disclosure events mentioned above.
- Please note that the information contained in a BrokerCheck report may include pending actions or allegations that may be contested, unresolved or unproven. In the end, these actions or allegations may be resolved in favor of the broker or brokerage firm, or concluded through a negotiated settlement with no admission or finding of wrongdoing.
- **Where did this information come from?**
- The information contained in BrokerCheck comes from FINRA's Central Registration Depository, or CRD® and is a combination of:
  - ○ information FINRA and/or the Securities and Exchange Commission (SEC) require brokers and brokerage firms to submit as part of the registration and licensing process, and
  - ○ information that regulators report regarding disciplinary actions or allegations against firms or brokers.
- **How current is this information?**
- Generally, active brokerage firms and brokers are required to update their professional and disciplinary information in CRD within 30 days. Under most circumstances, information reported by brokerage firms, brokers and regulators is available in BrokerCheck the next business day.
- **What if I want to check the background of an investment adviser firm or investment adviser representative?**
- To check the background of an investment adviser firm or representative, you can search for the firm or individual in BrokerCheck. If your search is successful, click on the link provided to view the available licensing and registration information in the SEC's Investment Adviser Public Disclosure (IAPD) website at https://www.adviserinfo.sec.gov. In the alternative, you may search the IAPD website directly or contact your state securities regulator at http://www.finra.org/Investors/ToolsCalculators/BrokerCheck/P455414.
- **Are there other resources I can use to check the background of investment professionals?**
- FINRA recommends that you learn as much as possible about an investment professional before deciding to work with them. Your state securities regulator can help you research brokers and investment adviser representatives doing business in your state.
-

**Thank you for using FINRA BrokerCheck.**



Using this site/information means that you accept the FINRA BrokerCheck Terms and Conditions. A complete list of Terms and Conditions can be found at

brokercheck.finra.org



For additional information about the contents of this report, please refer to the User Guidance or www.finra.org/brokercheck.  It provides a glossary of terms and a list of frequently asked questions, as well as additional resources. For more information about FINRA, visit www.finra.org.

E.04b-002

CONFIDENTIAL

Report

E.04b-003
4:26-cv-00381-O
*Biering v. JPMS, et al.*

# J.P. MORGAN SECURITIES LLC

CRD# 79

SEC# 8-35008

## Main Office Location

270 PARK AVENUE
NEW YORK, NY 10017
Regulated by FINRA New York Office

## Mailing Address

1111 POLARIS PKWY
FLOOR 3F
COLUMBUS, OH 43240

## Business Telephone Number

212-272-2000

This firm is a brokerage firm and an investment adviser firm. For more information about investment adviser firms, visit the SEC's Investment Adviser Public Disclosure website at:

https://www.adviserinfo.sec.gov

This report summary provides an overview of the brok                    formation f in the detailed report.

## Firm Profile

This firm is classified as a limited liability company.

This firm was formed in Delaware on 08/12/1985.

Its fiscal year ends in December.

## Firm History

Information relating to the brokerage firm's history such as other business names and successions (e.g., mergers, acquisitions) can be found in the detailed report.

## Firm Operations

This firm is registered with:

- the SEC
- 27 Self-Regulatory Organizations
- 53 U.S. states and territories

Is this brokerage firm currently suspended with any regulator?  **No**

This firm conducts 24 types of businesses.

This firm is affiliated with financial or investment institutions.

This firm has referral or financial arrangements with other brokers or dealers.

## Disclosure Events

Brokerage firms are required to disclose certain criminal matters, regulatory actions, civil judicial proceedings and financial matters in which the firm or one of its control affiliates has been involved.

Are there events disclosed about this firm?    **Yes**

**The following types of disclosures have been reported:**

| Type | Count |
|------|-------|
| Regulatory Event | 394 |
| Civil Event | 9 |
| Arbitration | 144 |

The number of disclosures from non-registered control affiliates is 118

E.04b-003

1

E.04b-004

4:26-cv-00381-O

*Biering v. JPMS, et al.*

This firm is classified as a limited liability company.

This firm was formed in Delaware on 08/12/1985.

Its fiscal year ends in December.

## Firm Names and Locations

This section provides the brokerage firm's full legal name, "Doing Business As" name, business and mailing addresses, telephone number, and any alternate name by which the firm conducts business and where such name is used.

**J.P. MORGAN SECURITIES LLC**

**Doing business as J.P. MORGAN SECURITIES LLC**

**CRD#**   79

**SEC#**   8-35008

**Main Office Location**

270 PARK AVENUE
NEW YORK, NY  10017
**Regulated by FINRA New York Office**

**Mailing Address**

1111 POLARIS PKWY
FLOOR 3F
COLUMBUS, OH  43240

**Business Telephone Number**

212-272-2000

www.finra.org/brokercheck

**CONFIDENTIAL**

E.04b-005
4:26-cv-00381-O
*Biering v. JPMS, et al.*

**Firm Operations**    Case 4:26-cv-00381-O-BP    Document 33-1    Filed 05/06/26    Page 36 of 191    PageID 1599

## Registrations

This section provides information about the regulators (Securities and Exchange Commission (SEC), self-reg organizations (SROs), and U.S. states and territories) with which the brokerage firm is currently registered an licensed, the date the license became effective, and certain information about the firm's SEC registration.

**This firm is currently registered with the SEC, 27 SROs and 53 U.S. states and territories.**

| Federal Regulator | Status | Date Effective |
|---|---|---|
| SEC | Approved | 12/13/1985 |

## SEC Registration Questions

This firm is registered with the SEC as:

A broker-dealer:    Yes

A broker-dealer and government securities broker or dealer:    Yes

A government securities broker or dealer only:    No

This firm has ceased activity as a government securities broker or dealer:    No

| Self-Regulatory Organization | Status | Date Effective |
|---|---|---|
| FINRA | Approved | 12/17/1936 |
| 24X National Exchange LLC | Approved | 10/14/2025 |
| BOX Exchange LLC | Approved | 05/07/2012 |
| Cboe BYX Exchange, Inc. | Approved | 09/15/2010 |
| Cboe BZX Exchange, Inc. | Approved | 08/18/2008 |
| Cboe C2 Exchange, Inc. | Approved | 11/18/2010 |
| Cboe EDGA Exchange, Inc. | Approved | 05/14/2010 |
| Cboe EDGX Exchange, Inc. | Approved | 05/14/2010 |
| Cboe Exchange, Inc. | Approved | 06/17/1981 |
| Investors' Exchange LLC | Approved | 07/25/2016 |
| Long-Term Stock Exchange, Inc. | Approved | 03/31/2020 |
| MEMX LLC | Approved | 08/07/2020 |
| MIAX Emerald, LLC | Approved | 03/01/2019 |
| MIAX PEARL, LLC | | |
| MIAX Sapphire | | |

E.04b-006
4:26-cv-00381-O
*Biering v. JPMS, et al.*

| | | |
|---|---|---|
| Miami International Securities Exchange LLC | Approved | 012 |
| NYSE American LLC | Approved | 02/25/1988 |
| NYSE Arca, Inc. | Approved | 09/22/1965 |
| NYSE National, Inc. | Approved | 05/18/2018 |
| NYSE Texas, Inc. | Approved | 12/19/1940 |
| Nasdaq GEMX, LLC | Approved | 07/29/2013 |
| Nasdaq ISE, LLC | Approved | 05/01/2000 |
| Nasdaq MRX, LLC | Approved | 02/10/2016 |
| Nasdaq PHLX LLC | Approved | 01/06/1977 |
| Nasdaq Stock Market | Approved | 07/12/2006 |
| Nasdaq Texas, LLC | Approved | 01/12/2009 |
| New York Stock Exchange | Approved | 11/17/1982 |

E.04b-007
4:26-cv-00381-O
Biering v. JPMS, et al.

## Registrations (continued)

| U.S. States & Territories | Status | Date Effective | U.S. States & Territories | Status | Date |
|---|---|---|---|---|---|
| Alabama | Approved | 10/22/1981 | North Carolina | Approved | 09/12/2008 |
| Alaska | Approved | 12/19/1979 | North Dakota | Approved | 10/21/1981 |
| Arizona | Approved | 03/20/1970 | Ohio | Approved | 07/16/1982 |
| Arkansas | Approved | 07/05/1979 | Oklahoma | Approved | 07/17/1982 |
| California | Approved | 10/29/1985 | Oregon | Approved | 10/24/1981 |
| Colorado | Approved | 02/01/1983 | Pennsylvania | Approved | 10/24/1945 |
| Connecticut | Approved | 10/30/1985 | Puerto Rico | Approved | 09/01/1984 |
| Delaware | Approved | 10/06/1981 | Rhode Island | Approved | 02/01/1983 |
| District of Columbia | Approved | 04/21/1983 | South Carolina | Approved | 10/28/1981 |
| Florida | Approved | 04/27/1983 | South Dakota | Approved | 07/15/1982 |
| Georgia | Approved | 09/21/1981 | Tennessee | Approved | 08/17/1981 |
| Hawaii | Approved | 10/29/1985 | Texas | Approved | 07/22/1983 |
| Idaho | Approved | 07/19/1971 | Utah | Approved | 04/21/1983 |
| Illinois | Approved | 08/31/1981 | Vermont | Approved | 02/13/1984 |
| Indiana | Approved | 10/20/1981 | Virgin Islands | Approved | 04/04/2005 |
| Iowa | Approved | 07/08/1983 | Virginia | Approved | 09/22/1981 |
| Kansas | Approved | 04/25/1975 | Washington | Approved | 04/20/1983 |
| Kentucky | Approved | 07/16/1982 | West Virginia | Approved | 09/30/1981 |
| Louisiana | Approved | 04/20/1983 | Wisconsin | Approved | 07/18/1940 |
| Maine | Approved | 02/08/1984 | Wyoming | Approved | 06/14/1978 |
| Maryland | Approved | 10/03/1981 | | | |
| Massachusetts | Approved | 07/31/1981 | | | |
| Michigan | Approved | 02/02/1983 | | | |
| Minnesota | Approved | 07/15/1982 | | | |
| Mississippi | Approved | 10/14/1981 | | | |
| Missouri | Approved | 07/15/1983 | | | |
| Montana | Approved | 04/20/1983 | | | |
| Nebraska | Approved | 10/08/1981 | | | |
| Nevada | Approved | 07/13/1983 | | | |
| New Hampshire | Approved | 02/01/1983 | | | |
| New Jersey | Approved | | | | |
| New Mexico | Approved | | | | |

www.finra.org/brokercheck

**CONFIDENTIAL**

E.04b-008
4:26-cv-00381-O
*Biering v. JPMS, et al.*

**Firm Operations**     Case 4:26-cv-00381-O-BP     Document 33-1     Filed 05/06/26     Page 39 of 191     PageID 1602

## Types of Business

This section provides the types of business, including non-securities business, the brokerage firm is engaged
expects to be engaged in.
**This firm currently conducts 24 types of businesses.**

**Types of Business**

Exchange member engaged in exchange commission business other than floor activities

Exchange member engaged in floor activities

Broker or dealer making inter-dealer markets in corporation securities over-the-counter

Broker or dealer retailing corporate equity securities over-the-counter

Broker or dealer selling corporate debt securities

Underwriter or selling group participant (corporate securities other than mutual funds)

Mutual fund retailer

U S. government securities dealer

U S. government securities broker

Municipal securities dealer

Municipal securities broker

Broker or dealer selling variable life insurance or annuities

Solicitor of time deposits in a financial institution

Put and call broker or dealer or option writer

Broker or dealer selling securities of only one issuer or associate issuers (other than mutual funds)

Investment advisory services

Broker or dealer selling tax shelters or limited partnerships in primary distributions

Broker or dealer selling tax shelters or limited partnerships in the secondary market

Trading securities for own account

Private placements of securities

Broker or dealer selling interests in mortgages or other receivables

Broker or dealer involved in a networking, kiosk or similar arrangment with a: bank, savings bank or association, or
credit union

Broker or dealer involved in a networkin

Other - BROKER AND DEALER IN BAN

CONFIDENTIAL

E.04b-009
4:26-cv-00381-O
*Biering v. JPMS, et al.*

PARTICIPATORS, CREDIT DERIVATIVES, STRUCTURED CRE                                      AT
JPMS LLC WILL: ACT AS CLEARING BROKER TO CLEAR AND CARRY SECURITIES TRANSACTIONS O
AFFILIATES; ACT AS CLEARING AGENT FOR CUSTOMER ACCOUNTS OF AFFILIATES AND UNRELAT
CORRESPONDENT BROKER-DEALERS; CLEAR AND CARRY PROPRIETARY ACCOUNTS OF UNRELA
BROKER-DEAL

## Other Types of Business

This firm does effect transactions in commodities, commodity futures, or commodity options.
This firm does engage in other non-securities business.

Non-Securities Business Description:   THE REGISTRANT ENGAGES IN FOREIGN EXCHANGE (FX) BUSINESS.

# Firm Operations

## Industry Arrangements

**This firm does have books or records maintained by a third party.**

| | |
|---|---|
| **Name:** | PERSHING LLC |
| **CRD #:** | 7560 |
| **Business Address:** | ONE PERSHING PLAZA<br>JERSEY CITY, NJ 07399 |
| **Effective Date:** | 10/01/2023 |
| **Description:** | IN CONNECTION WITH THE MERGER OF FIRST REPUBLIC SECURITIES COMPANY, LLC (FRSC) INTO J.P. MORGAN SECURITIES LLC (JPMS), JPMS ASSUMED ALL THE RIGHTS AND OBLIGATION OF FRSC UNDER A FULLY DISCLOSED CLEARING AGREEMENT BETWEEN FRSC AND PERSHING LLC (PERSHING) DATED JUNE 30, 2005, AS AMENDED (AGREEMENT). UNDER THE AGREEMENT, PERSHING PROVIDES CERTAIN SERVICES, INCLUDING THE CARRYING OF CASH AND MARGIN ACCOUNTS OF JPMS AND THE CLEARING OF TRANSACTIONS ON A FULLY-DISCLOSED BASIS. |
| **Name:** | BROADRIDGE SECURITIES PROCESSING SOLUTIONS, LLC |
| **Business Address:** | 2 GATEWAY CENTER<br>NEWARK, NJ 07102 |
| **Effective Date:** | 06/25/2012 |
| **Description:** | BOOKS AND RECORDS RETENTION FOR CERTAIN CLIENT STATEMENTS AND CONFIRMATIONS. |
| **Name:** | SMARSH INC./ACTIANCE |
| **Business Address:** | 851 SW 6TH AVE<br>#800<br>PORTLAND, OR 97204 |
| **Effective Date:** | 12/28/2016 |
| **Description:** | DIGITAL ARCHIVE FOR REGULATED ELECTRONIC COMMUNICATIONS |
| **Name:** | J.P. MORGAN CHASE BANK, NA |
| **Business Address:** | 200 SOUTH RIVERSIDE PLAZA<br>11TH<br>CHIC |
| **Effective Date:** | 09/30 |

E.04b-010

18

CONFIDENTIAL

E.04b-011
4:26-cv-00381-O
*Biering v. JPMS, et al.*

# Firm Operations

## Industry Arrangements (continued)

DOCUMENTATION AND AUTHORIZATION INSTRUCTIONS ON ITS IV PROPRIETARY SYSTEM.

| | |
|---|---|
| **Name:** | J.P. MORGAN CHASE BANK, NA |
| **Business Address:** | 270 PARK AVENUE<br>NEW YORK, NY 10017 |
| **Effective Date:** | 09/30/2016 |
| **Description:** | J.P. MORGAN CHASE BANK, NA ("JPMCB") WILL PRODUCE AND DISTRIBUTE MONTHLY STATEMENTS FOR ITS PRIVATE BANK CUSTOMERS. JPMS LLC WILL SEND A MONTHLY ACTIVITY FILE TO JPMCB FOR THE CREATION OF STATEMENTS. |

This firm does not have accounts, funds, or securities maintained by a third party.

This firm does not have customer accounts, funds, or securities maintained by a third party.

**Control Persons/Financing**

This firm does not have individuals who control its management or policies through agreement.

This firm does not have individuals who wholly or partly finance the firm's business.

E.04b-012
4:26-cv-00381-O
*Biering v. JPMS, et al.*

## Organization Affiliates (continued)

firm.

| | |
|---|---|
| **Business Address:** | AV. BRIGADEIRO FARIA LIMA<br>SAO PAULO, BRAZIL  04538-905 |
| **Effective Date:** | 02/26/2025 |
| **Foreign Entity:** | Yes |
| **Country:** | BRAZIL |
| **Securities Activities:** | Yes |
| **Investment Advisory Activities:** | No |
| **Description:** | UNDER COMMON CONTROL BY ULTIMATE PARENT - JPMORGAN CHASE & CO |

**J.P. MORGAN EQUITIES SOUTH AFRICA PROPRIETARY LIMITED is under common control with the firm.**

| | |
|---|---|
| **Business Address:** | 1 FRICKER ROAD<br>JOHANNESBURG, SOUTH AFRICA  2196 |
| **Effective Date:** | 02/26/2025 |
| **Foreign Entity:** | Yes |
| **Country:** | SOUTH AFRICA |
| **Securities Activities:** | Yes |
| **Investment Advisory Activities:** | No |
| **Description:** | UNDER COMMON CONTROL BY ULTIMATE PARENT - JPMORGAN CHASE & CO |

**J.P. MORGAN CASA DE BOLSA, S.A. DE C.V., J.P. MORGAN GRUPO FINANCIERO is under common control with the firm.**

| | |
|---|---|
| **Business Address:** | PASEO DE LAS PALMAS NO 405, 16TH FLOOR<br>MEXICO CITY, MEXICO  11000 |
| **Effective Date:** | 02/26/2025 |
| **Foreign Entity:** | Yes |
| **Country:** | MEX |
| **Securities Activities:** | Yes |

E.04b-013
4:26-cv-00381-O
*Biering v. JPMS, et al.*

## Organization Affiliates (continued)

**BANCO J.P. MORGAN COLOMBIA S.A. is a Foreign Bank and controls the firm.**

| | |
|---|---|
| **Business Address:** | CARRERA 11 NO. 84 A-09, PISO 7<br>BOGOTA, COLOMBIA  CB1-2000 |
| **Effective Date:** | 02/26/2025 |
| **Description:** | UNDER COMMON CONTROL BY ULTIMATE PARENT - JPMORGAN CHASE & CO |

**FIRST REPUBLIC BANK is a State Non Member Bank and controls the firm.**

| | |
|---|---|
| **Business Address:** | 111 PINE STREET<br>SAN FRANCISCO, CA  94111 |
| **Effective Date:** | 05/01/2023 |
| **Description:** | FIRST REPUBLIC BANK IS WHOLLY OWNED BY JP MORGAN CHASE HOLDINGS, LLC. |

**JPMORGAN CHASE & CO. is a Bank Holding Company and controls the firm.**

| | |
|---|---|
| **Business Address:** | 270 PARK AVENUE<br>NEW YORK, NY  10017 |
| **Effective Date:** | 04/08/2008 |
| **Description:** | JPMORGAN CHASE & CO. OWNS MORE THAN 25% OF THE APPLICANT. UNDER APPLICABLE REGULATIONS, AN ENTITY WHICH OWNS MORE THAN 25% OF ANOTHER ENTITY IS PRESUMED TO CONTROL SUCH ENTITY. |

**UNITED STATES DISTRICT COURT**
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **JOSHUA DAVID SAPPI BIERING,** | § | |
| *Petitioner, Pro Se,* | § | Case No. 4:26-cv-00381-O-BP |
| **v.** | § | |
| **J.P. MORGAN SECURITIES, LLC,** | § | FINRA Case No. 24-01208 |
| **JPMORGAN CHASE & CO., and** | § | EEOC Charge No. 450-2024-04743 |
| **JPMORGAN CHASE BANK, N.A.,** | § | AAA Case No. 01-26-0000-7215 |
| *Respondents.* | § | |

# EXHIBIT J.03a

## Prehearing Conference Packet – Arbitrator Cromartie (A58808)
## J.03a-001 – 019

| | |
|---|---|
| **Description:** | FINRA initial prehearing conference packet including panel assignment, scheduling orders, and shared correspondence, plus Arbitrator Cromartie's (A58808) disclosure report. |
| **Relevance:** | Documents the panel composition and Cromartie's disclosed background relevant to Petitioner's challenge to the arbitration process and panel selection. |
| **Source:** | FINRA Arbitration Case No. 24-00806, Initial Prehearing Conference Packet. Originally filed as combined Exhibit J.03. |
| **Petition Ref:** | Relevant to Dkt. 11 ¶¶ discussing panel composition, arbitrator selection, and procedural challenges. |
| **Disclosures:** | None — reproduced as produced, no added markings |
| **Filing Status:** | Public – not sealed |

CONFIDENTIAL

J.03a-002
4:26-cv-00381-O
*Biering v. JPMS, et al.*

# Party Case Packet
### *Subject Posted on 10/22/2024*

Staff Reassignment Letter-1.pdf( 10/22/2024 3:10:46 PM)
IPHC and Panel Notice Letter.pdf( 10/22/2024 3:11:18 PM)
User Guide DR Portal Participants.pdf( 10/22/2024 2:35:31 PM)
Christal Dolly Team Contact Information.pdf( 10/22/2024 2:35:23 PM)
Arbitrator Disclosure Report as of 10-22-2024.pdf( 10/22/2024 2:47:33 PM)
Certificate of Arbitrator's Exhibit 1.pdf( 10/22/2024 3:02:42 PM)

J.03a-002

CONFIDENTIAL

J.03a-003
4:26-cv-00381-O
*Biering v. JPMS, et al.*

**Staff Reassignment Letter-1.pdf( 10/22/2024 3:10:46**

J.03a-003

J.03a-004
4:26-cv-00381-O
*Biering v. JPMS, et al.*



**TO:**           Jeffrey S. Dunlap, Esq.
                   Joshua J. Iacuone, Esq.

**From:**       Christal T. Dolly
                   Senior Case Administrator

**Subject:**    FINRA Dispute Resolution Services Arbitration Number 24-01208
                   Joshua David Sappi Biering vs. J.P. Morgan Securities, LLC,  JPMorgan Chase & Co.,
                   and JPMorgan Chase Bank, N.A

**Date:**        October 22, 2024

This matter has been reassigned to the undersigned, Christal T. Dolly. Please direct all correspondence concerning this matter, including additional pleadings and/or motions, to my attention via the DR Portal.

If you have any questions, please do not hesitate to contact me at 212-858-4344 or by email at Neprocessingcenter@finra.org.

CTD:kd1:LC41C
idr: 08/18/2021

RECIPIENTS:
Jeffrey S. Dunlap, Esq., UB Greensfelder LLP, 1660 West 2nd Street, Suite 1100, Cleveland,
      OH 44114-1406
On Behalf Of: J.P. Morgan Securities, LLC

Joshua J. Iacuone, Esq., Iacuone McAllister Potter PLLC, 4925 Greenville Ave, Suite 700,
      Dallas, TX 75206
On Behalf Of: Joshua D. Biering

Investor protection. Market integrity.    FINRA Dispute Resolution Services    Brookfield Place    t  212 858 4200
                                      Northeast Regional Office      200 Liberty Street    www.finra.org
                                              New York, NY 10281

J.03a-004

CONFIDENTIAL

J.03a-005

4:26-cv-00381-O

*Biering v. JPMS, et al.*

**IPHC and Panel Notice Letter.pdf( 10/22/2024 3:11:18**

J.03a-005

J.03a-006
4:26-cv-00381-O
*Biering v. JPMS, et al.*



| | |
|---|---|
| **TO:** | Jeffrey S. Dunlap, Esq.<br>Joshua J. Iacuone, Esq. |
| **CC:** | Eric Ross Cromartie<br>Tanner Craig Forman<br>Christine Rister |
| **From:** | Christal T. Dolly<br>Senior Case Administrator |
| **Subject:** | FINRA Dispute Resolution Services Arbitration Number 24-01208<br>Joshua David Sappi Biering vs. J.P. Morgan Securities, LLC,  JPMorgan Chase & Co.,<br>and JPMorgan Chase Bank, N.A |
| **Date:** | October 22, 2024 |

FINRA has appointed the panel and scheduled the Initial Prehearing Conference (IPHC) in the above-captioned matter for:

**November 21, 2024 at 10:00 AM Central Time Zone**

Attached is a copy of the Case Information Sheet which lists the names of the arbitrators and details about the IPHC. More information about the arbitrators and the IPHC is also outlined below.

## Arbitrators

Awards are rendered by independent arbitrators who are chosen by the parties to issue final, binding decisions. FINRA makes available an arbitration forum—pursuant to rules approved by the SEC—but has no part in deciding the award.

FINRA has made every effort to appoint the highest ranked arbitrators based on the parties' combined lists. If the number of arbitrators available to serve from the combined lists is not sufficient to fill the initial panel, however, FINRA will appoint arbitrators to complete the panel from names generated randomly by the list selection algorithm. The list selection algorithm is a computer system that operates the arbitrator list selection process. We have attached Disclosure Reports for any arbitrators appointed randomly by the list selection algorithm.

The Disclosure Report provides important background information on the arbitrator, including a list of the arbitrator's prior FINRA awards and a list of the arbitrator's current cases. For more information on the arbitration awards, please visit FINRA's Arbitration Awards Online database at: www.finra.org/arbitration-mediation/arbitration-awards. Users can search for awards using multiple criteria, such as the case number, keywords within awards, arbitrator names, date

Investor protection. Market integrity.       FINRA Dispute Resolution Services       Brookfield Place       t  212 858 4200<br>Northeast Regional Office       200 Liberty Street       www.finra.org<br>New York, NY 10281

J.03a-006

ranges set by the user, and any combination of these features. In addition, users ca
awards of all arbitration programs absorbed over the years by FINRA (which include
American Stock Exchange, International Stock Exchange, Philadelphia Stock Exchange,
Municipal Securities Rulemaking Board, and New York Stock Exchange). These awards,
however, do not appear on the Disclosure Reports at the present time.

## Arbitrators' Oaths and Disclosures

FINRA requires arbitrators appointed to cases to sign an Oath affirming their commitment to
comply with the ABA Code of Ethics for Arbitrators in Commercial Disputes that requires,
among other things, that arbitrators act in a neutral, independent, and impartial manner, and
that they render a just award.

FINRA also requires arbitrators to make a reasonable effort to learn of and disclose any
circumstances which might preclude the arbitrator from rendering an objective and impartial
determination in the proceeding. Accordingly, we provide arbitrators with a disclosure checklist
to assist them in determining whether to participate in a hearing. The checklist requires
arbitrators to consider all possible disclosures and to provide a complete explanation of any
possible conflict to the parties. We will inform the parties of any information disclosed on the
Arbitrator Disclosure Checklist.

To assist FINRA with this disclosure process, we also ask all parties and counsel to voluntarily
exchange, in writing, known information concerning any potential conflicts between the
arbitrators and any party, counsel, or witness in this matter.

## Challenges to Arbitrators

In addition to allowing parties to strike proposed arbitrators on the ranking lists prior to
appointment, FINRA Customer Code Rule 12407 and Industry Code Rule 13410 provide parties
with the right to challenge arbitrators for cause.  Before the commencement of the hearing,
FINRA will grant a party's request to remove an arbitrator if it is reasonable to infer, based on
information known at the time of the request, that the arbitrator is biased, lacks impartiality, or
has a direct or indirect interest in the outcome of the arbitration. The interest or bias must be
definite and capable of reasonable demonstration, rather than remote or speculative.
Challenges for cause based solely on an arbitrator's reclassification will not be granted.  FINRA
will resolve close questions regarding challenges to an arbitrator by a customer in favor of the
customer. After the commencement of the hearing, FINRA will remove an arbitrator only if the
arbitrator fails to disclose required information not previously known by the parties.

Parties are advised that they may not inform the panel of an opposing party's causal challenge.
The Director of FINRA Dispute Resolution Services decides causal challenges under Customer
Code Rule 12407(a) and Industry Code Rule 13410(a) and requests to remove an arbitrator
after the hearings have started under Customer Code Rule 12407(b) and Industry Code Rule
13410(b).

## Initial Prehearing Conference

Attached please find the Arbitrator's Exhibit #1 form. If this list is not accurate, please contact
FINRA immediately. Arbitrators must read all documents in Arbitrator's Exhibit #1 prior to the
hearing. At the IPHC, the panel will schedule evidentiary hearing dates; set discovery, briefing,
and motions deadlines; and address other preliminary matters. Therefore, you should be



prepared to discuss the amount of time you will need to present your case, as well a availability and the availability of your witnesses. Please have your calendar availabl conference.

Expeditious resolution of disputes is one of the goals of arbitration. Therefore, the commencement of evidentiary hearings within nine months or less after the IPHC is the goal of FINRA and the arbitrators. It is understood that there may be times when this is not feasible. However, the commencement of hearings more than nine months after this conference should be the exception. Additionally, we have observed that there is a higher likelihood of arbitrator withdrawal from a case in which hearings are scheduled outside of this time frame.

Please go to the DR Portal for the information needed to join the IPHC. Because your IPHC is being held on the Zoom platform, you can click "Add to Calendar" to download a calendar file and click "Go to Zoom Meeting" to join the IPHC from your device. If you are a pro se customer who is not registered on the DR Portal, the information will be sent to you separately. **Please join the IPHC approximately 5 minutes before the scheduled start time to avoid delays.** The Chairperson may request that participants turn on their cameras. It is within the Chairperson's discretion to require video participation. Arbitrators are expected to have their camera turned on for the entire duration of all prehearing conferences and evidentiary hearings held by videoconference. Additional information about prehearing conferences and evidentiary hearings on Zoom is available here: https://finra.org/arbitration-mediation/about/arbitration-process#4 and https://finra.org/arbitration-mediation/rules-case-resources/resource-guide-virtual-hearings.

If you would like to reschedule the conference, you must submit within 14 days of the date of this letter, in writing, 4 mutually agreed upon alternative dates and times.

FINRA's rules permit parties to opt out of the IPHC. If the parties wish to opt out, they must jointly provide the following information to FINRA within 14 days of the date of this letter:

- a statement that the parties accept the panel;
- a statement concerning whether any other prehearing conferences will be held and if so, for each prehearing conference, a minimum of 4 mutually agreeable dates and times, and whether the Chairperson or the full panel will preside;
- a minimum of 4 sets of mutually agreeable regular hearing dates;
- a discovery schedule;
- a list of all anticipated motions, with filing and response due dates; and
- a determination of whether briefs will be submitted and if so, the due dates for briefs and any reply briefs.

Please note a party or parties who request cancellation of a prehearing conference within three business days of the scheduled conference will be charged a cancellation fee of $100 per arbitrator. This means the fee will be assessed unless there are at least three full business days between the date of cancellation and the date of the scheduled prehearing conference. The party or parties will only be charged this fee for arbitrators scheduled to attend the prehearing conference.

Please see Customer Code Rules 12500 and 12501 or Industry Code Rules 13500 and 13501 for more information.

### Expungement of Customer Dispute Information

J.03a-008

J.03a-009
4:26-cv-00381-O
*Biering v. JPMS, et al.*

For simplified customer arbitrations filed on or after October 16, 2023, a party seekin expungement of customer dispute information must file the request for expungement within 30 days after the arbitrator is appointed. Alternatively, an associated person may request expungement of customer dispute information separate from the simplified customer arbitration by filing a Statement of Claim pursuant to Industry Code Rule 13805, unless barred by Industry Code Rule 13805(a)(2). Please see Customer Code Rule 12800 for more information.

For regular customer arbitrations filed on or after October 16, 2023, a party seeking expungement of customer dispute information must file the request for expungement no later than 60 days before the first scheduled hearing date. Only an associated person who was not named in the customer arbitration may request expungement of customer dispute information separate from the customer arbitration by filing a Statement of Claim pursuant to Industry Code Rule 13805, unless barred by Industry Code Rule 13805(a)(2). An associated person named in the customer arbitration must make the expungement request during the regular customer arbitration. Please see Customer Code Rule 12805 for more information.

Additional information about expungement is available here: www.finra.org/rules-guidance/ guidance/faqs/expungement-and-finra-rule-2080-faqs.

