# UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **JOSHUA DAVID SAPPI BIERING**, | § § § | |
| Petitioner, *Pro Se,* | § § | |
| v. | § § | **Case No.** 4:26cv-381-O |
| **J.P. MORGAN SECURITIES, LLC,** | § § | FINRA Case No. 24-01208 |
| **JPMORGAN CHASE & CO., and** | § | EEOC Charge No. 450-2024-04743 |
| **JPMORGAN CHASE BANK, N.A.,** | § § | AAA Case No. 01-26-0000-7215 |
| Respondents. | § | |

## PETITIONER'S REPLY SUPPORTING EXPEDITED SCHEDULING AND CONCURRENT BRIEFING [Dkt. 16]

Petitioner Joshua David Sappi Biering, *pro se*, submits this reply to Respondent's Response in Opposition [Dkt. 35] to Petitioner's Motion for Accelerated Hearing and Concurrent Dispositive Briefing [Dkt. 16].

Dkt. 16 requests a discrete sequencing order: that Respondents file any threshold motions—to dismiss, compel arbitration, stay, or transfer—concurrently with their response to the Amended Verified Petition [Dkt. 11]. This reply addresses that sequencing request alone; it does not anticipate the merits of any threshold motion Respondents may file on May 26, 2026. The principal authorities relied on below are filed in highlighted and annotated form as Attachment A.

## I.    Respondents Mischaracterize The Relief Requested

Dkt. 35 treats Dkt. 16 as if it seeks to force Respondents to file "all conceivable motions" and then waive any argument not filed at the initial pleading deadline. Dkt. 35 at 2, PageID 2159.

It does not.

Dkt. 16 asks that threshold motions that would defer adjudication—motions to dismiss,

compel arbitration, stay, transfer, or otherwise postpone review of the Amended Verified Petition—be filed together with Respondents' response, so the Court can decide the threshold path once. Dkt. 16 at 1, PageID 222.

Petitioner sought expedited consideration in Dkt. 16 and again when the May 26 extended deadline threatened to overtake Dkt. 16 and Dkt. 29. Dkt. 16 at 1, 3, PageID 222, 224; Dkt. 32 at 1–3, PageID 1552–54. The sequencing relief is distinct: it does not ask the Court to decide the merits of any threshold motion in advance, and it waives no preserved defense. It asks only that threshold objections be presented together, not serially.

The sequence matters because Respondents had actual notice of the issue before they sought additional time. Petitioner served written conference correspondence on all defense counsel on April 27, 2026, raising threshold-motion sequencing and offering to confer. Dkt. 16-1; Dkt. 18 at 1, PageID 252. Respondents did not respond. Approximately one hour and fourteen minutes after Petitioner filed Dkt. 16, Respondents filed an emergency motion to extend the Rule 12(a) response deadline. Dkt. 17 at 1, PageID 246; Dkt. 32 at 1, PageID 1552. That timing shows notice, choice, and the need for a sequencing order.

## II. Respondents' Conduct In AAA Arbitration Confirms The Need For Concurrent Briefing

Dkt. 35 omits the AAA arbitration posture already before the Court. Petitioner filed a protective AAA demand on February 10–11, 2026, expressly reserving this Court's determination of forum and arbitrability. Dkt. 11 ¶ 91, PageID 165; Dkt. 13 at 3, PageID 215. That posture was not a surprise to Respondents. The Award issued on December 29, 2025, and Petitioner's intent to pursue confirmation in part and partial vacatur was communicated to Respondents and Mr. Dunlap from issuance forward; the AAA filing protected the parallel forum on the same terms.

Respondents nonetheless did not substantively engage in the AAA proceeding for approximately seven weeks. Dkt. 16 at 9, PageID 230. Their first substantive engagement came after the federal petition was filed, when Mr. Dunlap asked AAA for additional time in open-ended terms: until Respondents were "done with arbitration," rather than by any date

certain. Dkt. 18 at 5, PageID 256.

