**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| | X | |
| **JOSHUA DAVID SAPPI BIERING,** | : | **Case No. 4:26-cv-381-O** |
| **Claimant,** | : | |
| | : | **FINRA Case No. 24-01208** |
| **v.** | : | |
| | : | |
| **J.P. MORGAN SECURITIES LLC, *et al.*,** | : | |
| | : | |
| **Respondent.** | : | |
| | X | |

---

**RESPONDENTS' RESPONSE IN OPPOSITION TO THE AMENDED VERIFIED
PETITION TO CONFIRM, MODIFY, AND VACATE IN PART A FINRA
ARBITRATION AWARD, AND TO RETAIN JURISDICTION**

---

Respondents, J.P. Morgan Securities LLC ("JPMS"), JPMorgan Chase Bank, N.A. ("Chase"), and JP Morgan Chase & Co. ("JPMC") (collectively "Respondents"), by and through undersigned counsel, hereby submit this Brief in Support of their Response in Opposition to Petitioner, Joshua David Sappi Biering's ("Biering") Amended Verified Petition to Confirm, Modify, and Vacate in Part a FINRA Arbitration Award, and to Retain Jurisdiction.

Biering asks this Court to grant relief against all Respondents. Specifically, he asks this Court to confirm, modify, and vacate different portions of the Arbitration Award, in a case where the sole Respondent was JPMS. The Arbitration Award granted Biering's claim for expungement of his Form U5, found in JPMS's favor on all Biering's remaining claims, and declined to award Biering any damages.

Biering's Petition asks the Court to cherry-pick the Arbitration Award—to confirm the portions of the award he approves—expungement of his Form U5—and to vacate the portions of

1

the award he disapproves—dismissing his other claims and denying him damages. In support of

this, Biering sets forth the following "grounds" for relief:

- "Ground One: The Court must confirm the award's severable, definite JPMS-directed component under 9 U.S.C. § 9." (Petition, pg. 34).[1]

- "Ground Two: The Court must modify the award under 9 U.S.C. §§ 11(b)-(c) to direct removal of archived Form U4 disclosures." (Petition, pg. 36).

- "Ground Three: Partial vacatur of the damages and defamation dispositions (9 U.S.C. § 10(a)(4))." (Petition, pg. 37). Biering appears to argue that vacatur is appropriate because the Arbitration Award is not mutual, final, and definite. (*Id.*).

- "Ground Four: Remand is inadequate; the Court should retain jurisdiction to determine operative effect." (Petition, pg. 43).[2]

- "Ground Five: The Court's inherent equitable authority supports documented compensatory relief." (Petition, pg. 44). Biering appears to argue the Court should sanction Respondents for alleged misconduct during the FINRA arbitration pursuant to its inherent authority.

- "Ground Six: Punitive relief on preserved claims is reserved to the Court." (Petition, pg. 45). Biering appears to argue that he has an unwaivable right to a jury trial on punitive damages in the Court.

- "Ground Seven: Preservation of non-concession, reserved claims, and later-phase relief." (Petition, pg. 47).[3]

---

[1] With respect to Ground One, JPMS does not object to the Court confirming the Arbitration Award to expunge Biering's Form U5.

[2] With respect to Ground Four, Biering argues that if this Court vacates the Arbitration Award, it should retain jurisdiction over this matter instead of remanding to FINRA. (Pet. at 43). Even in the event of vacatur, this Court cannot retain jurisdiction and must remand to FINRA. *See Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 511 (2001), *citing*, *United Paperworkers Intern. Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 40, fn. 10 (1987) ("But again, established law ordinarily precludes a court from resolving the merits of the parties' dispute on the basis of its own factual determinations, no matter how erroneous the arbitrator's decision. Even when the arbitrator's award may properly be vacated, the appropriate remedy is to remand the case for further arbitration proceedings.").

[3] With respect to Ground Seven, Biering appears to argue that Respondents are precluded from making certain arguments in this or future proceedings. Ground Seven does not seek any relief from this Court, and Respondents are not bound by Biering's arguments on which arguments or claims they may make in the future. Further, because Biering did not seek this relief at the

Of these arguments, only Ground Three appears to be related to Biering's Petition to Vacate. Grounds Five and Six are collateral issues which address Biering's attempt at securing damages beyond the scope of the Court's limited review during these proceedings. Ground Two is another collateral issue which seeks removal of, or expungement of, archived Form U4 disclosures which allegedly misreport Biering's student-loan disability discharges as bankruptcies and compromises with creditors from FINRA's Central Registration Depository. Ground Two is not part of Biering's Statement of Claim nor is it addressed in the Arbitration Award; it is thus beyond the scope of this Court's review. None of Biering's arguments support his claims for relief. Biering cannot seek relief against JPMC and Chase in these proceedings because the Arbitration Panel correctly determined it lacked jurisdiction over them, and they were not parties to the FINRA arbitration. *See DK Joint Venture 1 v. Weyland*, 649 F.3d 310, 312 (5th Cir. 2011). These proceedings should only involve Biering and JPMS.

In the Fifth Circuit, Biering has only one path to vacatur of the Arbitration Award—Section 10 of the Federal Arbitration Act ("FAA"). Biering concedes that he seeks relief pursuant to Section 10(a)(4) of the FAA because he contends the Arbitration Award does not yield a mutual, final, and definite disposition[.] (Petition, pp. 1–2). Biering fails to meet the extraordinarily high standard for vacatur under Section 10(a)(4) of the FAA and the Arbitration Award is mutual, final, and definite because:

- The Arbitration Award clearly and unambiguously grants Biering expungement and requires JPMS to pay to FINRA fees totaling $33,925.00 (collectively "FINRA Fees") while denying the rest of his claims and awarding no damages against JPMS.

---

arbitration, this Court cannot grant him this requested relief, which is beyond the scope of these proceedings. *See Pioneer Natural Resources USA, Inc. v. Paper, Allied Indus., Chemical and Energy Workers Intern. Union Loc. 4-487*, 328 F.3d 818, 821 (5th Cir. 2003).

- JPMC and Chase were never subject to the Arbitration Panel's jurisdiction. Thus, their absence from the Arbitration Award is correct and consistent with the Arbitration Panel's authority.

- The word "Respondent" clearly and unambiguously refers to JPMS.

- Any alleged errors in the Arbitration Award do not justify vacatur.

- The Fifth Circuit's holdings in *Antwine v. Prudential Bache Securities, Inc.*, 899 F.2d 410, 413 (5th Cir. 1990) and *McVay v. Halliburton Energy Services, Inc.*, 608 Fed. Appx. 222, 224 (5th Cir. 2015) support that the Arbitration Award was mutual, final, and definite.

The collateral issues contained in Ground Five, Six, and Two are also meritless. First, pursuant to the Fifth Circuit's holding in *Positive Software Solutions, Inc. v. New Century Mortg. Corp.*, 619 F.3d 458, 463 (5th Cir. 2010), this Court lacks authority to issue sanctions against Respondents for conduct during the FINRA arbitration. Second, it is well-settled that agreeing to arbitration waives the right to a jury trial. Hence, Biering waived his right to a jury trial on punitive damages (and his other claims) by agreeing to arbitration. Third, Biering cannot obtain modification of his Form U4 because he did not seek such relief at the arbitration, and the Arbitration Panel did not address modification of the Form U4 disclosures. *See Pioneer Natural Resources USA, Inc. v. Paper, Allied Indus., Chemical and Energy Workers Intern. Union Loc. 4-487*, 328 F.3d 818, 821 (5th Cir. 2003).