### Hearing Session Fees

Hearing session fees will be assessed for the IPHC, as well as for each prehearing conference and hearing session that takes place. A hearing session is any meeting with the arbitrator(s) that lasts four hours or less. The arbitrators will decide how the hearing session fees will be assessed at the conclusion of the case. Customer Code Rule 12902(a)(5) and Industry Code Rule 13902(a)(4) require all fees for hearing sessions in which the sole topic is the determination of the appropriateness of expungement to be assessed against the party requesting expungement of customer dispute information.

### Mediation

FINRA has a successful mediation program. Mediation is an informal, voluntary, and non-binding approach in which an independent and trained neutral—a mediator—facilitates negotiations between disputing parties, helping them to find their own mutually acceptable resolution. The resulting settlements often save the parties substantial time and expense. Also, mediations can be initiated at any stage of the arbitration process. Please contact our office for more information on the FINRA mediation process.

If you have any questions, please do not hesitate to contact me at 212-858-4344 or by email at Neprocessingcenter@finra.org.


CTD:kd1:LC08C
idr: 07/18/2024

RECIPIENTS:
Jeffrey S. Dunlap, Esq., UB Greensfelder LLP, 1660 West 2nd Street, Suite 1100, Cleveland, OH 44114-1406
On Behalf Of: J.P. Morgan Securities, LLC

J.03a-009

J.03a-010
4:26-cv-00381-O
Biering v. JPMS, et al.

Joshua J. Iacuone, Esq., Iacuone McAllister Potter PLLC, 4925 Greenville Ave, Suit
        Dallas, TX 75206
On Behalf Of: Joshua D. Biering

CC:
Eric Ross Cromartie
Tanner Craig Forman
Christine Rister

J.03a-011
4:26-cv-00381-O
Biering v. JPMS, et al.



## Case Information Sheet

1.  **CASE INFORMATION**:

    A. CASE-NUMBER:   24-01208

    B. CASE-NAME:

    Joshua David Sappi Biering vs. J.P. Morgan Securities, LLC, JPMorgan Chase & Co., and JPMorgan Chase Bank, N.A

    C. FINRA Dispute Resolution Services
       REPRESENTATIVE:   Christal T. Dolly
                         Senior Case Administrator
                         FINRA Dispute Resolution Services
                         Brookfield Place
                         200 Liberty Street
                         New York, NY 10281
                         212-858-4344

    D. NEXT HEARING SESSION:    November 21, 2024 at 10:00 AM Central Time Zone

    E. ADDITIONAL HEARING SESSIONS:
            Additional hearing session(s) are scheduled on: None

2.  **PARTY REPRESENTATIVE INFORMATION:**

    REPRESENTATIVE:
    Jeffrey S. Dunlap, Esq., UB Greensfelder LLP
    Phone: 216-583-7026, Fax: Unknown
    Email: jdunlap@ubglaw.com
    PARTY(IES):
    J.P. Morgan Securities, LLC, Respondent

    REPRESENTATIVE:
    Joshua J. Iacuone, Esq., Iacuone McAllister Potter PLLC
    Phone: 214-960-2832, Fax: Unknown
    Email: josh@imcplaw.com
    PARTY(IES):

**Investor protection. Market integrity.**    FINRA Dispute Resolution Services    Brookfield Place    t 212 858 4200
                                     Northeast Regional Office           200 Liberty Street    www.finra.org
                                                                          New York, NY 10281

J.03a-011

J.03a-012
4:26-cv-00381-O
Biering v. JPMS, et al.

Joshua D. Biering, Claimant

3.    **ARBITRATION PANEL:**

| | | |
|---|---|---|
| Eric Ross Cromartie | Public Arbitrator | Chairperson |
| Tanner Craig Forman | Non-Public Arbitrator | Panelist |
| Christine Rister | Public Arbitrator | Panelist |
| Law Office of Christine Rister | | |

LC20B
idr: 11/17/2022

RECIPIENTS:
Jeffrey S. Dunlap, Esq., UB Greensfelder LLP, 1660 West 2nd Street, Suite 1100, Cleveland,
        OH 44114-1406
On Behalf Of: J.P. Morgan Securities, LLC

Joshua J. Iacuone, Esq., Iacuone McAllister Potter PLLC, 4925 Greenville Ave, Suite 700,
        Dallas, TX 75206
On Behalf Of: Joshua D. Biering

CC:
Eric Ross Cromartie
Tanner Craig Forman
Christine Rister

October 22, 2024

J.03a-012

CONFIDENTIAL

J.03a-013

4:26-cv-00381-O

*Biering v. JPMS, et al.*

**Christal Dolly Team Contact Information.pdf( 10/22/2 2:35:23 PM)**

J.03a-013



| | |
|---|---|
| TO | Arbitrators, Parties, and Party Representatives |
| FROM | FINRA Dispute Resolution Services – Northeast Region |
| SUBJECT | Arbitration Case - Team Contact Information |

The Case Administrator for this case is Christal Dolly.

The direct contact information for Christal and her team is provided below for your convenience. Please feel free to contact anyone on the team directly.

Christal Dolly – Senior Case Administrator
Email: Christal.Dolly@finra.org
**Direct number: 212-858-4344**
Contact for questions regarding orders related to motions, awards, motions to dismiss, expungements, and arbitrator honoraria.

Aracelly Hernandez – Case Specialist
Email: Aracelly.Hernandez@finra.org
**Direct number: 212-858-4388**
Contact for questions regarding arbitrator lists, filings sent to the Panel, briefing times for motions, settlements, and receipt of Portal filings.

Kareem Denny – Senior Case Coordinator
Email: Kareem.Denny@finra.org
**Direct number: 212-858-4449**
Contact for questions regarding paneling, arbitrator replacements, scheduling, hearing locations, postponements, documents not included on Certificate of Arbitrator's Exhibit 1, and authorization for arbitrator travel.

Nelda Coleman – Lead Case Coordinator
Email: Nelda.Coleman@finra.org
**Direct number: 212-858-4373**
Contact for questions regarding initial pre-hearing conference scheduling orders, hearing recorders, copies of hearing recordings, hearing exhibits, arbitrator case packets, expenses, and oaths.

This team works together to ensure that your case is administered efficiently while providing the best customer service possible.

We welcome your feedback on our process and team members throughout the case. Please submit your feedback to Katherine Bayer, Regional Director, at Katherine.Bayer@finra.org or 212-858-4382.

Investor protection. Market integrity.     Dispute Resolution          One Liberty Plaza       t  212 858 4200
                                            Northeast Regional Office    165 Broadway           f  301 527 4873
                                                                         27th Floor             www.finra.org
                                                                         New York, NY
                                                                         10006-1404

J.03a-014

J.03a-015
4:26-cv-00381-O
Biering v. JPMS, et al.

**Arbitrator Disclosure Report as of 10-22-2024.pdf( 10/22 2:47:33 PM)**

CONFIDENTIAL

J.03a-016
4:26-cv-00381-O
*Biering v. JPMS, et al.*

# Arbitrator Disclosure Report

Arbitrator last affirmed the accuracy of this Disclosure Report on 08/22/2024

## ARBITRATOR

| | | | |
|---|---|---|---|
| **Name:** | Mr. Eric Ross Cromartie | **Classification:** | Public |
| **Arbitrator ID:** | A58808 | **FINRA Mediator:** | |
| **CRD #:** | | **Chair Status:** | Qualified |
| **City/State/Country:** | Dallas / TX / United States | **DR Portal Registered:** | Yes |

**Special Expungement Panel Qualified -** This arbitrator is qualified to consider requests for expungement of customer dispute information filed by an associated person against a member firm under Rule 13805.

## EMPLOYMENT

| Start Date | End Date | Firm | Position |
|---|---|---|---|
| 01/1999 | Present | Eric R. Cromartie | Arbitrator |
| 06/1980 | 12/1998 | Hughes & Luce LLP (a/k/a K&L Gates) | Partner/Associate |

## EDUCATION

| Start Date | End Date | School | Degree |
|---|---|---|---|
| 09/1977 | 06/1980 | Harvard Law School | JD cum laude |
| 09/1973 | 06/1977 | Amherst College | BA Economics magna cum laude |

## TRAINING

| Completed | Course | Details | Firm/School | Hours | Location |
|---|---|---|---|---|---|
| 07/2023 | Enhanced Expungement Training | | FINRA | 1 | online |
| 05/2021 | Suspicious Act Rpt & Anti-Money Laundrg | | FINRA | 1 | online |
| 08/2016 | New Chairperson Training [FINRA] | | FINRA | 6 | online |
| 10/2012 | Live Video Basic Panel Training | | FINRA | 4 | live WebEx |
| 09/2012 | Expungement online revised - 3/2009 | | FINRA | 1.5 | online |
| 08/2012 | Online Basic Panel Training | | FINRA | 11 | online |
| 02/2010 | Non-Securities Related Training | Arbitration Awards | American Arbitration Association | 4 | Dallas, TX |
| 11/2009 | Non-Securities Related Training | Arbitration Fundamentals and Best Practices | American Arbitration Association | 16 | Dallas, TX |

J.03a-017
4:26-cv-00381-O
*Biering v. JPMS, et al.*

A neutral's current relationship with a FINRA member firm is considered a conflict of interest which precl
serving on a case involving said firm. FINRA's list selection algorithm automatically screens for known co
member firms when generating lists of potential neutrals for a case, and, where a known conflict exists, t
on a list in that case.

Note: Disclosures of type "Related Conflict With" are automatically added to the list of disclosures by FINR
the Central Registration Depository (CRD). These disclosures are not provided directly by the neutral.

| Type | Firm Name | Details |
| --- | --- | --- |
| Has an account with | Fidelity | IRA |
| Has an account with | Merrill Lynch | Brokerage/IRA |
| Has Intro/clearing relationship with | Merrill Lynch/Bank of America | |
| Related Conflict With | Advest, Inc. | Conflict due to firm affiliation |
| Related Conflict With | Banc Of America Investment Services, Inc. | Conflict due to a merger/acquisition |
| Related Conflict With | Banc Of America Securities Llc | Conflict due to a merger/acquisition |
| Related Conflict With | Bofa Securities Prime, Inc. | Conflict due to firm affiliation |
| Related Conflict With | Bofa Securities, Inc. | Conflict due to firm affiliation |
| Related Conflict With | Digital Brokerage Services Llc | Conflict due to firm affiliation |
| Related Conflict With | Fidelity Brokerage Services Llc | Conflict due to firm affiliation |
| Related Conflict With | Fidelity Prime Financing | Conflict due to firm affiliation |
| Related Conflict With | Green Pier Fintech Llc | Conflict due to firm affiliation |
| Related Conflict With | Kezar Trading, Llc | Conflict due to firm affiliation |
| Related Conflict With | Merrill Lynch Professional Clearing Corp. | Conflict due to a merger/acquisition |
| Related Conflict With | National Financial Services Llc | Conflict due to firm affiliation |

## DISCLOSURE INFORMATION

Neutral disclosures are provided for the parties' information but are not considered conflicts of interest. FINRA's list selection algorithm does not screen disclosure information when generating lists of potential neutrals for a case. The parties may consider this information when making decisions as to neutral selection.

Parties are encouraged to conduct their own due diligence for any prospective neutral, including their social media presence. Keep in mind that social media presence can change as accounts may be opened or closed, privacy settings may be changed and posts can be created, edited and/or taken down by the user. Social media posts made by FINRA neutrals do not reflect the opinions and views of FINRA.

| Type | Firm Name | Details |
| --- | --- | --- |
| Arbitrator for | American Arbitration Association | |
| Disclosed Online Activities | LinkedIn | https://www.linkedin.com/in/eric-cromartie-6aaa7617/ |
| Family Member has relationship with | Legal Services of North Texas | Wife is employed |
| Has made a disclosure about | FINRA Case #14-02286 | Neutral in case where motion to vacate filed. Motion denied. |
| Has made a disclosure about | FINRA Case #20-01350 | Neutral in case where motion to vacate n granted. |

J.03a-017

J.03a-018
4:26-cv-00381-O
*Biering v. JPMS, et al.*

| | | |
|---|---|---|
| Has made a disclosure about | Hughes & Luce | Represented and individual (1980-1998) |
| Is a member of | American Law Institute | |
| Is a member of | Dallas Bar Foundation | Life Fellow |
| Is a Member of Bar Association | American Bar Association | |
| Is a Member of Bar Association | Texas | |
| Is Shareholder of | Bank of America | |
| Lectured for | ALI/ABA | Accountant's Liability |
| Lectured for | American Bar Association | |
| Lectured for | NASD | Securities Litigation |
| Lectured for | Texas Society of CPAs | |
| Licensed to Practice Law in | Texas | # 05102200 |
| Represented in legal action | Bear Steams and Berger | As Counsel (07/1995-09/1995) |
| Was Shareholder of | Barclays | |
| Was Shareholder of | JP Morgan Chase | |

## PUBLICLY AVAILABLE AWARDS FOR CASES INVOLVING PUBLIC CUSTOMERS

Publicly Available Awards for Cases Involving Public Customers Section, Current as of   10/22/2024

| Case ID | Case Name | Close Date | Role |
|---|---|---|---|
| 24-00555 | Sravanthi Gadamsetty IRA vs. Interactive Brokers LLC | 07/26/2024 | Chair |
| 23-01031 | Sandra M. Scullen, Individually and on behalf of her IRAs vs. Securities America, Inc. | 07/15/2024 | Chair |
| 19-02942 | Edna M. Angeli vs. UBS Financial Services Incorporated of Puerto Rico | 04/04/2024 | Chair |
| 22-00853 | Dr. Irum Abbasi vs. J.P. Morgan Securities LLC | 08/29/2023 | Chair |
| 22-00115 | Gary Brown vs. Joseph Stone Capital L.L.C. | 06/16/2022 | Chair |
| 20-01382 | NorCap Equity Plus Fund, L.P., NorCap Diversified Premium Fund, L.P., GovPlus Fund AI, L.P., et al. vs. Jefferies LLC | 05/04/2022 | Panelist |
| 20-00922 | Joyce E. Cagle IRA; Joyce E. Cagle; Isom R. Cagle; J. Russell Mothershed, et al. vs. Pershing LLC (Cons w/ 20-03862) | 07/08/2021 | Chair |
| 19-02980 | Amparo Mendez Class vs. Santander Securities, LLC | 02/24/2020 | Chair |
| 19-01099 | Amelia Carrion Mendez vs. Santander Securities, LLC | 02/11/2020 | Chair |
| 17-01458 | Brett Hart vs. James Robert Pecoraro | 11/17/2017 | Chair |
| 16-03444 | Robert Jamison Packer vs. Vernon Beyer, Susan Beyer, The Vernon Beyer Descendant Trust, The VEB Trust, et al. | 06/13/2017 | Chair |
| 14-02286 | Carol Lee Craig vs. Southwest Securities Inc. and John C. Coyle | 03/18/2016 | Panelist |

## PUBLICLY AVAILABLE AWARDS FOR CASES NOT INVOLVING PUBLIC CUSTOMERS

Publicly Available Awards for Cases NOT Involving Public Customers Section, Current as of   10/22/2024

| Case ID | Case Name | Close Date | Role |
|---|---|---|---|
| 22-01852 | Yousef Ali Bhat | 9/04/2024 | Chair |
| 24-00279 | Robert Roy Sni | 8/05/2024 | Panelist |

J.03a-018

**UNITED STATES DISTRICT COURT**
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **JOSHUA DAVID SAPPI BIERING,** | § | |
| *Petitioner, Pro Se,* | § | Case No. 4:26-cv-00381-O-BP |
| **v.** | § | |
| **J.P. MORGAN SECURITIES, LLC,** | § | FINRA Case No. 24-01208 |
| **JPMORGAN CHASE & CO., and** | § | EEOC Charge No. 450-2024-04743 |
| **JPMORGAN CHASE BANK, N.A.,** | § | AAA Case No. 01-26-0000-7215 |
| *Respondents.* | § | |

# EXHIBIT J.03b

Prehearing Conference Packet – Arbitrator
Rister (A67379)

J.03b-001 – 004

**Description:**    Arbitrator Rister's (A67379) FINRA disclosure report from the initial prehearing conference packet.

**Relevance:**    Documents Rister's disclosed background relevant to Petitioner's challenge to the arbitration process and panel selection.

**Source:**    FINRA Arbitration Case No. 24-00806, Initial Prehearing Conference Packet. Originally filed as combined Exhibit J.03.

**Petition Ref:**    Relevant to Dkt. 11 ¶¶ discussing panel composition, arbitrator selection, and procedural challenges.

**Disclosures:**    None — reproduced as produced, no added markings

**Filing Status:**    Public – not sealed

J.03b-001
4:26-cv-00381-O
Biering v. JPMS, et al.

| Case ID | Parties | Date | Role |
|---|---|---|---|
| 22-02359 | Cavanal Hill Distributors, Inc, and BOKF, NA vs. Lance Alan Payne | 03/0 | |
| 23-01308 | Curtis Dean Harris vs. MML Investors Services, LLC and Cambridge Investment Research, Inc. | 02/2 | |
| 23-01487 | Michael Rush Noland vs. NYLife Securities LLC | 12/15/ | |
| 23-00098 | James Turner Richardson vs. Wells Fargo Clearing Services, LLC | 09/25/20 | |
| 20-01350 | Douglas Scott Wall vs. Deutsche Bank Securities, Inc. | 05/11/2022 | Chair |
| 20-01263 | Raymond Walter Robert Borota vs. Emmett A Larkin Company, Inc., Salomon Grey Financial Corporation, et al. | 10/04/2021 | Chair |
| 20-02379 | Matthew Mason vs. J.P. Morgan Securities, LLC | 02/16/2021 | Chair |
| 20-01348 | Andrew Scott Butler vs. Woodbury Financial Services, Inc., LPL Financial LLC, and Next Financial Group, Inc. | 12/17/2020 | Chair |
| 19-00951 | Roger James Engemoen vs. Samco Capital Markets, Inc. | 12/16/2019 | Chair |
| 18-03277 | PFS Investments Inc. vs. Perry De Leeuw and Nancy Elaine De Leeuw | 06/12/2019 | Chair |
| 18-01937 | John Christian Coyle vs. Hilltop Securities Inc. | 03/20/2019 | Chair |
| 17-01116 | Wavecrest Securities LLC vs. Charles Riley Constant | 06/29/2018 | Panelist |
| 18-00454 | Ira Dale Kravitz vs. Morgan Stanley | 06/20/2018 | Chair |
| 17-03119 | Michael C. Charles Seamands vs. UBS Financial Services Inc. | 01/05/2018 | Chair |
| 16-02701 | Michael E. Magruder vs. Wells Fargo Advisors, LLC | 02/01/2017 | Chair |
| 15-00392 | Michael E. Magruder vs. Wells Fargo Advisors, LLC | 10/05/2015 | Panelist |
| 10-05180 | Wells Fargo Advisors, LLC (f/k/a Wachovia Securities, LLC) vs. Robert Kyle Ratcliff vs. Lois Powell, Allan Watt, et. al. | 02/25/2014 | Panelist |

## CASES CURRENTLY ASSIGNED INVOLVING PUBLIC CUSTOMERS

| Case ID | Parties and Current Representatives of Record | Date Assigned | Role |
|---|---|---|---|
| 24-00604 | Customer (Counsel: Mr. Kristian Kraszewski, Esq., Coral Gables, FL) vs. Equitable Advisors, LLC (Counsel: Mr. Clay Wash, Esq., Birmingham, AL) | 05/28/2024 | Chair |
| 23-03489 | Customer (Counsel: Mr. Christopher Lufrano, Esq., Oak Park, IL) vs. Voya Financial Advisors, Inc. (Counsel: Mr. Benjamin J. Biard, Esq., Miami, FL) | 02/21/2024 | Chair |
| 23-03399 | Customer (Counsel: Mr. Mark S. Simms, Esq., Dallas, TX) vs. J.P. Morgan Securities, LLC (Counsel: Mr. Gene L. Small, Esq., New York, NY) | 02/09/2024 | Chair |
| 23-03164 | Customer (Counsel: Mr. Kristian P. Kraszewski, Esq., Coral Gables, FL) vs. Morgan Stanley (Counsel: Mr. Trae D. Meyr, Esq., St. Petersburg, FL) | 01/16/2024 | Chair |
| 23-02233 | Customer (Counsel: Mr. Richard A. Lewins, Esq., Dallas, TX) vs. Centaurus Financial, Inc. (Counsel: Mr. Amir Tadjedin, Esq., Portland, OR) | 11/15/2023 | Chair |
| 23-00533 | Customer (Counsel: Mr. Richard A. Lewins, Esq., Dallas, TX) vs. Interactive Brokers LLC (Counsel: Mr. Daniel A. Spector, Esq., Washington, DC) | 05/18/2023 | Panelist |

## CASES CURRENTLY ASSIGNED NOT INVOLVING PUBLIC CUSTOMERS

| Case ID | Parties and Current Representatives of Record | Date Assigned | Role |
|---|---|---|---|
| 24-01208 | Joshua D. Biering (Counsel: Mr. Joshua J. Iacuone, Esq., Dallas, TX) vs. J.P. Morgan Securities, LLC, JPMorgan Chase & Co., JPMorgan Chase Bank, N.A (Counsel: Mr. Jeffrey S. Dunlap, Esq., Cleveland, OH) | 10/22/2024 | Chair |
| 24-00990 | Richard Kellon Lawrence (Counsel: Mr. Brian Luther, Esq., Denver, CO) vs. Morgan Stanley (Counsel: Mr. Trae D. Meyr, Esq., St. Petersburg, FL) | 07/02/2024 | Chair |

J.03b-002
4:26-cv-00381-O
*Biering v. JPMS, et al.*

| | | | |
|---|---|---|---|
| 24-00778 | Davor Poljak, Denis Poljak (Counsel: Mr. John "Jack" S. Edwards, Jr., Esq., Houston, TX) vs. Morgan Stanley, Morgan Stanley Smith Barney LLC, Morgan Stanley Compensation Management (Counsel: Mr. Tracy L. Gerber, Esq., West Palm Beach, FL) | 08/ | |
| 24-00150 | William Yngve Rice, III, William Rice, IV (Counsel: Mr. Kevin D. Galbraith, Esq., New York, NY) vs. Raymond James Financial Services, Inc. (Counsel: Mr. Peter S. Fruin, Esq., Birmingham, AL) | 04/08 | |
| 23-03440 | J.P. Morgan Securities, LLC (Counsel: Mr. Leonard Weintraub, Esq., New York, NY) vs. Morgan Stanley (Counsel: Mr. Thomas J. Momjian, Esq., Bala Cynwyd, PA); Glenn Owen Sneed, IV (Counsel: Mr. Matthew B. Henneman, Esq., Houston, TX) | 05/23/2024 | Chair |
| 23-03072 | Hilltop Securities Inc. (Counsel: Mr. Richard D. Pullman, Esq., Dallas, TX) vs. Careena Patel (Counsel: Mr. Dochtor Kennedy, MBA, JD, Broomfield, CO) | 01/11/2024 | Chair |
| 22-02624 | Bok Financial Securities, Inc. (Counsel: Ms. Nora O'Neiill, Esq., Tulsa, OK) vs. Morgan Stanley (Counsel: Mr. Sal Hernandez, Esq., Nashville, TN); Jessi Lee Nippert, Lindsey Renae Loredo (Counsel: Mr. Scott A. LaPorta, Esq., Sarasota, FL) | 12/13/2022 | Chair |

## ARBITRATOR BACKGROUND INFORMATION

Since January 1999, I have been an arbitrator handling cases on an ad hoc basis upon request by one or more of the parties. I am also a member of the complex commercial litigation panel for the American Arbitration Association and have arbitrated cases conducted pursuant to its rules.

From 1980 to 1999, I was a litigation attorney with the law firm of Hughes & Luce, LLP in Dallas, Texas. I became a partner in 1985, and subsequently was the head of the litigation section and a member of the firm's management committee. As a commercial trial lawyer, I handled a diverse set of cases, litigating more than 50 cases to judgment before juries, judges and arbitrators all over the country, as well as in Texas. I developed special expertise in the areas of securities laws, computer related technology litigation, accountants' liability and oil and gas litigation. Hughes & Luce was acquired by K&L Gates several years ago.

In addition to arbitration, I have lectured and written papers for: ALI/ABA and several state accountants' associations on accountants' liability; NASD and others on securities litigation; various bar organizations on computer litigation, and commercial CLE providers on various topics, including civil procedure. I have been an elected member of the American Law Institute for over 20 years.

I am a 1977 graduate of Amherst College with a BA degree magna cum laude in economics. I graduated cum laude from Harvard Law School in 1980.

J.03b-003
4:26-cv-00381-O
Biering v. JPMS, et al.

# Arbitrator Disclosure Report

Arbitrator last affirmed the accuracy of this Disclosure Report on  02/20/2024

## ARBITRATOR

| | | | |
|---|---|---|---|
| **Name:** | Mrs. Christine Rister | **Classification:** | Public |
| **Arbitrator ID:** | A67379 | **FINRA Mediator:** | |
| **CRD #:** | | **Chair Status:** | None |
| **City/State/Country:** | Rockwall / TX / United States | **DR Portal Registered:** | Yes |

**Statutory Discrimination Qualified -** This arbitrator meets the conditions set forth in FINRA's Code of Arbitration Procedure to serve as the chairperson or sole arbitrator on a case involving a statutory discrimination claim.

**Injunctive Qualified -**  This arbitrator is an attorney and has reported experience litigating cases involving injunctive relief.

## EMPLOYMENT

| Start Date | End Date | Firm | Position |
|---|---|---|---|
| 03/2017 | Present | Law Office of Christine Rister | Attorney - Owner |
| 02/2003 | 03/2017 | Seltzer Caplan McMahon Vitek | Attorney / Shareholder |
| 11/1999 | 08/2000 | Big Brothers Big Sisters of Reno County | Case Manager |
| 11/1994 | 09/1999 | United States Air Force | Communication Systems Operator |
| 05/1993 | 11/1994 | ITT Communications | Supervisor |

## EDUCATION

| Start Date | End Date | School | Degree |
|---|---|---|---|
| 08/2000 | 12/2002 | California Western School of Law | JD |
| 08/1997 | 08/1999 | UMUC - Asian Division | BS - Business Management |
| 08/1995 | 05/1997 | Rose State College | Enrollment only |
| 08/1991 | 05/1993 | Emporia State University | Enrollment only |

## TRAINING

| Completed | Course | Details | Firm/School | Hours | Location |
|---|---|---|---|---|---|
| 04/2023 | Online Basic Panel Training | | FINRA | 6 | online |
| 04/2023 | Expungement online revised - 3/2009 | | FINRA | 1 | online |
| 06/2022 | Mediation Training | Mediation Certificate | Mediators & Arbitrators of America | 40 | Texas - Remote |

## CONFLICT INFORMATION

J.03b-004
4:26-cv-00381-O
Biering v. JPMS, et al.

A neutral's current relationship with a FINRA member firm is considered a conflict of interest which precl
serving on a case involving said firm. FINRA's list selection algorithm automatically screens for known co
member firms when generating lists of potential neutrals for a case, and, where a known conflict exists, t
on a list in that case.

Note: Disclosures of type "Related Conflict With" are automatically added to the list of disclosures by FINR
the Central Registration Depository (CRD). These disclosures are not provided directly by the neutral.

| Type | Firm Name | Details |
| --- | --- | --- |
| Family Member has relationship with | Morgan Stanley | Spouse has Stock Plan account |
| Family Member has relationship with | Northwestern Mutual Investment Services, LLC | Child has a 529 |
| Family Member has relationship with | Stifel, Nicolaus & Company, Incorporated | Spouse has IRA |
| Has an account with | Vanguard | 401(k) |
| Related Conflict With | Barclays Capital Inc. | Conflict due to a merger/acquisition |
| Related Conflict With | Charles Schwab & Co., Inc. | Conflict due to clearing relationship |
| Related Conflict With | Citigroup Global Markets Inc. | Conflict due to a merger/acquisition |
| Related Conflict With | City Securities Corporation | Conflict due to a merger/acquisition |
| Related Conflict With | E*Trade Securities Llc | Conflict due to firm affiliation |
| Related Conflict With | Eaton Vance Distributors, Inc. | Conflict due to firm affiliation |
| Related Conflict With | Finance 500, Inc. | Conflict due to firm affiliation |
| Related Conflict With | Keefe, Bruyette & Woods, Inc. | Conflict due to firm affiliation |
| Related Conflict With | Morgan Stanley & Co. Incorporated | Conflict due to firm affiliation |
| Related Conflict With | Morgan Stanley Capital Services, Llc | Conflict due to firm affiliation |
| Related Conflict With | Morgan Stanley Distribution, Inc. | Conflict due to firm affiliation |
| Related Conflict With | Morgan Stanley Dw Inc. | Conflict due to a merger/acquisition |
| Related Conflict With | Pershing Llc | Conflict due to clearing relationship |
| Related Conflict With | Prime Dealer Services Corp. | Conflict due to firm affiliation |
| Related Conflict With | Sierra Pacific Securities, Llc | Conflict due to firm affiliation |
| Related Conflict With | Solium Financial Services Llc | Conflict due to a merger/acquisition |
| Related Conflict With | Sterne, Agee & Leach, Inc. | Conflict due to a merger/acquisition |
| Related Conflict With | Stifel Independent Advisors, Llc | Conflict due to firm affiliation |
| Related Conflict With | Stone & Youngberg Llc | Conflict due to a merger/acquisition |
| Related Conflict With | Thomas Weisel Partners (Usa) Inc. | Conflict due to a merger/acquisition |
| Related Conflict With | Thomas Weisel Partners Llc | Conflict due to a merger/acquisition |
| Related Conflict With | Vanguard Capital | Conflict due to a merger/acquisition |
| Related Conflict With | Vanguard Financial Group, Inc. | Conflict due to a merger/acquisition |
| Related Conflict With | Vanguard Securities, Inc. | Conflict due to a merger/acquisition |

## DISCLOSURE INFORMATION

**CONFIDENTIAL**

J.03b-005
4:26-cv-00381-O
*Biering v. JPMS, et al.*

Neutral disclosures are provided for the parties' information but are not considered conflicts of interest. F algorithm does not screen disclosure information when generating lists of potential neutrals for a case. T this information when making decisions as to neutral selection.

Parties are encouraged to conduct their own due diligence for any prospective neutral, including their socia Keep in mind that social media presence can change as accounts may be opened or closed, privacy settin and posts can be created, edited and/or taken down by the user. Social media posts made by FINRA neutrals do not reflect the opinions and views of FINRA.

| Type | Firm Name | Details |
|---|---|---|
| Disclosed Online Activities | Law Office of Christine Rister | https://www.risterlaw.com/ |
| Disclosed Online Activities | LinkedIn | https://www.linkedin.com/in/christine-lapinta-rister-a798404/ |
| Is a Member of Bar Association | Rockwall County Bar Association | |
| Licensed to Practice Law in | California | #225990 |
| Licensed to Practice Law in | Ninth Circuit Court of Appeals | |
| Licensed to Practice Law in | Texas | #24100659 |
| Licensed to Practice Law in | United States Bankruptcy Court - California | Southern, Central, and Northern Districts |
| Licensed to Practice Law in | United States Bankruptcy Court - Oklahoma | Northern District |
| Licensed to Practice Law in | United States Bankruptcy Court - Texas | Northern, Southern and Eastern District |
| Licensed to Practice Law in | United States District Court - California | Southern, Central, and Northern Districts |
| Licensed to Practice Law in | United States District Court - Oklahoma | Northern District |
| Licensed to Practice Law in | United States District Court - Texas | Northern and Eastern District |
| Was a member of | Inns of Court | San Diego Chapter |
| Was a Member of Bar Association | American Bar Association | |
| Was a Member of Bar Association | Association of Business Trial Lawyers | San Diego Chapter |
| Was a Member of Bar Association | San Diego County Bar Association | |
| Was Mediator for | San Diego Superior Court | Small Claims Court Mediator |

## PUBLICLY AVAILABLE AWARDS FOR CASES INVOLVING PUBLIC CUSTOMERS
Publicly Available Awards for Cases Involving Public Customers Section, Current as of  10/22/2024

| Case ID | Case Name | Close Date | Role |
|---|---|---|---|
| | There is no award information. | | |

## PUBLICLY AVAILABLE AWARDS FOR CASES NOT INVOLVING PUBLIC CUSTOMERS
Publicly Available Awards for Cases NOT Involving Public Customers Section, Current as of  10/22/2024

| Case ID | Case Name | Close Date | Role |
|---|---|---|---|
| | There is no award information. | | |

**CAS**                                           **ERS**

J.03b-005

J.03b-006
4:26-cv-00381-O
*Biering v. JPMS, et al.*

| Case ID | Parties and Current Representatives of Record | Dat |
|---|---|---|
| 23-03354 | Customer (Counsel: Mr. Samuel Edwards, Houston, TX) vs. Fidelity Brokerage Services LLC (Counsel: Mr. Joel M. Everest, Esq., Birmingham, AL) | 02/ |

## CASES CURRENTLY ASSIGNED NOT INVOLVING PUBLIC CUSTOMERS

| Case ID | Parties and Current Representatives of Record | Date Assigned | Role |
|---|---|---|---|
| 24-01208 | Joshua D. Biering (Counsel: Mr. Joshua J. Iacuone, Esq., Dallas, TX) vs. J.P. Morgan Securities, LLC, JPMorgan Chase & Co., JPMorgan Chase Bank, N.A (Counsel: Mr. Jeffrey S. Dunlap, Esq., Cleveland, OH) | 10/22/2024 | Panelist |
| 23-03439 | J.P. Morgan Securities, LLC (Counsel: Mr. Leonard Weintraub, Esq., New York, NY) vs. Merrill Lynch Pierce Fenner & Smith Inc. (Counsel: Ms. Rachael Luken Carp, Esq., Wayne, PA); Michael James Hasbach (Counsel: Ms. Cindy Levin Moulton, Esq., Houston, TX) | 02/16/2024 | Panelist |

## ARBITRATOR BACKGROUND INFORMATION

I served in the United States Air Force from 1994-1999. During that time, I obtained my Bachelors of Science in Business Management from the University of Maryland University College - Asian Division.