Greenberg Traurig later agreed only to a limited stay, producing a 90-day AAA administrative hold. Dkt. 13 at 5, PageID 217; Dkt. 16 at 9, PageID 230. That sequence is itself the reason a concurrent-filing order is necessary. Post-*Morgan* Fifth Circuit waiver doctrine reinforces the point: arbitration agreements stand "on the same footing as other contracts," and a party that substantially invokes the judicial process—or represents that it "did not intend to pursue arbitration"—can waive it; the court "frown[s] upon attempts to switch judicial horses in midstream." 5th Cir. No. 24-10699, slip op. at 4–5, 9, 13 (5th Cir. June 24, 2025); Att. A at 9–11. If Respondents intend to invoke arbitration on May 26, the waiver and forum questions should be briefed alongside any Rule 12 motion, not after the schedule has already slipped.

### III.   The Irreparable Harm To Petitioner's Livelihood Is Concrete And Ongoing

Respondents call Petitioner's harm "speculative" and "unidentified." Dkt. 35 at 4, PageID 2161. The adjudicated record forecloses that characterization, and Petitioner does not ask this Court to revisit the Panel's factual findings—he embraces them.

The FINRA Panel found that the Form U5 was inaccurate and that Respondent acted with "intent to hinder" Petitioner's ability to associate with another firm. Dkt. 11 at 6, PageID 142; Dkt. 16 at 5–6, PageID 226–27. The Panel expressly found that the absence of a clean Form U5 made it "very difficult to move to a Tier one competitor." Dkt. 16 at 5–6, PageID 226–27.

The Amended Petition makes clear that those disclosures carry "immediate and ongoing consequences for licensing, hiring, and reputational standing." Dkt. 11 ¶ 27, PageID 150. Until the Award is confirmed and the CRD/BrokerCheck records are corrected, the inaccuracy remains publicly searchable and continues to operate through FINRA Rule 3110(e) mandatory hiring reviews. Dkt. 16 at 2, 5–7, PageID 223, 226–28; Dkt. 29 at 4, PageID 1549.

The Award's public form added separate, ongoing harm. Within approximately forty-

eight hours of issuance, industry publications reported the Award and its findings, including the Panel's Form U5 correction order and pattern-of-conduct concern. Dkt. 11 App. A, PageID 204; Dkt. 16 at 5–6, PageID 226–27. The Award is now archived alongside the U5 history in CRD, BrokerCheck, FINRA Awards Online, state registration review, and Rule 3110(e) hiring review, and continues to operate in each channel while confirmation, modification, and correction remain pending. Dkt. 16 at 2, 5–7, PageID 223, 226–28; Dkt. 29 at 4, PageID 1549.

At the March 5, 2026 House Financial Services Committee hearing on H.R. 2689, Rep. McClain observed that FINRA staff can "permanently end someone's career" while operating outside the transparency rules applicable to federal agencies. Petitioner invokes that statement for the limited proposition that delayed judicial review is not neutral: FINRA-administered records continue to inflict concrete damage to licensing, reputation, and employment mobility while adjudication is deferred.

The asymmetry of that delay is the practical point. As the Supreme Court recognized in a related deference context, the harms of prolonged uncertainty over contested regulatory positions "are not distributed equally. Sophisticated entities and their lawyers may be able to keep pace [with the resulting churn] . . . but ordinary people cannot. They are the ones who suffer the worst kind of regulatory whiplash." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) (Gorsuch, J., concurring); Att. A at 9.

The resource asymmetry on this docket illustrates the point. JPMorgan Chase & Co. is a $4.4 trillion institution that reported $182.4 billion in net revenue and approximately $18 billion in firmwide technology expense for fiscal year 2025; Greenberg Traurig reported approximately $2.9 billion in revenue and more than 3,100 attorneys; UB Greensfelder is an Am Law 200 firm with approximately 244 attorneys. Dkt. 18 at 2–3 & nn.1–3, PageID 253–54. Petitioner is the *pro se* party bearing the ongoing licensing, health, and economic pressure of the public regulatory record. The requested concurrent-filing order does not equalize that asymmetry, but it limits its leverage over threshold-motion sequencing.