For the foregoing reasons more fully set forth herein, Biering has failed to meet his burden under Section 10(a)(4) of the FAA, and the Court should deny his petition for Vacatur. Pursuant to LR 7.1(d), a Brief in Support of this Response in Opposition is attached hereto and incorporated by reference herein.

Respectfully submitted,

/s/Jeffrey S. Dunlap
Jeffrey S. Dunlap
Ohio Bar No. 0067923,
*Admitted Pro Hac Vice*
Kyle W. Rea
Ohio Bar No. 0101812
*Admitted Pro Hac Vice*
UB GREENSFELDER LLP
Skylight Office Tower
1660 West 2nd Street - Suite 1100
Cleveland, Ohio 44113-1448
Phone (216) 583-7000
Fax (216) 583-7001
jdunlap@ubglaw.com
krea@ubglaw.com

Christopher S. Dodrill
Texas Bar No. 24110696
Elizabeth A. Bones
Texas Bar No. 24074026
GREENBERG TRAURIG LLP
2200 Ross Ave., Ste. 5200
Dallas, Texas 75201
Phone (214) 665-3600
Fax (214) 665-3601
christopher.dodrill@gtlaw.com
beth.bones@gtlaw.com

*Attorneys for Respondents,*
*J.P. Morgan Securities LLC, JPMorgan*
*Chase & Co., and JP Morgan Chase Bank,*
*N.A.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

|  |  |  |
|---|---|---|
| | X | |
| **JOSHUA DAVID SAPPI BIERING,** | : | **Case No. 4:26-cv-381-O** |
| **Claimant,** | : | |
| **v.** | : | **FINRA Case No. 24-01208** |
| **J.P. MORGAN SECURITIES LLC,** *et al.*, | : | |
| **Respondent.** | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | X | |

## RESPONDENTS' BRIEF IN SUPPORT OF THEIR RESPONSE IN OPPOSITION TO THE AMENDED VERIFIED PETITION TO CONFIRM, MODIFY, AND VACATE IN PART A FINRA ARBITRATION AWARD, AND TO RETAIN JURISDICTION

# TABLE OF CONTENTS

TABLE OF CONTENTS ..........................................................................................................................ii

TABLE OF AUTHORITIES ...............................................................................................................iii

I. SUMMARY OF ARGUMENT ..................................................................................................1

II. STATEMENT OF FACTS..........................................................................................................6

   A. Biering filed claims in FINRA against Respondents, but FINRA declined jurisdiction over Chase and JPMC and proceeded against JPMS alone. ...........................................................6

   B. The Arbitration Award only addressed Biering's claims against JPMS, granted Biering expungement, required JPMS to pay FINRA Fees, and denied Biering's remaining claims and damages against JPMS. ................................................................................................................7

III. APPLICABLE LEGAL STANDARD........................................................................................9

IV. ARGUMENT AND AUTHORITIES.......................................................................................10

   A. Biering cannot seek relief in this Court against JPMC and Chase because they were not parties to the FINRA Arbitration.................................................................................................10

   B. Response to Biering's Ground 3: Biering has failed to meet his extraordinarily high burden for vacatur of the Arbitration Award pursuant to Section 10(a)(4) of the FAA. ...........................11

      1. The Arbitration Award was mutual, final, and definite. .......................................................11

      2. JPMC and Chase were never parties to the arbitration. ......................................................14

      3. The word "Respondent" clearly and unambiguously means JPMS. ...................................14

      4. Alleged errors and inconsistencies in the Arbitration Award do not support vacatur.....15

   C. Response to Ground 5, Collateral Issue No. 1: The Court does not possess inherent authority to issue sanctions of $864,407.26 against Respondents for conduct during the FINRA arbitration.......................................................................................................................................17

   D. Response to Ground 6, Collateral Issue No. 2: Punitive damages are not exclusive to this Court. ............................................................................................................................................18

   E. Response to Ground 2, Collateral Issue No. 3: Modification of the Form U4 is beyond the scope of this Court's review. ........................................................................................................21

V. CONCLUSION .........................................................................................................................22

# TABLE OF AUTHORITIES

**Cases**

*American Heritage Life Ins. Co. v. Orr*,
294 F.3d 702 (5th Cir. 2002) ................................................................................................19

*Antwine v. Prudential Bache Sec., Inc.*,
899 F.2d 410 (5th Cir. 1990) ...............................................................................5, 12, 13, 14

*Brabham v. A.G. Edward & Sons*,
376 F.3d 377 (5th Cir. 2004) ..................................................................................................4

*Citigroup Glob. Mkts., Inc. v. Bacon*,
562 F.3d 349 (5th Cir. 2009) ..................................................................................................9

*Cooper v. WestEnd Cap. Mgmt., L.L.C.*,
832 F.3d 534 (5th Cir. 2016) ........................................................................................4, 9, 10

*Cremin v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
957 F. Supp. 1460 (N.D. Ill. 1997) ......................................................................................19

*Davey v. First Command Fin. Services, Inc.*,
No. 3:11–CV–1510–G, 2012 WL 277968 (N.D. Tex. Jan. 31, 2012) ...................................19

*DK Joint Venture 1 v. Weyland*,
649 F.3d 310 (5th Cir. 2011) .....................................................................................2, 10, 14

*Dream Medical Group, L.L.C. v. Old S. Trading Co., L.L.C.*,
No. 22-20286, 2023 WL 2366982 (5th Cir. Mar. 6, 2023).....................................................4

*Householder Group v. Caughran*,
354 Fed. Appx. 848 (5th Cir. 2009).....................................................................................19

*IDS Life Ins. Co. v. Royal All. Associates, Inc.*,
266 F.3d 645 (7th Cir. 2001) ...........................................................................................4, 11

*Jones v. Michaels Stores, Inc.*,
991 F.3d 614 (5th Cir. 2021) ................................................................................................16

*Major League Baseball Players Ass'n v. Garvey*,
532 U.S. 504 (2001).................................................................................................................2

*Mansour v. Morgan Stanley*,
No. 4:24-cv-459, 2025 WL 2380456 (E.D. Tex. Aug. 15, 2025)..........................................20

*McVay v. Halliburton Energy Services, Inc.*,
608 Fed. Appx. 222 (5th Cir. 2015)..........................................................................5, 13, 14

*Nguyen v. Wells Fargo Clearing Services, LLC*,
No. 4:24 CV 1310 RWS, 2025 WL 436062 (E.D. Mo. Feb. 7, 2025)......................................21

*Oxford Health Plans LLC v. Sutter*,
569 U.S. 564 (2013)....................................................................................................9, 12

*Pioneer Natural Resources USA, Inc. v. Paper, Allied Indus., Chemical and
Energy Workers Intern. Union Loc. 4-487*,
328 F.3d 818 (5th Cir. 2003) ......................................................................................3, 6, 22

*Positive Software Solutions, Inc. v. New Century Mortg. Corp.*,
619 F.3d 458 (5th Cir. 2010) ......................................................................................6, 18

*Quintas v. Granite Construction Inc.*,
No. H-22-0662, 2025 WL 581038 (S.D. Tex. Feb. 21, 2025)...................................16

*Securities and Exch. Comm'n v. Jarkesy*,
603 U.S. 109 (2024)...................................................................................18, 19, 20, 21

*Smidansky v. DCT Texas LLC*,
No. 4:25-cv-00365, 2026 WL 739661 (S.D. Tex. Jan. 26, 2026)...........................16

*Soaring Wind Energy, LLC v. CATIC USA, Inc.*,
333 F. Supp. 3d 642 (N.D. Tex. 2018) ....................................................................15, 16