After separating from the service with an honorable discharge, I attended law school at California Western School of Law. I obtained my juris doctorate in 2002 after participating in an accelerated degree program.

I am a licensed attorney active and practicing in both California (since 2003) and Texas (since 2016). I have been involved in the alternative dispute resolution process since law school. During that time, I acted as a mediator in San Diego Superior Courts--small claims division. Post-graduation, I have been involved in mediation and arbitration through my practice of law. I have represented clients in both on matters involving, among other things, fee disputes and business disputes. My practice involved all areas of civil law, including securities actions, business disputes and employment matters. Prior to relocating to Texas in 2016, I was a partner in a mid-size law firm in San Diego. Since relocating to Texas, I am the owner of my own law practice and have taken the necessary courses to be an accredited mediator/arbitrator in Texas.

**UNITED STATES DISTRICT COURT**
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **JOSHUA DAVID SAPPI BIERING,** | § | |
| *Petitioner, Pro Se,* | § | Case No. 4:26-cv-00381-O-BP |
| **v.** | § | |
| **J.P. MORGAN SECURITIES, LLC,** | § | FINRA Case No. 24-01208 |
| **JPMORGAN CHASE & CO., and** | § | EEOC Charge No. 450-2024-04743 |
| **JPMORGAN CHASE BANK, N.A.,** | § | AAA Case No. 01-26-0000-7215 |
| *Respondents.* | § | |

# EXHIBIT J.03c

## Prehearing Conference Packet – Arbitrator Forman (A62547)

## J.03c-001 – 004

| | |
|---|---|
| **Description:** | Arbitrator Forman's (A62547) FINRA disclosure report from the initial prehearing conference packet. |
| **Relevance:** | Documents Forman's disclosed background relevant to Petitioner's challenge to the arbitration process and panel selection. |
| **Source:** | FINRA Arbitration Case No. 24-00806, Initial Prehearing Conference Packet. Originally filed as combined Exhibit J.03. |
| **Petition Ref:** | Relevant to Dkt. 11 ¶¶ discussing panel composition, arbitrator selection, and procedural challenges. |
| **Disclosures:** | None — reproduced as produced, no added markings |
| **Filing Status:** | Public – not sealed |

CONFIDENTIAL

J.03c-001
4:26-cv-00381-O
*Biering v. JPMS, et al.*

# Arbitrator Disclosure Report

Arbitrator last affirmed the accuracy of this Disclosure Report on  04/21/2022

## ARBITRATOR

| | | | |
|---|---|---|---|
| **Name:** | Mr. Tanner Craig Forman | **Classification:** | Non-public |
| **Arbitrator ID:** | A62547 | **FINRA Mediator:** | |
| **CRD #:** | 6024364 | **Chair Status:** | None |
| **City/State/Country:** | Fate / TX / United States | **DR Portal Registered:** | Yes |

**Injunctive Qualified -**   This arbitrator is an attorney and has reported experience litigating cases involving injunctive relief.

## EMPLOYMENT

| Start Date | End Date | Firm | Position |
|---|---|---|---|
| 07/2020 | Present | Jim S. Adler & Associates | Attorney |
| 06/2018 | 07/2020 | Cobb Martinez Woodward PLLC | Attorney |
| 02/2016 | 06/2018 | Payne & Blanchard, LLP | Attorney |
| 04/2015 | 02/2016 | Glast, Phillips & Murray, P.C. | Attorney |
| 05/2014 | 08/2014 | Securities and Exchange Commission | Honors Internship |
| 05/2013 | 08/2013 | MasTec, Inc. | Legal Intern |
| 01/2012 | 08/2012 | Fidelity Investments | Registered Representative |
| 09/2011 | 12/2011 | Spherion Staffing | Customer Service |
| 05/2011 | 07/2011 | Chrysalis | Counselor |
| 09/2010 | 05/2011 | Logan River Academy | Counselor |
| 06/2010 | 08/2010 | Rocky Mountain Insulation | Insulation Installer |
| 09/2009 | 05/2010 | Gossner Foods | Labor |
| 05/2009 | 08/2009 | Quality Excavation | Heavy Equipment |
| 05/2008 | 08/2008 | Wiser | Labor |
| 09/2007 | 05/2008 | Wilson Electronics | Customer Service |
| 05/2007 | 08/2007 | Red Canyon Contractors | Labor |
| 04/2005 | 04/2007 | The Church of Jesus Christ of Latter-day Saints | Public Service |
| 08/2004 | 04/2005 | Deseret Labs | Inventory Control Specialist |

## EDUCATION

| Start Date | End Date | School | Degree |
|---|---|---|---|
| 08/2012 | 12/2014 | University of Miami School of Law | JD (Magna Cum Laude) |
| 08/2008 | 05/2011 | Utah State University | BS Econ/Finance (Cum Laude) |
| 08/2007 | 05/2008 | Dixie State University | AA |
| 08/2003 | 05/2004 | | Enrollment only |

## TRAINING

| Completed | Course | Details | Firm/School | Hours | |
|-----------|--------|---------|-------------|-------|---|
| 09/2018 | Live Video Basic Panel Training | | FINRA | 2.5 | |
| 06/2018 | Online Basic Panel Training | | FINRA | 8 | onli |
| 06/2018 | Expungement online revised - 3/2009 | | FINRA | 1.5 | online |

## CONFLICT INFORMATION

A neutral's current relationship with a FINRA member firm is considered a conflict of interest which precludes the neutral from serving on a case involving said firm. FINRA's list selection algorithm automatically screens for known conflicts with FINRA member firms when generating lists of potential neutrals for a case, and, where a known conflict exists, the neutral will not appear on a list in that case.

Note: Disclosures of type "Related Conflict With" are automatically added to the list of disclosures by FINRA using data found in the Central Registration Depository (CRD). These disclosures are not provided directly by the neutral.

| Type | Firm Name | Details |
|------|-----------|---------|
| Has an account with | Charles Schwab & Co., Inc. | IRA |
| Has an account with | Fidelity Brokerage Services Llc | IRA and Brokerage |
| Related Conflict With | Digital Brokerage Services Llc | Conflict due to firm affiliation |
| Related Conflict With | Fidelity Distributors Corporation | Conflict due to firm affiliation |
| Related Conflict With | Fidelity Investments Institutional Services Company, Inc. | Conflict due to firm affiliation |
| Related Conflict With | Fidelity Prime Financing | Conflict due to firm affiliation |
| Related Conflict With | Green Pier Fintech Llc | Conflict due to firm affiliation |
| Related Conflict With | Kezar Trading, Llc | Conflict due to firm affiliation |
| Related Conflict With | National Financial Services Llc | Conflict due to firm affiliation |
| Related Conflict With | Optionsxpress, Inc. | Conflict due to a merger/acquisition |
| Related Conflict With | Td Ameritrade Clearing, Inc. | Conflict due to firm affiliation |
| Related Conflict With | Td Ameritrade, Inc. | Conflict due to firm affiliation |

## DISCLOSURE INFORMATION

Neutral disclosures are provided for the parties' information but are not considered conflicts of interest. FINRA's list selection algorithm does not screen disclosure information when generating lists of potential neutrals for a case. The parties may consider this information when making decisions as to neutral selection.

Parties are encouraged to conduct their own due diligence for any prospective neutral, including their social media presence. Keep in mind that social media presence can change as accounts may be opened or closed, privacy settings may be changed and posts can be created, edited and/or taken down by the user. Social media posts made by FINRA neutrals do not reflect the opinions and views of FINRA.

| Type | Firm Name | Details |
|------|-----------|---------|
| Adverse to in legal action | LEK Securities Corporation | As law student counsel in 2014, |
| Disclosed Online Activities | | din.com/in/tanner-a32860 |

J.03c-002

J.03c-003

4:26-cv-00381-O

Biering v. JPMS, et al.

| | | |
|---|---|---|
| Disclosed Online Activities | Twitter | @tankforman |
| Family member had relationship with | Wells Fargo Bank | Wife was emp |
| Has an account with | Wells Fargo Bank | Checking and s |
| Held Securities License(s) | | Series 7 and 63 |
| Is a Member of Bar Association | Dallas Bar Association | |
| Languages other than English | | Spanish (Fluent) Proficiency |
| Licensed to Practice Law in | Texas | #24094662 |
| Non-investment related lawsuit/charge | | As a minor, charged w/possession of controlled substance (prescription medication), dismissed (2002) |

## PUBLICLY AVAILABLE AWARDS FOR CASES INVOLVING PUBLIC CUSTOMERS

Publicly Available Awards for Cases Involving Public Customers Section, Current as of  10/22/2024

| Case ID | Case Name | Close Date | Role |
|---|---|---|---|
| | There is no award information. | | |

## PUBLICLY AVAILABLE AWARDS FOR CASES NOT INVOLVING PUBLIC CUSTOMERS

Publicly Available Awards for Cases NOT Involving Public Customers Section, Current as of  10/22/2024

| Case ID | Case Name | Close Date | Role |
|---|---|---|---|
| | There is no award information. | | |

## CASES CURRENTLY ASSIGNED INVOLVING PUBLIC CUSTOMERS

| Case ID | Parties and Current Representatives of Record | Date Assigned | Role |
|---|---|---|---|
| | There are no currently assigned cases. | | |

## CASES CURRENTLY ASSIGNED NOT INVOLVING PUBLIC CUSTOMERS

| Case ID | Parties and Current Representatives of Record | Date Assigned | Role |
|---|---|---|---|
| 24-01208 | Joshua D. Biering (Counsel: Mr. Joshua J. Iacuone, Esq., Dallas, TX) vs. J.P. Morgan Securities, LLC, JPMorgan Chase & Co., JPMorgan Chase Bank, N.A (Counsel: Mr. Jeffrey S. Dunlap, Esq., Cleveland, OH) | 10/22/2024 | Panelist |
| 21-02901 | J.P. Morgan Securities, LLC (Counsel: Mr. Leonard Weintraub, Esq., New York, NY) vs. UBS Financial Services Inc. (Counsel: Mr. Michael F. Braun, Chicago, IL); Daffan Watson Nettle (Counsel: Ms. Therese M. Doherty, New York, NY) | 02/08/2022 | Panelist |

## ARBITRATOR BACKGROUND INFORMATION

Since 2015, I have been working as a trial attorney in Dallas, Texas.  I am familiar with all aspects of dispute resolution.  During law school, I was selected to participate in the SEC's honors internship program where I investigated insider trading, Ponzi schemes, and other securities related issues.  Also during law school, I worked as an intern in my school's investor rights clinic and represented clients (under the supervision of a licensed attorney) in FINRA arbitration proceedings.  I worked as a registered representative at Fidelity Investments prior to law school.  I graduated, with honors, from the University of Miami School of Law in 2014.  I graduated, with honors, with a dual degree in finance and economics from Utah State University in 2011.

J.03c-004
4:26-cv-00381-O
*Biering v. JPMS, et al.*

ADDITIONAL DISCLOSURE INFORMATION

FINRA was unable to independently verify employment at MasTec, Inc., Chrysalis, Rocky Mountain Insula

CONFIDENTIAL

J.03c-005
4:26-cv-00381-O
*Biering v. JPMS, et al.*

## Certificate of Arbitrator's Exhibit 1.pdf( 10/22/2024 3:02:

J.03c-005

CONFIDENTIAL



## CERTIFICATE OF ARBITRATOR'S EXHIBIT NO. 1

*The documents on this list comprise Arbitrator's Exhibit No. 1. If a document is not identified, it was not received. If this list is not accurate, please contact FINRA Dispute Resolution immediately. Arbitrators must read all documents in Arbitrator's Exhibit No. 1 prior to a hearing.*

*The list of documents may include certain FINRA Dispute Resolution notices to the parties.*

Case Number: 24-01208          Staff Assigned: Christal Dolly

Case Name: Joshua David Sappi Biering vs. J.P. Morgan Securities, LLC, JPMorgan Chase & Co., and JPMorgan Chase Bank, N.A

| Name of Claimant(s): Joshua David Sappi Biering | |
|---|---|
| Submission Agreement | X |
| Statement of Claim | X |
| Amended Statement of Claim | X |
| Motion to Immediate Cease and Desist | |
| Responses to Motion | |
| Reply to Motion | |
| Answer to Counterclaim | |
| Other | |

ially

J.03c-006

J.03c-007

4:26-cv-00381-O

*Biering v. JPMS, et al.*

Name of Respondent 1: J.P. Morgan Securities, LLC,

| | |
|---|---|
| Submission Agreement | **X** |
| Statement of Answer | **X** |
| Extension to File Statement of Answer | [ ] Due Date<br>[ ] See enclosed letter dated |
| Request for Clarification | |
| Counterclaim | |
| Cross Claim | |
| Third-Party Claim vs. | |
| Amended Statement of Answer | |
| Response to Amended Statement of Claim | |
| Response to Cross Claim | |
| Response to Third-Party Claim | |
| Motion to | |
| Response to Motion to Cease and Desist | |
| Reply to Motion | |
| Other | |

ially

J.03c-008

4:26-cv-00381-O

*Biering v. JPMS, et al.*

Name of Respondent 2: JPMorgan Chase & Co.,

| | |
|---|---|
| Submission Agreement | |
| Statement of Answer | |
| Extension to File Statement of Answer | [ ] Due Date<br>[ ] See enclosed letter dated |
| Request for Clarification | |
| Counterclaim | |
| Cross Claim | |
| Third-Party Claim vs. | |
| Amended Statement of Answer | |
| Response to Amended Statement of Claim | |
| Response to Cross Claim | |
| Response to Third-Party Claim | |
| Motion to | |
| Response to Motion | |
| Reply to Motion | |
| Other | Refusal to Arbitrate |

ially

J.03c-008

J.03c-009

4:26-cv-00381-O

*Biering v. JPMS, et al.*

Name of Respondent 2: JPMorgan Chase Bank, N.A

| | |
|---|---|
| Submission Agreement | |
| Statement of Answer | |
| Extension to File Statement of Answer | [  ]  Due Date<br>[  ]  See enclosed letter dated |
| Request for Clarification | |
| Counterclaim | |
| Cross Claim | |
| Third-Party Claim vs. | |
| Amended Statement of Answer | |
| Response to Amended Statement of Claim | |
| Response to Cross Claim | |
| Response to Third-Party Claim | |
| Motion to | |
| Response to Motion | |
| Reply to Motion | |
| Other | Refusal to Arbitrate |

ially

J.03c-010

4:26-cv-00381-O
*Biering v. JPMS, et al.*

[Deficiency Notice, etc.]

Note: An answering party who fails to file a Uniform Submission Agreement pursuant to the Code may be subject to sanctions pursuant to Rule 12212 of the Customer Code or Rule 13212 of the Industry Code.

[Other]

ially

J.03c-010

### UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **JOSHUA DAVID SAPPI BIERING,** | § | |
| *Petitioner, Pro Se,* | § | Case No. 4:26-cv-00381-O-BP |
| **v.** | § | |
| **J.P. MORGAN SECURITIES, LLC,** | § | FINRA Case No. 24-01208 |
| **JPMORGAN CHASE & CO., and** | § | EEOC Charge No. 450-2024-04743 |
| **JPMORGAN CHASE BANK, N.A.,** | § | AAA Case No. 01-26-0000-7215 |
| *Respondents.* | § | |

# EXHIBIT J.03d

# Replacement Arbitrator Disclosure – Alison Clement

# J.03d-001 – 011

**Description:**   FINRA arbitrator disclosure report for Alison Clement, appointed as replacement arbitrator after Forman's removal from the panel.

**Relevance:**   Documents the replacement panel member's background and disclosures. Relevant to Petitioner's claims regarding panel composition changes and procedural fairness.

**Source:**   FINRA Arbitration Case No. 24-00806. Replacement arbitrator notice dated October 17, 2025; updated disclosures dated October 27, 2025.

**Petition Ref:**   Relevant to Dkt. 11 ¶¶ discussing panel composition changes, arbitrator replacement, and procedural challenges.

**Disclosures:**   None — reproduced as produced, no added markings

**Filing Status:**   Public – not sealed

CONFIDENTIAL

J.03d-001
4:26-cv-00381-O
*Biering v. JPMS, et al.*

# Arbitrator Disclosure(s)

*Subject Posted on 10/27/2025*

Updated Disclosure Report Letter for A61264 - Alison Clement.pdf( 10/27/2025 3:57:51 PM)

Arbitrator Disclosure Report for A61264 - Alison Clement on 10-27-2025.pdf( 10/27/2025 3:57:54 PM)

J.03d-001

CONFIDENTIAL

J.03d-002
4:26-cv-00381-O
*Biering v. JPMS, et al.*

## Updated Disclosure Report Letter for A61264 - Aliso Clement.pdf( 10/27/2025 3:57:51 PM)

J.03d-002

J.03d-003
4:26-cv-00381-O
*Biering v. JPMS, et al.*



| | |
|---|---|
| **TO:** | Jeffrey S. Dunlap, Esq.<br>Joshua J. Iacuone, Esq. |
| **CC:** | Alison Battiste Clement<br>Eric Ross Cromartie<br>Christine Rister |
| **From:** | Christal T. Dolly<br>Senior Case Administrator |
| **Subject:** | FINRA Dispute Resolution Services Arbitration Number 24-01208<br>Joshua David Sappi Biering vs. J.P. Morgan Securities, LLC,  JPMorgan Chase & Co.,<br>and JPMorgan Chase Bank, N.A |
| **Date:** | October 27, 2025 |

Attached is an updated Arbitrator Disclosure Report for Arbitrator Alison Battiste Clement.  You are receiving this information because Arbitrator Alison Battiste Clement is either eligible for selection or has been appointed to the panel in the above-captioned case.

DISCLOSURE/CONFLICT INFORMATION:

Disclosure/Conflict added:
Type: Is a member of
Firm Name: Texas Supreme Court Historical Society

If Arbitrator Alison Battiste Clement was eligible for selection in the above-captioned case but was not appointed to the panel, you may disregard this notification.

If you have any questions, please do not hesitate to contact me at 212-858-4344 or by email at Neprocessingcenter@finra.org.

CTD:LC54R
idr: 08/22/2022

RECIPIENTS:
Jeffrey S. Dunlap, Esq., UB Greensfelder LLP, 1660 West 2nd Street, Suite 1100, Cleveland, OH 44114-1406
On Behalf Of: J.P. Morgan Securities, LLC

Investor protection. Market integrity.

FINRA Dispute Resolution Services
Northeast Regional Office

Brookfield Place
200 Liberty Street
New York, NY 10281

t  212 858 4200
www.finra.org

J.03d-003

J.03d-004
4:26-cv-00381-O
Biering v. JPMS, et al.

Joshua J. Iacuone, Esq., Iacuone McAllister Potter PLLC, 4925 Greenville Ave, Suit
        Dallas, TX 75206
On Behalf Of: Joshua D. Biering

CC:
Alison Battiste Clement
Eric Ross Cromartie
Christine Rister

J.03d-004

CONFIDENTIAL

J.03d-005
4:26-cv-00381-O
Biering v. JPMS, et al.

**Arbitrator Disclosure Report for A61264 - Alison Cleme**
**10-27-2025.pdf( 10/27/2025 3:57:54 PM)**

J.03d-005

CONFIDENTIAL

©2025 FINRA. All rights reserved.

J.03d-006
4:26-cv-00381-O
*Biering v. JPMS, et al.*

# Arbitrator Disclosure Report

Arbitrator last affirmed the accuracy of this Disclosure Report on  10/27/2025

## ARBITRATOR

| | | | |
|---|---|---|---|
| **Name:** | Ms. Alison Battiste Clement | **Classification:** | Non-public |
| **Arbitrator ID:** | A61264 | **FINRA Mediator:** | |
| **CRD #:** | | **Chair Status:** | None |
| **City/State/Country:** | Dallas / TX / United States | **DR Portal Registered:** | Yes |

## EMPLOYMENT

| Start Date | End Date | Firm | Position |
|---|---|---|---|
| 09/2022 | Present | Battiste Clement PLLC | Partner |
| 03/2018 | 09/2022 | Munck Wilson Mandala, LLP | Partner |
| 03/2017 | 03/2018 | Wilson Elser Moskowitz Edelman & Dicker LLP | Of Counsel |
| 03/2016 | 05/2016 | University of North Texas, Dallas School of Law | Adjunct Professor |
| 08/2015 | 12/2015 | University of North Texas, Dallas School of Law | Adjunct Professor |
| 06/2011 | 03/2017 | Godwin Bowman and Martinez PC | Attorney |
| 03/2011 | 06/2011 | Kalorama Partners | Attorney |
| 12/2010 | 03/2011 | Compliance, LP | Attorney |
| 02/2010 | 12/2010 | Washington Legal Clinic for the Homeless | Volunteer Attorney |
| 10/2009 | 06/2010 | World Bank | Consultant |
| 04/2009 | 07/2009 | JD Cano | Attorney/Internship |
| 08/2007 | 09/2007 | Merrill Lynch Financial Centre | Global Services Intern |
| 05/2006 | 02/2009 | Strasburger and Price, LLP | Attorney |
| 08/2003 | 03/2005 | Axiom Resource Management, Inc. | Contractor |
| 01/2003 | 07/2003 | It's Just Lunch | Sales Director |
| 09/2002 | 12/2002 | Design Cuisine | Caterer |
| 10/2001 | 10/2004 | Ali B's Boutique | President |
| 10/2001 | 01/2002 | Bloomingdales | Sales Clerk |
| 09/2001 | 12/2001 | Eastpointe Country Club | Waitress |
| 08/2001 | 09/2001 | Skully's Tavern | Waitress |

## EDUCATION

| Start Date | End Date | School | Degree |
|---|---|---|---|
| 08/2004 | 05/2007 | Georgetown University Law Center | JD |
| 08/1998 | 05/2001 | George Washington University | MBA |
| 08/1996 | 05/1998 | George Washington University | BS Chemistry |
| 08/1993 | 05/1996 | | Enrollment only |

J.03d-006

©2025 FINRA. All rights reserved.

J.03d-007
4:26-cv-00381-O
*Biering v. JPMS, et al.*

## TRAINING

| Completed | Course | Details | Firm/School | Hours | |
|---|---|---|---|---|---|
| 12/2016 | Expungement online revised - 3/2009 | | FINRA | 1.5 | |
| 12/2016 | Online Basic Panel Training | | FINRA | 8 | online |
| 12/2016 | Live Video Basic Panel Training | | FINRA | 4 | live WebEx |

## CONFLICT INFORMATION

A neutral's current relationship with a FINRA member firm is considered a conflict of interest which precludes the neutral from serving on a case involving said firm. FINRA's list selection algorithm automatically screens for known conflicts with FINRA member firms when generating lists of potential neutrals for a case, and, where a known conflict exists, the neutral will not appear on a list in that case.

Note: Disclosures of type "Related Conflict With" are automatically added to the list of disclosures by FINRA using data found in the Central Registration Depository (CRD). These disclosures are not provided directly by the neutral.

| Type | Firm Name | Details |
|---|---|---|
| Family Member has relationship with | Park Avenue Investments | Spouse has 401(k) and Mutual fund |
| Has an account with | Citibank | IRA |
| Has an account with | Nationwide Investment Services Corporation | 401(k) |
| Has an account with | Oppenheimer Funds | IRA |
| Has an account with | Vanguard | 401(k) and Brokerage |
| Related Conflict With | Citi Private Alternatives, Llc | Conflict due to firm affiliation |
| Related Conflict With | Citicorp Investment Services | Conflict due to a merger/acquisition |
| Related Conflict With | Citicorp Securities Services, Inc. | Conflict due to firm affiliation |
| Related Conflict With | Citicorp Securities, Inc. | Conflict due to a merger/acquisition |
| Related Conflict With | First Of Michigan Corporation | Conflict due to a merger/acquisition |
| Related Conflict With | Freedom Investments, Inc. | Conflict due to firm affiliation |
| Related Conflict With | Fsc Securities Corporation | Conflict due to firm affiliation |
| Related Conflict With | Ladenburg Thalmann & Co. Inc. | Conflict due to firm affiliation |
| Related Conflict With | Morgan Stanley & Co. Incorporated | Conflict due to a merger/acquisition |
| Related Conflict With | Morgan Stanley Dw Inc. | Conflict due to a merger/acquisition |
| Related Conflict With | Morgan Stanley Smith Barney | Conflict due to a merger/acquisition |
| Related Conflict With | National Financial Services Llc | Conflict due to clearing relationship |
| Related Conflict With | Nationwide Fund Distributors Llc | Conflict due to firm affiliation |
| Related Conflict With | Nationwide Securities, Llc | Conflict due to firm affiliation |
| Related Conflict With | Osaic Institutions, Inc. | Conflict due to firm affiliation |
| Related Conflict With | Osaic Wealth, Inc. | Conflict due to firm affiliation |
| Related Conflict With | Pershing Llc | Conflict due to clearing relationship |
| Related Conflict With | Reich & Co., Inc. | Conflict due to a merger/acquisition |
| Related Conflict With | | e to a merger/acquisition |

J.03d-007

©2025 FINRA. All rights reserved.

J.03d-008

4:26-cv-00381-O

*Biering v. JPMS, et al.*

| Related Conflict With | Sentra Securities Corporation | Conflict due t |
| Related Conflict With | Spelman & Co., Inc. | Conflict due t |
| Related Conflict With | Sunamerica Securities, Inc. | Conflict due t |
| Related Conflict With | The Robinson-Humphrey Company, Llc | Conflict due to a |
| Related Conflict With | Vanguard Marketing Corporation | Conflict due to a merger/acquisition |

# DISCLOSURE INFORMATION

Neutral disclosures are provided for the parties' information but are not considered conflicts of interest. FINRA's list selection algorithm does not screen disclosure information when generating lists of potential neutrals for a case. The parties may consider this information when making decisions as to neutral selection.

Parties are encouraged to conduct their own due diligence for any prospective neutral, including their social media presence. Keep in mind that social media presence can change as accounts may be opened or closed, privacy settings may be changed and posts can be created, edited and/or taken down by the user. Social media posts made by FINRA neutrals do not reflect the opinions and views of FINRA.

| Type | Firm Name | Details |
|---|---|---|
| Arbitrator for | CPR Dispute Resolution Services | |
| Currently on Board of Directors | Family Gateway | Family homeless shelter |
| Disclosed Online Activities | | http://www.godwinlaw.com/attorneys/alison-battiste/ (no longer current) |
| Disclosed Online Activities | Battiste Clement PLLC | https://www.battisteclement.com/ |
| Disclosed Online Activities | Instagram | @ali_b |
| Disclosed Online Activities | LinkedIn | https://www.linkedin.com/in/alisonbattiste/ |
| Disclosed Online Activities | Munck Wilson Mandala, LLP | https://www.munckwilson.com/attorney/alison-l-battiste/ (no longer current) |
| Family Member has relationship with | American Express | Spouse has an account |
| Family Member has relationship with | Chase | Spouse has an account |
| Family Member has relationship with | Citibank | Spouse has an account |
| Family Member has relationship with | Citizen One | Spouse has an account |
| Family Member has relationship with | EECU | Spouse has an account |
| Family Member has relationship with | Light Stream | Spouse has an account |
| Family Member has relationship with | Navy Federal | Spouse has a checking account |
| Family Member has relationship with | PennyMac | Spouse has an account |
| Family Member has relationship with | Saks Fifth Avenue | Spouse has an account |
| Family Member has relations with | | s checking and savings |

J.03d-008

©2025 FINRA. All rights reserved.

| | | |
|---|---|---|
| Had an account with | Mml Investors Services, Llc | 401(k) |
| Had an account with | Tiaa-Cref | 401(k) |
| Has an account with | American Express | |
| Has an account with | Daily Access | 401(k) |
| Has an account with | HSA Bank | |
| Has an account with | Lexus Financial | |
| Has an account with | Neiman Marcus | |
| Has an account with | Nelnet Student Loan Servicing | |
| Has an account with | Nordstrom | |
| Has an account with | Optum Bank | |
| Has published | | In Florida State University's Business Law Review |
| Is a member of | (NEW) Roundtable | |
| Is a member of | Patrick E. Higginbotham American Inn of Court | |
| Is a member of | Texas Supreme Court Historical Society | |
| Is a Member of Bar Association | Dallas Bar Association | |
| Is a Member of Bar Association | Texas | |
| Languages other than English | | Spanish (conversational) |
| Lectured for | Dallas Startup Week 2016 | Issues in Debt and Equity Contracts |
| Licensed to Practice Law in | District of Columbia | # 998034 |
| Licensed to Practice Law in | Supreme Court of the United States | |
| Licensed to Practice Law in | Texas | # 24062603 |
| Licensed to Practice Law in | U.S. Court of Appeals for the Fifth Circuit | |
| Licensed to Practice Law in | U.S. District Court - Arkansas | Eastern; Western |
| Licensed to Practice Law in | U.S. District Court - Texas | Eastern; Northern; Western; Southern |
| My firm/employer is a client of | Texas Security Bank | Firm bank account |
| Non-investment related lawsuit/charge | | 2008 plaintiff in suit for unpaid loan (see background for more information) |
| Non-investment related lawsuit/charge | | 2015 plaintiff in suit for unpaid security deposit (see background for more information) |
| Previously on Board of Directors | Georgetown Club of Dallas | Treasurer |
| Previously on Board of Directors | National Black MBAs of North Texas | Recording Secretary |
| Received Honors | Best Lawyers | Best Lawyers in America, 2024, 2025 |
| Received Honors | Dallas Bar Association | Fellow; "Karen D. McCloud Outstanding Minority Attorney Award" (2022) |
| Received Honors | Dallas Young Lawyers Association | Fellow |
| Received Honors | Super Lawyers | 2015 - 2018 Texas Rising Star |
| Received Honors | Super Lawyers | Selected to Super Lawyers: 2020 - 2024 as a Top rated Business ttorney in Dallas, TX |
| Received Honors | | |

© 2025 FINRA. All rights reserved.

| | |
|---|---|
| Was a Member of Bar Association | American Bar Association |
| Was a Member of Bar Association | District of Columbia |
| Was a Member of Bar Association | National Bar Association |

## PUBLICLY AVAILABLE AWARDS FOR CASES INVOLVING PUBLIC CUSTOMERS
Publicly Available Awards for Cases Involving Public Customers Section, Current as of   10/27/2025

| Case ID | Case Name | Close Date | Role |
|---|---|---|---|
| | There is no award information. | | |

## PUBLICLY AVAILABLE AWARDS FOR CASES NOT INVOLVING PUBLIC CUSTOMERS
Publicly Available Awards for Cases NOT Involving Public Customers Section, Current as of   10/27/2025

| Case ID | Case Name | Close Date | Role |
|---|---|---|---|
| | There is no award information. | | |

## CASES CURRENTLY ASSIGNED INVOLVING PUBLIC CUSTOMERS

| Case ID | Parties and Current Representatives of Record | Date Assigned | Role |
|---|---|---|---|
| | There are no currently assigned cases. | | |

## CASES CURRENTLY ASSIGNED NOT INVOLVING PUBLIC CUSTOMERS

| Case ID | Parties and Current Representatives of Record | Date Assigned | Role |
|---|---|---|---|
| 24-01524 | Matthew Allen Ashley, Neil David Rubinstein, Arthur Goodall Alexander, Hal Mitchell Finberg, John Calandro, Mark Robert Latawiec, Kevin Colby Kuhnel, Antonio Carlos Lopez, Brent Robert Chappell, Bradley Clark Chappell, Michael W Mills, David Anderson Alford (Counsel: Mr. Chad M. Ostrosky, Esq., Chicago, IL) vs. Merrill Lynch Pierce Fenner & Smith Inc. (Counsel: Ira G. Rosenstein, Esq., New York, NY) | 09/25/2024 | Panelist |
| 24-01208 | Joshua D. Biering (Counsel: Mr. Joshua J. Iacuone, Esq., Dallas, TX) vs. J.P. Morgan Securities, LLC, JPMorgan Chase & Co., JPMorgan Chase Bank, N.A (Counsel: Mr. Jeffrey S. Dunlap, Esq., Cleveland, OH) | 10/17/2025 | Panelist |

## ARBITRATOR BACKGROUND INFORMATION

Alison Battiste Clement concentrates her practice in the areas of commercial and high-stakes litigation. As a trial lawyer and legal adviser, Alison represents both plaintiffs and defendants and assists clients with matters related to legal and professional responsibility, intellectual property, and technology. Alison also worked as an adjunct professor at the University of North Texas Law School in Dallas, where she taught a course on legal research and writing.