*Alpine* supplies the practical timing principle. Review under FINRA's expedited mechanisms "functions differently" from typical de novo SEC review, and later review can be

reduced to "a largely academic exercise." *Alpine Sec. Corp. v. FINRA*, No. 23-5129, slip op. at 18 (D.C. Cir. Nov. 22, 2024); Att. A at 1. Delayed review of FINRA-administered consequences will "almost always be too little, too late," because the regulated channels take effect immediately. *Id.* at 19; Att. A at 1. Even where a stay is theoretically available, it "takes time, during which" the harm continues to accrue. *Id.* at 20; Att. A at 2. Financial injury can be irreparable where no later relief will be available or where the loss threatens continued business operations, and FINRA-channel injury can produce "immediate and often financially devastating consequences that cannot be adequately remedied later." *Id.* at 25, 28; Att. A at 3. Respondents' demand for serial, protracted briefing is a demand to extend that harm.

## IV.    Respondents' FAA Arguments Provide No Basis To Deny Sequencing

To frame the request precisely, Dkt. 16 seeks: (1) expedited consideration of the Amended Verified Petition under 9 U.S.C. § 6 and Fed. R. Civ. P. 81(a)(6)(B), with an expedited hearing if the Court finds argument helpful; and (2) a limited concurrent-filing order governing threshold-motion sequencing. Dkt. 16 at 1, 3, PageID 222, 224. Threshold objections are the motions most capable of delaying FAA review. Requiring those objections to be presented concurrently permits the Court to determine the procedural path once, without prejudging the merits or impairing any preserved defense.

Respondents argue that Petitioner "created his own emergency" by filing near the end of the FAA review period. Dkt. 35 at 4, PageID 2161. That argument fails. Petitioner filed within the statutory period prescribed by 9 U.S.C. § 12 and Tex. Civ. Prac. & Rem. Code § 171.088. Compliance with a congressionally prescribed review deadline preserves rights; it does not forfeit the ability to seek efficient docket management once litigation is underway.

Nor was Petitioner inactive during that interval. Proceeding *pro se*, Petitioner filed a protective AAA demand on February 10–11, 2026, expressly preserving this Court's determination of forum and arbitrability pending judicial review. Dkt. 11 ¶ 91, PageID 165; Dkt. 13 at 3, PageID 215. Petitioner preserved the FAA review period, maintained the

5

parallel AAA posture, and sought sequencing relief only after Respondents requested extensions that threatened serial threshold motion practice. The party seeking to slow the federal schedule was Respondents, not Petitioner.

On the merits framing, Respondents are correct on a narrow point: Petitioner does not seek *de novo* review of the Panel's factual findings. Petitioner expressly embraces those findings, including the findings that the Form U5 was inaccurate and that Respondent acted with intent to hinder Petitioner's ability to associate with another firm. Dkt. 11 at 6, PageID 142; Dkt. 16 at 5–6, PageID 226–27.

Petitioner instead seeks confirmation in part, modification in part, and partial vacatur under 9 U.S.C. §§ 9–11, including under § 10(a)(4)'s "mutual, final, and definite award" framework and § 11's modification authority. Dkt. 11 at 1–3, PageID 137–39; Dkt. 11 ¶¶ 162–67, PageID 181–83. Petitioner separately preserves an alternative vacatur ground under § 10(c): that portions of the Award are irreconcilable with the governing legal standards this Court—not FINRA—must independently determine and apply. Petitioner preserves that alternative for merits briefing and does not ask the Court to resolve it through Dkt. 16.

That is why Respondents' critique of Petitioner's citations to *Loper Bright*, *Jarkesy*, and *Alpine* misses the point. Those authorities are not cited as standalone FAA vacatur decisions. They are cited because they reinforce the principle that this Court independently determines the legal effect of the FINRA forum record and owes no deference to FINRA's interpretation or application of its own procedures, forum administration, or associated-person framework. Accordingly, Respondents' invocation of FINRA procedures and definitions does not control the Court's independent analysis under the FAA.

And if FAA review is intended to proceed in the "summary" and motion-oriented manner Respondents themselves describe, then threshold objections should be presented concurrently rather than through staggered rounds of serial motion practice. Respondents identify no concrete prejudice from concurrent filing and no threshold issue that would be impaired by presenting it alongside their response to the Petition.