*Stolt-Nielson S.A. v. AnimalFeeds Int'l Corp.*,
559 U.S. 662 (2010)...................................................................................................10

*In re Texans CUSO Ins. Group, LLC*,
421 B.R. 769 (Bankr. N.D. Tex. 2009).......................................................................4, 11

*U.S. Trinity Energy Services, L.L.C. v. S.E. Directional Drilling, L.L.C.*,
135 F.4th 303 (5th Cir. 2025) ....................................................................4, 9, 10, 12, 16

*United Paperworkers Intern. Union, AFL-CIO v. Misco, Inc.*,
484 U.S. 29 (1987)...................................................................................................2, 15, 16

*Walker v. Ameriprise Fin. Services, Inc.*,
787 Fed. Appx. 211 (5th Cir. 2019)............................................................................4, 9, 10

*Wood v. Red Hat, Inc.*,
No. 2:24-cv-00237-DCN, 2025 WL 2777880 (D. Idaho Sept. 29, 2025) .................21

**Statutes**

9 U.S.C. § 9................................................................................................................2

9 U.S.C. § 10(a)(4)..............................................................2, 3, 4, 5, 6, 9, 10, 11, 12, 22

9 U.S.C. § 10(c) ..................................................................................................................4

9 U.S.C. §§ 11(b)-(c) .........................................................................................................2

**Other Authorities**

FINRA Rule 13201 .............................................................................................................7

FINRA Rule 13201(a).......................................................................................................17

United States Constitution Seventh Amendment............................................19, 20, 21

Respondents, J.P. Morgan Securities LLC ("JPMS"), JPMorgan Chase Bank, N.A. ("Chase"), and J.P. Morgan Chase & Co. ("JPMC") (collectively "Respondents"), by and through undersigned counsel, hereby submit this Brief in Support of their Response in Opposition to Petitioner, Joshua David Sappi Biering's ("Biering") Amended Verified Petition to Confirm, Modify, and Vacate in Part a FINRA Arbitration Award, and to Retain Jurisdiction ("Petition", [ECF No. 1]).

## I. SUMMARY OF ARGUMENT

Biering has had his day in court. He spent almost $1 million on his attorneys' zealous representation during the FINRA arbitration. He engaged in extensive discovery and motion practice, and he participated in six days of arbitration before the FINRA Case No. 24-01208 Arbitration Panel ("Arbitration Panel"). The Arbitration Panel reviewed the written evidence, heard testimony, and issued a well-reasoned Arbitration Award. The Arbitration Award found in JPMS's favor on all Biering's claims against it, granted expungement, and denied Biering's damages claims, including compensatory damages, punitive damages, and attorneys' fees.

Biering's Petition cherry-picks. He asks this Court to confirm the portion of the Arbitration Award he likes, expungement, and to vacate the portions he does not like, finding against Biering on all his other claims against JPMS and denying him any damages. Biering's Petition simply seeks another turn at the wheel. While ostensibly arguing the Arbitration Award is deficient and repeatedly saying he does not wish the Court to revisit the merits of his claims, his Petition does just that, and requests that this Court re-adjudicate his claims.

In addition to this fundamental flaw, Biering's Petition is procedurally improper. Biering asks the Court to confirm, modify, and vacate different portions of a FINRA Arbitration Award and names entities that were not parties in the underlying FINRA proceeding. As Biering concedes, before issuing the Arbitration Award, the Arbitration Panel expressly declined jurisdiction over

1

Chase and JPMC, neither of which is a FINRA member firm or consented to FINRA jurisdiction. Biering's attempt to secure relief against Chase and JPMC when they were not parties to the underlying arbitration should be rejected. *See DK Joint Venture 1 v. Weyland*, 649 F.3d 310, 312 (5th Cir. 2011). As Biering also concedes, the Arbitration Award rejected Biering's defamation claim and denied him damages because it did not find the Form U5 reason defamatory and because Biering secured lucrative employment with a highly respected national brokerage firm less than two months after termination. (Pet. at 30).

As set forth above, Biering wants the Court to cherry-pick the portion of the Arbitration Award that orders expungement of his Form U5 and to vacate the portions of the Arbitration Award that dismiss his remaining claims and denies him damages. In support of this, Biering sets forth the following "grounds" for relief:

- "Ground One: The Court must confirm the award's severable, definite JPMS-directed component under 9 U.S.C. § 9." (Pet. at 34).[1]

- "Ground Two: The Court must modify the award under 9 U.S.C. §§ 11(b)-(c) to direct removal of archived Form U4 disclosures." (*Id.* at 36).

- "Ground Three: Partial vacatur of the damages and defamation dispositions (9 U.S.C. § 10(a)(4))." (Pet. at 37). Biering appears to argue that vacatur is appropriate because the Arbitration Award is not mutual, final, and definite. (*Id.*).

- "Ground Four: Remand is inadequate; the Court should retain jurisdiction to determine operative effect." (*Id.* at 43).[2]

---

[1] With respect to Ground One, JPMS does not object to the Court confirming the Arbitration Award to expunge Biering's Form U5.

[2] With respect to Ground Four, Biering argues that if this Court vacates the Arbitration Award, it should retain jurisdiction over this matter instead of remanding to FINRA. (Pet. at 43). Even in the event of vacatur, this Court cannot retain jurisdiction and must remand to FINRA. *See Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 511 (2001), *citing*, *United Paperworkers Intern. Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 40, fn. 10 (1987) ("But again, established law ordinarily precludes a court from resolving the merits of the parties' dispute on the basis of its own factual determinations, no matter how erroneous the arbitrator's decision. Even when the

2

- "Ground Five: The Court's inherent equitable authority supports documented compensatory relief." (*Id.* at 44). Biering appears to argue the Court should sanction Respondents for alleged misconduct during the FINRA arbitration.

- "Ground Six: Punitive relief on preserved claims is reserved to the Court." (*Id.* at 45). Biering appears to argue that he has an unwaivable right to a jury trial on punitive damages in the Court.

- "Ground Seven: Preservation of non-concession, reserved claims, and later-phase relief." (*Id.* at 47).[3]

Of these arguments, only Ground Three appears to be related to Biering's Petition to Vacate. Grounds Five and Six are collateral issues and seek additional damages beyond the scope of the Court's limited review during these proceedings. Ground Two is another collateral issue which seeks removal of, or expungement of, archived Form U4 disclosures which allegedly misreport Biering's student-loan disability discharges as bankruptcies and compromises with creditors from FINRA's Central Registration Depository. Ground Two is not part of Biering's Statement of Claim nor is it addressed in the Arbitration Award. Therefore, it is beyond the scope of this Court's review.  None of Biering's arguments support his claims for relief.

In the Fifth Circuit, Biering only has one path to vacatur of the Arbitration Award—Section 10 of the Federal Arbitration Act ("FAA"). The Court's review of the Arbitration Award pursuant to Section 10(a)(4) of the FAA is "extraordinarily narrow, and exceedingly deferential to the

---

arbitrator's award may properly be vacated, the appropriate remedy is to remand the case for further arbitration proceedings.").

[3] With respect to Ground Seven, Biering appears to argue that Respondents are precluded from making certain arguments in this Court or in future proceedings. Ground Seven does not seek any relief from this Court, and Respondents reject Biering's attempt to dictate the arguments or claims they may make in the future. Further, because Biering did not seek this relief at the arbitration, this Court cannot grant him this requested relief, which is beyond the scope of these proceedings. *See Pioneer Natural Resources USA, Inc. v. Paper, Allied Indus., Chemical and Energy Workers Intern. Union Loc. 4-487*, 328 F.3d 818, 821 (5th Cir. 2003).