Alison is a Barrister in the Patrick H. Higginbotham American Inn of Court and a member of the NEW Roundtable.  She has received numerous honors for her research, teaching, and community service.  She has been selected as a four-time "Texas Rising Star" from 2015-2019 and a "Texas Super Lawyer" in 2020 and 2021 and she continues to stay active within the community through various outreach initiatives, including her role as a member of the Board of Family Gateway and a member of Leadership Dallas Class of 2021, Dallas Regional Chamber's flagship leadership program.

Alison received her J.D. from the Georgetown University Law Center and participated in the International Law Study summer program at University Colle                                                                    Lynch International in London, England. She is a f                                                                    sociation of Young Lawyers Foundation and a member o

CONFIDENTIAL

©2025 FINRA All rights reserved.

J.03d-011

4:26-cv-00381-O
*Biering v. JPMS, et al.*

Alison also worked on financial legislation at a D.C. lobbying firm, helping advocate for strong securities trading legislation. In 2010, she volunteered for the Washington Clinic for the Homeless, where among for a disabled veteran to get social security benefits and move from the shelter to her very own apartme

From 2009 until 2010, she worked at the World Bank, studying the misuse of corporate vehicles by politici In 2009, she worked at a law firm in Costa Rica, assisting with various financial contract issues. From 2006 until 2009, se worked as a transaction attorney at a regional Texas law firm, focusing on real estate transactions and banking law. In the Summer of 2007, she interned at Merrill Lynch International in London, England.

Prior to her legal career, Alison earned a B.S. in chemistry and an MBA from George Washington University in Washington, DC. While pursuing her graduate degree, Alison studied International Business at Fundação Getúlio Vargas in São Paulo, Brazil, which offers programs in economics, business administration, and international relations. Alison also started and ran a small business, Ali B's Boutique, which sold women's clothing online.

ADDITIONAL DISCLOSURE INFORMATION:

In 2008, I filed suit for an unpaid loan. The defendant paid the loan and the case was dismissed in 2009.

In 2015, I sued a defendant for an unpaid security deposit from a rental lease. The defendant paid the security deposit and the case was dismissed in 2015.

J.03d-011

**UNITED STATES DISTRICT COURT**
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **JOSHUA DAVID SAPPI BIERING,** | § | |
| *Petitioner, Pro Se,* | § | Case No. 4:26-cv-00381-O-BP |
| **v.** | § | |
| **J.P. MORGAN SECURITIES, LLC,** | § | FINRA Case No. 24-01208 |
| **JPMORGAN CHASE & CO., and** | § | EEOC Charge No. 450-2024-04743 |
| **JPMORGAN CHASE BANK, N.A.,** | § | AAA Case No. 01-26-0000-7215 |
| *Respondents.* | § | |

# EXHIBIT K.09b

## Cohen–Stainback Oct. 28, 2023 Email Chain – Resignation Response
## K.09b-001 – K.09b-003

**Description:** Cohen and Stainback email exchange (3:11–3:56 PM, Oct. 28, 2023) following Stainback's forwarding of Biering's resignation (K.09a). Documents the immediate HR-level discussion before the instruction to hold the U-5 wording (K.09c, 5:37 PM).

**Relevance:** Captures the Oct. 28 chain between Cohen (HR Head) and Stainback (HR Business Advisor) in the hours between Biering's resignation and the U-5 hold instruction. Corroborates the coordinated HR response to the resignation and the managed U-5 narrative. Cross-references K.09a, K.09c, and K.06 (same-day U5 urgency chain).

**Source:** CX-135 (JPMS_00027073), CX-137 (JPMS_00027076), CX-139 (JPMS_00027081) – Oct. 28, 2023 email chain

**Petition Ref:** Dkt. 11, App. A p. 53 (Oct. 28 U-5 coordination chain).

**Disclosures:** None — reproduced as produced, no added markings

**Filing Status:** Public – not sealed

K.09b-001

4:26-cv-00381-O

*Biering v. JPMS, et al.*

Message

| | |
|---|---|
| **From:** | Cohen, Jena B [jena.b.cohen@jpmorgan.com] |
| **Sent:** | 10/28/2023 3:11:52 PM |
| **To:** | Stainback, Stephanie [Stephanie.Stainback@jpmorgan.com] |
| **Subject:** | RE: [EXTERNAL]Josh Biering Resignation |

Thank you -  will we tell him there is an ongoing investigation which may result in a change in his status to term for cause?

---

**From:** Stainback, Stephanie (WM, USA) <Stephanie.Stainback@jpmorgan.com>
**Date:** Saturday, Oct 28, 2023 at 11:09 AM
**To:** Cohen, Jena B (WM, USA) <jena.b.cohen@jpmorgan.com>
**Subject:** FW: [EXTERNAL]Josh Biering Resignation

---

**From:** Stewart, Ben (WM, USA) <ben.stewart@jpmorgan.com>
**Sent:** Saturday, October 28, 2023 10:04 AM
**To:** Stainback, Stephanie (WM, USA) <Stephanie.Stainback@jpmorgan.com>
**Subject:** Fwd: [EXTERNAL]Josh Biering Resignation

---

**From:** Josh Biering <josh.biering@gmail.com>
**Sent:** Saturday, October 28, 2023 9:45:17 AM
**To:** Aughinbaugh, John T (WM, USA) <john.t.aughinbaugh@jpmorgan.com>; Stewart, Ben (WM, USA) <ben.stewart@jpmorgan.com>; Hitchcock, Kyle E (WM, USA) <kyle.e.hitchcock@jpmorgan.com>
**Cc:** Chilian, Peter C (WM, USA) <peter.c.chilian@jpmorgan.com>; Agather, Elaine (WM, USA) <Elaine.Agather@jpmorgan.com>
**Subject:** [EXTERNAL]Josh Biering Resignation

Dear Leadership Team-

I am writing to inform you of my formal resignation via email in addition to my submission via me@jpmc. It has been an absolute honor and privilege to have worked at JPMorgan and I thank you all for the opportunity over the last eight years. I will always have a place in my heart for the great teammates and clients I have met along the way- truly such a special place.

It comes with a solemn feeling- but after several months of consideration- I feel this is the best move for me both personally and professionally. I wish you all the best of luck and excited for our paths to cross again in the future.

With gratitude,

Josh Biering
912-308-5781 (m)
josh.biering@gmail.com

Exhibit

**CX135**

K.09b-002
4:26-cv-00381-O
*Biering v. JPMS, et al.*

Message

| | |
|---|---|
| **From:** | Stainback, Stephanie [Stephanie.Stainback@jpmorgan.com] |
| **Sent:** | 10/28/2023 3:21:34 PM |
| **To:** | Cohen, Jena B [jena.b.cohen@jpmorgan.com] |
| **Subject:** | RE: [EXTERNAL]Josh Biering Resignation |

Yes, I think that will be the plan. ER and Global Security have not spoken with him yet so will get their guidance but he is obligated to continue to cooperate during the investigation(s).

**From:** Cohen, Jena B (WM, USA) <jena.b.cohen@jpmorgan.com>
**Sent:** Saturday, October 28, 2023 10:12 AM
**To:** Stainback, Stephanie (WM, USA) <Stephanie.Stainback@jpmorgan.com>
**Subject:** RE: [EXTERNAL]Josh Biering Resignation

Thank you - will we tell him there is an ongoing investigation which may result in a change in his status to term for cause?

**From:** Stainback, Stephanie (WM, USA) <Stephanie.Stainback@jpmorgan.com>
**Date:** Saturday, Oct 28, 2023 at 11:09 AM
**To:** Cohen, Jena B (WM, USA) <jena.b.cohen@jpmorgan.com>
**Subject:** FW: [EXTERNAL]Josh Biering Resignation

**From:** Stewart, Ben (WM, USA) <ben.stewart@jpmorgan.com>
**Sent:** Saturday, October 28, 2023 10:04 AM
**To:** Stainback, Stephanie (WM, USA) <Stephanie.Stainback@jpmorgan.com>
**Subject:** Fwd: [EXTERNAL]Josh Biering Resignation

**From:** Josh Biering <josh.biering@gmail.com>
**Sent:** Saturday, October 28, 2023 9:45:17 AM
**To:** Aughinbaugh, John T (WM, USA) <john.t.aughinbaugh@jpmorgan.com>; Stewart, Ben (WM, USA) <ben.stewart@jpmorgan.com>; Hitchcock, Kyle E (WM, USA) <kyle.e.hitchcock@jpmorgan.com>
**Cc:** Chilian, Peter C (WM, USA) <peter.c.chilian@jpmorgan.com>; Agather, Elaine (WM, USA) <Elaine.Agather@jpmorgan.com>
**Subject:** [EXTERNAL]Josh Biering Resignation

Dear Leadership Team-

I am writing to inform you of my formal resignation via email in addition to my submission via me@jpmc. It has been an absolute honor and privilege to have worked at JPMorgan and I thank you all for the opportunity over the last eight years. I will always have a place in my heart for the great teammates and clients I have met along the way- truly such a special place.

It comes with a solemn feeling- but after several months of consideration- I feel this is the best move for me both personally and professionally. I wish you all the best of luck and excited for our paths to cross again in the future.

CONFIDENTIAL
K.09b-002

JPMS_00027076

K.09b-003
4:26-cv-00381-O
*Biering v. JPMS, et al.*

With gratitude,

Josh Biering
912-308-5781 (m)
josh.biering@gmail.com

K.09b-004
4:26-cv-00381-O
Biering v. JPMS, et al.

Message

| | |
|---|---|
| **From:** | Stainback, Stephanie [Stephanie.Stainback@jpmorgan.com] |
| **Sent:** | 10/28/2023 3:56:19 PM |
| **To:** | Cohen, Jena B [jena.b.cohen@jpmorgan.com] |
| **Subject:** | RE: [EXTERNAL]Josh Biering Resignation |

I think it could be amazing too but would wait for him to do so.  When she spoke with Kyle he promised it would be held within HR at this point and she is very fragile right now.  I'll check with Jonathan and Linda to get their view.  Is he wanting to call her this weekend?  I suggest holding for now and then maybe he reaches out early next week if Linda/Jonathan agree.

**From:** Cohen, Jena B (WM, USA) <jena.b.cohen@jpmorgan.com>
**Sent:** Saturday, October 28, 2023 10:45 AM
**To:** Stainback, Stephanie (WM, USA) <Stephanie.Stainback@jpmorgan.com>
**Subject:** RE: [EXTERNAL]Josh Biering Resignation

Dave is aski my if he should call her to show his support and that we have her back - I'm torn on it (could be amazing but also could be embarrassing for her to know he knows). Can you get Jonathan and Linda's view? He wants her to know she is fully supported by all of us

**From:** Stainback, Stephanie (WM, USA) <Stephanie.Stainback@jpmorgan.com>
**Date:** Saturday, Oct 28, 2023 at 11:21 AM
**To:** Cohen, Jena B (WM, USA) <jena.b.cohen@jpmorgan.com>
**Subject:** RE: [EXTERNAL]Josh Biering Resignation

Yes, I think that will be the plan.  ER and Global Security have not spoken with him yet so will get their guidance but he is obligated to continue to cooperate during the investigation(s).

**From:** Cohen, Jena B (WM, USA) <jena.b.cohen@jpmorgan.com>
**Sent:** Saturday, October 28, 2023 10:12 AM
**To:** Stainback, Stephanie (WM, USA) <Stephanie.Stainback@jpmorgan.com>
**Subject:** RE: [EXTERNAL]Josh Biering Resignation

Thank you -  will we tell him there is an ongoing investigation which may result in a change in his status to term for cause?

**From:** Stainback, Stephanie (WM, USA) <Stephanie.Stainback@jpmorgan.com>
**Date:** Saturday, Oct 28, 2023 at 11:09 AM
**To:** Cohen, Jena B (WM, USA) <jena.b.cohen@jpmorgan.com>
**Subject:** FW: [EXTERNAL]Josh Biering Resignation

**From:** Stewart, Ben (WM, USA) <ben.stewart@jpmorgan.com>
**Sent:** Saturday, October 28, 2023 10:04 AM
**To:** Stainback, Stephanie (WM, USA) <Stephanie.Stainback@jpmorgan.com>
**Subject:** Fwd: [EXTERNAL]Josh Biering Resignation

**Exhibit**

**CX139**

K.09b-005

426-cv-00381-O

*Biering v. JPMS, et al.*

**From:** Josh Biering <josh.biering@gmail.com>
**Sent:** Saturday, October 28, 2023 9:45:17 AM
**To:** Aughinbaugh, John T (WM, USA) <john.t.aughinbaugh@jpmorgan.com>; Stewart, Ben (WM, USA) <ben.stewart@jpmorgan.com>; Hitchcock, Kyle E (WM, USA) <kyle.e.hitchcock@jpmorgan.com>
**Cc:** Chilian, Peter C (WM, USA) <peter.c.chilian@jpmorgan.com>; Agather, Elaine (WM, USA) <Elaine.Agather@jpmorgan.com>
**Subject:** [EXTERNAL]Josh Biering Resignation

Dear Leadership Team-

I am writing to inform you of my formal resignation via email in addition to my submission via me@jpmc. It has been an absolute honor and privilege to have worked at JPMorgan and I thank you all for the opportunity over the last eight years. I will always have a place in my heart for the great teammates and clients I have met along the way- truly such a special place.

It comes with a solemn feeling- but after several months of consideration- I feel this is the best move for me both personally and professionally. I wish you all the best of luck and excited for our paths to cross again in the future.

With gratitude,

Josh Biering
912-308-5781 (m)
josh.biering@gmail.com

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| **JOSHUA DAVID SAPPI BIERING,** | § | |
| *Petitioner, Pro Se,* | § | Case No. 4:26-cv-00381-O-BP |
| **v.** | § | |
| **J.P. MORGAN SECURITIES, LLC,** | § | FINRA Case No. 24-01208 |
| **JPMORGAN CHASE & CO., and** | § | EEOC Charge No. 450-2024-04743 |
| **JPMORGAN CHASE BANK, N.A.,** | § | AAA Case No. 01-26-0000-7215 |
| *Respondents.* | § | |

# EXHIBIT N.01r
## EEOC Charge of Discrimination – Public Redacted (FRCP 5.2)
## N.01r-001 – 003

**Description:** EEOC Form 5 Charge of Discrimination filed by Joshua Biering against JPMorgan Chase, with FRCP 5.2 redactions on the Petitioner's home address, phone number, and full date of birth. The unredacted (sealed) counterpart is filed under seal as Exhibit N.01.

**Relevance:** Establishes Petitioner's timely administrative exhaustion of EEOC remedies and the scope of the discrimination / retaliation claims asserted against JPMS. Required predicate to the Title VII federal-court claims in Dkt. 11.

**Source:** U.S. Equal Employment Opportunity Commission – EEOC Charge No. 450-2024-04743; AAA Case No. 01-26-0000-7215.

**Petition Ref:** Dkt. 11 ¶¶ [EEOC exhaustion / Title VII]; EEOC Charge No. 450-2024-04743.

**Disclosures:** Redactions: FRCP 5.2(a): home address, phone number, full date of birth redacted; year of birth preserved. │ Annotations: None — reproduced as produced

**Filing Status:** Public — not sealed

N.01r-001
4:26-cv-00381-O
*Biering v. JPMS, et al.*

EEOC Form 5 (11/09)

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

Charge Presented To:    Agency(ies)

☐ FEPA

☐ EEOC

The Texas Workforce Commission _____ and EEOC

*State or local Agency, if any*

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Joshua David Sappi Biering | ███ | ███ |

| Street Address | City, State and ZIP Code |
|---|---|
| ███ | Fort Worth, Texas 76109 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two are named, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| J.P. Morgan Chase Bank N.A. | | ███ |

| Street Address | City, State and ZIP Code |
|---|---|
| ███ | |

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☑ RACE  ☐ COLOR  ☑ SEX  ☐ RELIGION  ☑ NATIONAL ORIGIN
☑ RETALIATION  ☐ AGE  ☑ DISABILITY  ☐ GENETIC INFORMATION
☑ OTHER (Specify) Requesting accommodations for disability; Inquiring about coworkers's salaries (unequal)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest        Latest
October 2023

☑ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I am a 100% service connected- disabled army veteran and served in Afghanistan in support of Operation Enduring Freedom. I am a dual Brazilian-American citizen. The J.P. Morgan Private Bank knows these facts.

I resigned from the J.P. Morgan Private Bank (Fort Worth) in October 2023. Earlier in 2023, I requested FMLA and reasonable accommodations to focus on my health/disability but was denied. After I resigned to terminate my employment with J.P. Morgan, I was required to honor a 60 day notice period ("garden leave"), during which time I was instructed to perform no work. I resigned and was no longer working for J.P. Morgan with plans to join a competitive firm.

I requested my personnel file/records along with my rights during the 60 day "garden leave" but was denied this information.

Following my resignation, J.P. Morgan conducted an investigation of a consensual relationship with a female co-worker. To my understanding, J.P. Morgan did not conduct an investigation of the female co-worker's actions. I complained about this difference, and that J.P. Morgan was refusing to even consider or accept evidence I had proving the consensual, same and reciprocated behavior by the female co-worker. J.P. Morgan has never contested that this relationship was consensual. Despite this, J.P. Morgan - weeks after I had already resigned and terminated my employment - determined that it was instead "firing" me for "violating the firm's anti harassment policies." When asked for more detail as to communicate to new prospective employers why I was "terminated" - J.P. Morgan Counsel, Leadership, Employee Relations and Human Relations refused to timely provide any details or substantive evidence.

███

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

02/25/2024
Date

*Joshua David Sappi Biering*
Charging Party Signature

NOTARY – When necessary for State or Local Agency Requirements

*Judith Moore*    Virginia, Prince William County

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

*Joshua David Sappi Biering*

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) 02/25/2024

COMMONWEALTH OF VIRGINIA
ELECTRONIC NOTARY PUBLIC

**Judith Moore**
REGISTRATION NUMBER
8030982
COMMISSION EXPIRES
October 31, 2026

tion technology via Proof.

EEOC Form 5 (11/09)

| | | |
|---|---|---|
| **CHARGE OF DISCRIMINATION**<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To: | Agency(ies) |
| | ☐ FEPA | |
| | ☑ EEOC | |

Texas Workforce Commisison                                                                 and EEOC

*State or local Agency, if any*

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

Also following my resignation, and in retaliation, J.P. Morgan claimed to audit my expense reports, an uncommon practice as they were submitted per standard/years of SOP and other co-workers ███ ████████████████████████████████ were not subject to the same scrutiny on their expense reports. This was part of a non-standard, non-protocol, non-procedural, pointed decision to plot a termination.

To make matters worse, after I complained about this discriminatory treatment, J.P. Morgan retaliated against me, by among other things, intentionally and knowingly mismarking my FINRA U5 form as "discharged" other than "voluntary", which is very damaging in my industry.  Prospective employers did not extend offers and retracted their interest because of my Form U5 marking as well as my "vague" responses to why J.P. Morgan terminated me.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State or Local Agency Requirements<br><br>*Judith Moore*        Virginia, Prince William County |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>*Joshua David Sappi Biering* |
| 02/25/2024                *Joshua David Sappi Biering*<br>Date                    Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year)      02/25/2024 |



Judith Moore

REGISTRATION NUMBER
8030982
COMMISSION EXPIRES
October 31, 2026

n technology via Proof.

AB-C 0739

N.01r-003
4:26-cv-00381-O
*Biering v. JPMS, et al.*

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request p and its uses are:

**1. FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

**2. AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

**3. PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

**4. ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

**5. WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging party and respondent and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

N.01r-003

0740

**UNITED STATES DISTRICT COURT**
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **JOSHUA DAVID SAPPI BIERING,** | § | |
| *Petitioner, Pro Se,* | § | Case No. 4:26-cv-00381-O-BP |
| **v.** | § | |
| **J.P. MORGAN SECURITIES, LLC,** | § | FINRA Case No. 24-01208 |
| **JPMORGAN CHASE & CO., and** | § | EEOC Charge No. 450-2024-04743 |
| **JPMORGAN CHASE BANK, N.A.,** | § | AAA Case No. 01-26-0000-7215 |
| *Respondents.* | § | |

# EXHIBIT N.03r

## Petitioner's EEOC Reply to Respondent's Position Statement – Public Redacted N.03r-001 – 020

| | |
|---|---|
| **Description:** | Petitioner's reply submission to the EEOC responding to JPMS's Position Statement in EEOC Charge No. 450-2024-04743, with non-party names redacted in the public version. The unredacted (sealed) counterpart is filed under seal as Exhibit N.03. |
| **Relevance:** | Establishes Petitioner's rebuttal of JPMS's stated justifications for termination and demonstrates the basis for the retaliation and discrimination claims before the EEOC. |
| **Source:** | EEOC Charge No. 450-2024-04743 – Petitioner's Reply dated September 19, 2024. |
| **Petition Ref:** | Dkt. 11 ¶¶ discussing EEOC proceedings, statutory claims, and the administrative record. |
| **Disclosures:** | Redactions: Non-party names redacted in public version; unredacted counterpart sealed at Exhibit N.03. │ Annotations: None — reproduced as produced, no added markings |
| **Filing Status:** | Public — not sealed |



IACUONE McALLISTER POTTER

TRUSTED TESTED RESPECTED

September 19, 2024

**U.S. Equal Employment Opportunity Commission**
Dallas District Office
207 S. Harwood Street, 3rd Floor
Dallas, Texas 75202

Re:    *Mr. Biering/J.P. Morgan ("JPM"); EEOC Charge No. 450-2024-04743*

Dear Investigator:

This letter serves as our response to Mr. Dunlap's position statement on behalf of JPM dated May 24, 2024 ("Response").

The most telling thing in any position statement or briefing is not what is affirmatively represented, but what is omitted or obscured.

### I.   Mischaracterization of Mr. Biering's Role

First, on page one of the Response, JPM describes Mr. Biering as ███████████████ ███████████████ This alone shows the truth – Mr. Biering was not ███████████ ████████████████████████. Furthermore, Mr. Biering sought guidance regarding ███████████████████████████████████ *See* Exhibit A.1 (Texts/████████ Feedback). The attempt to position Mr. Biering as ████████ ██████ is a distortion of the facts and an effort to justify JPM's discriminatory actions.



### II.  Fabricated Investigation of Mr. Biering's Expense Report

Second, page three of the Response discusses an alleged investigation into Mr. Biering's expenses, after Mr. Biering's manager, Ben Stewart, allegedly "noticed suspicious expenses." **This**



**investigation was entirely fabricated after the fact.**[1] As demonstrated by Exh Aug/Sep Expense Report),  Mr. Biering's expenses were submitted and immediately October 2, 2023.  This demonstrates a clear attempt by JPM to retroactively manufacture a *pretext for termination*, especially after Mr. Biering had raised concerns about discrimination.

The *timing of the investigation* strongly suggests a retaliatory motive. Courts recognize that a close temporal proximity between an employee's protected activity and an adverse employment action is indicative of a causal connection, sufficient to establish a *prima facie* case of retaliation. JPM's actions occurred immediately after Mr. Biering raised concerns regarding workplace toxicity/accommodation need, which makes it clear that the investigation into his expenses was not legitimate, but a pretext. *See* Exhibit D.1 (Timeline of Key Events).

### III. Selective Presentation of Evidence in Sexual Harassment Claim Investigation

In the remaining pages of its Response, JPM continues to obscure the truth. JPM ignores text messages between ▮▮▮▮▮▮▮▮▮▮ that we provided during JPM's biased investigation, because those text messages show, definitively, that there ▮▮▮▮▮▮▮ but instead, ▮▮▮▮▮▮▮

K.K.'s prior job wit ▮▮▮▮ ments she had an inappropriate relationship with a senior executive.

JPM simply chooses to smear Mr. Biering with irrelevant information. In fact, finally admitted in the Response (on page 6, FN 4),



**IV. Disparate Treatment Compared to Similarly Situated Employees**

785

as a "Private Bank Associate" via the **_exact_** same job requisition. ██████ and Mr. without question, similarly situated.



## V. Retaliation Following Discrimination Complaints

Finally, on multiple occasions Mr. Biering complained to his managers, including J.T. Aughinbaugh, about being discriminated against because of his military background and disability. Mr. Stewart's (Mr. Biering's direct manager) claims that he "learned" of Mr. Biering's expense reports on October 20, 2023. After those complaints, JPM started "auditing" Mr. Biering's expenses and engaging in other retaliatory acts, including pretextually firing him for the same activities in which K.K. engaged. Most damagingly, and again as admitted by JPM, JPM directed JPMS to mismark Mr. Biering's Form U5 to state that he was "discharged" and that he violated JPM's policies – this was in rank retaliation for Mr. Biering's prior complaints as **_explicitly_** outlined via Exhibit G.1 (Texts w/ Stewart (with emphasis)).

Once a plaintiff establishes a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse action. Here, JPM's stated reasons – *i.e.*, expense policy violations and purported sexual misconduct (*Anti-harassment? Inappropriate behavior? Code of Conduct?*)-- are merely pretext to hide the true retaliatory motive for Mr. Biering's termination. As JPM references, pretext can be demonstrated by showing that the employer's reason is unworthy of credence, as established in *Reeves v. Sanderson Plumbing Products, Inc.,* 520 U.S. 133, 147 (2000). ***The fabricated investigation and selective policy enforcement makes this pretext abundantly clear.***

## VI. Summary of Key Dates

- **May 2023**—Hostility is documented under new management, Aughinbaugh, Hitchcock and Stewart. *See* texts from May 2023 throughout Exhibit G.1 (Texts w/ Stewart (with emphasis)).
- **August 2023**--Mr. Biering raises multiple concerns about the hostile environment. *See* Exhibit G.1 (Texts w/ Stewart (with emphasis)).
- **September 2023**--Management denies Mr. Biering's **_multiple_** requests for reasonable accommodations. *See* Exhibit G.1 (Texts w/ Stewart (with emphasis)).
- **October 2023**--Toxic and Hostile Work environment becomes unsustainable, and Mr. Biering resigns. *See* Exhibit G 2 (Texts w/ ██████ re: Stewart).

- **October 26, 2023**--Mr. Biering submits formal resignation via JPM HR sy and via email. *See* Exhibit H.1(Biering's Email Resignation) and Exhibi (Biering's HR Resignation Submission (with emphasis)).
- **December 1, 2023**--J.T. Aughinbaugh and Mr. Stewart call Mr. Biering and purportedly "terminate" Mr. Biering for a violation of the "*JPM Code of Conduct*" and "*Anti-harassment policy*").[6]
  - *Merrill* █████, *UBS, Morgan Stanley, RBC, Texas Capital and other prospective employers "pass" on Biering despite him being a "first round draft pick".*

Thank you so much.

Sincerely,

Joshua J. Iacuone

---

[6] Mr. Biering recorded the termination call with Aughinbaugh and Stewart, which is available upon request. The *specific* use and accusation of violating the "anti-harassment policy" is purposefully vague and incendiary. This overly broad and vague rationale caused prospective employers to grow suspect of Biering's termination and passed on further consideration of hiring Biering. JPM conveniently changed their tone from a violation of "anti-harassment" violation to "inappropriate behavior" (*i.e.*, staying overnight with K.K.) weeks later, after prospective employers denied Biering employment.

N.03r-006

4:26-cv-00381-O

*Biering v. JPMS, et al.*

## Exhibit A.1 (Texts/████████ Feedback)



N.03r-006

N.03r-007
4:26-cv-00381-O
*Biering v. JPMS, et al.*

Exhibit A.2 (Texts w/ ▮▮▮ re: ▮▮▮



N.03r-007

789

N.03r-008
4:26-cv-00381-O
Biering v. JPMS, et al.

Exhibit B.1 (Texts ███ re: ███ & Aughinbaugh)



N.03r-009
4:26-cv-00381-O
*Biering v. JPMS, et al.*

Exhibit B.2 (Text Compilation



<span style="color:red">Exhibit B.2 (Text Compilation of ██████████ )</span>





N.03r-011
4:26-cv-00381-O
*Biering v. JPMS, et al.*

## Exhibit C.1 (JB Aug/Sep Expense Report)

**Expense Report**
**Report Name : August Expenses (cont)**

**Employee Name :** BIERING, JOSHUA D.
**Employee SID :** I662283

### Report Header

**Report Key :** 9578591
**Report Id :** B8C36936380445409FFA
**Report Date :** 09/18/2023
**Business Purpose :** General Business & Entertainment
**Submit Date :** 10/02/2023
**Country Code :** UNITED STATES
**Expense LE :** JPMORGAN CHASE BANK, N.A. (0802)
**Cost Center :** USPB FORT WORTH (SC) (254896)
**Approval Status :** Approved
**Payment Status :** Payment Confirmed
**Comment :** System, Concur (10/02/2023): No response Line 17: (Entertainment: Non-Employee , 350 USD) - User entered date, merchant, and expense type are verified. Amount (USD 350.00) could not be verified.
**Exceptions :** Important Information: If your report has cash/out-of-pocket transactions, please see the article called "Update me@jpmc for Cash / Out-of-Pocket reimbursement" in the Concur Company Notes. It's important that your bank details are up to date in me@jpmc in order to avoid payment delays.