## V.    Serial Briefing Would Unnecessarily Relitigate The Same Threshold Questions

Respondents dismiss Petitioner's citations to *Loper Bright* and *Jarkesy* because those cases "do not mention the FAA." Dkt. 35 at 3 n.1, PageID 2160. That misses the point. The FAA supplies the procedural vehicle. Those authorities are cited to get in front of the threshold premises Respondents have already previewed and are likely to press on May 26: a motion to compel arbitration, the contention that JPMS merely followed FINRA procedures, and reliance on FINRA's narrowed associated-person definition or Rule 13201(a) forum allocation. Dkt. 11 ¶¶ 5, 22, PageID 141, 149; Dkt. 16 at 4, PageID 225.

*Loper Bright* answers the deference premise. Courts decide legal questions by applying their own judgment; "courts, not agencies, will decide all relevant questions of law" arising on review, and "an ambiguity is simply not a delegation of law-interpreting power." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, slip op. at 14, 22 (2024); Att. A at 8. *Jarkesy* supplies the Article III and Seventh Amendment backdrop for adjudicative mechanisms that impose consequences analogous to common-law claims; Justice Gorsuch's concurrence underscores that "judges themselves remain the decisionmakers." *SEC v. Jarkesy*, 603 U.S. 109 (2024) (syllabus); *id.* (Gorsuch, J., concurring); Att. A at 5–6. *Alpine* supplies the FINRA-specific timing point addressed above. Att. A at 1–3. Together, those authorities explain why FINRA forum administration and Respondents' use of it do not displace this Court's independent judgment.

Any threshold motion Respondents file—to dismiss, compel, or stay—is likely to rely on the very FINRA Code structures Petitioner challenges. Those motions may also reach for non-signatory equitable estoppel under the Fifth Circuit's *Grigson* two-prong test, which requires that claims be "intertwined with" and "dependent upon" the contract. *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524 (5th Cir. 2000); Att. A at 7. Each anticipated argument shares the same structural premise: that this Court should defer to FINRA's internal rule interpretations and forum-allocation decisions, or that Respondents may invoke an arbitration clause they did not honor. No such deference is required.

Concurrent filing allows the Court to address that fundamental question once. Serial filing guarantees that the Court and the parties will revisit it across multiple overlapping motions.

Finally, Petitioner stands by the authorities cited in Dkt. 16 and Dkt. 11. The reliability concern reflected in N.D. Tex. L. Civ. R. 7.2(f) is addressed here by Attachment A, which provides highlighted working copies of the principal authorities cited in this reply and permits direct review of the quoted language, page references, and cited propositions. Petitioner further notes that the Series S transcript materials separately included a methodology disclosure for the FINRA hearing audio. *See* Series S, Dkt. 33-3 at 1, PageID 1837; *id*. at 3, PageID 1839.

## VI.    Conclusion And Prayer

Petitioner respectfully requests that the Court grant the relief sought in Dkt. 16: an order requiring any motion to dismiss, compel arbitration, stay, transfer, or otherwise defer adjudication of the Amended Verified Petition [Dkt. 11] be filed concurrently with Respondents' response.

In the alternative, Petitioner requests that the Court set a Rule 16(a) status conference to address threshold-motion sequencing. Respondents "do not generally oppose" a Rule 16 case-management conference. Dkt. 35 at 2, PageID 2159. An immediate sequencing order or conference is necessary to prevent Respondents from unilaterally controlling the pace of this litigation while Petitioner suffers ongoing, adjudicated harm to his livelihood.

Respectfully submitted,

**JOSHUA DAVID SAPPI BIERING**
Petitioner, *Pro Se*


Dated: May 21, 2026

8

## CERTIFICATE OF CONFERENCE

Pursuant to N.D. Tex. L. Civ. R. 7.1(b), Petitioner certifies that the relief requested in this reply concerns the scheduling matters previously conferenced on April 30, 2026, and that Dkt. 35 confirms the parties' opposed positions on the relief sought in Dkt. 16.

## CERTIFICATE OF SERVICE

Petitioner, p*ro se*, certifies that on May 21, 2026, the foregoing was filed with the Court via CM/ECF, which will automatically serve notice on all counsel of record.

**JOSHUA DAVID SAPPI BIERING**
Petitioner, *Pro Se*