[A]rbitration [P]anel's decision." *U.S. Trinity Energy Services, L.L.C. v. S.E. Directional Drilling, L.L.C.*, 135 F.4th 303, 307 (5th Cir. 2025). *Cooper v. WestEnd Cap. Mgmt., L.L.C.*, 832 F.3d 534, 543–44 (5th Cir. 2016); *Brabham v. A.G. Edward & Sons*, 376 F.3d 377, 380 (5th Cir. 2004). Reassessing the merits of the case (which Biering asks the Court to do) is not permitted by Section 10(a)(4) of the FAA. *Dream Medical Group, L.L.C. v. Old S. Trading Co., L.L.C.*, No. 22-20286, 2023 WL 2366982, at *3 (5th Cir. Mar. 6, 2023).

Biering concedes that he seeks relief pursuant to Section 10(a)(4)[4] of the FAA. (Pet. at 1–2). The standard for vacatur under Section 10(a)(4) of the FAA states that "vacatur is proper: * * * (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual final, and definite award upon the subject matter submitted was not made." *Walker v. Ameriprise Fin. Services, Inc.*, 787 Fed. Appx. 211, 213 (5th Cir. 2019); 9 U.S.C. § 10(a)(4). Biering argues vacatur is appropriate pursuant to Section 10(a)(4) of the FAA because the Arbitration Award does "not yield a mutual, final, and definite disposition[.]" (Pet. at 1). "Mutual" and "final" require that the Arbitration Panel "must have resolved the entire dispute (to the extent possible) submitted for resolution," and "definite" requires the Arbitration Award to be sufficiently clear and specific to be enforced. *In re Texans CUSO Ins. Group, LLC*, 421 B.R. 769, 781–82 (Bankr. N.D. Tex. 2009); *IDS Life Ins. Co. v. Royal All. Associates, Inc.*, 266 F.3d 645, 650 (7th Cir. 2001).

---

[4] Biering alternatively petitions this Court for vacatur pursuant to Section 10(c) of the FAA. The statute states: "the United States district court for the district wherein an award was made that was issued pursuant to section 580 of title 5 *may make an order vacating the award upon the application of a person, other than a party to the arbitration*, *who is adversely affected or aggrieved by the award*, if the use of arbitration or the award is clearly inconsistent with the factors set forth in section 572 of title 5." 9 U.S.C. § 10(c) (emphasis added). Because the statute provides an avenue for *nonparties* to an arbitration to vacate an arbitration award, and because Biering was a party to the FINRA arbitration, he cannot rely on Section 10(c) of the FAA as a path to vacatur.

Biering fails to meet the extraordinarily high standard for vacatur under Section 10(a)(4) of the FAA, and the Arbitration Award is mutual, final, and definite because:

- The Arbitration Award clearly and unambiguously grants Biering expungement and requires JPMS to pay FINRA fees totaling $33,925.00 (collectively "FINRA Fees") while denying the rest of his claims and awarding no damages against JPMS.

- JPMC and Chase were never subject to the Arbitration Panel's jurisdiction. Thus, their absence from the Arbitration Award is correct and consistent with the Arbitration Panel's authority.[5]

- The word "Respondent" clearly and unambiguously refers to JPMS.

- Any alleged errors in the Arbitration Award do not justify vacatur.

- The Fifth Circuit's holdings in *Antwine v. Prudential Bache Sec., Inc.*, 899 F.2d 410, 413 (5th Cir. 1990) and *McVay v. Halliburton Energy Services, Inc.*, 608 Fed. Appx. 222, 224 (5th Cir. 2015) support that the Arbitration Award was mutual, final, and definite.

Because the Arbitration Award is mutual, final, and definite under Section 10(a)(4) of the FAA—Biering's sole avenue to seek vacatur—Biering has not met his burden, and this alone justifies denying Biering's Petition for Vacatur.

However, Biering's Petition also raises three collateral issues which are beyond the narrow scope of these proceedings:

- Biering seeks sanctions of $864,000.00 against Respondents under the Court's "inherent authority" for alleged misconduct during the arbitration.

- Biering argues the Court has original jurisdiction to decide whether he is entitled to punitive damages—a claim already arbitrated and denied during the arbitration.

- Biering asks this Court to modify his Form U4 disclosures, which were not part of his Statement of Claim or addressed in the Arbitration Award.

---

[5] Biering's argument is further undermined because he has another forum where he is arbitrating his claims against Chase and JPMC. As Biering concedes, he has brought claims in arbitration against Chase and JPMC in the American Arbitration Association ("AAA") in AAA Case No. 01-26-0000-7215. (Pet. at 16). Accordingly, the fact that FINRA did not have jurisdiction over JPMC and Chase did not bar Biering from seeking relief against them.

Because these issues are beyond the scope of these proceedings, the Court need not consider them. Pursuant to the Fifth Circuit's holding in *Positive Software Solutions, Inc. v. New Century Mortg. Corp.*, 619 F.3d 458, 463 (5th Cir. 2010), this Court lacks authority to issue sanctions against Respondents for conduct during the FINRA arbitration. It is also well-settled that agreeing to arbitration waives the right to a jury trial. Biering waived his right to a jury trial on punitive damages (and his other claims) by agreeing to arbitration. Biering cannot obtain modification of his Form U4 because he did not seek the relief at the arbitration, and the Arbitration Panel did not address modification of the Form U4 disclosures. *See Pioneer Natural Resources USA, Inc. v. Paper, Allied Indus., Chemical and Energy Workers Intern. Union Loc. 4-487*, 328 F.3d 818, 821 (5th Cir. 2003).

For the foregoing reasons more fully set forth herein, Biering has failed to meet his burden under Section 10(a)(4) of the FAA, and the Court should deny his petition for Vacatur.

## II.     STATEMENT OF FACTS

### A.     Biering filed claims in FINRA against Respondents, but FINRA declined jurisdiction over Chase and JPMC and proceeded against JPMS alone.

On June 4, 2024, Biering filed a Statement of Claim in FINRA Arbitration against JPMS. (*See* Statement of Claim, App. 1–105). On August 6, 2024, Biering filed a First Amended Statement of Claim against JPMS, JPMC, and Chase. (*See* First Amended Statement of Claim, App. 106–201). The First Amended Statement of Claim sought damages for (1) Defamation and Violation of FINRA Rules, (2) Business Disparagement, (3) Tortious Interference; (4) Unfair Competition; (5) Wrongful Discharge; (6) Weaponization of Form U5; (7) Negligent Investigation; (8) Breach of Contract; (9) Sex Discrimination; (10) Disability Discrimination; (11) Unjust Enrichment; (12) Illegal Forfeiture of Earned Compensation; (13) Forfeiture of Deferred Compensation; (14) Violation of Texas and/or New York Labor and Wage Laws. (First Amended

6

Statement of Claim, App. 127–139). Biering's First Amended Statement of Claim sought expungement, compensatory damages, and punitive damages. (First Amended Statement of Claim, App. 141–142). On August 13, 2024, FINRA notified Biering that it lacked jurisdiction over JPMC and Chase. (*See* FINRA Letter, dated, August 13, 2024, App. 202–203). FINRA notified Biering that unless he could produce a valid arbitration agreement or Court Order compelling JPMC and Chase to FINRA arbitration, JPMC and Chase's participation in the FINRA arbitration would be voluntary. (*Id.*).