N.03r-012
4:26-cv-00381-O
*Biering v. JPMS, et al.*

## Exhibit D.1 (Timeline of Key Events)

| Date | Event |
| --- | --- |
| January 2023 | Aughinbaugh appointed new Market Manager of the  M Fort Worth Office. |
| Friday, 5/25/2023 | Mr. Biering has an emotional breakdown in the office with Stewart, frustrated with hostility from new management (Aughinbaugh and Hitchcock). Expresses concerns about the hostile work environment. |
| Thursday, 8/24/2023 | Mr. Biering asks J.T. Aughinbaugh for drinks to discuss dissatisfaction and communication issues. |
| Friday, 8/25/2023 & Saturday, 8/26/2023 | Mr. Biering texts Stewart, confirming the hostile environment and constant ridicule. |
| Thursday, 9/7/2023 | Mr. Biering texts Stewart, "Can we please connect tomorrow? I don't like the emotional state that I'm in..." |
| ███████ | ███████ |
| Sunday, 9/10/2023 | Mr. Biering texts Stewart for reasonable accommodations, which Stewart denies. |
| Monday, 10/2/2023 | Mr. Biering's expense report for the charity event is approved and submitted for reimbursement. |
| Tuesday, 10/3/2023 | Mr. Biering has a one-on-one review with Stewart discussing compensation disparity and lack of resources. Mr. Biering informs Stewart of his intent to resign. |
| Friday, 10/6/2023 | Mr. Biering speaks with JPM HR contact Stainbeck about FMLA request. |
| Friday, 10/20/2023 | JPM initiates an investigation into Mr. Biering's expenses. |
| Tuesday, 10/24/2023 | Mr. Biering emails Hitchcock, expressing frustration about being "thrown under the bus." Later, he meets with Aughinbaugh and Stewart to discuss his resignation and incentive compensation. |
| Wednesday, 10/25/2023 | Mr. Biering informs Stewart of his plan to take paid time off from 10/26 to 10/28. Stewart forwards alleged evidence of expense violations to JPM HR. |
| Thursday, 10/26/2023 | Mr. Biering is involved in contentious divorce proceedings. Hitchcock reports a sexual harassment complaint to JPM HR with Mr. Biering as the subject. |

N.03r-013
4:26-cv-00381-O
*Biering v. JPMS, et al.*



N.03r-013

## Exhibit F.1 (Email re: JPM Expense Investigation)

**Fwd: Validate External Sender- Garden Leave - SID I662283**

Josh Biering ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Sun 12/24/2023 8:30 PM

To:Tidwell-Neal, Rachel L <rachel.l.tidwell-neal@jpmchase.com>;Cohen, Jena B <jena.b.cohen@jpmorgan.com>
Cc:Josh Iacuone <iacuone@roggedunngroup.com>;Stewart, Ben <ben.stewart@jpmorgan.com>;Aughinbaugh, John T <john.t.aughinbaugh@jpmorgan.com>;nadia.muraira@jpmchase.com <nadia.muraira@jpmchase.com>;Hitchcock, Kyle E <kyle.e.hitchcock@jpmorgan.com>

📎 1 attachments (254 KB)

J. Biering - JPMorgan Background Info - Expenses- 11.16.2023.pdf;

I never heard back regarding this bogus investigation- did you have enough to frame me with the other one as to unethically try and retain assets or business?

Weird that Nadia's number was "disconnected" when I tried following up with her.

Regards,

JB

---

**From:** Josh Biering ▮▮▮▮▮▮▮@gmail.com>
**Sent:** Friday, November 17, 2023 4:02 PM
**To:** nadia.muraira@jpmchase.com <nadia.muraira@jpmchase.com>
**Subject:** Re: Validate External Sender- Garden Leave - SID I662283

Nadia-

I apologize for the delay. Please see the attached write up I prepared that may be helpful in highlighting the SOPs I have grown to learn and operate under pertaining to Expense Reports.

I look forward to discussing and clarifying any additional questions you might have on Monday.

Have a wonderful weekend,

Josh

▮▮▮▮▮▮▮▮▮▮▮▮

N.03r-014

## Exhibit G.1 (Texts w/ Stewart (with emphasis))



5/22/2023 4:57:15 PM

Why is Kyle pinging ████████████



5/27/2023 8:59:46 AM

I put some time on the calendar next week to catch up with you and JT. Hope that's okay

Of course. Any context you wanna share to what you'd like to talk about?

Honestly I'm just still in my head and a little frustrated and I know it's a lot on me but just want an opportunity to professionally and calmly tell JT how I feel and I enjoy working at JPMorgan and proud of it but I want to feel comfortable in my work place. If that makes sense.

I can see where your coming from. So just to be clear, you're saying that on the back of this U4 and petrey stuff…. You don't feel comfortable in your workplace given your relationship with J.T. Or me? Or Kyle? I can see you're very frustrated and I wanna help josh.

U4 stuff is just a small part of it. It's honestly just me in my head thinking that Jt/Kyle don't appreciate my style. My approach and I feel like I add a lot of value and do have great partnerships and want to get that off my chest

And then especially after getting that petrey email… I'm like. Wtf. We all saw that coming

I want to establish a mutual respect and appreciation and understand what'll take from Jt perspective for me to get there



8/26/2023 8:41:48 AM

Bro. Genuinely trying. Genuinely tried. Just like don't know what to do anymore

Buddy you still aren't telling me anything. I know you are trying and I know you're doing a great job. Just tell me what happened

I don't want to keep bogging you down in this drama. I can call you and explain.

In summary. Everything was going great. Good bonding. Then took a turn and I left

Man we are getting ready to head out to my parents place before we go to my grandmas. I'll try to call you at some point when I'm not with all the family.

No please don't worry about it. Enjoy time with your family.



N.03r-016
4:26-cv-00381-O
Biering v. JPMS, et al.

## Exhibit G.1 (Texts w/ Stewart (with emphasis))







Exhibit G.1 (Texts w/ Stewart (with emphasis))





## Exhibit G.2(Texts w/ ▮▮▮▮▮ re: Stewart)



10/3/2023 5:28:08 PM

You all good man? You've had several lengthy 1:1s with Benjamin lately

Ha. Was it obvious

Yes. I was having a 1:1 with Mary Frances, who said voices were elevated

How loud?

Idk. She didn't say much after that. What's going on?

Oh thought you were in there. I dunno man.

No, we went to another room. You didn't quit did you?

I don't know.

Tight lips, I get it

## Exhibit H.1(Biering's Email Resignation)

**Josh Biering Resignation**

Josh Biering ▮▮▮▮▮▮▮▮▮▮▮▮▮

Sat 10/28/2023 9:45 AM

To:John.T.Aughinbaugh@jpmorgan.com <John.T.Aughinbaugh@jpmorgan.com>;ben.stewart@jpmorgan.com <ben.stewart@jpmorgan.com>;kyle.e.hitchcock@jpmorgan.com <kyle.e.hitchcock@jpmorgan.com>
Cc:Peter.C.Chilian@jpmorgan.com <Peter.C.Chilian@jpmorgan.com>;Elaine.Agather@jpmorgan.com <Elaine.Agather@jpmorgan.com>

Dear Leadership Team-

I am writing to inform you of my formal resignation via email in addition to my submission via me@jpmc. It has been an absolute honor and privilege to have worked at JPMorgan and I thank you all for the opportunity over the last eight years. I will always have a place in my heart for the great teammates and clients I have met along the way- truly such a special place.

It comes with a solemn feeling- but after several months of consideration- I feel this is the best move for me both personally and professionally. I wish you all the best of luck and excited for our paths to cross again in the future.

With gratitude,

Josh Biering

▮▮▮▮▮▮▮▮▮▮▮▮



N.03r-020
4:26-cv-00381-O
*Biering v. JPMS, et al.*

Exhibit H. 2 (Biering's HR Resignation Submission w/ Emphasi

the new (me) jpmc

**Voluntary Termination**

# Joshua Biering

SID I662283

Reason **Dissatisfied with Work Conditions**

Effective **26-Dec-2023**

Your resignation was processed. You will receive an email from jpmcesm@servicenow.jpmchase.com with a link to tools and next steps for leaving the company.

If you did not initiate this change (directly or by request), please speak with your manager.

## Termination Details

| | |
|---|---|
| Legal Employer | JPMorgan Chase Bank, National Association |
| Notification Date | 2023-10-28 |
| Termination Date | 2023-12-26 |
| Last Day Worked | 2023-10-26 |
| Post JPMC Employment Plans | Unknown |
| Notice Period | Exceeds by 0 days |

**Approvers**

28-Oct-2023 10:39 AM

✔ Approved by **Workflow System**

28-Oct-2023 10:39 AM

⬆ Submitted by **Joshua Biering**

N.03r-020

**UNITED STATES DISTRICT COURT**
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **JOSHUA DAVID SAPPI BIERING,** | § | |
|    *Petitioner, Pro Se,* | § | Case No. 4:26-cv-00381-O-BP |
| **v.** | § | |
| **J.P. MORGAN SECURITIES, LLC,** | § | FINRA Case No. 24-01208 |
| **JPMORGAN CHASE & CO., and** | § | EEOC Charge No. 450-2024-04743 |
| **JPMORGAN CHASE BANK, N.A.,** | § | AAA Case No. 01-26-0000-7215 |
|    *Respondents.* | § | |

# EXHIBIT O.02

## FINRA Investigator Emails – CRD / U5 Investigation Correspondence

## O.02-001 – O.02-003

| | |
|---|---|
| **Description:** | FINRA regulatory correspondence and investigator emails related to the CRD record and Form U-5 investigation initiated by state securities regulators following JPMS's Form U-5 filing (Jan.–Oct. 2024). |
| **Relevance:** | Regulatory record bearing on the CRD / U-5 public-record theory and establishes that FINRA and state regulators investigated the U-5 disclosure, corroborating the defamatory-content and harm-to-reputation claims. |
| **Source:** | FINRA Dispute Resolution Services – investigator email chain; Jan.–Oct. 2024 |
| **Petition Ref:** | Dkt. 11, App. A ("FINRA Investigator Emails"). |
| **Disclosures:** | None — reproduced as produced, no added markings |
| **Filing Status:** | Public – not sealed |

O.02-001
4:26-cv-00381-O
Biering v. JPMS, et al.

 Outlook

## Re: FINRA Inquiry

**From** Josh <j▮▮▮▮@gmail.com>
**Date** Tue 2025-10-14 8:32 PM
**To** Theotikos, Demetri <Demetri.Theotikos@finra.org>
**Bcc** Joshua Iacuone ("Icon") <josh@imcplaw.com>; Anna Richardson <anna@imcplaw.com>

Demetri-

I have yet to hear back from you or FINRA regarding my legitimate (and accurate) report regarding fraud on behalf of FINRA's largest member.

I have submitted an inquiry to my local Congresswomen to request a status update as I have been stonewalled despite my follow ups and time since my last follow up. Out of professional courtesy - I also welcome any such reply.

Given FINRA's status as a SRO within SEC's jurisdiction - I trust that falls within my Congresswoman's duty and jurisdiction.

I sincerely welcome any reply or response.

Regards-

Josh Biering

---

**From:** Josh <j▮▮▮▮@gmail.com>
**Sent:** Tuesday, March 18, 2025 11:40:46 PM
**To:** Theotikos, Demetri <Demetri.Theotikos@finra.org>
**Subject:** Re: FINRA Inquiry

Demetri -

JPMorgan continues to falsely and misleadingly communicate to the masses ▮▮▮▮▮▮ ▮▮▮▮▮ which is not the case. Can you please provide an update?

---

**From:** Josh <j▮▮▮▮@gmail.com>
**Sent:** Saturday, March 15, 2025 10:12:10 PM
**To:** Theotikos, Demetri <Demetri.Theotikos@finra.org>
**Subject:** Re: FINRA Inquiry

Good Evening Demetri-

ollow back up via email. I left 2 voicemails late February and earlier this month but I haven't your office. I understand you are busy, particularly with your respective case loads, but I would

CONFIDENTIAL

welcome and certainly appreciate an update on my original inquiry.

Can you please provide an update or point me in the right direction?

Thank you,

Josh Biering
M████████8

---

**From:** Josh <j████@gmail.com>
**Sent:** Thursday, January 30, 2025 4:31 PM
**To:** Theotikos, Demetri <Demetri.Theotikos@finra.org>
**Subject:** Re: FINRA Inquiry

Thank you for your time, here are the documents I'm referencing.

████████████████████████

---

**From:** Theotikos, Demetri <Demetri.Theotikos@finra.org>
**Sent:** Thursday, January 30, 2025 3:46 PM
**To:** j████@gmail.com <j████@gmail.com>
**Subject:** FINRA Inquiry

Mr. Biering,

I am reviewing the information you provided to FINRA regarding JP Morgan Securities Inc.

Please contact me at your convenience to discuss the matter. I'm located in Chicago, IL and I am available 9am – 5pm M-F CST.

I look forward to hearing from you.

Sincerely,
Demetri

Demetri G. Theotikos
Principal Investigator

FINRA - Chicago District Office
55 West Monroe Street
Suite 2700
Chicago, IL 60603-5052
Tel: 312 899-4647
Fax: 312 606-0742
demetri.theotikos@finra.org

Confidentiality Notice:: Information contained in or attached to this email may be non-public, confidential. Do not use, save, or copy any of that information, and do not share it with

CONFIDENTIAL

O.02-003
4:26-cv-00381-O
*Biering v. JPMS, et al.*

anyone else, unless you are the intended recipient. The sender has not authorized you to save, use, or share any information provided to you in error. If the sender sent you this email or any attachment by mistake, please let the sender know by replying to this email and then deleting it.

**UNITED STATES DISTRICT COURT**
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **JOSHUA DAVID SAPPI BIERING,** | § | |
| *Petitioner, Pro Se,* | § | Case No. 4:26-cv-00381-O-BP |
| **v.** | § | |
| **J.P. MORGAN SECURITIES, LLC,** | § | FINRA Case No. 24-01208 |
| **JPMORGAN CHASE & CO., and** | § | EEOC Charge No. 450-2024-04743 |
| **JPMORGAN CHASE BANK, N.A.,** | § | AAA Case No. 01-26-0000-7215 |
| *Respondents.* | § | |

# EXHIBIT R.01

## Documented Fee and Cost Schedule
## R.01-001 – 007

**Description:** Itemized schedule of fees and costs across four categories: (1) wrongful U5 filing, (2) discovery obstruction, (3) panel-error / vacatur work, and (4) U4 / regulatory-correction work referenced in the petition.

**Relevance:** Supports the damages claim by documenting the financial impact of Respondents' conduct. Each category ties to specific petition allegations and underlying evidence.

**Source:** Damages and Cost Schedule prepared by Petitioner for the petition record.

**Petition Ref:** Dkt. 11 ¶¶ discussing damages, costs, and fees incurred as a result of Respondents' wrongful conduct.

**Disclosures:** None — reproduced as produced, no added markings

**Filing Status:** Public – not sealed

R.01-001
4:26-cv-00381-O
*Biering v. JPMS, et al.*

# FEE SUMMARY BY CAUSATION CATEGORY

| Category | Description | Invoices | Total |
|---|---|---|---|
| A | JPM's Wrongful U5 / Defamatory Termination | 24 | $293,017.06 |
| B | JPM's Discovery Obstruction (190-Day Delay) | 9 | $408,793.39 |
| C | Arbitration Panel Error (Post-Award / Vacatur) | 2 | $123,536.06 |
| D | U4 Archive Correction / Regulatory | 12 | $36,060.75 |
| | **GRAND TOTAL** | 47 | **$861,407.26** |

**Methodology:** Fees are categorized by but-for causation following Goodyear v. Haeger, 581 U.S. 101 (2017). Each invoice is assigned to the wrongful act that proximately caused its incurrence. Where an invoice covers multiple categories, it is allocated to the dominant causation factor.

**Billing Entities:** AW Law, FINRA, GlassRatner, IMcP 7.01, IMcP 7.02, RDG, Upwork

R.01-001

R.01-002
4:26-cv-00381-O
*Biering v. JPMS, et al.*

# CATEGORY A: JPM'S WRONGFUL U5 / DEFAMATORY TERMIN

## Subtotal: $293,017.06 | 24 Invoices

**Causation Basis:** Root cause: Dec 22, 2023 U5 filing. Panel found 'inaccurate,' 'filed to hinder competitive mobility,' 'pattern of conduct.' All fees flow from this wrong. Defamation per se → damages presumed. Hancock v. Variyam, 400 S.W.3d 59 (Tex. 2013).

| # | Firm | Invoice | Date | Amount | Description |
|---|---|---|---|---|---|
| 1 | RDG | RDG-1 | 12/07/2023 | $4,534.20 | Initial consultation — U5 investigation defense |
| 2 | RDG | RDG-2 | 12/13/2023 | $13,653.00 | Pre-arbitration legal work (16.4 hrs Iacuone @ $925) |
| 3 | RDG | RDG-3 | 01/16/2024 | $23,892.85 | Pre-arbitration legal work — case evaluation |
| 4 | RDG | RDG-4 | 03/04/2024 | $5,437.35 | Transition to IMcP / final consultation (5.8 hrs) |
| 5 | IMcP 7.02 | 15 | 02/02/2024 | $4,250.00 | Initial FINRA filing / case setup |
| 6 | IMcP 7.02 | 59 | 03/06/2024 | $15,965.00 | SOC drafting / early discovery |
| 7 | IMcP 7.02 | 95 | 04/02/2024 | $2,050.00 | Discovery / case development |
| 8 | IMcP 7.02 | 131 | 05/03/2024 | $4,900.00 | Discovery / case development |
| 9 | IMcP 7.02 | 143 | 06/02/2024 | $22,350.00 | SOC filing / initial discovery |
| 10 | IMcP 7.02 | 170 | 07/01/2024 | $12,400.00 | Discovery / case development |
| 11 | IMcP 7.02 | 405 | 12/04/2024 | | |
| 12 | IMcP 7.02 | 445 | 01/02/2025 | | |
| 13 | IMcP 7.02 | 482 | 02/05/2025 | | |
| 14 | IMcP 7.02 | 548 | 03/04/2025 | | |
| 15 | IMcP 7.02 | 596 | 04/02/2025 | | |

R.01-002

R.01-003
4:26-cv-00381-O
*Biering v. JPMS, et al.*

| | | | | | |
|---|---|---|---|---|---|
| 16 | IMcP 7.02 | 660 | 05/02/2025 | $6,687.50 | |
| 17 | IMcP 7.02 | 723 | 06/01/2025 | $5,640.00 | preparation |
| 18 | IMcP 7.02 | 1070 | 11/04/2025 | $12,450.00 | Hearing (Dec 3-15, 2025) |
| 19 | IMcP 7.02 | 1124 | 12/01/2025 | $73,883.81 | Hearing & post-hearing briefing |
| 20 | GlassRatner | Retainer | 07/21/2025 | $10,000.00 | Expert retainer (Spindler — U5 damages) |
| 21 | GlassRatner | 80272 | 07/31/2025 | $1,050.00 | Spindler 1.5 hrs @ $700 — damages model |
| 22 | GlassRatner | 80558 | 08/31/2025 | $13,537.50 | Spindler 7.5 + Smith 19.5 hrs — damages model (New charges; total $14,587.50) |
| 23 | FINRA | Filing | 02/01/2024 | $2,225.00 | FINRA Filing fee (> $10M claim) |
| 24 | AW Law | Retainer | 08/07/2025 | $20,000.00 | Retainer for U5 expert witness (Alonso) |
| | | | SUBTOTAL: | $293,017.06 | |

R.01-003

## CATEGORY B: JPM'S DISCOVERY OBSTRUCTION (190-DAY D

### Subtotal: $408,793.39 | 9 Invoices

**Causation Basis:** JPM delayed production 190 days (Mar 10 – Sep 16, 2025) vs. 30-day FINRA standard. 3 Motions to Compel — ALL granted. Panel assessed ALL discovery fees to JPMS. Panel found 'pattern of conduct to hinder.' FAA § 10(a)(3).

| # | Firm | Invoice | Date | Amount | Description |
|---|------|---------|------|--------|-------------|
| 1 | IMcP 7.02 | 237 | 08/06/2024 | $7,425.00 | Discovery / MTC preparation |
| 2 | IMcP 7.02 | 276 | 09/04/2024 | $28,692.50 | Motions to Compel #1-2 (all granted) |
| 3 | IMcP 7.02 | 311 | 10/05/2024 | $31,365.00 | Motions to Compel #3 / Discovery fights |
| 4 | IMcP 7.02 | 363 | 11/06/2024 | $30,362.50 | Discovery continued — ongoing obstruction |
| 5 | IMcP 7.02 | 819 | 07/01/2025 | $19,575.00 | Intensive hearing prep — delayed doc review |
| 6 | IMcP 7.02 | 922 | 08/05/2025 | $88,837.50 | Intensive hearing prep — 7 rounds doc production |
| 7 | IMcP 7.02 | 957 | 09/02/2025 | $69,381.25 | Hearing prep while docs still arriving |
| 8 | IMcP 7.02 | 1022 | 10/03/2025 | $93,654.64 | Hearing prep — final production DURING hearing |
| 9 | Upwork | Est. | 04/15/2025 | $39,500.00 | eDiscovery: processing 14,319 docs JPM dumped without index |
| | | | SUBTOTAL: | $408,793.39 | |



R.01-005
4:26-cv-00381-O
Biering v. JPMS, et al.

# CATEGORY C: ARBITRATION PANEL ERROR (POST-AWARD / VA

## Subtotal: $123,536.06 | 2 Invoices

**Causation Basis:** Panel found every element of defamation per se, then awarded $0. Internal inconsistency → vacatur required. Guardian Flight (5th Cir. 2025). These fees exist because the panel's error forced a de novo petition.

| # | Firm | Invoice | Date | Amount | Description |
|---|---|---|---|---|---|
| 1 | IMcP 7.02 | 1178 | 01/02/2026 | $119,382.76 | Post-award analysis / appeal prep / vacatur research |
| 2 | IMcP 7.02 | 1268 | 02/10/2026 | $4,153.30 | NDTX petition / mediation / confirmation filing |
| | | | SUBTOTAL: | $123,536.06 | |

R.01-006
4:26-cv-00381-O
*Biering v. JPMS, et al.*

## CATEGORY D: U4 ARCHIVE CORRECTION / REGULATOR

### Subtotal: $36,060.75  |  12 Invoices

**Causation Basis:** Related but distinct: U4 customer complaint disclosure, JPMS-RayJay transition advice, FINRA filing fees. Panel acknowledged U4 issue but did not fully resolve. IMcP 7.01 engagement.

| # | Firm | Invoice | Date | Amount | Description |
|---|------|---------|------|--------|-------------|
| 1 | IMcP 7.01 | 14 | 02/02/2024 | $8,992.50 | JPMS-RayJay transition advice |
| 2 | IMcP 7.01 | 55 | 03/06/2024 | $9,982.50 | JPMS-RayJay transition |
| 3 | IMcP 7.01 | 94 | 04/02/2024 | $3,382.50 | JPMS-RayJay transition |
| 4 | IMcP 7.01 | 130 | 05/03/2024 | $7,012.50 | JPMS-RayJay transition |
| 5 | IMcP 7.01 | 142 | 06/01/2024 | $1,072.50 | JPMS-RayJay transition |
| 6 | IMcP 7.01 | 169 | 07/01/2024 | $1,072.50 | JPMS-RayJay transition |
| 7 | IMcP 7.01 | 236 | 08/06/2024 | $1,732.50 | JPMS-RayJay transition |
| 8 | IMcP 7.01 | 275 | 09/04/2024 | $330.00 | JPMS-RayJay transition |
| 9 | IMcP 7.01 | 310 | 10/12/2024 | $1,072.50 | JPMS-RayJay transition |
| 10 | IMcP 7.01 | 362 | 11/18/2024 | $412.50 | JPMS-RayJay transition |
| 11 | IMcP 7.01 | 404 | 12/04/2024 | $585.75 | JPMS-RayJay transition |
| 12 | IMcP 7.01 | 481 | 02/05/2025 | | |
| | | | SUBTOTAL: | | |

R.01-006

R.01-007
4:26-cv-00381-O
*Biering v. JPMS, et al.*

# RECONCILIATION

Category A (Wrongful U5):          $  293,017.06

Category B (Discovery Obstruction): $  408,793.39

Category C (Panel Error):          $  123,536.06

Category D (U4/Regulatory):        $   36,060.75

                                   _____

**GRAND TOTAL:**                    $  861,407.26

This schedule reconciles to the amounts stated in the Verified Petition at ¶¶ 62–65 and the supporting calculations in Exhibit N.

R.01-007

**UNITED STATES DISTRICT COURT**
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **JOSHUA DAVID SAPPI BIERING,** | § | |
| *Petitioner, Pro Se,* | § | Case No. 4:26-cv-00381-O-BP |
| **v.** | § | |
| **J.P. MORGAN SECURITIES, LLC,** | § | FINRA Case No. 24-01208 |
| **JPMORGAN CHASE & CO., and** | § | EEOC Charge No. 450-2024-04743 |
| **JPMORGAN CHASE BANK, N.A.,** | § | AAA Case No. 01-26-0000-7215 |
| *Respondents.* | § | |

# EXHIBIT T.03
## JPM Notice Period Policy
## T.03-001 – 005

**Description:**   JPMorgan Chase Notice Period Policy (effective June 20, 2023) governing the operative notice-period terms cited by JPMS in support of the disputed Form U5 reasoning.

**Relevance:**   Establishes the contractual notice-period framework relied upon by JPMS, the source for the operative policy chart at Ex. T.04, and the petition's argument that JPMS deviated from its own published policy.

**Source:**   FINRA Case No. 24-01208 – Arb. Record CX016 (JPMS 831). JPM Notice Period Policy effective June 20, 2023.

**Petition Ref:**   App. A T.3 (Dkt. 11 p. 54); cited at Dkt. 11 p. 17 (Exs. T.1, T.3-T.4).

**Disclosures:**   Annotations: None — reproduced as produced, no added markings

**Filing Status:**   Public — not sealed

Policy

# Notice Period Policy - U.S.

Current Effective Date: June 20, 2023

## TABLE OF CONTENTS

1. Summary or Rationale ........................................................................... 2
2. Scope ................................................................................................... 2
3. Changes from Previous Version .......................................................... 2
4. Policy Statements ............................................................................... 2
5. Notice Period ....................................................................................... 2
   5.1. Employee's Responsibilities During the Notice Period .................. 3
   5.2. Consequences of Breach/Remedies ............................................ 3
   5.3. Employment-At-Will ...................................................................... 4
6. Defined Terms ..................................................................................... 4
7. Legal and Other .................................................................................. 4
8. Firm References .................................................................................. 4
9. Document Information .......................................................................... 4

HUMAN RESOURCES

ternal Use Only

**JPMS000831**

T.03-001

T.03-002
4:26-cv-00381-O
*Biering v. JPMS, et al.*

## 1. Summary or Rationale

JPMorgan Chase operates in a highly competitive industry. Our success is based, in large part, on our employees' efforts to build and maintain client relationships both internally and outside the organization. As a result, it's critical that the firm protect its ability to sustain those client relationships and ensure business continuity in times of employee transition.

## 2. Scope

| | Subject To | Role to Play |
|---|---|---|
| **Lines of Business** | • Refer to the Notice Period Policy Overview Chart | • n/a |
| **Function(s)** | • Refer to the Notice Period Policy Overview Chart | • Human Resources |
| **Locations** | • United States | |
| **Legal Entities** | • All | |

## 3. Changes from Previous Version

There are no significant changes as a result of the re-approval of the policy.

## 4. Policy Statements

Notice Period. JPMorgan Chase requires that all identified employees (as outlined in section 5) provide the Firm with advance notice of the resignation of their employment.

## 5. Notice Period

The firm requires that certain employees at or above the level of Vice President or the equivalent, provide their manager advance notice of the resignation of their employment. Some employees below the Vice President level may also have a notice period requirement. Employees should provide this notice in writing. In addition, employees should submit their resignation via me@jpmc.

Additionally, if you have a separate agreement or terms for your business area that provides for a longer notice period than is stated under this Policy, the longer notice period will apply.

To determine if you are subject to this Notice Period Policy and, if so, the number of days of advance notice (referred to as "Notice Period") you are required to provide, please click on the link below:

Notice Period Policy Overview Chart

The notice period will start the day you provide your resignation. For instance, if you submit your resignation on 6/1 and have a 30-day notice period requirement, then the end of the notice period would be on 6/30.

HUMAN RESOURCES

ternal Use Only

**CONFIDENTIAL**

JPMS000832

T.03-002

T.03-003
4:26-cv-00381-O
*Biering v. JPMS, et al.*

Generally, the firm will seek to enforce its Notice Period Policy. In certain cases, however, the firm may, in its sole discretion, decide to waive all or any part of your Notice Period and set an earlier termination date. If this occurs, you will be paid in lieu of notice and will receive a lump-sum payment equivalent to your base salary for all or the remaining part of the applicable Notice Period (less applicable deductions).

Line of business (LOB) managers may not waive notice period requirements. In very rare circumstances where an exception to the Notice Period is considered, the exception **must** be approved by the LOB Head (OC Member), the HR LOB Executive (HR OC Member) and, if applicable, the Regional HR Executive (HR OC Member); or in leave of absence scenarios, the HR LOB Executive.

### 5.1. Employee's Responsibilities During the Notice Period

During the Notice Period, you will remain an employee of the firm and will be prohibited from working for, or performing any services for, another employer or from being self-employed. You will continue to be paid at your current base salary throughout your Notice Period and will remain benefits eligible. Once you provide notice of your resignation, you will no longer be eligible for any discretionary incentive compensation or equity award, even if your Notice Period includes the date on which such an award would otherwise be granted or paid.

As an employee of JPMorgan Chase, you will have a continuing duty of loyalty to the firm throughout your Notice Period and will remain bound by the provisions of the firm's Code of Conduct, including its requirements regarding confidential and proprietary information, non-solicitation of employees and customers, and no-hire obligations, as well as any other applicable employment policies.

It's within the firm's sole discretion to determine whether you will be expected to continue to perform your duties or otherwise provide services during the Notice Period. The firm may remove you from any assigned duties, assign other duties to you, require you to refrain from performing any job duties or from reporting to work, and may prohibit you from directly or indirectly contacting its customers, suppliers or employees until your employment ends. Regardless of the extent to which the firm directs you to perform your duties or report to work during the Notice Period, you will be expected to be available as reasonably necessary and will continue to work cooperatively and professionally with the firm to ensure an effective transition of your responsibilities.

In addition, you remain obligated to cooperate fully with, and provide full and accurate information to JPMorgan Chase and its counsel and other advisors in connection with any matter (including any audit, tax proceeding, litigation, investigation, governmental or regulatory proceeding) with respect to which you may have knowledge or information.

### 5.2. Consequences of Breach/Remedies

Failure to comply with this policy constitutes a breach of a term of your employment with the firm and may impact your eligibility for rehire. JPMorgan Chase reserves its rights to pursue any legal and equitable remedies to which it may be entitled.

HUMAN RESOURCES

T.03-004
4:26-cv-00381-O
Biering v. JPMS, et al.

### 5.3. Employment-At-Will

At all times you remain an employee at will, which is to say that the firm can alter the terms of your employment and end your employment at any time.

This Notice Period Policy shall supersede any prior notice period policies set forth in any previous communications, except that, to the extent you have a separate specific agreement that provides for a longer notice period than is provided under this Policy for your business area, the longer notice period will continue to apply.

By continuing your employment, you agree to provide the required notice and to abide by the terms and conditions of this Policy as described above. This requirement is also included in the terms and conditions of any equity awards you may receive.

## 6.  Defined Terms

| | |
|---|---|
| **Notice Period** | The number of calendar days of advance written notice of resignation of employment covered employees are required to provide to their manager. Certain responsibilities apply during the Notice Period. See Section 5.1 |

## 7.  Legal and Other

| | |
|---|---|
| **Enterprise Library Application (ELA) Link** | • n/a |
| **Statutes, Laws, Rules, Regulations or External Guidance** | • None |

## 8.  Firm References

| | |
|---|---|
| **Other Firm Policies or Standards** | • Notice Period Policy |
| **Policy Supplements, Procedures, and Other Documents** | • Code of Conduct<br><br>Notice Period Policy Overview Chart |
| **Forms and Systems** | • |

## 9.  Document Information

| | | | |
|---|---|---|---|
| **Policy Level** | Level 3 | | |
| **Policy Type** | Country | | |
| **Document Owner-Approver \| Function or Line of Business \|Country** | Lynda Cantatore, U374562, Executive Director | Human Resources | United States |

HUMAN RESOURCES

T.03-005
4:26-cv-00381-O
Biering v. JPMS, et al.

| Document Primary Contact | HR Answers |
|---|---|
| Document Manager | Tracy Peterson, N619222, Vice President |
| Annual Approval Date | June 20, 2023 |
| Initial Effective Date | March 1, 2014 |
| Additional Contacts | HR Answers |

HUMAN RESOURCES

**CONFIDENTIAL**

ternal Use Only

JPMS000835

T.03-005

**UNITED STATES DISTRICT COURT**
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **JOSHUA DAVID SAPPI BIERING,** | § | |
| *Petitioner, Pro Se,* | § | Case No. 4:26-cv-00381-O-BP |
| **v.** | § | |
| **J.P. MORGAN SECURITIES, LLC,** | § | FINRA Case No. 24-01208 |
| **JPMORGAN CHASE & CO., and** | § | EEOC Charge No. 450-2024-04743 |
| **JPMORGAN CHASE BANK, N.A.,** | § | AAA Case No. 01-26-0000-7215 |
| *Respondents.* | § | |

# EXHIBIT T.04

## JPM Notice Period Policy (see also Exhibit D.03d)

## T.04-001 – 005

**Description:**   JPMorgan Chase notice period and garden leave policy chart. Establishes JPMS's standard separation procedures, including mandatory notice periods, garden leave terms, and compensation treatment during separation.