On September 13, 2024, FINRA notified Biering that it did not receive consent to arbitrate from JPMC or Chase, and the Arbitration Panel would have no power to render an enforceable arbitration award against JPMC or Chase. (*See* FINRA Chase Letter, dated Sept. 13, 2024, App. 204; *See also* FINRA JPMC Letter, dated Sept. 13, 2024, App. 205).

On September 6, 2024, FINRA declined jurisdiction over Biering's statutory employment discrimination claims pursuant to FINRA Rule 13201 and ordered him to delete those causes of action, or the case would be closed without prejudice. (*See* FINRA Letter, dated, Sept. 6, 2024, App. 206–207). On October 11, 2024, Biering filed his Second Amended Statement of Claim, which omitted the statutory employment claims. (*See* Second Amended Statement of Claim, App. 208–303).

**B. The Arbitration Award only addressed Biering's claims against JPMS, granted Biering expungement, required JPMS to pay FINRA Fees, and denied Biering's remaining claims and damages against JPMS.**

On December 29, 2025, the Arbitration Panel issued the Arbitration Award. (*See* Arbitration Award, App. 304–310). The Arbitration Award defined Biering as "Claimant" and JPMS as "Respondent." (Arbitration Award, App. 304). The Arbitration Award defined JPMC and Chase collectively as "Respondents," and stated that JPMC and Chase did not enter an appearance,

file a Statement of Answer, or sign the Submission Agreement. (Arbitration Award, App. 304–305). The Arbitration Award stated that JPMC and Chase are not FINRA member firms. (Arbitration Award, App. 306). The Arbitration Award made clear that JPMC and Chase did not voluntarily submit to arbitration and that the Arbitration Panel made no determination with respect to Biering's claims against JPMC and Chase. (Arbitration Award, App. 306).

In full and final resolution of Biering's claims against JPMS, the Arbitration Award included the following:

- "Claimant's [Biering] claims, except for expungement, are denied in their entirety."

- "The [Arbitration] Panel recommends the expungement of the Reason for Termination and Termination Explanation in Section 3 of Joshua David Biering's (CRD Number 6683842) Form U5 filed by J.P. Morgan Securities, LLC (CRD Number 79) on December 22, 2023, and maintained by the CRD. The Reason for Termination shall be changed to "Voluntary" and the Termination Explanation shall be deleted in its entirety and appear blank. This directive shall apply to all references to the Reason for Termination and Termination Explanation. The Panel further recommends the expungement of the Date Terminated field in Section 4 of the Form U5. The entry should be deleted in its entirety and shall be replaced with the following date: '10/28/2023.' The above recommendations are made with the understanding that the registration records are not automatically amended. Joshua David Sappi Biering must obtain confirmation of this Award from a court of competent jurisdiction, before the CRD will execute the expungement directive, and must forward a copy of the Court Order to FINRA's Credentialing, Registration, Education and Disclosure Department for the amendments to be incorporated into the Registration Records."

- "Any and all claims for relief not specifically addressed herein, including any requests for punitive damages, treble damages, and attorneys' fees, are denied."

(Arbitration Award, App. 306–307).

The Arbitration Award provided a detailed explanation of the Arbitration Panel's decision, while cautioning that the explanation was "for the parties' information only and is not precedential in nature." (Arbitration Award, App. 306). The Arbitration Award required JPMS to pay FINRA the FINRA Fees. (Arbitration Award, App. 308–309).

8

## III. APPLICABLE LEGAL STANDARD

Section 10(a) of the FAA lists the limited circumstances in which a court may vacate an arbitration award. *Walker*, 787 Fed. Appx. At 213; *Citigroup Glob. Mkts., Inc. v. Bacon*, 562 F.3d 349, 350 (5th Cir. 2009). Those limited circumstances are:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

9 U.S.C. § 10(a).

The Fifth Circuit recognizes that "judicial review of an arbitration award is extraordinarily narrow, and "exceedingly deferential' to the arbitration panel's decision." *U.S. Trinity Energy Services, L.L.C. v. S.E. Directional Drilling, L.L.C.*, 135 F.4th 303, 307 (5th Cir. 2025); *Cooper v. WestEnd Cap. Mgmt., L.L.C.*, 832 F.3d 534, 543–44 (5th Cir. 2016) ("An arbitrator's decision will be vacated 'only in very unusual circumstances."). Thus, "doubts or uncertainties must be resolved in favor of upholding' an arbitration award." *U.S. Trinity Energy Services, L.L.C.*, 135 F.4th at 307; *Cooper*, 832 F.3d at 544; *see also Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013).

Biering seeks to vacate pursuant to Section 10(a)(4) of the FAA. (Pet. at 1–2.) But "[t]his section provides a more generalized basis for relief following a series of specific grounds involving conduct like 'corruption,' 'fraud,' 'evident partiality,' and misconduct.'" *U.S. Trinity Energy*

*Services, L.L.C.*, 135 F.4th at 308. Thus, "a party seeking relief under [§ 10(a)(4)] bears a heavy burden." *U.S. Trinity Energy Services, L.L.C.*, 135 F.4th at 308 (internal quotation marks omitted). An error, "even a serious error" is insufficient for vacatur. *Walker v. Ameriprise Fin. Services, Inc.*, 787 Fed. Appx. 211, 213 (5th Cir. 2019); *see also Stolt-Nielson S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010). Rather, "[o]nly when 'the arbitrator acts outside the scope of contractually delegated authority—issuing an award that simply reflects [their] own notions of economic justice rather than drawing its essence from the contract, may a court vacate this determination." *U.S. Trinity Energy Services, L.L.C.,* 135 F.4th at 308 (internal  quotation marks omitted); *see also Cooper*, 832 F.3d at 546 ("An arbitration award 'may not be set aside for a mere mistake of fact or law.").

## IV.     ARGUMENT AND AUTHORITIES

### A.     Biering cannot seek relief in this Court against JPMC and Chase because they were not parties to the FINRA Arbitration.

As an initial matter, the Court should reject Biering's attempt to seek relief against JPMC and Chase, which were not parties in the underlying FINRA matter, a fact Biering does not dispute. Neither JPMC nor Chase were parties to the underlying arbitration agreement, which the Arbitration Panel recognized. (Pet. at 37 (recognizing that FINRA declined to exercise jurisdiction). The Arbitration Panel thus properly declined jurisdiction over these entities. *See* Arbitration Award, App. 307). *See also DK Joint Venture 1 v. Weyland*, 649 F.3d 310, 312 (5th Cir. 2011) (reversing district court confirmation of arbitration award against two nonparties to the arbitration agreement).

**B.** **Response to Biering's Ground 3:[6] Biering has failed to meet his extraordinarily high burden for vacatur of the Arbitration Award pursuant to Section 10(a)(4) of the FAA.**

**1.** **The Arbitration Award was mutual, final, and definite.**

With respect to Ground 3, Biering cannot carry his "heavy burden" of vacating the Arbitration Award. Section 10(a)(4) of the FAA does not provide support to vacate the Arbitration Award because the Arbitration Award was mutual, final, and definite. "[U]nder the FAA, vacatur is only appropriate when the arbitrator 'so imperfectly executed [its powers] that a mutual, final, and definite award upon the subject matter submitted was not made." *In re Texans CUSO Ins. Group, LLC*, 421 B.R. 769, 781–82 (Bankr. N.D. Tex. 2009). "In this context, the terms 'mutual' and 'final' require that the arbitrator must have resolved the entire dispute (to the extent possible) submitted for resolution, while 'definite' requires that the award be sufficiently clear and specific to be enforced." *Id.*; *IDS Life Ins. Co.*, 266 F.3d at 650.