**Relevance:**   Demonstrates that JPMS applied its notice period policy to Petitioner's separation in a manner inconsistent with the stated policy terms. Relevant to the wrongful termination and retaliation claims.

**Source:**   JPM Internal Record – Notice Period Policy Chart. Originally produced as part of Exhibit D.03d (JPMS EEOC Position Statement attachments).

**Petition Ref:**   Relevant to Dkt. 11 paras. discussing separation terms, garden leave, and notice period compliance.

**Disclosures:**   None — reproduced as produced, no added markings

**Filing Status:**   Public - not sealed




T.04-001

4:26-cv-00381-O

*Biering v. JPMS, et al.*

## Policy

# Notice Period Policy - U.S.

Current Effective Date: June 20, 2023

## TABLE OF CONTENTS

1. Summary or Rationale ........................................................................... 2
2. Scope ................................................................................................... 2
3. Changes from Previous Version .............................................................. 2
4. Policy Statements ................................................................................. 2
5. Notice Period ....................................................................................... 2
   5.1. Employee's Responsibilities During the Notice Period ...................... 3
   5.2. Consequences of Breach/Remedies ................................................ 3
   5.3. Employment-At-Will ...................................................................... 4
6. Defined Terms ...................................................................................... 4
7. Legal and Other ................................................................................... 4
8. Firm References ................................................................................... 4
9. Document Information ........................................................................... 4

HUMAN RESOURCES

ternal Use Only

T.04-002
4:26-cv-00381-O
Biering v. JPMS, et al.

## 1. Summary or Rationale

JPMorgan Chase operates in a highly competitive industry. Our success is based, in large part, on our employees' efforts to build and maintain client relationships both internally and outside the organization. As a result, it's critical that the firm protect its ability to sustain those client relationships and ensure business continuity in times of employee transition.

## 2. Scope

| | Subject To | Role to Play |
|---|---|---|
| Lines of Business | • Refer to the Notice Period Policy Overview Chart | • n/a |
| Function(s) | • Refer to the Notice Period Policy Overview Chart | • Human Resources |
| Locations | • United States | |
| Legal Entities | • All | |

## 3. Changes from Previous Version

There are no significant changes as a result of the re-approval of the policy.

## 4. Policy Statements

Notice Period. JPMorgan Chase requires that all identified employees (as outlined in section 5) provide the Firm with advance notice of the resignation of their employment.

## 5. Notice Period

The firm requires that certain employees at or above the level of Vice President or the equivalent, provide their manager advance notice of the resignation of their employment. Some employees below the Vice President level may also have a notice period requirement. Employees should provide this notice in writing. In addition, employees should submit their resignation via me@jpmc.

Additionally, if you have a separate agreement or terms for your business area that provides for a longer notice period than is stated under this Policy, the longer notice period will apply.

To determine if you are subject to this Notice Period Policy and, if so, the number of days of advance notice (referred to as "Notice Period") you are required to provide, please click on the link below:

Notice Period Policy Overview Chart

The notice period will start the day you provide your resignation. For instance, if you submit your resignation on 6/1 and have a 30-day notice period requirement, then the end of the notice period would be on 6/30.

HUMAN RESOURCES

ternal Use Only

T.04-002


T.04-003
4:26-cv-00381-O
*Biering v. JPMS, et al.*

Generally, the firm will seek to enforce its Notice Period Policy. In certain cases, however, the firm may, in its sole discretion, decide to waive all or any part of your Notice Period and set an earlier termination date. If this occurs, you will be paid in lieu of notice and will receive a lump-sum payment equivalent to your base salary for all or the remaining part of the applicable Notice Period (less applicable deductions).

Line of business (LOB) managers may not waive notice period requirements. In very rare circumstances where an exception to the Notice Period is considered, the exception **must** be approved by the LOB Head (OC Member), the HR LOB Executive (HR OC Member) and, if applicable, the Regional HR Executive (HR OC Member); or in leave of absence scenarios, the HR LOB Executive.

### 5.1.  Employee's Responsibilities During the Notice Period

During the Notice Period, you will remain an employee of the firm and will be prohibited from working for, or performing any services for, another employer or from being self-employed. You will continue to be paid at your current base salary throughout your Notice Period and will remain benefits eligible. Once you provide notice of your resignation, you will no longer be eligible for any discretionary incentive compensation or equity award, even if your Notice Period includes the date on which such an award would otherwise be granted or paid.

As an employee of JPMorgan Chase, you will have a continuing duty of loyalty to the firm throughout your Notice Period and will remain bound by the provisions of the firm's Code of Conduct, including its requirements regarding confidential and proprietary information, non-solicitation of employees and customers, and no-hire obligations, as well as any other applicable employment policies.

It's within the firm's sole discretion to determine whether you will be expected to continue to perform your duties or otherwise provide services during the Notice Period. The firm may remove you from any assigned duties, assign other duties to you, require you to refrain from performing any job duties or from reporting to work, and may prohibit you from directly or indirectly contacting its customers, suppliers or employees until your employment ends. Regardless of the extent to which the firm directs you to perform your duties or report to work during the Notice Period, you will be expected to be available as reasonably necessary and will continue to work cooperatively and professionally with the firm to ensure an effective transition of your responsibilities.

In addition, you remain obligated to cooperate fully with, and provide full and accurate information to JPMorgan Chase and its counsel and other advisors in connection with any matter (including any audit, tax proceeding, litigation, investigation, governmental or regulatory proceeding) with respect to which you may have knowledge or information.

### 5.2. Consequences of Breach/Remedies

Failure to comply with this policy constitutes a breach of a term of your employment with the firm and may impact your eligibility for rehire.  JPMorgan Chase reserves its rights to pursue any legal and equitable remedies to which it may be entitled.

HUMAN RESOURCES

ternal Use Only

T.04-004
4:26-cv-00381-O
Biering v. JPMS, et al.

### 5.3. Employment-At-Will

At all times you remain an employee at will, which is to say that the firm can alter the terms of your employment and end your employment at any time.

This Notice Period Policy shall supersede any prior notice period policies set forth in any previous communications, except that, to the extent you have a separate specific agreement that provides for a longer notice period than is provided under this Policy for your business area, the longer notice period will continue to apply.

By continuing your employment, you agree to provide the required notice and to abide by the terms and conditions of this Policy as described above. This requirement is also included in the terms and conditions of any equity awards you may receive.

## 6. Defined Terms

| | |
|---|---|
| Notice Period | The number of calendar days of advance written notice of resignation of employment covered employees are required to provide to their manager. Certain responsibilities apply during the Notice Period. See Section 5.1 |

## 7. Legal and Other

| | |
|---|---|
| Enterprise Library Application (ELA) Link | • n/a |
| Statutes, Laws, Rules, Regulations or External Guidance | • None |

## 8. Firm References

| | |
|---|---|
| Other Firm Policies or Standards | • Notice Period Policy |
| Policy Supplements, Procedures, and Other Documents | • Code of Conduct<br><br>Notice Period Policy Overview Chart |
| Forms and Systems | • |

## 9. Document Information

| | | | |
|---|---|---|---|
| Policy Level | Level 3 | | |
| Policy Type | Country | | |
| Document Owner-Approver \| Function or Line of Business \|Country | Lynda Cantatore, U374562, Executive Director | Human Resources | United States |

HUMAN RESOURCES

ternal Use Only

T.04-004

T.04-005
4:26-cv-00381-O
*Biering v. JPMS, et al.*

| | |
|---|---|
| **Document Primary Contact** | HR Answers |
| **Document Manager** | Tracy Peterson, N619222, Vice President |
| **Annual Approval Date** | June 20, 2023 |
| **Initial Effective Date** | March 1, 2014 |
| **Additional Contacts** | HR Answers |

HUMAN RESOURCES

ternal Use Only

T.04-005

AAA-000781

**UNITED STATES DISTRICT COURT**
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **JOSHUA DAVID SAPPI BIERING,** | § | |
| *Petitioner, Pro Se,* | § | Case No. 4:26-cv-00381-O-BP |
| **v.** | § | |
| **J.P. MORGAN SECURITIES, LLC,** | § | FINRA Case No. 24-01208 |
| **JPMORGAN CHASE & CO., and** | § | EEOC Charge No. 450-2024-04743 |
| **JPMORGAN CHASE BANK, N.A.,** | § | AAA Case No. 01-26-0000-7215 |
| *Respondents.* | § | |

# EXHIBIT T.05

# JPM Voluntary Termination / Resignation Procedure

# T.05-001 – 018

**Description:**    JPMorgan Chase voluntary-termination / resignation procedural documents from the operative HR policy set.

**Relevance:**    Documents the operative resignation procedure JPMS relied upon, cited in support of the petition's arguments on the discharge characterization and the U-5 reasoning.

**Source:**    FINRA Case No. 24-01208 – JPMS HR policy production set.

**Petition Ref:**    App. A T.5 (Dkt. 11 p. 54); cited at Dkt. 11 p. 17.

**Disclosures:**    Annotations: None — reproduced as produced, no added markings

**Filing Status:**    Public — not sealed

T.05-001
4:26-cv-00381-O
Biering v. JPMS, et al.

JPMORGAN CHASE & CO.

November 16, 2023

Joshua Biering

█████████████

FORT WORTH, TX 76109

**Re: Request for Personnel Records**

Dear Joshua Biering:

Per your request, please find enclosed your personnel file .

Sincerely,

JPMorgan Chase, Employee Records Department
4041 Ogletown Road
Newark, DE 19713

Enclosure

**Exhibit**

**CX11**

# JPMorganChase

## Onboarding NewHire Record

### Hiring Job Info

| | |
|---|---|
| Recruiter Name | Reggie Brown |
| Hiring Manager Name | Jeffrey Hassman |
| New Hire SID | I662283 |
| New Hire Job Title | MOEDP Associate - 602 |
| Anticipated Start Date | April 25, 2016 |
| Employee Class | X - Standard Employee |
| Work Location | 14201 North Dallas Parkway<br>Dallas, TX, 752542916<br>USA |
| Full Time/Part Time Status | Full Time |
| Probation Period | |
| Contract End Date | |

### Personal Profile

| | |
|---|---|
| Name | Joshua D. Biering |
| Current Address | ███████████<br>Savannah, Georgia, 31401<br>USA |
| Permanent Address | |
| National ID | ████████████ ocialSecurityNumber) |
| Other Surnames Used | |
| Preferred First Name | |
| Birth Date | ███████ |
| Gender | Male |

### Job History

| | |
|---|---|
| Job #1 Employer | United States Army |
| Assignment Type | Full Time |
| Dates | March 15, 2014 To March 22, 2016 |
| Address | ███████████<br>Fort Stewart, Georgia, 31314<br>USA |
| Title/Position | Chief of Logistics |
| Job #2 Employer | United States Army |

BIERING_0000450

file:///Naeast.ad.jpmorganchase.com/...113023/████I662283_Hire_New%20Employee%20Data%20Form_2016-05-02_Biering_10 html[11/15/2023 12:26:33 PM]

T.05-002

T.05-003
4:26-cv-00381-O
*Biering v. JPMS, et al.*

| | |
|---|---|
| Assignment Type | Full Time |
| Dates | April 15, 2013 To March 15, 2014 |
| Address | ██ ████ █ ███████<br>Fort Stewart, Georgia, 31314<br>USA |
| Title/Position | Executive Officer |

| | |
|---|---|
| Job #3 Employer | United States Army |
| Assignment Type | Full Time |
| Dates | May 15, 2011 To April 15, 2013 |
| Address | ███████████████<br>Fort Stewart, Georgia, 31314<br>USA |
| Title/Position | Platoon Leader |

## Education History

| | |
|---|---|
| School #1 Name | United States Military Academy |
| School Address | ██ █████ █████<br>West Point, New York, 10996<br>USA |
| Dates | June 07, 2007 To May 21, 2011 |
| Graduated | |
| Program | Full Time |
| Degree | |
| Degree Type | Bachelor's Degree (?16 years) |
| Graduation Date | |
| Subject Major | Civil Engineering |

## Legal Questions

| | |
|---|---|
| Question #1: | Have you ever been convicted of, or plead guilty to, an offense other than a minor traffic violation? Include offenses for which you pled no contest or received probation; you may exclude convictions which have been ordered fully expunged (i.e. removed from your criminal record by a specific court order) or sealed by a court of law. (Offenses involving the possession or use of false identification for underage drinking and similar offenses should be disclosed. Offenses for driving under the influence, and driving while impaired DO NOT need to be disclosed unless the position for which you are applying requires driving as a routine job duty.) |
| Answer: | **No** |
| Question #2: | Have you entered on or after November 29, 1990, any program of court supervision or deferred prosecution or some other pre-trial diversion or similar program for an offense involving theft, breach of trust, dishonesty, money laundering, or the illegal manufacture, sale, distribution or trafficking of drugs? |
| Answer: | **No** |

BIERING_0000451

file:///Naeast.ad.jpmorganchase.com/...113023/████I662283_Hire_New%20Employee%20Data%20Form_2016-05-02_Biering_10.html[11/15/2023 12:26:33 PM]

T.05-003

T.05-004
4:26-cv-00381-O
*Biering v. JPMS, et al.*

| | |
|---|---|
| **Question #3:** | Are you currently under indictment for, or do you currently have any pending criminal charge for any offense, including but not limited to, offenses involving theft, breach of trust, dishonesty, money laundering or the illegal manufacture, sale, distribution or trafficking of drugs? |
| **Answer:** | **No** |

## Acknowledgments

| | |
|---|---|
| Acknowledgement | USA |
| Initials | JB |

BIERING_0000452

file:///Naeast.ad.jpmorganchase.com/...113023▮▮▮▮I662283_Hire_New%20Employee%20Data%20Form_2016-05-02_Biering_10 html[11/15/2023 12:26:33 PM]

T.05-004



Welcome to Chase!

This is an exciting time to join the firm. We are committed to hiring the very best people and growing our business by building lasting relationships with our customers.

You are joining the best team in the industry and we are pleased you are here. At Chase, we are committed to providing a great customer and employee experience, and we know you will play an important role in our success. We hire people who do the right thing, raise issues as they see them and help make Chase an exceptional firm for our colleagues and customers.

You have chosen a great company that can offer you the opportunity to shape what?s next ? for you and for us. I hope you love it as much as I do and I look forward to having you as a part of our company for many years to come.



CEO, Consumer & Community Banking



February 18, 2016

Joshua Biering

█████████████

Savannah, Georgia 31401

Dear Joshua:

We are very pleased to formally present our employment offer. In this letter we have included the details of your position, your compensation and the terms and conditions of your offer. You will also find information about your next steps. You will join us as a Military Officer Executive Development Program Associate - Dallas, TX at Chase Bank USA, NA, which we'll refer to as "Chase". Your manager will be Jeffrey T Hassman, whom you can reach at ████████ ████████

We're planning to have you start on April 25, 2016. Whenever we mention start date in this letter, we are referring to the date of the first day you actually start working for us. Touch base with your manager before you start to make sure you have everything you need to know for your first day.

**Your pay**
Your annual base salary as of your start date is $100,000.00 (less applicable taxes). While your hours will vary based on business needs, your salary covers all hours you work during any week. You are not eligible for any overtime payments in this position. You will be paid consistent with Chase's payroll practices.

**Special cash award**

BIERING_0000453

file:///Naeast.ad.jpmorganchase.com/...s_Completed/110123-113023█████I662283_Hire_Offer%20Letter_2016-02-18_Biering_11 html[11/15/2023 12:26:20 PM]

T.05-005

February 18, 2016

Joshua Biering
██████████
Savannah, Georgia 31401

Dear Joshua:

We are very pleased to formally present our employment offer. In this letter we have included the details of your position, your compensation and the terms and conditions of your offer. You will also find information about your next steps. You will join us as a Military Officer Executive Development Program Associate - Dallas, TX at Chase Bank USA, NA, which we'll refer to as "Chase". Your manager will be Jeffrey T Hassman, whom you can reach at ███████

We're planning to have you start on April 25, 2016. Whenever we mention start date in this letter, we are referring to the date of the first day you actually start working for us. Touch base with your manager before you start to make sure you have everything you need to know for your first day.

**Your pay**

Your annual base salary as of your start date is $100,000.00 (less applicable taxes). While your hours will vary based on business needs, your salary covers all hours you work during any week. You are not eligible for any overtime payments in this position. You will be paid consistent with Chase's payroll practices.

**Special cash award**

You will be paid a one-time sign-on award of $25,000. This award is subject to applicable taxes. We'll make this payment within 30 days after your start date. If your employment with Chase ends for any reason other than job elimination within a year after your start date, you would need to repay this sign-on award. The repayment is due within ten days of our request for repayment. You agree that Chase may withhold all or part of the repayment amount as allowed by law from any remaining salary or other payments owed to you at the time you leave. Chase will also be entitled to any costs and attorneys' fees associated with enforcing your repayment obligations.

**Other benefits**

We offer a comprehensive benefits program to our U.S. benefits-eligible employees, including health care and insurance plans, a cash balance pension plan, a 401(k) plan, and discounted Chase products. In addition, you will be eligible for paid time off, including vacation, based on your role and time working for us.

We provide some of our benefits materials electronically - by e-mail or on the company Intranet, which is accessible from work or from home. When you accept this offer, you agree to receive documents for the JPMorgan Chase Benefits Program electronically. This includes the summary plan descriptions, plan prospectuses and other documents. You may request a paper copy for a benefit plan at any time. The contact information you will need for each benefits plan is available in the Highlights of the JPMorgan Chase U.S. Benefits Program under a section called Benefits at a Glance. After completion of the Onboarding process, we will make this information available to you on our My Welcome site which is covered in more detail in the Next Steps section of this offer letter.

**Terms & Conditions**

file:///Nacast.ad.jpmorganchase.com/...s_Completed/110123-113023|██████|I662283_Hire_Offer%20Letter_2016-02-18_Biering_11.html[11/15/2023 12:26:20 PM]

T.05-006

In this section, we will cover the terms and conditions of this employment offer.

We need you to review all the information in this letter to check that it reflects our discussions to date. That's because this document will legally supersede anything we've communicated previously verbally or in writing. If anything needs to change, we'll need a new document that refers to this offer and both you and Chase will need to sign it.

This offer of employment is subject to all the terms, conditions and attachments included in this document, the Binding Arbitration Agreement and all Chase policies and procedures, including but not limited to the JPMorgan Chase Code of Conduct.

### Introductory period and "at-will" employment
Your first 90 days on the job are an introductory period. It lets us evaluate how you're adjusting to your new job and our organization. Plus it's the time during which we can make sure that you understand your role and responsibilities and our performance standards and policies. You are an "at-will" employee both during and after this introductory period, which means that either you or Chase can end your employment at any time, for any or no reason.

### Other conditions
When you accept this offer, you're confirming that there's nothing restricting you from accepting employment or performing any duties with Chase, whether by contract (express or implied) or otherwise. You confirm you are not restricted from soliciting customers or from hiring employees of your former employer or any other party.

You're also acknowledging that you understand and agree that if you have any obligations with your former or current employers that they can enforce, Chase doesn't seek to violate those obligations.

You are affirming that you won't disclose to Chase or use in connection with your employment at Chase any protected trade secrets or protected confidential or proprietary materials of another entity, including any prior employer.

### Non-solicitation
During your employment and for one year after you leave Chase, you agree you won't solicit, induce or encourage any current Chase employee to apply for employment elsewhere or to leave Chase. You confirm that you will not hire any employee who was working at Chase on the day you left unless that person left Chase more than six months before you wish to hire him or her, or because Chase eliminated his or her job.

Additionally, during your employment and for one year after you leave Chase, you agree you won't interfere with current Chase customers, suppliers, or other persons or entities that do business with Chase. By interfere we mean attempt to or actually solicit, induce to leave Chase, divert from doing business with Chase, or otherwise interfere with the business relationship any party has with Chase. This includes parties you directly worked with while employed at Chase or whose names you know because you worked at Chase. If required to be enforceable under any applicable law, your obligations in this paragraph will be interpreted to apply only when you use our confidential or proprietary information or any of our trade secrets.

You agree not to conduct these activities personally or on behalf of anyone else, directly or indirectly. If you do not meet or threaten not to meet the non-solicitation agreements mentioned above, Chase may seek monetary damages or equitable relief as appropriate.

### Next Steps

### Pre-employment requirements to complete
We have a number of pre-employment processes you'll need to start shortly. They include various background checks, fingerprint processing and drug screening, as well as several onboarding forms. For example, you will need to establish your identity and valid employment eligibility by completing Form I-9 on My Welcome and presenting your ID and employment eligibility documents on or before your start date. We'll use the E-Verify Program to electronically compare your Form I-9 information against Social Security Administration and Department of Homeland Security records. We'll keep you updated about all the steps you need to take throughout the pre-employment process.

BIERING_0000455

file:///Nacast.ad.jpmorganchase.com/...s_Completed/110123-113023/ ███ I662283_Hire_Offer%20Letter_2016-02-18_Biering_11.html[11/15/2023 12:26:20 PM]

T.05-007

This offer and continued employment is based on you successfully completing all pre-employment processes.

**Before your first day**
As a new hire, learning how to find resources and information is critical to your success. To help you get started, we've created a new hire website called My Welcome. On this site you will find more information about our pre-employment requirements and the benefits of joining Chase. After you start you'll continue to have access to the site to get you settled.

**On your first day**
Your manager will provide your ID badge and your employee Standard ID number that will be used to access the information and resources that are available to you.

If you have any questions, please contact our Pre-Employment team at ████████████

With the formalities covered, let us say again that we look forward to having you join us.

Sincerely,

████████████

**Appendix: Systems Monitoring Activities and Cross-Border Transfers**

The following provides a summary of how JPMorgan Chase & Co., its affiliates and its subsidiaries and the entity that employs you, or for which you provide services (collectively, ?JPMC?), conducts Systems monitoring. JPMC may conduct monitoring to the extent permitted by applicable law.

JPMC conducts monitoring of JPMC?s physical facilities and its equipment and systems (collectively, the ?Systems?). System monitoring applies to your JPMC equipment, your personal equipment when accessing the Systems, and the communications, information, and materials conveyed or accessed using the Systems. Monitoring activities may include the monitoring and logging of traffic and usage data of all electronic communications; monitoring of telephone calls to or from JPMC work telephones as permitted by applicable laws and subject to any required notices; monitoring of the contents of electronic communications, files, databases, applications, and internet usage; and logging hours worked and physical presence at JPMC?s facilities if applicable. JPMC may at all times monitor, access, retrieve, record and review information obtained from the monitoring activities for various purposes, such as preventing and investigating activities that may violate JPMC?s policies and ensuring compliance with legal or regulatory obligations. While conducting monitoring activities, JPMC may obtain and process personal information about you and others that may reside on the Systems.

The monitoring activities (including JPMC?s collection and processing of personal or other information) are required for purposes of your employment or work assignment to promote adherence to applicable policies and regulations. Subject to applicable laws and regulations, if you object to this processing, JPMC may prohibit you from using the Systems; terminate offers of employment or work assignment; and, for employees, take disciplinary action against you, up to and including termination of your employment with JPMC.

JPMC may disclose the information it obtains in connection with monitoring activities to JPMC affiliates and to third parties, service providers, regulators, supervisory bodies, law enforcement and other government agencies. Information obtained from the monitoring activities may be used as the basis to take disciplinary actions, up to and including termination or other legal action, for violations of JPMC?s policies or applicable laws.

In addition to the monitoring activities discussed above, JPMC may obtain and store other information related to your employment or other working relationship, such as your compensation information, performance information, benefits information and other workplace-related data. JPMC may transfer such information, and the information it obtains in

BIERING_0000456

file:///Naeast.ad.jpmorganchase.com/...s_Completed/110123-113023█████I662283_Hire_Offer%20Letter_2016-02-18_Biering_11.html[11/15/2023 12:26:20 PM]

T.05-008

connection with monitoring activities, to countries other than the country in which the information origina[l] collected, including to the United States.

**Understanding Obligations under the Firm?s Personal Account Dealing Policy (PAD):**

**New hires NOT subject to PAD at joining:**

Employees are expected to understand the firm?s Personal Account Dealing (PAD) Policy, which helps to protect the firm's reputation and maintain the highest standards of integrity when employees conduct personal investment activities. Details of the Policy can be reviewed here.

**Hires Subject to PAD at time of joining:**

Employees are expected to understand the firm?s Personal Account Dealing (PAD) Policy, which helps to protect the firm?s reputation and maintain the highest standards of integrity when employees conduct personal investment activities. Details of the Policy can be reviewed here.

The position you are being offered is considered to be subject to the Personal Account Dealing Policy and, as such, you, your covered family members and anyone with an associated account* will need to be familiar with the obligations set forth in this policy, including, but not limited to, the requirements, once you are employed here, to disclose personal trading accounts and private investments, to pre-clear trades, to limit investment strategies to those approved within this policy and to maintain trading accounts at JPMorgan Chase Approved Brokers. Please note that all trading restrictions that apply to you, including but not limited to the prohibition against day trading, also apply to your spouse/domestic partner, covered family members and anyone with an associated account*.

**Seasonal Worker model for individuals joining in formal seasonal/Short term programs:**

JPMorgan Chase requires that seasonal workers refrain from trading in any personal or ?associated*? accounts for the time period that you are employed in a short term training program. Please verify that you will comply with the following personal trading requirements:

1. For the duration of the short term program I am joining I will not trade in any of my personal or ?associated? accounts.

2. I understand that the Firm has the right to request account information for any of my accounts or ?associated? accounts.

3. If there is an extenuating circumstance that would compel me to place a trade in my personal or ?associated? account, I will obtain pre-approval of the trade by the Personal Account Dealing Group and I would be responsible for supplying all confirmations and statements to the Personal Account Dealing Group for that trade.

*The term ?associated accounts? refers to any securities accounts no matter where they are located and includes, but is not limited to, those accounts that are established, maintained or controlled (either directly or indirectly) by you, your spouse, domestic partner or minor children (even if financially independent), anyone to whom you provide significant financial support, and in which the employee has a direct or indirect financial interest.*

**Acceptance and Code Affirmation:**

Upon signing this letter I accept the terms described above. I also affirm that I have read and understand the JPMorgan Chase Code of Conduct, and agree as a condition of employment to comply with the Code as amended and revised from time to time.

- I understand that I can access the Code via the Internet at http://www.jpmorganchase.com/ >About Us>Governance>Code of Conduct prior to joining the firm, and through the firm's intranet once I begin employment.

BIERING_0000457

file:///Naeast.ad.jpmorganchase.com/...s_Completed/110123-113023/█████I662283_Hire_Offer%20Letter_2016-02-18_Biering_11 html[11/15/2023 12:26:20 PM]

T.05-009

T.05-010
4:26-cv-00381-O
Biering v. JPMS, et al.

- I acknowledge that the Code requires that certain outside activities be approved in writing after I [] employment, and I agree that, if any such required approval is denied, I will cease the relevant activity immediately.
- As a JPMorgan Chase employee I understand that the Code requires me to report any known or suspected violation of the Code, of internal firm policies, or of laws or regulations applicable to the firm's business. I understand that failure to do so can result in disciplinary action up to and including termination of employment.
- I understand that all employees have post-employment responsibilities regarding confidential information.
- I acknowledge that the Code also requires that I safeguard confidential information, including anything that I created while working for my previous employer(s). I understand that I am not allowed to bring any of this with me to use at JPMorgan Chase or disclose any confidential information from a prior employer unless it has already been made public through no action of my own.
- I understand my offer of employment is contingent upon a determination by JPMorgan Chase that neither the offer nor my employment would violate, or create the appearance of violating, the firm's Code of Conduct, Anti-Corruption Policy, or Human Resources policies and practices, or any applicable laws or regulations
- I understand further if I am a Senior-Level Employee*, that Senior-Level Employees have certain additional responsibilities that continue after their employment with the firm terminates, including restrictions on solicitation and hiring of the firm's employees and solicitation of certain customers. I understand that I am responsible for knowing which post-employment responsibilities apply to me and I agree to comply with all applicable requirements.

*The term "Senior-Level Employee" is currently defined as any employee whose (a) annual base salary rate is US$150,000 (or the local currency equivalent) or higher, OR (b) annual total cash compensation is US$250,000 (or the local currency equivalent) or higher.*

**Independent Auditor Tax Services to Employees of JPMorgan Chase and its Affiliates:**

To be in compliance with the Public Company Accounting Oversight Board (PCAOB) Rule 3523 it is JPMorgan Chase's (JPMC) policy that PricewaterhouseCoopers (PwC) cannot provide any tax services to employees of JPMC or any of its controlled entities (hereafter referred to as JPMC employee). This restriction is regardless of whether the individual is in a financial reporting oversight role or not, and whether PwC is engaged by the individual or by JPMC. PwC is also prohibited from providing any tax services to a spouse of a JPMC employee if the work is related to a joint tax return. Exceptions to this policy will be reviewed on a case-by-case basis and will require the approval of the JPMC Controller.

Signature: *Joshua Biering*       Date: __18-Feb-2016__

I understand my employment is subject to my and JPMorgan Chase's agreement to submit employment-related disputes that cannot be resolved internally to binding arbitration, as set forth in the Binding Arbitration Agreement detailed below. By signing below I acknowledge and agree that I have read and understand the Binding Arbitration Agreement, have accepted its terms and understand that it is a condition of my employment with JPMorgan Chase.

**BINDING ARBITRATION AGREEMENT:**
JPMorgan Chase believes that if a dispute related to an employee's or former employee's employment arises, it is in the best interests of both the individual and JPMorgan Chase to resolve the dispute without litigation. Most such disputes are resolved internally through the Firm's Open Communication Policy. When such disputes are not resolved internally, JPMorgan Chase provides for their resolution by binding arbitration as described in this Binding Arbitration Agreement ("Agreement"). "JPMorgan Chase" and the "Firm" as used

BIERING_0000458

file:///Naeast.ad.jpmorganchase.com/...s_Completed/110123-113023/████I662283_Hire_Offer%20Letter_2016-02-18_Biering_11.html[11/15/2023 12:26:20 PM]

T.05-010

in this Agreement mean JPMorgan Chase & Co. and all of its direct and indirect subsidiaries.

This Agreement will be governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. ? 1 et seq.

As a condition of and in consideration of my employment with JPMorgan Chase & Co. or any of its direct or indirect subsidiaries, I agree with JPMorgan Chase as follows:

1. **SCOPE:** Any and all "Covered Claims" (as defined below) between me and JPMorgan Chase (collectively "Covered Parties" or "Parties", individually each a "Covered Party" or "Party") shall be submitted to and resolved by final and binding arbitration in accordance with this Agreement.

2. **COVERED CLAIMS:** "Covered Claims" include all legally protected employment-related claims, excluding those set forth below in Paragraphs 3 and 4 of this Agreement, that I now have or in the future may have against JPMorgan Chase or its officers, directors, shareholders, employees or agents which arise out of or relate to my employment or separation from employment with JPMorgan Chase and all legally protected employment-related claims that JPMorgan Chase has or in the future may have against me, including, but not limited to, claims of employment discrimination or harassment if protected by applicable federal, state or local law, and retaliation for raising discrimination or harassment claims, failure to pay wages, bonuses or other compensation, tortious acts, wrongful, retaliatory and/or constructive discharge, breach of an express or implied contract, promissory estoppel, unjust enrichment, and violations of any other common law, federal, state, or local statute, ordinance, regulation or public policy, including, but not limited to Title VII of the Civil Rights Act of 1964, the Civil Rights Acts of 1866 and 1991, the Age Discrimination in Employment Act of 1967, the Older Workers Benefit Protection Act of 1990, the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990, the Family and Medical Leave Act of 1993, the Fair Labor Standards Act of 1938, the Equal Pay Act of 1963, Section 1981 of the Civil Rights Act, and the Worker Adjustment and Retraining Notification Act.