Here, the Arbitration Award is both "mutual" and "final" because it disposes of all Biering's claims against JPMS. (Arbitration Award, Appx., pp. 304–305). The Arbitration Award granted Biering the expungement relief he sought and denied his claim for damages.

The Arbitration Award is definite because it is sufficiently clear and specific to be enforced. The Arbitration Award clearly and unambiguously ordered expungement. (Arbitration Award, Appx., pg. 306). The Arbitration Award lists Biering's claims against JPMS, and then expressly denies his claims except for expungement. (Arbitration Award, Appx., pp. 305–307). The Arbitration Award states "[a]ny and all claims for relief not specifically addressed herein, including any requests for punitive damages, treble damages, and attorneys' fees are denied."

---

[6] Biering's arguments are addressed out of order because Respondents' primary arguments are framed by the standard under Section 10(a)(4) of the FAA. However, in addressing Biering's arguments, Respondents use Biering's numbered grounds for the Court's convenience.

(Arbitration Award, Appx., pg. 307). There is no ambiguity to the Arbitration Award. The Arbitration Award clearly and ambiguously: (1) disposed of Biering's claims; (2) granted Biering the expungement relief he sought; and (3) expressly denied Biering's claims for damages.

Because the Arbitration Award contains plain and unambiguous language, the Arbitration Award is mutual, final, and definite pursuant to Section 10(a)(4) of the FAA, and there are no grounds to vacate. While purporting to argue that the Arbitration Award is not mutual, final, and definite pursuant to Section 10(A)(4) of the FAA, Biering's Petition actually urges the Court to revisit his claims on the merits. Despite Biering stating he is not arguing the merits of the arbitration, Biering's Petition does just that and is an improper attempt to seek this Court's review of the merits of his claims. As the Fifth Circuit recognized, "[i]n its proper form, Section 10(a)(4) of the FAA is supposed to provide relief when an arbitrator refuses to even consider a contract's basic commands while protecting the arbitrator's virtue of resolving disputes straightaway—not provide a backdoor for a party to seek judicial review of the arbitrator's interpretations." *U.S. Trinity Energy Services, L.L.C.,* 135 F.4th at 310. Biering "petitions essentially for the latter, even though [he] agreed to arbitrate a dispute like this one 'and must now live with that choice.'" *Id.*; *Oxford Health Plans LLC*, 569 U.S. at 573.

Fifth Circuit precedent supports that the Arbitration Award is mutual, final, and definite. In *Antwine v. Prudential Bache Securities, Inc.* the petitioners sought vacatur because the arbitration award was allegedly not mutual, final, and definite. 899 F.2d at 413. Specifically, the petitioners argued that because the arbitration award did not provide the reasons for the arbitration panel's decision pursuant to Rule 42 of the Securities Arbitration Rules, the award was allegedly not mutual, final, and definite. *Id.* at 412. The Fifth Circuit disagreed. It noted that even if Securities Arbitration Rule 42 required an arbitration panel to articulate the reasons for the

decision, "any perceived error . . . does not rise to the level which would warrant judicial intervention." *Id.* at 413. The Fifth Circuit held the arbitration award "lacked any hint of ambiguity," was mutual, final, and definite, and affirmed the district court's denial of the petition to vacate:

> As mentioned previously, the Antwines do not argue that the arbitrators exceeded their powers, but rather that the arbitrators so imperfectly executed their powers that a mutual, final and definite award was not made. The award and statement provided by the arbitrators in this case, however, was clear and concise. It lacked any hint of ambiguity. Accordingly, we conclude that a mutual, final and definite award was made and, thus, the district court did not err in denying the Antwines' motion to vacate the award.

*Antwine*, 899 F.2d at 413.

More recently, in *McVay v. Halliburton Energy Services, Inc.*, the Fifth Circuit determined vacatur was not appropriate where an arbitration award contained allegedly defective language. In that case, the petitioner moved to vacate on the grounds that the injunction requiring him to "refrain from utilizing in any fashion any paper and electronic copies of any documents and tangible things that concern [the respondent's] products or services," was not mutual, final, and definite because it was unlimited in time, did not define "utilization," and is not restricted paper or electronic copies of the documents and things that he took from the respondent when he resigned. *McVay v. Halliburton Energy Services, Inc.*, 608 Fed. Appx. 222, 224, 227 (5th Cir. 2015).

The Fifth Circuit disagreed, and held the district court correctly confirmed the arbitration award because, as a whole, it provided the petitioner fair notice of what he "may, and must not, do," and was enforceable:

> The injunction in particular and the award as a whole provided McVay fair notice of what he may, and must not, do, and are clearly capable of being implemented and enforced. The district court did not err in entering judgment confirming the award.

*McVay*, 608 Fed. Appx. at 227.

The foregoing cases show that the Arbitration Award is mutual, final, and definite. Like the arbitration award in *Antwine*, the Arbitration Award was clear and unambiguous. Like the arbitration award in *McVay*, the Arbitration Award gave clear direction regarding the relief sought. Pursuant to *Antwine* and *McVay*, there are no grounds for vacatur because the Arbitration Award is mutual, final, and definite.

### 2. JPMC and Chase were never parties to the arbitration.

Biering's argument that the Arbitration Award is not mutual, final, and definite because it did not decide his claims against JPMC and Chase is undermined by his own concession—the Arbitration Panel disclaimed jurisdiction over JPMC and Chase. (Pet. at 37). Since JPMC and Chase were not parties to the arbitration, the Arbitration Award did not, and could not, determine Biering's claims against JPMC and Chase. If the Arbitration Panel decided Biering's claims against JPMC and Chase, over which it had no jurisdiction, it would have been reversible error. *See DK Joint Venture 1 v. Weyland*, 649 F.3d 310, 312 (5th Cir. 2011) (where the Fifth Circuit reversed the district court's confirmation of an arbitration award against two nonparties to the arbitration agreement). The Arbitration Panel's refusal to commit reversible error does not support Biering's argument that the Arbitration Award was not mutual, final, and definite.

### 3. The word "Respondent" clearly and unambiguously means JPMS.

Biering argues that the word "Respondent" may refer to JPMS, JPMC, or Chase because he brought claims against all three in the FINRA Arbitration, and the Arbitration Award does not indicate to whom "Respondent" refers. (Pet. at 37–38). There is no merit to this argument. When the Arbitration Panel referred to the word "Respondent" in the Arbitration Award, it clearly and unambiguously referred to JPMS. (FINRA Chase Letter, dated Sept. 13, 2024, Appx., pg. 204; FINRA JPMC Letter, dated Sept. 13, 2024, Appx., pg. 205). The Arbitration Award expressly

defined "Respondent" as JPMS and did not make any determination of Biering's claims against JPMC or Chase because they did not voluntarily consent to FINRA's jurisdiction. (Arbitration Award, Appx., pp. 304, 306).

Since the Arbitration Award defined the word "Respondent" as JPMS and made no determination regarding Biering's claims against JPMC or Chase, there is no merit to Biering's argument that "Respondent" fails to indicate whether it refers to JPMS, JPMC, or Chase.

### 4. Alleged errors and inconsistencies in the Arbitration Award do not support vacatur.

Biering argues the Arbitration Award is not mutual, final, and definite because (1) the Arbitration Panel's allegedly unclear use of "Respondent" in the Arbitration Award's Explanation of Decision was inconsistent with the Arbitration Panel disclaiming jurisdiction over JPMC and Chase; and (2) the Arbitration Panel's ruling finding against Biering on his claims other than expungement and failure to award him damages was inconsistent with making "express findings of intentional competitive hindrance and regulatory inaccuracy." (Pet. at 7, 37–38). Respondents disagree with Biering's characterization of the Arbitration Panel's findings. Biering's arguments are without merit.