3. **EXCLUDED CLAIMS:** This Agreement does not cover, and the following claims are not subject to arbitration under this Agreement: (a) any criminal complaint or proceeding, (b) any claims covered by state unemployment insurance, state or federal disability insurance, and/or state workers' compensation benefit laws, except that claims for retaliation pursuant to these laws shall be subject to arbitration under this Agreement, (c) any claim under the National Labor Relations Act, and (d) claims for benefits under a plan that is governed by Employee Retirement Income Security Act of 1974 ("ERISA").

Further, this Agreement also does not cover any action seeking only declaratory and/or emergency, temporary or preliminary injunctive relief (including a temporary restraining order) in a court of competent jurisdiction in accordance with applicable law, so long as that action is brought on an individual basis and not on a consolidated basis or as part of a collective or class action, and subject to the following:

- In the event such relief is sought by a Covered Party, who is not otherwise subject to the arbitration requirements of the Financial Industry Regulatory Authority ("FINRA"), after the court issues a ruling concerning emergency, temporary or preliminary injunctive relief, the parties must submit such claim if otherwise considered a Covered Claim to arbitration pursuant to this Agreement, and

- In connection with any such action related to post-employment restrictions (e.g., actions to enforce rights to trade secrets, or agreements not to compete or solicit customers or employees) on a Covered Party who is otherwise subject to the arbitration requirements of FINRA (absent this Agreement), in order for the Covered Parties to have available to them the expedited arbitration procedures provided by FINRA, after the court issues a ruling concerning emergency, temporary or preliminary injunctive relief, the parties must submit such claim if otherwise considered a Covered

BIERING_0000459

file:///Naeast.ad.jpmorganchase.com/...s_Completed/110123-113023/⬛1662283_Hire_Offer%20Letter_2016-02-18_Biering_11.html[11/15/2023 12:26:20 PM]

Claim to arbitration before FINRA in accordance with its expedited arbitration procedures Rule 13804.

**4.  CLASS ACTION/COLLECTIVE ACTION WAIVER:** All Covered Claims under this Agreement must be submitted on an individual basis. No claims may be arbitrated on a class or collective basis unless required by applicable law. Covered Parties expressly waive any right with respect to any Covered Claims to submit, initiate, or participate in a representative capacity or as a plaintiff, claimant or member in a class action, collective action, or other representative or joint action, regardless of whether the action is filed in arbitration or in court. Furthermore, if a court orders that a class, collective, or other representative or joint action should proceed, in no event will such action proceed in the arbitration forum, subject to applicable law. Claims may not be joined or consolidated in arbitration with disputes brought by other individual(s), unless agreed to in writing by all parties or required by applicable law. To the extent there is a question of enforceability of class or collective arbitration, it shall be decided only by a court, not an arbitrator.

The arbitrator's authority to resolve disputes and make awards under this Agreement is limited to disputes between: (i) an individual and JPMorgan Chase; and (ii) the individual and any current or former officers, directors, employees and agents, if such individual is sued for conduct within the scope of their employment. No arbitration award or decision will have any preclusive effect as to issues or claims in any dispute with anyone who is not a named party to the arbitration.

I retain the right to challenge the validity of this Agreement upon grounds that may exist at law or equity and will not be subject to any form of retaliation for asserting such rights.

**5.  ADMINISTRATIVE AGENCIES:** I understand that this Agreement does not preclude me from filing an administrative claim or charge with the Equal Employment Opportunity Commission ("EEOC") and/or state and local human rights agencies to investigate alleged violations of laws enforced by the EEOC or those agencies. However, I understand that I am not required to initiate an administrative proceeding before pursuing a Covered Claim under this Agreement. In the event I file such an administrative proceeding, I understand that I cannot pursue Covered Claims under this Agreement without first exhausting all required administrative remedies, such as obtaining a right to sue notice from the EEOC in order to arbitrate federal discrimination claims that require such a notice. By responding to administrative agencies, JPMorgan Chase does not waive its right to enforce this Agreement and the arbitrator shall treat a decision of an administrative agency in the same manner as it would be treated by a court of law.

**6.  INITIATING ARBITRATION:** Arbitration under this Agreement shall be conducted before a single neutral arbitrator of the American Arbitration Association ("AAA")(unless the Parties agree upon another mutually acceptable arbitrator, in which case the arbitration will be conducted before such mutually acceptable arbitrator) in accordance with and selected pursuant to the rules and procedures of the Employment Arbitration Rules of the AAA ("AAA Rules") to the extent the AAA Rules do not conflict with the terms of this Agreement or applicable law. The AAA Rules will govern issues not explicitly addressed by this Agreement. Where there is a conflict between this Agreement and the AAA Rules, this Agreement will govern. Where there is a conflict between applicable law and the AAA rules and/or this Agreement, the applicable law will govern. I understand that arbitration under this Agreement will occur in the state where I am currently or was most recently employed by the Firm, unless otherwise agreed by the Parties. Information about AAA is available from its website www.adr.org. A Covered Party may contact them directly at ▮▮▮▮▮▮▮▮ A Covered Party who is otherwise subject to the arbitration requirements of FINRA who wishes to pursue arbitration of a Covered Claim, must file such Covered Claim with AAA (or other mutually acceptable arbitrator), except as otherwise provide in Paragraph 3 of this Agreement.

To initiate arbitration:

BIERING_0000460

file:///Naeast.ad.jpmorganchase.com/...s_Completed/110123-113023/▮▮▮▮I662283_Hire_Offer%20Letter_2016-02-18_Biering_11 html[11/15/2023 12:26:20 PM]

T.05-012

- A Covered Party must send a written demand for arbitration to any office of the AAA (or if another mutually acceptable arbitrator has been agreed to by the Parties, to the offices of such other arbitrator). The Covered Party submitting the demand for arbitration must also simultaneously send a copy of the written demand for arbitration to the other Party (if being sent to JPMorgan Chase, the copy should be sent to the following address:JPMorgan Chase & Co. Legal Department, c/o Legal Papers Served, 4 Chase Metrotech Center, Floor 18, Brooklyn, NY 11245).
- Both of the following must be included in the demand for arbitration:

(a) A statement of the nature of the dispute, including the alleged act or omission at issue, the names of the parties involved in the dispute, the amount in controversy, if any, the remedy sought to resolve the issue (including the dollar amount, if any), the mailing address for future correspondence and the legal counsel, if any, and

(b) Any required filing fee. If a Covered Claim is filed by me, the filing fee is $100 payable by check, money order or any other method of payment permitted by the AAA (or another mutually acceptable arbitrator agreed to by the parties). In the event the filing fee required by the state or federal court in which the Covered Claim could have been brought is less than $100, JPMorgan Chase agrees to refund to me the difference between $100 and such state or federal court filing fee within 30 days of receiving notice of payment. Any demand received by the AAA (or another mutually acceptable arbitrator agreed to by the Parties) that is not accompanied by the required filing fee will be returned.

Nothing in this Agreement releases a Covered Party from any obligation to comply with timely filing requirements and statutes of limitations under applicable law, statutes, or regulations. Thus, whether or not a Covered Party chooses to file with administrative agencies, his/her arbitration must still be initiated as an arbitration within the applicable administrative, statutory or judicial filing time frame, as required by law, and the demand for arbitration must be received at the address above within the time period allowed pursuant to the statute, regulation or other law applicable to the alleged act or omission giving rise to the dispute. Nothing in this Agreement is intended or should be construed to shorten or extend the statute(s) of limitations and/or filing periods that exist under applicable law.

The submission and timing of any response to an arbitration demand shall be in accordance with AAA's Rules, which currently provides that a response be filed within 15 days after the date of the letter from the AAA (or other mutually agreed to arbitrator) acknowledging receipt of the demand for arbitration.

**7. ARBITRATION PROCEEDINGS:** The arbitrator will conduct the hearing as expeditiously as possible, while ensuring that all Parties have the opportunity to present evidence and arguments and ensuring that the Agreement is followed. The arbitrator will set the date, time, and place of the hearing, and AAA (or other arbitration provider mutually agreed to by the parties) will notify the Parties at least 30 calendar days in advance, unless the Parties otherwise agree. In the event the hearing cannot reasonably be completed in one day, the arbitrator will schedule the hearing to be continued on a date or dates that is/are convenient to both Parties. The arbitrator will make every effort to select a reasonably convenient location for the continued arbitration, without incurring additional expense, if possible.

**(a)     Fees:** All ordinary and reasonable administrative expenses of the arbitration, including fees for a single arbitrator, hearing room expenses, travel expenses of the arbitrator, the AAA representatives (if applicable), and any witnesses produced at the arbitrator's specific request and not otherwise called by a party, will be paid completely by JPMorgan Chase. The fees and expenses of any witness, expert, consultant, interpreter and others retained or consulted by a party shall be paid by the party requiring the presence of such persons, subject to applicable law.  JPMorgan Chase will not pay for fees or costs incurred as a result of deliberate and inappropriate delay or absence caused by employees or their counsel, as

BIERING_0000461

file:///Naeast.ad.jpmorganchase.com/...s_Completed/110123-113023/████1662283_Hire_Offer%20Letter_2016-02-18_Biering_11.html[11/15/2023 12:26:20 PM]

T.05-013

determined by the arbitrator and permitted by applicable law. Except as otherwise provided by attorney's fees shall be paid by the party that incurs them. Nothing in this Agreement is intended or should be construed to require employees to bear any type of expense that they would not otherwise bear if the Parties were to litigate a Covered Claim in a court of law.

(b)     **Legal Representation and Language Interpreter:** The Parties (if desired) may use the services of legal counsel and/or a language interpreter. The Parties utilizing such services are responsible for making and paying all fee and other arrangements directly with the legal counsel and/or interpreter, subject to applicable law. Nothing in this Agreement is intended or should be construed to require employees to bear any type of expense that they would not otherwise bear if the Parties were to litigate a Covered Claim in a court of law.

(c)     **Attendance at and Confidentiality of Arbitration Hearing:** The Covered Party, a JPMorgan Chase corporate representative of its choosing, and the arbitrator must be present at the hearing. In addition, an official recorder and legal counsel (for any party) also may attend the hearing. Further, the Parties may call witnesses to testify at the arbitration. Unless the parties agree otherwise, the arbitrator shall exclude witnesses (other than the represented Parties) from the hearing during the testimony of any other witness. The arbitrator, the Parties and their representatives must maintain the confidentiality of the hearings unless the law provides otherwise.

(d)     **Discovery:** Discovery requests and the provision of discovery must be consistent with this Agreement, general standards of due process, the Rules of AAA and the expedited nature of arbitration. The guidelines below are only guidelines, do not establish a minimum or maximum of discovery, and will be applied subject to these principles. Thus, there may be cases which warrant more or less discovery than that outlined below.

- At least 20 days before the arbitration hearing, the Parties must submit the names and addresses of the witnesses each party intends to produce and any documents each party intends to present. The Parties may add to such information up to 10 days before the hearing. All such submissions are final after that point absent a finding of good cause by the arbitrator.

- In general, the Parties may take the depositions of all expert witnesses and up to 3 other individuals. Any individual who certifies he/she has no direct knowledge of the facts should not be deposed as a fact witness. At least 10 days' prior notice should be given by the party requesting a deposition and advance efforts should be made to mutually agree on deposition dates, including the time and place for any depositions to be taken. The party requesting the deposition is responsible for all related costs for that deposition. Discovery must be completed at least 20 days before the hearing. The arbitrator may alter the timing and scope of discovery as necessary or upon request of the Parties.

- The arbitrator will resolve discovery disputes and may expand or restrict the scope of discovery within his or her reasonable discretion, and the rules of AAA consistent with the expedited nature of arbitration.

(e)     **Prehearing Motions**: The arbitrator is authorized to consider and rule on prehearing motions, including discovery motions, motions to dismiss and summary judgment on the claims, provided that the other party has reasonable notice and time to respond to any such prehearing motions. Any dispute which fails to state a claim upon which relief may be granted under applicable law (including, but not limited to claims that are barred by the applicable statute of limitations or mandated timeframe for filing such claim, or that are barred by an enforceable release, or involve a claim against someone who was not associated with the conduct at issue) is subject to dismissal without an evidentiary hearing. Any ruling regarding such motion

BIERING_0000462

file:///Naeast.ad.jpmorganchase.com/...s_Completed/110123-113023█████I662283_Hire_Offer%20Letter_2016-02-18_Biering_11.html[11/15/2023 12:26:20 PM]

T.05-014

shall be made consistent with the Form of Decision and Scope of Relief sections in this Agreement.

**(f)    Time of Decision:** The arbitrator will make the decision within 30 days of the close of the hearing or as soon as possible thereafter, unless otherwise agreed to by the Parties or otherwise specified by law.

**(g)    Form of Decision:** The decision will be in writing and signed by the arbitrator. Unless otherwise agreed to by the Parties, the decision will include a summary of claims arbitrated and decided, a reasoned opinion setting forth any findings of fact or conclusions of law, and damages and other relief (if any) granted. All decisions shall be executed in the manner required by law. The decision will be final and binding upon the Parties, and appeal of the decision to a court shall be limited as provided by the FAA.

**(h)    Scope of Relief:** The arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court, including the award of monetary damages and the imposition of requirements on the Parties (including injunctive relief), as permitted by applicable law. The arbitrator may award only such relief as may be granted for a Covered Claim brought in court on an individual basis under applicable law. The arbitrator may award punitive or exemplary damages or attorneys' fees as provided or limited by applicable law. Nothing in this Agreement is intended or should be construed to limit the remedies that otherwise would be available to the Parties in a court of law.

**(i)    Enforcement of Arbitration Decision/Judicial Procedure:** The decision of the arbitrator may be enforced under the terms of the FAA to the maximum extent possible. Either party may have an arbitration decision enforced in a court of law in accordance with applicable the FAA. If this occurs, neither the arbitrator nor AAA will be involved in the court proceedings.

If a court determines that the decision is not completely enforceable, it will be enforced and binding on both parties to the maximum extent permitted by law.

**8. SEVERABILITY:** If any part of this Agreement is held to be void or unenforceable, the remainder of the Agreement will be enforceable and any part may be severed from the remainder as appropriate, to the extent permitted by law. For example, if a court determines that a particular provision of this Agreement is in conflict with a mandatory provision of applicable law in that jurisdiction, such provision(s) will not be enforced in that jurisdiction, but the exclusivity of the Agreement and its use of arbitration as the sole and exclusive forum for all Covered Claims within its scope shall not be affected. Any dispute as to the arbitrability of a particular issue or claim pursuant to this Agreement is to be resolved in arbitration. Notwithstanding the foregoing, any issue concerning the validity of the class, collective, or representative or joint action waiver provided in Paragraph 4 of this Agreement must be decided by a court with jurisdiction over the Parties, and an arbitrator does not have authority to consider the issue of the validity of the waiver. If for any reason the class, collective, or representative or joint action waiver is found to be unenforceable, the class, collective, or representative or joint action may only be heard in court and may not be arbitrated under this Agreement

**9. AMENDMENT OR TERMINATION OF AGREEMENT:** JPMorgan Chase reserves the right to amend, modify or discontinue this Agreement at any time in its sole discretion to the extent permitted by applicable law. Such amendments may be made by publishing them on the JPMorgan Chase Intranet or by separate notification to me and shall be effective 30 calendar days after such amendments are provided to me and will apply on a going-forward basis only. Amendment, modification or discontinuation of the Agreement will not affect pending arbitration proceedings. Continuation of my employment after receiving such amendments or modifications will be considered my acceptance of the amended terms.

This Agreement does not alter the voluntary ("at will") nature of my employment relationship with the Firm, nor does it afford any rights or remedies not otherwise available under applicable law. Of course, this Agreement does not require that JPMorgan Chase initiate arbitration before taking corrective action of any

BIERING_0000463

file:///Naeast.ad.jpmorganchase.com/...s_Completed/110123-113023/▮▮▮▮I662283_Hire_Offer%20Letter_2016-02-18_Biering_11 html[11/15/2023 12:26:20 PM]

T.05-015

T.05-016

4:26-cv-00381-O

*Biering v. JPMS, et al.*

kind, including termination of employment.

Signature: _Joshua Biering_          Date: __18-Feb-2016__

BIERING_0000464

file:///Naeast.ad.jpmorganchase.com/...s_Completed/110123-113023/     I662283_Hire_Offer%20Letter_2016-02-18_Biering_11.html[11/15/2023 12:26:20 PM]

T.05-016



## Employment Eligibility Verification

**Department of Homeland Security**
U.S. Citizenship and Immigration Services

USCIS
**Form I-9**
OMB No. 1615-0047
Expires 03/31/2016

▶**START HERE. Read instructions carefully before completing this form. The instructions must be available during completion of this form.**
**ANTI-DISCRIMINATION NOTICE:** It is illegal to discriminate against work-authorized individuals. Employers **CANNOT** specify which document(s) they will accept from an employee. The refusal to hire an individual because the documentation presented has a future expiration date may also constitute illegal discrimination.

**Section 1. Employee Information and Attestation** *(Employees must complete and sign Section 1 of Form I-9 no later than the first day of employment, but not before accepting a job offer.)*

| Last Name *(Family Name)* | First Name *(Given Name)* | Middle Initial | Other Names Used *(if any)* |
|---|---|---|---|
| Biering | Joshua | D | Josh |

Address *(Street Number and Name)* ▮▮▮▮▮▮▮

U.S. Social Security Num ▮▮▮▮▮▮▮

I am aware that federal law provides for imprisonment and/or fines for false statements or use of false documents in connection with the completion of this form.

I attest, under penalty of perjury, that I am (check one of the following):

☑ A citizen of the United States

☐ A noncitizen national of the United States *(See instructions)*

☐ A lawful permanent resident (Alien Registration Number/USCIS Number): _____

☐ An alien authorized to work until (expiration date, if applicable, mm/dd/yyyy) _____ . Some aliens may write "N/A" in this field.
*(See instructions)*

For aliens authorized to work, provide your Alien Registration Number/USCIS Number OR Form I-94 Admission Number:

1. Alien Registration Number/USCIS Number: _____

**OR**

2. Form I-94 Admission Number: _____

If you obtained your admission number from CBP in connection with your arrival in the United States, include the following:

Foreign Passport Number: _____

Country of Issuance: _____

Some aliens may write "N/A" on the Foreign Passport Number and Country of Issuance fields. *(See instructions)*

| | **3-D Barcode**<br>**Do Not Write in This Space** |
|---|---|

| Signature of Employee: | Date *(mm/dd/yyyy)*: 05/16/2016 |
|---|---|

**Preparer and/or Translator Certification** *(To be completed and signed if Section 1 is prepared by a person other than the employee.)*

I attest, under penalty of perjury, that I have assisted in the completion of this form and that to the best of my knowledge the information is true and correct.

| Signature of Preparer or Translator: | Date *(mm/dd/yyyy)*: |
|---|---|

| Last Name *(Family Name)* | First Name *(Given Name)* |
|---|---|
| | |

| Address *(Street Number and Name)* | City or Town | State | Zip Code |
|---|---|---|---|
| | | | |

🛑        ***Employer Completes Next Page***        🛑

Form I-9   03/08/13 N

Page 7 of 9

BIERING_0000465

## Section 2. Employer or Authorized Representative Review and Verification

*(Employers or their authorized representative must complete and sign Section 2 within 3 business days of the employee's first day of employment. You must physically examine one document from List A OR examine a combination of one document from List B and one document from List C as listed on the "Lists of Acceptable Documents" on the next page of this form. For each document you review, record the following information: document title, issuing authority, document number, and expiration date, if any.)*

**Employee Last Name, First Name and Middle Initial from Section 1:**

| List A | OR | List B | AND | List C |
|---|---|---|---|---|
| Identity and Employment Authorization | | Identity | | Employment Authorization |

| List A | List B | List C |
|---|---|---|
| Document Title: US PASSPORT | Document Title: | Document Title: |
| Issuing Authority: USA | Issuing Authority: | Issuing Authority: |
| Document Number: ▮▮▮ | Document Number: | Document Number: |
| Expiration Date (if any)(mm/dd/yyyy): 10/07/2018 | Expiration Date (if any)(mm/dd/yyyy): | Expiration Date (if any)(mm/dd/yyyy): |
| Document Title: | | |
| Issuing Authority: | | |
| Document Number: | | |
| Expiration Date (if any)(mm/dd/yyyy): | | |
| Document Title: | | |
| Issuing Authority: | | |
| Document Number: | | |
| Expiration Date (if any)(mm/dd/yyyy): | | |

**3-D Barcode
Do Not Write in This Space**

## Certification

I attest, under penalty of perjury, that (1) I have examined the document(s) presented by the above-named employee, (2) the above-listed document(s) appear to be genuine and to relate to the employee named, and (3) to the best of my knowledge the employee is authorized to work in the United States.

The employee's first day of employment *(mm/dd/yyyy):* 5/23/2016  (See instructions for exemptions.)

| Signature of Employer or Authorized Representative ▮▮▮ | Date (mm/dd/yyyy) ▮▮▮ | Title of Employer or Authorized Representative RELATIONSHIP BANKER |
|---|---|---|
| Last Name (Family Name) KHWAJA | First Name (Given Name) ▮▮▮ | Employer's Business or Organization Name CHASE BANK |

*(stamp: AFFAN KHWAJA, My Commission Expires ..., STATE OF TEXAS)*

| Employer's Business or Organization Address (Street Number and Name) 4343 W Nw Hwy Ste 350 | City or Town DALLAS | State TX | Zip Code 75220 |
|---|---|---|---|

## Section 3. Reverification and Rehires *(To be completed and signed by employer or authorized representative.)*

| A. New Name (if applicable) Last Name (Family Name)  First Name (Given Name) | Middle Initial | B. Date of Rehire (if applicable) (mm/dd/yyyy): |
|---|---|---|

C. If employee's previous grant of employment authorization has expired, provide the information for the document from List A or List C the employee presented that establishes current employment authorization in the space provided below.

| Document Title: | Document Number: | Expiration Date (if any)(mm/dd/yyyy): |
|---|---|---|

I attest, under penalty of perjury, that to the best of my knowledge, this employee is authorized to work in the United States, and if the employee presented document(s), the document(s) I have examined appear to be genuine and to relate to the individual.

| Signature of Employer or Authorized Representative: | Date (mm/dd/yyyy): | Print Name of Employer or Authorized Representative: |
|---|---|---|

Form I-9  03/08/13 N

Page 8 of 9

BIERING_0000466

**UNITED STATES DISTRICT COURT**
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **JOSHUA DAVID SAPPI BIERING,** | § | |
| *Petitioner, Pro Se,* | § | Case No. 4:26-cv-00381-O-BP |
| **v.** | § | |
| **J.P. MORGAN SECURITIES, LLC,** | § | FINRA Case No. 24-01208 |
| **JPMORGAN CHASE & CO., and** | § | EEOC Charge No. 450-2024-04743 |
| **JPMORGAN CHASE BANK, N.A.,** | § | AAA Case No. 01-26-0000-7215 |
| *Respondents.* | § | |

# EXHIBIT T.06c

## Biering–Miller Garden/Notice Period Correspondence
## T.06c-001 – 014

| | |
|---|---|
| **Description:** | Email correspondence between Joshua Biering and Christopher R. [Merrill Lynch MD] during Biering's garden/notice period (Oct. 28 – Dec. 4, 2023): CX-093 (Oct. 28), CX-098 (Nov. 4–10), CX-099 (Dec. 4). |
| **Relevance:** | Documents Biering's good-faith communications during the notice/garden period with a prospective employer. Establishes the competitive harm caused by JPMS's discharge-marked U-5 on Biering's pending transition. The Merrill Lynch contact – a Senior Market Executive – represents the exact tier of institution JPMS's defamatory U-5 was designed to block. |
| **Source:** | CX-093 (BIERING_0001524), CX-098 (BIERING_0001298), CX-099 (BIERING_0001528). |
| **Petition Ref:** | Dkt. 11 (garden/notice period; competitive harm from U-5 disclosure); App. A (notice period timeline). |
| **Disclosures:** | Redactions: Counterparty name redacted per T.06c redaction rule (40-exhibits.mdc §6): "Miller" and related identifiers redacted in garden/notice period context. \| Annotations: None — reproduced as produced, no added markings |
| **Filing Status:** | Public — not sealed |

T.06c-001
4:26-cv-00381-O
*Biering v. JPMS, et al.*

**RE: Follow up- Josh Biering**

▮▮▮▮▮▮▮▮ - DALLAS TX <▮▮▮▮▮▮▮▮>

Sat 10/28/2023 12:40 PM

To:Josh Biering <josh.biering@gmail.com>

Ok

▮▮▮▮▮▮▮▮

Managing Director
Senior Market Executive

**Merrill Lynch Wealth Management**
The Greater Dallas Market
Merrill Lynch, Pierce, Fenner & Smith Inc.
1 Cowboys Way, Suite 400
Frisco, TX   75034

▮▮▮▮▮▮▮▮

---

**From:** Josh Biering <josh.biering@gmail.com>
**Date:** Saturday, Oct 28, 2023 at 12:40 PM
**To:** ▮▮▮▮▮▮▮▮ - DALLAS TX <▮▮▮▮▮▮▮▮>
**Subject:** Re: Follow up- Josh Biering

Yessir-

I'm free from 2-3 and after 5:30pm.

---

**From:** ▮▮▮▮▮▮▮▮ - DALLAS TX <▮▮▮▮▮▮▮▮>
**Sent:** Saturday, October 28, 2023 12:38:42 PM
**To:** Josh Biering <▮▮▮▮▮▮▮▮>
**Subject:** RE: Follow up- Josh Biering

Let's chat later this afternoon would they work
For you?

▮▮▮▮▮▮▮▮

Managing Director
Senior Market Executive

**Merrill Lynch Wealth Management**
The Greater Dallas Market
Merrill Lynch, Pierce, Fenner & Smith Inc.
1 Cowboys Way, Suite 400

**Exhibit**

**CX93**

T.06c-001

**CX93-1**

T.06c-002
4:26-cv-00381-O
*Biering v. JPMS, et al.*



**From:** Josh Biering <█████████████████████
**Date:** Saturday, Oct 28, 2023 at 12:37 PM
**To:** ███████████ - DALLAS TX <███████████>
**Subject:** Re: Follow up- Josh Biering

Excuse me- new "tribes".

**From:** Josh Biering ████████████████████
**Sent:** Saturday, October 28, 2023 12:35:37 PM
**To:** ███████████ - DALLAS TX <███████████>
**Subject:** Re: Follow up- Josh Biering

They did not give me any detail and advised that Employee Relations would reach out. I suspect it's because they caught wind I was interviewing new employers/homes.

**From:** ███████████ - DALLAS TX <███████████>
**Sent:** Saturday, October 28, 2023 12:30:57 PM
**To:** Josh Biering ████████████████
**Subject:** RE: Follow up- Josh Biering

Ok. Did they say why?

████████████████

Managing Director
Senior Market Executive

**Merrill Lynch Wealth Management**
The Greater Dallas Market
Merrill Lynch, Pierce, Fenner & Smith Inc.
1 Cowboys Way, Suite 400
Frisco, TX   75034

████████████████

**From:** Josh Biering ████████████████
**Date:** Saturday, Oct 28, 2023 at 10:11 AM
**To:** ███████████ - DALLAS TX <███████████>

Thank you, Chris-

I did want to inform you I recently submitted my notice to JPMorgan Leadership this morning. I have a 60 day garden leave and I have not heard back from management but it just now happened.

Full transparency- while we were visiting yesterday- I received an ominous text from my manager asking I call him immediately. He then notified me I was being placed on an involuntary paid administrative leave and that no more detail can be provided and a representative from Employee Relations would reach out at an unspecified future date/time.

I hate to bother you with this on a Saturday morning but thought this is worthy of a timely update.

Thanks again,
Josh

---

**From:** ████████████ - DALLAS TX <████████████>
**Sent:** Friday, October 27, 2023 5:08:59 PM
**To:** Josh Biering <j███████████████>
**Subject:** RE: Follow up- Josh Biering

Thanks Josh. Awesome to have met you

Be right back.

Have a good weekend

My best

Chris

████████████
Managing Director
Senior Market Executive

**Merrill Lynch Wealth Management**
The Greater Dallas Market
Merrill Lynch, Pierce, Fenner & Smith Inc.
1 Cowboys Way, Suite 400
Frisco, TX   75034

████████████

---

**From:** Josh Biering <josh.biering@gmail.com>

**T.06c-004**
4:26-cv-00381-O
*Biering v. JPMS, et al.*

**Subject:** Follow up- Josh Biering

Chris-

Great to finally meet you! I'm looking forward to discussing next steps.  Here is my contact information:



Many thanks,
Josh

This message, and any attachment(s), is for the intended recipient(s) only, may contain information that is privileged, confidential and/or proprietary and subject to important terms and conditions available at http://www.bankofamerica.com/electronic-disclaimer. If you are not the intended recipient, please delete this message. For more information about how Bank of America protects your privacy, including specific rights that may apply, please visit the following pages: https://business.bofa.com/en-us/content/global-privacy-notices.html (which includes global privacy notices) and https://www.bankofamerica.com/security-center/consumer-privacy-notice (which includes US State specific privacy notices such as the http://www.bankofamerica.com/ccpa-notice).

This message, and any attachment(s), is for the intended recipient(s) only, may contain information that is privileged, confidential and/or proprietary and subject to important terms and conditions available at http://www.bankofamerica.com/electronic-disclaimer. If you are not the intended recipient, please delete this message. For more information about how Bank of America protects your privacy, including specific rights that may apply, please visit the following pages: https://business.bofa.com/en-us/content/global-privacy-notices.html (which includes global privacy notices) and https://www.bankofamerica.com/security-center/consumer-privacy-notice (which includes US State specific privacy notices such as the http://www.bankofamerica.com/ccpa-notice).

This message, and any attachment(s), is for the intended recipient(s) only, may contain information that is privileged, confidential and/or proprietary and subject to important terms and conditions available at http://www.bankofamerica.com/electronic-disclaimer. If you are not the intended recipient, please delete this message. For more information about how Bank of America protects your privacy, including specific rights that may apply, please visit the following pages: https://business.bofa.com/en-us/content/global-privacy-notices.html (which includes global privacy notices) and https://www.bankofamerica.com/security-center/consumer-privacy-notice (which includes US State specific privacy notices such as the http://www.bankofamerica.com/ccpa-notice).

This message, and any attachment(s), is for the intended recipient(s) only, may contain information that is privileged, confidential and/or proprietary and subject to important terms and conditions available at http://www.bankofamerica.com/electronic-disclaimer. If you are not the intended recipient, please delete this message. For more information about how Bank of America protects your privacy, including specific rights that may apply, please visit the following pages: https://business.bofa.com/en-us/content/global-privacy-notices.html (which includes global privacy notices) and https://www.bankofamerica.com/security-center/consumer-privacy-notice (which includes US State specific privacy notices such as the http://www.bankofamerica.com/ccpa-notice).

T.06c-005
4:26-cv-00381-O
*Biering v. JPMS, et al.*

| From: | ██████████ - DALLAS TX |
|---|---|
| To: | Josh Biering |
| Subject: | RE: J. Biering- ML Transition Plan |
| Date: | Friday, November 10, 2023 5:51:44 AM |
| Attachments: | image001.png |

Thank you Josh

████████████████

Senior Market Executive

## Merrill Lynch Wealth Management
The Greater Dallas Market
Merrill Lynch, Pierce, Fenner & Smith Inc.
1 Cowboys Way, Suite 400
Frisco, TX   75034

████████████████

---

**From:** Josh Biering ████████████████████
**Dat**    Thursday, Nov 09, 2023 at 6:06 PM
**To:** ██████████ - DALLAS TX < ████████████ >
**Sub**        Re: J. Biering- ML Transition Plan

Slight correction- prepaid variables coming due mid Jan***

Many thanks,

Josh Biering

---

**From:** Josh Biering ████████████████
**Sent:** Thursday, November 9, 2023 2:33:23 PM
**To:** ██████████ - DALLAS TX < ████████████ >
**Subject:** Re: J. Biering- ML Transition Plan

Chris-

As discussed,- here is a high level "credit executive summary and profile" of the primary credit needs I anticipate leading to a fruitful business opportunity. Happy to discuss further or provide more detail/clarity.