Alleged inconsistencies or mistakes in the Arbitration Award are not a valid basis for vacatur. As this Court recognized, "[a]n arbitration award may not be vacated for 'mere mistake of fact or law." *Soaring Wind Energy, LLC v. CATIC USA, Inc.*, 333 F. Supp. 3d 642, 651 (N.D. Tex. 2018); *Rain CII Carbon, LLC*, 674 F.3d at 472. "Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept." *Soaring Wind Energy, LLC*, 333 F. Supp. 3d at 651; *United Paperworks Int'l Union v. Misco, Inc.*, 484 U.S. 29,

15

37–38 (1987). "Court thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." *Id.*

Fifth Circuit courts repeatedly hold that alleged mistakes of fact or law do not support the vacatur of an arbitration award. *See*, *e.g.*, *Jones v. Michaels Stores, Inc.*, 991 F.3d 614, 615–16 (5th Cir. 2021) (denying petition for vacatur despite the allegation that the arbitrator manifestly disregarded Louisiana law finding claims precluded); *U.S. Trinity Energy Services, L.L.C.*, 135 F.4th at 309–10 (denying petition for vacatur despite the allegation that the arbitrator manifestly disregarded Texas law interpreting a subcontract, and determining that "manifest disregard of the law" is not a valid basis for vacatur); *Rain CII Carbon, LLC*, 674 F.3d at 474 (denying petition for vacatur despite the allegations that the arbitration award was not sufficiently well-reasoned, and committed an error by using one proposal for a draft arbitration award as required by the contract, and using parts of both draft proposals for a draft arbitration award); *Smidansky v. DCT Texas LLC*, No. 4:25-cv-00365, 2026 WL 739661, at *3 (S.D. Tex. Jan. 26, 2026) (denying vacatur despite allegations that the arbitrator exceeded her powers by failing to award the full sum of attorneys' fees and costs and ordering the proceeding remain confidential); *Quintas v. Granite Construction Inc.*, No. H-22-0662, 2025 WL 581038, at *2–3 (S.D. Tex. Feb. 21, 2025) (denying *pro se* motion for vacatur despite allegations that the arbitrator "issued an award based on incomplete evidence and a misleading understanding of [the claimant's] testimony," and failed "to properly apply basic principles of fairness and due process"); *Soaring Wind Energy, LLC*, 333 F. Supp. 3d at 656–57 (denying vacatur where the petitioner alleged the Panel's interpretation of the contract was flawed).

Simplified, Biering's argument boils down to a claim that the Arbitration Award's reasoning was a mistake of fact or law. The foregoing cases show that this argument is insufficient for vacatur.

**C.** **Response to Ground 5, Collateral Issue No. 1: The Court does not possess inherent authority to issue sanctions of $864,407.26 against Respondents for conduct during the FINRA arbitration.**

With respect to Ground 5, in the first of two collateral issues, Biering argues that the Court has inherent authority to award damages as sanctions against Respondents for their alleged bad faith conduct during the arbitration. (Pet. at 44–45). Biering asks for sanctions for the following:

- $36,060.75 for rank–and–strike/FINRA Rule 13201(a) errors;

- $176,345.00 for discovery obstruction costs, including the Upwork and related discovery-reconstruction expenses captured in the but-for subset;

- $41,517.40 for pre-arbitration Form U4 errors; and

- $610,484.11 for direct prosecution costs.

(Pet. at 45).

In all, Biering seeks sanctions totaling $864,407.26. First and foremost, Biering has not pointed to any misconduct which would justify sanctions. He repeatedly asked for sanctions during the arbitration and the Arbitration Panel repeatedly denied his requests. Of the $864,407.26, $822,889.89 appears to be Biering's own attorneys' fees incurred during the arbitration. The remaining $41,517.40 relates to the alleged Form U4 errors which were not part of the arbitration. While framed as sanctions, Biering simply seeks reimbursement of his attorneys' fees, relief which the Arbitration Panel already denied. (Arbitration Award, App. 306–307).

Not only does Biering fail to point to any conduct which would justify sanctions, this Court cannot sanction Respondents because it lacks authority to do so in connection with alleged conduct during the FINRA arbitration. Indeed, the Fifth Circuit has held that a district court cannot issue

17

sanctions for conduct during arbitration proceedings. *See Positive Software Solutions, Inc. v. New Century Mortg. Corp.*, 619 F.3d 458, 463 (5th Cir. 2010). In *Positive Software Solutions, Inc.*, the district court compelled arbitration of a dispute between Positive Software Solutions, Inc. ("Positive Software") and New Century Mortgage Corporation ("New Century"). *Id.* at 459. After the arbitration, Positive Software moved for sanctions against New Century's attorney, Ophelia Camiña, for alleged misconduct during the arbitration. *Id.* at 460. The district court sanctioned Attorney Camiña $10,000.00, citing its inherent authority. *Id.* Attorney Camiña argued that the court lacked inherent authority to issue sanctions for her conduct during arbitration. *Id.*

The Fifth Circuit agreed that a district court lacks inherent authority to issue sanctions for conduct during arbitration, and reversed the order issuing sanctions against Attorney Camiña:

> In sum, the district court lacked inherent authority to sanction Camiña for her conduct during arbitration. That conduct was neither before the district court nor in direct defiance of its orders. If inherent authority were expanded to cover Camiña's conduct, there would be nothing to prevent courts from inserting themselves into the thicket of arbitrable issues—precisely where they do not belong. Such an expansion would also threaten the integrity of federal arbitration law in the name of filling a gap that does not exist. We therefore REVERSE the sanctions and REMAND for any further proceedings that may be needed.

*Positive Software Solutions, Inc.*, 619 F.3d at 463.

Pursuant to the Fifth Circuit's holding in *Positive Software Solutions, Inc. v. New Century Mortg. Corp.*, the Court does not possess inherent authority to issue sanctions for alleged misconduct during the arbitration. Biering's request that the Court issue sanctions of $864,407.26 against Respondents should therefore be denied.

**D.      Response to Ground 6, Collateral Issue No. 2: Punitive damages are not exclusive to this Court.**

With respect to Ground 6, Biering argues that punitive damages are solely within the purview of this Court because pursuant to the United States Supreme Court's decision in *Securities*

*and Exch. Comm'n v. Jarkesy*, 603 U.S. 109 (2024), Biering's rights under the Seventh Amendment to the United States Constitution give him the absolute right to a jury trial to address punitive damages. (Pet. at 45). Biering is wrong for several reasons.

First, Biering sought and was denied punitive damages in the FINRA matter. Punitive damages are available in FINRA arbitration. *See Davey v. First Command Fin. Services, Inc.*, No. 3:11–CV–1510–G, 2012 WL 277968, at \*3 (N.D. Tex. Jan. 31, 2012); *see also* FINRA Dispute Resolution Services Arbitrator's Guide, pg. 70 ("Upon a party's request, arbitrators may consider punitive damages as a remedy if a respondent has engaged in serious misconduct that meets the standards for such an award."). Biering had the opportunity to and did seek punitive damages during the FINRA arbitration. The Arbitration Panel considered his request for punitive damages and expressly denied him that request. (Arbitration Award, App. 306–307). *Jarkesy* does not allow Biering another bite at the apple for punitive damages.