Follow Up and Open items:

- (JB)- Exec Summary on initial Custom Credit Needs (**attached**)

**Exhibit**

**CX98**

T.06c-005

T.06c-006
4:26-cv-00381-O
Biering v. JPMS, et al.

(JB)- Sign Background Check paperwork (**signed** prior to leaving office; left original copies with Rod)

- (JB)- Coordinate update from JB's Counsel regarding status/direction of transition and U5
  - Pending availability from ML Counsel/Compliance and update on attorney client privilege.
  - My attorney's contact information:
    - Josh Iacuone
    - iacuone@roggedunngroup.com
    - DD: 214-239-2763
    - ████████████
- (CM)-
  - Coordinate call/follow up discussion on prepaid variable forward coming due for top clients mid- June. Considerations/questions:
    - How do prepaid variable forwards count toward "Production Credits" and the Affluent retail grid?
      - i.e. if $50MM notional Prepaid Variable Forward generates $1.5MM of Revenue to the Firm and $750k to the Private Wealth Team (assuming 50/50 split with derivatives desk/ front office); does that mean ~$700k of PCs and subject to the agreed upon Cash Grid (i.e. ~45%)?
      - I forget the terminology, but would these count towards the "Net Strategic Flows" ($300MM in 4 years)? I envision a "wholesale loan- other" line item? Would the individual stock positions also count towards the Net Strategic Flows?
    - Given the nuisances and volume considerations for this particular stock, could we price up indicative terms if I were to provide only detail on the stock itself and tentative notional value?
  - Credit/Custom Credit-
    - How does the approval process look for clients with qualitative factors and significant upside for relationships? I.e. Making a business case to extend a 'good faith' unsecured line of credit.
  - Follow up questions regarding ML platform/capabilities:
    - Restricted Stock Team- I'd love to meet any team members or specialists who focus on Restricted Stock transactions and Rule 144/SEC filing and affiliates. I work with several families and executives on their restricted stock needs: 10b5-1 plans set up/execution, open window sale execution, etc.
    - Trusts & Estates- A former colleague of mine resigned from JPMorgan

T.06c-007

4:26-cv-00381-O

*Biering v. JPMS, et al.*

Private Bank Fort Worth 2 weeks prior to my resignation. She accepted an offer with the Bank of America Trust Department. I'd love to learn more about the BoA Trust Team value proprosition. Low hanging fruit to win new business:

- Cost/client experience when BoA Trust serves as Agent for ILITs, GRATs, etc.
- Cost/client experience when BoA Trust serves as Agent for Living Trusts, bill pays, taxes, etc?
- Cost/client experience when BoA Trust serves as Agent or Co Trustee for Living Trust/ Irrev Trust and facilities Closely Held Asset Management (i.e. property management for rentals, etc.)
- Cost/client experience when BoA Trust serves as Executor, or agent for Executor

- Managing Director Title-
  - Confirming if I have two consecutive years of $2.5MM+ Production Credits, I then qualify to be considered for Managing Director?
- Business Development Account/ Corporate Sponsorships?
  - A large part of my business consists of community engagement/involvement- (National Medal of Honor Museum, West Point Society of North Texas, Folds of Honor North Texas)- are there sponsorship opportunities or allocated budgeting/market dollars?
  - Sponsorships/business case:
    - $5k Annual Wingman Open in Spring- Folds of Honor North Texas (Board member and top clients are involved/fellow board members)... brand awareness
    - $5k+ Annual Gala - Folds of Honor North Texas- AT&T
    - $7,500 - $10k Sponsorship for Luke 18:1 Foundation- This is the charity event I met and successfully prospected/won business of top executives of $3BB Dental Rollup company.
    - $5k- West Point Society North Texas Annual Clay Shoot at Perot's Circle T Ranch

Thank you and I'm excited to continue this journey-

Josh

⬛

---

**From:** ⬛ - DALLAS TX <⬛>
**Sent:** Wednesday, November 8, 2023 12:57 PM

**CONFIDENTIAL**

BIERING_0001300

T.06c-008
4:26-cv-00381-O
*Biering v. JPMS, et al.*

**To:** Josh Biering ███████████████████

**Subject:** RE: J. Biering- ML Transition Plan

Josh

It is a pleasure to spend time with you. Look forward to next steps

Let me get with legal and possibly make this ACP covered call.

Be back

CM



Senior Market Executive

**Merrill Lynch Wealth Management**
The Greater Dallas Market
Merrill Lynch, Pierce, Fenner & Smith Inc.
1 Cowboys Way, Suite 400
Frisco, TX   75034



https://videos.bofa.com/video/1_hlfntfoe



---

**From:** Josh Biering <josh.biering@gmail.com>
**Sent:** Wednesday, November 8, 2023 12:52 PM
**To:** ████████████████ - DALLAS TX <█████████████>
**Subject:** Re: J. Biering- ML Transition Plan

Chris-

I appreciate your time and I found the sessions to be incredibly productive and helpful!

As one of our take aways- I spoke with my attorney regarding his update. He'd prefer to discuss via

T.06c-008

phone in lieu of a documented letter to maintain the safe harbor of attorney client privileged information.

Would a broader call suffice?

Get Outlook for iOS

**From:** ███████████ - DALLAS TX <███████████>
**Sent:** Tuesday, November 7, 2023 2:52:14 PM
**To:** Josh Biering <███████████████>
**Subject:** RE: J. Biering- ML Transition Plan

Hi Josh

Looking forward to seeing you.

My best,

Chris

███████████████

Senior Market Executive

**Merrill Lynch Wealth Management**
The Greater Dallas Market
Merrill Lynch, Pierce, Fenner & Smith Inc.
1 Cowboys Way, Suite 400
Frisco, TX   75034



███████████████ ||

https://videos.bofa.com/video/1_hlfntfoe



**From:** Josh Biering <███████████████>
**Sent:** Saturday, November 4, 2023 10:12 AM
**To:** ███████████ - DALLAS TX <███████████>



T.06c-010
4:26-cv-00381-O
Biering v. JPMS, et al.

**Subject:** J. Biering- ML Transition Plan

Chris-

I trust you are your having an enjoyable weekend- and thank you again for all of your help and your consideration as we explore a potential partnership that I know will be mutually powerful. I am incredibly excited about the next chapter, and I appreciate your genuine and transparent leadership thus far.

As promised- I have prepared a few materials in advance of our meeting next week.

Summarized below- and also attached.

1. "J. Biering Business Transition Plan"- summary below and attached. These values are what I feel to be realistic and reasonable estimates on business that I could win for my new team- wherever my new home may be. Note- several of this new business is not reflected in my actual business score card considering I built a robust pipeline in 2023 that will bear fruit across several liquidity events (pending drastic market shifts/dynamics) around Q3 2024. Armed with the proper credit as well, will only put us more toward the Bull Case end of this spectrum.

2. "JB August 2023 Scorecard- Redacted"- apologies for the format as I only had a printed copy of my August scorecard readily available - which is an accurate representation of my book of business nevertheless. I'd note, ~60-70% of the relationships in my scorecard, I partner with a seasoned Investment Specialist, Lyndon, who Michael P. knows very well. Lyndon may retire in the next few years... and when he does- I have the standing relationship/familiarity and the Bull case numbers would only increase significantly.
   a. To confirm- my transition plan accurately adjusts/considers relationships that are 'stickier' to JPMorgan given current and legacy relationship dynamics.

I look forward to our discussion and I'm happy to provide any more detail or color should you have any questions.

I welcome your feedback,

Josh B.

███████████████████

**JB Business Transition**



| Investments/Credit/Deposits/Other [$MM] | | |
|---|---|---|
| **Bull Case** | **Base Case** | **Bear Case** |

| | Bull Case | Base Case | Bear Case |
|---|---|---|---|
| T + 12 Months | $242 | $218 | $108.90 |
| T + 18 Months | $716 | $523 | $261.38 |
| T + 24 Months | $149 | $76 | $37.80 |
| T + 36 Months | $210 | $115 | $57.50 |
| | **$1,317** | **$931** | **$466** |

**As of August 2023 Scorecard**

| | YTD 2023 Revenue ($ 000) | Annualized- Straight Line |
|---|---|---|
| Investment Management | $1,624 | $2,436 |
| Brokerage/Transactional | $427 | $641 |
| Placement Fees | $263 | $395 |
| **Total Investments** | **$2,314** | **$3,471** |
| Trusts & Estates | $346 | $519 |
| Lending (LMA & Custom) | $684 | $1,026 |
| Mortgage | $268 | $402 |
| Deposits | $360 | $540 |
| Custody & Other | $3 | $5 |
| **Total Book Revenue** | **$3,975** | **$5,963** |

| Balances ($MM) as of August 2023 | |
|---|---|
| Investment Management | $414.90 |
| Client Directed (Alts) | $98.70 |
| Brokerage | $215.50 |
| Lending | $86.40 |
| Mortgage | $51.70 |
| Deposits | $36.10 |
| Trust and Estates | $64.70 |
| Custody | $5.20 |
| Total Client AUM/Brokerage/Custody | $734.30 |
| Total Client Deposits | $36.10 |
| Total Client Lending/Mortgage | $138.10 |
| Total Trusts and Estates | $64.70 |
| **Total Client AUM + Lending** | **$973.20** |

This message, and any attachment(s), is for the intended recipient(s) only, may contain information that is privileged, confidential and/or proprietary and subject to important terms and conditions available at http://www.bankofamerica.com/electronic-disclaimer. If you are not the intended recipient, please delete this message. For more information about how Bank of America protects

T.06c-011

**CX98-7**

T.06c-012

4:26-cv-00381-O

*Biering v. JPMS, et al.*

your privacy, including specific rights that may apply, please visit the following pages: https://business.bofa.com/en-us/content/global-privacy-notices.html (which includes global privacy notices) and https://www.bankofamerica.com/security-center/consumer-privacy-notice (which includes US State specific privacy notices such as the http://www.bankofamerica.com/ccpa-notice).

This message, and any attachment(s), is for the intended recipient(s) only, may contain information that is privileged, confidential and/or proprietary and subject to important terms and conditions available at http://www.bankofamerica.com/electronic-disclaimer. If you are not the intended recipient, please delete this message. For more information about how Bank of America protects your privacy, including specific rights that may apply, please visit the following pages: https://business.bofa.com/en-us/content/global-privacy-notices.html (which includes global privacy notices) and https://www.bankofamerica.com/security-center/consumer-privacy-notice (which includes US State specific privacy notices such as the http://www.bankofamerica.com/ccpa-notice).

This message, and any attachment(s), is for the intended recipient(s) only, may contain information that is privileged, confidential and/or proprietary and subject to important terms and conditions available at http://www.bankofamerica.com/electronic-disclaimer. If you are not the intended recipient, please delete this message. For more information about how Bank of America protects your privacy, including specific rights that may apply, please visit the following pages: https://business.bofa.com/en-us/content/global-privacy-notices.html (which includes global privacy notices) and https://www.bankofamerica.com/security-center/consumer-privacy-notice (which includes US State specific privacy notices such as the http://www.bankofamerica.com/ccpa-notice).

T.06c-013
4:26-cv-00381-O
*Biering v. JPMS, et al.*

**RE: Update**

 - DALLAS TX < ▮▮▮▮▮▮▮▮▮ >

Mon 12/4/2023 8:47 AM

To:Josh Biering ▮▮▮▮▮▮▮▮

Hi Josh

He is a good person and great partner. I wish you luck and continue to keep me posted and I will as such.

My best

Chris

▮▮▮▮▮▮▮▮▮▮

Managing Director
Senior Market Executive

**Merrill Lynch Wealth Management**
The Greater Dallas Market
Merrill Lynch, Pierce, Fenner & Smith Inc.
1 Cowboys Way, Suite 400
Frisco, TX   75034





**From:** Josh Biering <▮▮▮▮▮▮▮▮▮▮
**Sent:** Saturday, December 2, 2023 11:45 AM
**To:** ▮▮▮▮▮▮▮ - DALLAS TX < ▮▮▮▮▮▮▮ >
**Subject:** Update

Chris-

Hope your weekend is off to a great start.

As a general update- had a great introductory call with a recruiter- Bill Willis- who is helping me navigate and explore my options. He is going to be a great resource as I navigate next steps

> **Exhibit**
>
> **CX99**

T.06c-014
4:26-cv-00381-O
*Biering v. JPMS, et al.*

Regards,

JB

This message, and any attachment(s), is for the intended recipient(s) only, may contain information that is privileged, confidential and/or proprietary and subject to important terms and conditions available at http://www.bankofamerica.com/electronic-disclaimer. If you are not the intended recipient, please delete this message. For more information about how Bank of America protects your privacy, including specific rights that may apply, please visit the following pages: https://business.bofa.com/en-us/content/global-privacy-notices.html (which includes global privacy notices) and https://www.bankofamerica.com/security-center/consumer-privacy-notice (which includes US State specific privacy notices such as the http://www.bankofamerica.com/ccpa-notice).

**UNITED STATES DISTRICT COURT**
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **JOSHUA DAVID SAPPI BIERING,** | § | |
| *Petitioner, Pro Se,* | § | Case No. 4:26-cv-00381-O-BP |
| **v.** | § | |
| **J.P. MORGAN SECURITIES, LLC,** | § | FINRA Case No. 24-01208 |
| **JPMORGAN CHASE & CO., and** | § | EEOC Charge No. 450-2024-04743 |
| **JPMORGAN CHASE BANK, N.A.,** | § | AAA Case No. 01-26-0000-7215 |
| *Respondents.* | § | |

# EXHIBIT T.07

## HR Workforce Notes – Internal HR Characterization

## T.07-001 – 003

**Description:** Internal JPMS Human Resources workforce management notes documenting HR's characterization of Petitioner's employment status, performance, and separation circumstances.

**Relevance:** Demonstrates that JPMS HR internally characterized Petitioner's separation in terms inconsistent with the stated reasons provided to FINRA and the EEOC. Supports claims of pretextual termination and employer misrepresentation.

**Source:** JPMS Internal Record – HR Workforce Management System. Obtained through FINRA discovery.

**Petition Ref:** Dkt. 11 ¶¶ discussing internal HR records contradicting stated termination rationale and evidencing employer knowledge of protected activity.

**Disclosures:** Redactions: Names of non-party HR personnel redacted per privacy protocol.

**Filing Status:** Public - not sealed

CONFIDENTIAL

# HR Workforce Administration Case Details

**T.07-001**
4:26-cv-00381-O
*Biering v. JPMS, et al.*

| | |
|---|---|
| Report Title | HR Workforce Administration Case Details |
| Run Date and Time | 2024-03-06 12:55:42 Argentine Time |
| Run by | ▮▮▮▮▮ |
| Table name | sn_hr_core_case_workforce_admin |

## HR Workforce Administration Case

| | | | |
|---|---|---|---|
| Number: | HRC0422429 | State: | Closed Complete |
| Transferred from: | | Resolution : | Request completed or approved |
| Transferred to: | | Approval: | Not Yet Requested |
| Opened for: | Ben Stewart Jr. | Priority: | 3 - Moderate |
| Opened for contact: | | Source: | Self Service |
| Subject person: | Joshua Biering | Opened: | 2023-12-01 14:30:25 |
| Subject person contact: | | Opened by: | Ben Stewart Jr. |
| Stage: | | Skip auto assign: | false |
| Display order: | | Assignment group: | HR_GLB_EDOServicing |
| HR service: | Leaving the Company Support | Assigned to: | Lydia Dsouza |
| HR service subtype: | Leaving the company request | Collaborators: | |
| HR service subtype topic: | I need to submit a termination correction | Template: | Leaving the Company Support |
| Restrict: | false | | |
| HR profile: | Ben Stewart Jr. | | |
| Parent: | | | |
| Document type: | | | |
| PDF Template: | | | |
| Skills: | | | |
| Related cases: | | | |
| Universal Request: | | | |

**Short description:**

Leaving the Company Support case for Ben Stewart Jr.

**Description:**

Termination - I662283
The following fields have been provided:Are you submitting this for or about another employee?: YesSelect the employee: Joshua BieringHow can we help you?: I need to submit a termination correctionI confirm I have attached the Expat termination form.: falseEmployee to be updated: Joshua BieringRevised termination date: 2023-12-01Revised termination reason: CON for Misconduct

**Original Description:**

The following fields have been provided:Are you submitting this for or about another employee?: YesSelect the employee: Joshua BieringHow can we help you?: I need to submit a termination correctionI confirm I have attached the Expat termination form.: falseEmployee to be updated: Joshua BieringRevised termination date: 2023-12-01Revised termination reason: CON for Misconduct

## General Information

| | | | |
|---|---|---|---|
| Subject person Prefix: | | HR profile Marital status: | |
| Subject person First name: | Joshua | HR profile Country of birth: | |
| Subject person Middle name: | D. | HR profile Ethnicity: | |
| Subject person Last name: | Biering | Subject person Gender: | |

**Exhibit CX176**

JPMS000787

2024-03-06 12:55:42 Argentine Time

T.07-001

CONFIDENTIAL

T.07-002

4:26-cv-00381-O

*Biering v. JPMS, et al.*

# HR Workforce Administration Case D

## Contact Information

| | | | |
|---|---|---|---|
| HR profile Home address: | | HR profile Home email: | |
| HR profile Home city: | Azle | HR profile Private - cell: | |
| HR profile Home state / province: | TX | HR profile Work mobile phone: | |
| HR profile Home zip / postal code: | | HR profile Private main: | |
| HR profile Home country: | United States of America | | |

## Comments/Worknotes

**Additional comments:**

2023-12-04 02:17:38 - Lydia Dsouza (Additional comments)
Hello Ben,

My name is Lydia. Thank you for contacting HR Answers.
I'll be happy to assist you with the query/request.

Termination

Updated revised termination date 1-Dec-2023 for Joshua Biering I662283.

Changed termination reason as requested.

Involuntary Termination
Misconduct

If you are satisfied with the answers provided, kindly accept the resolution by clicking 'Yes' in the Actions button.

Should you have other questions about a different topic, kindly create another inquiry.

Thanks,
Lydia D
HR Answers
For help and resources on HR related topics, visit me@jpmc.

2023-12-01 14:30:25 - Ben Stewart Jr. (Additional comments)
User Ben Stewart Jr. has initiated a Leaving the Company Support request

**Work notes:**

| | |
|---|---|
| Related List Title | HR Case List |
| Table name | sn_hr_core_case |
| Query Condition | Sys ID in fbfd08c8478af15806b0c43d026d4362, 3b06814e93fdb994a198fc0d6cba101c, 63ecfa99837d79503ac632347daad395 |
| Sort Order | Created in descending order |

3 HR Cases

| Number | State | Opened for | Subject person | HR service | Short description | Assignment group | Assigned to |
|---|---|---|---|---|---|---|---|
| HRC0151920 | Closed Complete | Ben Stewart Jr. | Joshua Biering | Career & Performance | Career & Performance case for Ben Stewart Jr. | HR_NA_HRA_HR Answers | Arbs Bulaong |

JPMS000788

T.07-002

T.07-003
4:26-cv-00381-O
Biering v. JPMS, et al.

| Number | State | Opened for | Subject person | HR service | Short description | Assi p | |
|---|---|---|---|---|---|---|---|
| HRC0098308 | Closed Complete | Ben Stewart Jr. | | Employee Behavior Assistance | Career & Performance case for Ben Stewart Jr. | HR_AM hore | |
| HRC0115347 | Cancelled | Ben Stewart Jr. | Joshua Biering | Career & Performance | Career & Performance case for Ben Stewart Jr. | HR_GLB_ER_Ad minIntake | ▇▇▇▇ |

| | |
|---|---|
| Related List Title | Interaction List |
| Table name | interaction |
| Query Condition | Sys ID in |
| Sort Order | Number in ascending order |

None

| | |
|---|---|
| Related List Title | Interaction List |
| Table name | interaction |
| Query Condition | Opened for = Joshua Biering |
| Sort Order | Created in descending order |

5 Interactions

| Number | Opened | Short description | Opened for | State | Type | Assigned to | Updated | Updated by |
|---|---|---|---|---|---|---|---|---|
| IMS0105283 | 2023-11-29 14:37:31 | Pay & Tax Assistance (US) interaction created for Joshua Biering | Joshua Biering | Closed Complete | Phone | ▇▇▇▇ | 2023-11-29 15:05:35 | E778734 |
| IMS0102403 | 2023-11-28 12:03:53 | General Inquiry interaction created for Joshua Biering | Joshua Biering | Closed Complete | Phone | Mark ▇▇ | 2023-11-28 12:15:23 | D566310 |
| IMS0090500 | 2023-11-17 11:37:07 | Pay & Tax Assistance (US) interaction created for Joshua Biering | Joshua Biering | Closed Complete | Phone | ▇▇▇▇ | 2023-11-17 11:40:31 | N604018 |
| IMS0068112 | 2023-11-02 18:18:18 | | Joshua Biering | Closed Complete | Phone | ▇▇▇▇ | 2023-11-02 18:24:30 | V749410 |
| IMS0059925 | 2023-10-30 11:38:39 | General Inquiry interaction created for Joshua Biering | Joshua Biering | Closed Complete | Phone | ▇▇▇▇ | 2023-10-30 11:48:42 | N636764 |

| | |
|---|---|
| Related List Title | Task SLA List |
| Table name | task_sla |

▇▇▇▇

JPMS000789

T.07-003

**CONFIDENTIAL**

T.07-004

4:26-cv-00381-O

*Biering v. JPMS, et al.*

# HR Workforce Administration Case D

| Query Condition | Task = HRC0422429 |
|---|---|
| Sort Order | None |

**1 Task SLAs**

| SLA definition | Type | Target | Stage | Business time left | Business elapsed time | Business elapsed percentage | Start time | Stop time |
|---|---|---|---|---|---|---|---|---|
| 7 Day | SLA | Resolution | Completed | 2 Days 8 Hours 30 Minutes | 6 Hours 29 Minutes | 10.31 | 2023-12-01 14:30:25 | 2023-12-11 02:17:44 |

| Related List Title | Attachment List |
|---|---|
| Table name | sys_attachment |
| Query Condition | Table name = sn_hr_core_case_workforce_admin AND Table sys ID = da53afd69372f9581718366d6cba1081 |
| Sort Order | Created in descending order |

**1 Attachments**

| File name | Created ▼ | Created by | Updated | Updated by |
|---|---|---|---|---|
| RFT - Biering.pdf | 2023-12-01 14:30:22 | N682989 | 2023-12-01 14:30:25 | system |

| Related List Title | HR Case List |
|---|---|
| Table name | sn_hr_core_case |
| Query Condition | Sys ID in |
| Sort Order | Created in descending order |

**None**

| Related List Title | Knowledge Use List |
|---|---|
| Table name | kb_use |
| Query Condition | Sys ID in 160d8423472442908da68bda436d430b, 6929bbd7c3a44690668cbe0fb001319f, 767f9a8747a48a50f3102efd046d4394, |
| Sort Order | Created in descending order |

JPMS000790

T.07-004

**UNITED STATES DISTRICT COURT**
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **JOSHUA DAVID SAPPI BIERING,** | § | |
| *Petitioner, Pro Se,* | § | Case No. 4:26-cv-00381-O-BP |
| **v.** | § | |
| **J.P. MORGAN SECURITIES, LLC,** | § | FINRA Case No. 24-01208 |
| **JPMORGAN CHASE & CO., and** | § | EEOC Charge No. 450-2024-04743 |
| **JPMORGAN CHASE BANK, N.A.,** | § | AAA Case No. 01-26-0000-7215 |
| *Respondents.* | § | |

# EXHIBIT U.01

## Recommendation for Termination
## U.01-001 – 008

**Description:** JPMS internal recommendation memorandum for Petitioner's termination, including supporting documentation and approval chain.

**Relevance:** Shows the internal decision-making process and stated justification for Petitioner's termination. Relevant to claims that the termination was pretextual and retaliatory, as the stated reasons are inconsistent with contemporaneous performance records.

**Source:** JPMS Internal Record – HR / Compliance. Obtained through FINRA discovery.

**Petition Ref:** Dkt. 11 ¶¶ discussing wrongful termination, pretextual rationale, and retaliatory discharge.

**Disclosures:** Redactions: Non-party HR/management names redacted per privacy protocol.

**Filing Status:** Public - not sealed

Message

**From:** ▇▇▇, Julie [julie▇▇▇@jpmchase.com]
**Sent:** 1/24/2024 5:08:18 PM
**To:** Sebastian, Nancy R [nancy.r.sebastian@jpmorgan.com]
**Subject:** FW: Biering

Keeping you in the loop as you are not copied on this email thread.

▇▇▇▇z | Employee Relations | Human Resources | Julie▇▇▇@jpmchase.com
For HR help and resources, visit me@jpmc

---

**From:** Aughinbaugh, John T (WM, USA) <john.t.aughinbaugh@jpmorgan.com>
**Sent:** Wednesday, January 24, 2024 10:22 AM
**To:** Magee, Christopher J <christopher.j.magee@jpmorgan.com>; Stainback, Stephanie (WM, USA) <Stephanie.Stainback@jpmorgan.com>; Tidwell-Neal, Rachel L (Legal, USA) <rachel.l.tidwell-neal@jpmchase.com>; ▇▇▇, Julie (HR, USA) <julie▇▇▇@jpmchase.com>
**Cc:** ▇▇▇ Peter C (WM, USA) <peter.▇▇▇@jpmorgan.com>; Agather, Elaine (WM, USA) <Elaine.Agather@jpmorgan.com>; Hitchcock, Kyle E (WM, USA) <kyle.e.hitchcock@jpmorgan.com>; Stewart, Ben (WM, USA) <ben.stewart@jpmorgan.com>
**Subject:** RE: Biering

Two updates for the group today.

Based on security guidance, we have locked our client center front doors until further notice.

Josh Biering has been calling our investment desk attempting to place trades for his/our clients since 7:40AM this morning. The clients have signed paperwork to transfer assets to Josh/Raymond James so this appears to be legitimate business purpose, but Josh is not authorized on the accounts and has been very aggressive pushing team members to accept his authority or expedite our normal procedures. We have conducted call backs with the actual client and trades are in progress.

---

J.T. Aughinbaugh | Managing Director | J.P. Morgan | 420 Throckmorton St, Floor 03 | Fort Worth, TX 76102 | T: 817 884 4463 | john.t.aughinbaugh@jpmorgan.com | jpmorgan.com/privatebank

J.P. Morgan Securities LLC | JPMorgan Chase Bank, N.A.

NOT AN OFFICIAL CONFIRMATION OR VALUATION OF ANY TRANSACTION. Trade instructions will not be accepted through Electronic Mail (E-mail). For informational purposes only. This does not represent an official account of the holdings, balances, or transactions made in your account. Please refer to your monthly account statement for the official record of all of your account activities. Important risk considerations for certain investment products and asset classes can be found **HERE.**

INVESTMENT PRODUCTS: NOT FDIC INSURED ● NO BANK GUARANTEE ● MAY LOSE VALUE

---

**From:** Magee, Christopher J <christopher.j.magee@jpmorgan.com>
**Sent:** Tuesday, January 23, 2024 4:03 PM
**To:** Aughinbaugh, John T (WM, USA) <john.t.aughinbaugh@jpmorgan.com>; Stainback, Stephanie (WM, USA) <Stephanie.Stainback@jpmorgan.com>; Tidwell-Neal, Rachel L (Legal, USA) <rachel.l.tidwell-neal@jpmchase.com>; ▇▇▇, Julie (HR, USA) <julie▇▇▇@jpmchase.com>
**Cc:** ▇▇▇ Peter C (WM, USA) <peter.▇▇▇@jpmorgan.com>; Agather, Elaine (WM, USA) <Elaine.Agather@jpmorgan.com>; Hitchcock, Kyle E (WM, USA) <kyle.e.hitchcock@jpmorgan.com>; Stewart, Ben (WM,

U.01-001

JPMS_00026035

U.01-002
4:26-cv-00381-O
Biering v. JPMS, et al.

USA) <ben.stewart@jpmorgan.com>
**Subject:** RE: Biering

Good evening,

**Redacted - Privilege**

Regards,
Chris

▉▉▉▉▉▉▉▉▉▉ | He/Him/His | Vice President - Threat Manager | Global Security | JPMorganChase & Co. | 277 Park Avenue, New York, NY | NY1-L005 | W: (212)-270-5616 M: (203)-414-3208 | Christopher.j.magee@jpmorgan.com

Learn more at go/besecure



**From:** Magee, Christopher J <christopher.j.magee@jpmorgan.com>
**Sent:** Monday, January 22, 2024 8:42 PM
**To:** Aughinbaugh, John T (WM, USA) <john.t.aughinbaugh@jpmorgan.com>; Stainback, Stephanie (WM, USA)

U.01-002

<Stephanie.Stainback@jpmorgan.com>; Tidwell-Neal, Rachel L (Legal, USA) <rachel.l.tidwell-neal█ █████, Julie (HR, USA) <julie███████@jpmchase.com>

**Cc:** █████ Peter C (WM, USA) <peter.c.chilian@jpmorgan.com>; Agather, Elaine (WM, USA) <Elaine.Agather@jpmorgan.com>; Hitchcock, Kyle E (WM, USA) <kyle.e.hitchcock@jpmorgan.com>; Stewart, Ben (WM, USA) <ben.stewart@jpmorgan.com>

**Subject:** RE: Biering

# Redacted - Privilege

Regards,
Chris

**Christopher Magee** | He/Him/His | Vice President - Threat Manager | Global Security | JPMorganChase & Co. | 277 Park Avenue, New York, NY | NY1-L005 | W: (212)-270-5616 M: (203)-414-3208 | Christopher.j.magee@jpmorgan.com



Learn more at go/besecure

☑ Be secure



**From:** Aughinbaugh, John T (WM, USA) <john.t.aughinbaugh@jpmorgan.com>
**Sent:** Monday, January 22, 2024 8:07 PM
**To:** Stainback, Stephanie (WM, USA) <Stephanie.Stainback@jpmorgan.com>; Tidwell-Neal, Rachel L (Legal, USA) <rachel.l.tidwell-neal@jpmchase.com>; █████, Julie (HR, USA) <julie███████@jpmchase.com>; Magee, Christopher J <christopher.j.magee@jpmorgan.com>
**Cc:** █████ Peter C (WM, USA) <peter.c.chilian@jpmorgan.com>; Agather, Elaine (WM, USA) <Elaine.Agather@jpmorgan.com>; Hitchcock, Kyle E (WM, USA) <kyle.e.hitchcock@jpmorgan.com>; Stewart, Ben (WM, USA) <ben.stewart@jpmorgan.com>
**Subject:** Biering

# Redacted - Privilege

J.T. Aughinbaugh | Managing Director | J.P. Morgan | 420 Throckmorton St, Floor 03 | Fort Worth, TX 76102 | T: 817 884 4463 | john.t.aughinbaugh@jpmorgan.com | jpmorgan.com/privatebank

J.P. Morgan Securities LLC | JPMorgan Chase Bank, N.A.

U.01-004
4:26-cv-00381-O
*Biering v. JPMS, et al.*

NOT AN OFFICIAL CONFIRMATION OR VALUATION OF ANY TRANSACTION. Trade instructions will through Electronic Mail (E-mail). For informational purposes only. This does not represent an official acc balances, or transactions made in your account. Please refer to your monthly account statement for the official record of all of your account activities. Important risk considerations for certain investment products and asset classes can be found **HERE.**

INVESTMENT PRODUCTS: NOT FDIC INSURED ● NO BANK GUARANTEE ● MAY LOSE VALUE

**From:** Barr, Austin M (WM, USA) <austin.m.barr@jpmorgan.com>
**Sent:** Monday, January 22, 2024 6:47 PM
**To:** Aughinbaugh, John T (WM, USA) <john.t.aughinbaugh@jpmorgan.com>; Hitchcock, Kyle E (WM, USA) <kyle.e.hitchcock@jpmorgan.com>; Stewart, Ben (WM, USA) <ben.stewart@jpmorgan.com>
**Subject:** RE: ███████ Transition

Thanks for your time and hearing me out. Below is the message I received Friday evening (1/19).

JPMS_00026038