Biering's argument also fundamentally misunderstands the Seventh Amendment right to a jury trial. "The Seventh Amendment does not confer the right to a trial, but only the right to have a jury hear the case once it is determined that the litigation should proceed before a court." *American Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 711 (5th Cir. 2002); *Cremin v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 957 F. Supp. 1460, 1471 (N.D. Ill. 1997). "If the claims are properly before an arbitral forum pursuant to an arbitration agreement, the jury trial right vanishes." *Householder Group v. Caughran*, 354 Fed. Appx. 848, 852 (5th Cir. 2009); *Am. Heritage Life. Ins. Co.*, 294 F.3d at 711. By agreeing to FINRA arbitration, Biering waived any Seventh Amendment right to a jury trial.

Finally, Biering's argument misinterprets *Jarkesy*. *Jarkesy* does not support Biering's argument that this Court has exclusive authority to determine whether he is entitled to punitive

damages because it involved internal SEC prosecution of securities fraud and did not involve an arbitration. In *Jarkesy*, the SEC brought an enforcement action seeking civil penalties for securities against the defendant, Mr. Jarkesy. *Jarkesy*, 603 U.S. 109 (2024), syllabus. At the time, the SEC could ***only*** recover civil penalties from unregistered investment advisors *if* it filed in federal court. *Id.* However, the Dodd-Frank Wall Street Reform and Consumer Protection Act authorized the SEC to "impose such penalties through its own in-house proceedings." *Id.* In the case of Mr. Jarkesy, the SEC prosecuted him internally and levied a civil penalty of $300,000.00 against him. *Id.* Mr. Jarkesy sought judicial review, and the Fifth Circuit determined the SEC internally adjudicating the case violated his Seventh Amendment right to a jury trial. *Id.* at 110. The United States Supreme Court agreed and held that the SEC's internal prosecution and civil penalty of $300,000.00 violated his Seventh Amendment right to a jury trial. *Jarkesy*, 603 U.S. at 140–41.

The *Jarkesy* opinion has nothing to do with the facts of this case. It did not involve arbitration and unlike Mr. Jarkesy, Biering agreed to arbitrate his claims with FINRA and waived his Seventh Amendment right to a jury trial.

Courts have rejected Biering's argument. In *Mansour v. Morgan Stanley*, the Eastern District of Texas, adjudicated the argument Biering tries to make here—that *Jarkesy* guarantees the Seventh Amendment right to a jury trial, and could not "be waived by the SEC's approval of FINRA Arbitration." *Mansour v. Morgan Stanley*, No. 4:24-cv-459, 2025 WL 2380456, at *22 (E.D. Tex. Aug. 15, 2025). In *Mansour*, Morgan Stanley argued that *Jarkesy* was a narrow holding, and the right to a jury trial is waivable when a party voluntarily and knowingly enters into an arbitration agreement with a private party. *Id.* The Eastern District of Texas agreed that the Seventh Amendment was inapplicable because the plaintiff voluntarily and knowingly waived his right to a jury trial by agreeing to FINRA arbitration:

Here, the Court has already found that Plaintiff voluntarily and knowingly entered into enforceable arbitration agreements. *See supra* Section III. Accordingly, the Court finds that Plaintiff voluntarily and knowingly waived his right to a jury trial in favor of arbitration and there are no Seventh Amendment concerns raised by enforcing those agreements.

*Mansour*, 2025 WL 2380456, at *22.

The Eastern District of Texas' decision finding *Jarkesy* inapplicable to arbitration is consistent with other federal courts' decisions post *Jarkesy*. *See, e.g.*, *Nguyen v. Wells Fargo Clearing Services, LLC*, No. 4:24 CV 1310 RWS, 2025 WL 436062, at *4 (E.D. Mo. Feb. 7, 2025) (where the court rejected the plaintiff's argument that he could not be compelled to FINRA arbitration for his civil claims for damages pursuant to *Jarkesy*, and determined that "whatever the SEC can (or, more accurately cannot) do in the in the context of civil enforcement proceedings has no bearing on what private parties can (or in this case, must) do in the context of agreeing to arbitrate their private disputes"); *Wood v. Red Hat, Inc.*, No. 2:24-cv-00237-DCN, 2025 WL 2777880, at *1, 4 fn. 7 (D. Idaho Sept. 29, 2025) (where the court granted a motion to compel arbitration after determining that the plaintiff agreed to arbitration, and rejecting the plaintiff's argument pursuant to *Jarkesy*, that arbitration violated his Seventh Amendment right to trial by jury).

Therefore, there is no basis to find that this Court has exclusive jurisdiction to determine punitive damages.

**E.      Response to Ground 2, Collateral Issue No. 3: Modification of the Form U4 is beyond the scope of this Court's review.**

This Court cannot order modification of Biering's Form U4 disclosures because Biering did not seek to modify them in his Second Amended Statement of Claim. (*See* Second Amended Statement of Claim App. 208–245). The Arbitration Award did not contain any rulings regarding his Form U4 disclosures. (See Arbitration Award App. 304–310). Because Biering did not seek

modification of the Form U4 disclosures during the arbitration, and because the Arbitration Panel did not address the request for modification, it follows that this Court does not have authority to modify the Form U4 disclosures. *See Pioneer Natural Resources USA, Inc. v. Paper, Allied Indus., Chemical and Energy Workers Intern. Union Loc. 4-487*, 328 F.3d 818, 821 (5th Cir. 2003) (the Fifth Circuit affirmed the district court's denial of modification of an arbitration award to add additional relief of "make whole damages" for former employees so that each employee would receive the same benefits the others were awarded). In its holding, the Fifth Circuit state that the Northern District of Texas correctly denied the modification because it "did not have the authority to modify the arbitral awards to include relief that a party either could have asked the arbitrator to award but did not, or that the arbitrator saw fit not to award." *Id.*

## V.  CONCLUSION

Based on the foregoing, this Court should deny Biering's Petition for Vacatur. Biering failed to meet his extraordinarily high burden under Section 10(a)(4) of the FAA to vacate the Arbitration Award. The law does not support Biering's argument that this Court has inherent authority to levy sanctions against Respondents for alleged misconduct during the FINRA arbitration. And, the law rejects Biering's argument that this Court has exclusive authority to decide punitive damages. Biering's request for modification of his Form U4 disclosures is beyond the scope of this Court because he failed to ask for relief at the arbitration, and the Arbitration Panel did not grant the relief.

Respectfully submitted,

*/s/Jeffrey S. Dunlap*
Jeffrey S. Dunlap
Ohio Bar No. 0067923,
*Admitted Pro Hac Vice*
Kyle W. Rea
Ohio Bar No. 0101812
*Admitted Pro Hac Vice*
UB GREENSFELDER LLP
Skylight Office Tower
1660 West 2nd Street - Suite 1100
Cleveland, Ohio 44113-1448
Phone (216) 583-7000
Fax (216) 583-7001
jdunlap@ubglaw.com
krea@ubglaw.com

Christopher S. Dodrill
Texas Bar No. 24110696
Elizabeth A. Bones
Texas Bar No. 24074026
GREENBERG TRAURIG LLP
2200 Ross Ave., Ste. 5200
Dallas, Texas 75201
Phone (214) 665-3600
Fax (214) 665-3601
christopher.dodrill@gtlaw.com
beth.bones@gtlaw.com

*Attorneys for Respondents,*
*J.P. Morgan Securities LLC, JPMorgan*
*Chase & Co., and JP Morgan Chase Bank,*
*N.A.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 26, 2026, the foregoing was filed and served through PACER's ECF system.

*/s/Jeffrey S. Dunlap*           

*One of the Attorneys for Respondents, J.P. Morgan Securities LLC, JPMorgan Chase & Co., and JP Morgan Chase Bank, N.A.*