## UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **JOSHUA DAVID SAPPI BIERING**, | § § § | |
| Petitioner, *Pro Se,* | § § | **Case No.** 4:26cv-381-O |
| v. | § § | |
| **J.P. MORGAN SECURITIES LLC,** | § | FINRA Case No. 24-01208 |
| **JPMORGAN CHASE & CO., and** | § | EEOC Charge No. 450-2024-04743 |
| **JPMORGAN CHASE BANK, N.A.,** | § § | AAA Case No. 01-26-0000-7215 |
| Respondents. | § | |

### PETITIONER'S REPLY TO RESPONDENTS' RESPONSE [DKT. 41] IN SUPPORT OF HIS AMENDED VERIFIED PETITION [DKT. 11]

Petitioner Joshua David Sappi Biering, *pro se*, replies in support of his Amended Verified Petition [Dkt. 11] and to Respondents' Response in Opposition [Dkt. 41]. *See Fed. R. Civ. P.* 10(c).

Dkt. 41 is a fruitless expedition. Respondents cherry-pick through distractions, obsessing over Petitioner's *pro se* status and collateral citations, yet offer zero defense of the Panel's actual findings. They do not—because they cannot—dispute that JPMS filed an inaccurate Form U5, that it was timed to hinder Claimant's ability to transfer his book of business, or that the [mis]conduct may be a pattern. (Award at 4–5 [Dkt. 20-1 at PageID 265–266]). Instead, Respondents concede the expungement relief (Dkt. 41 at 2 n.1) while fleeing the intentional misconduct that demanded it.

Crucially, Dkt. 41's silence on the severity of this misconduct is fatal. Respondents attempt to brush off a weaponized U5 as administrative clutter, ignoring the Exchange Act's mandate to prevent **"fraudulent and manipulative acts and practices."** 15 U.S.C. § 78o-3(b)(6). As established in the Petition, and left entirely unrebutted by Respondents, regulatory violations and common-law fraud target **"the same basic conduct: misrepresenting or concealing material facts."** *SEC v. Jarkesy*, 603 U.S. 109, 125

1

(2024). The Panel's failure to fully adjudicate these fraud-analogous claims while imposing a public regulatory consequence exceeded its limited authority. *See id.* at 144 (Gorsuch, J., concurring). JPMS committed severe, substantive misconduct—a reality Dkt. 41 desperately attempts to bury beneath procedural distractions.

What Respondents deride as cherry-picking is exactly what jurisprudence refers to as the FAA authorizing severable relief. *See* 9 U.S.C. §§ 9–11; *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 587–88 (2008); *Citigroup Glob. Mkts., Inc. v. Bacon*, 562 F.3d 349, 355 (5th Cir. 2009). The statute permits confirmation of what is definite, correction of what is correctable, and confinement of what exceeds the Award's lawful reach. The Grounds below apply that exact framework to dismantle Dkt. 41's arguments.

## I.    The Court Must Confirm the Award's Severable, Definite, JPMS-Directed Relief Under 9 U.S.C. § 9

Dkt. 41 attempts a tactical retreat: Respondents concede the expungement directive (Dkt. 41 at 2 n.1) but refuse to confront the findings that compelled it. Their position is legally irrelevant. The FAA mandates confirmation of any definite portion of an award unless that portion is vacated, modified, or corrected under §§ 10 or 11. 9 U.S.C. § 9; *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 587–88 (2008); *Citigroup Glob. Mkts., Inc. v. Bacon*, 562 F.3d 349, 355 (5th Cir. 2009). The Award contains discrete, severable components definite enough to enter as a federal judgment. Dkt. 41 does not dispute the Court's authority to confirm the directive; it merely attempts to divorce that directive from the Panel's adverse findings of misconduct. The Award itself precludes that separation.

### A.    The Findings of Misconduct that Compelled Expungement are as Definite as the Directive Respondents Accept

Respondents ask this Court to confirm the remedy while discarding the misconduct that produced it. They cannot do both. Dkt. 41 tries to wish the Panel's findings away by characterizing them as "for the parties' information only." Dkt. 41 at 8. But the directive Respondents now urge the Court to confirm is the direct, inseparable product of those very findings.

The Panel ordered expungement strictly because of the severe regulatory breaches detailed above. The expungement directive is the remedy; the findings of inaccuracy and intentional hindrance are its foundation. A finding definite enough to force the amendment of a regulatory filing is definite enough to confirm. By conceding the remedy, Respondents necessarily concede the specific findings of misconduct that predicate it.

### B.   Dkt. 41 Cannot Reconcile the Award's Narrative with the "Discharge" Disposition

Dkt. 41 offers no defense for the "Discharged" label because the Award itself dismantled it. By changing the reason for termination to "Voluntary" and ordering the explanation deleted, the Award rejects the discharge label as a matter of regulatory fact. Respondents simply ignore this. A disposition cannot be "final and definite" in Respondents' favor where the Award brands their underlying filing false and orders it erased from the public record.

### C.   The FAA Recognizes Severable Confirmation but is Silent on Cherry Picking

Respondents' lead attack is to accuse Petitioner of cherry-picking—confirming what he likes and vacating what he does not. Dkt. 41 at 1. The charge perfectly describes their own brief. They eagerly pluck the expungement directive while leaving the findings of their own misconduct to wither unpicked.

Section 9 makes confirmation mandatory unless the award is vacated, modified, or corrected under §§ 10 and 11. Confirming a definite portion of the Award, modifying a conceded error under § 11, and confining an indefinite portion under § 10(a)(4) is the statute operating exactly as written. *See Hall Street*, 552 U.S. at 587–88; *Citigroup*, 562 F.3d at 355. Furthermore, Respondents may not invoke the portions of the Award they prefer while disclaiming the findings on which those portions rest. *See Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 528 (5th Cir. 2000). What Dkt. 41 derides as cherry-picking is simply the application of the FAA's severability framework.

## II. The Court Owes No Deference to Regulatory Disclosures Filed in Error and Must Modify the Award Under 9 U.S.C. § 11 to Direct Their Removal

Dkt. 41's defense against Ground Two rests entirely on a fabrication. Respondents claim the archived Form U4 correction is "beyond the scope of this Court's review" because it was supposedly absent from both the Statement of Claim and the Award. Dkt. 41 at 3, 21–22 [PageID 2202, 2230–31]. That is a startling misrepresentation of the arbitral record.[1]

### A. Respondents' Counsel Now Asserts Before This Court the Exact Opposite of What He Told the FINRA Panel

Respondents assert the U4 issue was "not part of Biering's Statement of Claim." Dkt. 41 at 3 [PageID 2202]. They simply ignore the operative pleading. The Second Amended Statement of Claim explicitly targeted JPMS's "loosely interpreted disclosure requirements on Biering's Form U4," detailed the permanent archiving of these erroneous financial disclosures, and requested relief targeting the Central Registration Depository. ¶¶ 50, 53, 57, 129–132 [Dkt. 20-4].

*Worse*, Dkt. 41 attempts to bury JPMS's own concessions. JPMS admitted the disclosures were "filed in error" and submitted a Form U4 Amendment (Filing ID 61688417) to correct them. [Dkt. 20-6 at PageID 593]. The hearing record alone defeats Dkt. 41's position. Respondents' counsel, Mr. Dunlap—the ***same attorney*** who signed Dkt. 41— acknowledged on the record that JPMS had corrected the disclosures, confirming, "that was my understanding yes." Hr'g Tr. [Dkt. 33-3 at PageID 2007]. In response, the Chairperson responded that was "bizarre." *Id*. at PageID 2010.

Dkt. 41 asks this Court to accept the exact opposite premise. Having acknowledged the correction before the Panel and participated in a hearing where the Panel openly discussed how to remedy the archived error, Mr. Dunlap now represents to this Court that the issue was never part of the arbitration at all. Whether this reversal reflects litigation expediency

---

[1]    Dkt. 41's attempt to claim the Award contains no U4 ruling relies on a similarly selective reading. The Award expressly adjudicated Petitioner's claim for attorney's fees tied to "the expungement of a customer claim from his Form U4." Award at 4 [Dkt. 20-1 at PageID 265]. While that line refers to the customer dispute, Petitioner incurred heavy fees fighting *both* that dispute and these archived student loan entries. Respondents cannot use a fee ruling on one U4 error to pretend their own conceded U4 error was never before the Panel.

or something more, it cannot be reconciled with Respondents' own hearing position. The issue was before the Panel, discussed by the Panel, and conceded by Respondents. (This contradiction triggers the Court's inherent authority to shift the but-for costs Petitioner continues to incur fighting a conceded error, addressed *infra* at Ground Five).

**B.    Section 11(c) Exists Precisely to Cure Conceded Form Defects**

Respondents demand this Court treat a conceded administrative fix as a new merits claim.[2] But the Court need not retry the 2018 U4 disclosures, because JPMS already filed the Amendment to mark them as erroneous. [Dkt. 20-6 at PageID 593].

What remains is not a question of merits liability, but the archived residue of a conceded error. Removing it does not disturb any merits determination. It merely conforms the registration record to JPMS's own corrective filing and the record the Panel actually examined. That is the exact non-merits defect 9 U.S.C. § 11(c) exists to cure: an award "imperfect in matter of form not affecting the merits." (This statutory modification is severable from the Court's inherent authority to award but-for damages—including the extensive fees Petitioner incurred fighting both the customer complaint and this conceded U4 error—addressed *infra*).

The Court should reject Dkt. 41's fabricated scope objection and modify the Award to direct removal of the archived Form U4 disclosures, consistent with JPMS's own corrective filing (Filing ID 61688417). [Dkt. 20-6 at PageID 593].

**III.   Respondents' Construction Requires Giving the Award an Operative Effect Beyond the Panel's Authority**

Respondents answer a challenge Petitioner does not make. They spend pages insisting that this Court must defer to the Panel's fact-finding and legal reasoning. Petitioner does not dispute that rule. The Panel could deny damages, reject liability, and give no explanation.

---

[2]    Respondents misapply *Pioneer Natural Resources USA, Inc. v. Paper, Allied Indus., Chem. & Energy Workers Int'l Union Loc. 4-487*, 328 F.3d 818, 821 (5th Cir. 2003). *Pioneer* barred a court from adding substantive make-whole damages the arbitrator chose not to award; it does not erase § 11(c)'s statutory authorization to correct a non-merits administrative defect that leaves an award "imperfect in matter of form."

That is not the issue.

The issue is narrower: what did the Award actually decide, against whom, and with what operative effect? Respondents cannot answer without changing positions. If "Respondent" means only JPMS, then the Award cannot reach JPMC, Chase[3], the statutory employment claims, or the AAA-preserved affiliate claims. If "Respondent" means all three entities, then Respondents ask this Court to give preclusive effect to an Award over entities the Panel expressly said it did not adjudicate. Either way, Dkt. 41 does not defend finality; it exposes the defect.

### A.   Respondents Cannot Identify Whom the Award Binds Without Going Outside the Award

The whole finality argument rests on one line: "The word 'Respondent' clearly and unambiguously refers to JPMS." Dkt. 41 at 4, 14. If that were true, Respondents would not have had to leave the Award to prove it. They did. They cite the September 13, 2024 FINRA letters—extrinsic correspondence—to fix the meaning of their own operative term. Dkt. 41 at 14.

The Award uses "Respondent" and "Respondents" interchangeably; the Panel grouped JPMC and Chase Bank together as "Respondents," noted their non-appearance, and then expressly disclaimed jurisdiction over them, making "no determination" as to those entities. Award at 2–3. Respondents' reliance on outside materials is the exact concession Dkt. 41 was supposed to avoid: it proves the Award is not facially definite. *In re Texans CUSO Ins. Grp., LLC*, 421 B.R. 769, 781–82 (Bankr. N.D. Tex. 2009), defines "definite" as language the Court can enforce on its face. This Award fails that test.

### B.   The Constricted Scope Respondents Press Cancels the Preclusion They Seek

Take Respondents at their word. "Respondent" means JPMS, alone. Dkt. 41 at 4, 14. Then the residual paragraph simply amputates the unresolved claims. It cannot reach JPMC,

---

[3]   The Award caption identifies "Chase Bank, N.A." as a non-appearing Respondent. While FINRA By-Laws may broadly encompass affiliates within the definition of a "member" or "firm" in certain contexts, Petitioner presumes by inference that this refers to JPMorgan Chase Bank, N.A., and uses the terms interchangeably herein.

cannot reach Chase Bank, cannot reach the statutory employment claims Respondents successfully moved out of FINRA under Rule 13201(a) (Dkt. 41 at 17), and cannot reach the affiliate claims now in the AAA—which Respondents themselves, in footnote 5 at page 5, tell this Court are still alive.

Footnote 5 is fatal. Either the affiliate claims survive in the AAA, in which case the FINRA Award did not dispose of them, or the FINRA Award disposed of them, in which case the assurance to this Court at page 5 is wrong. Respondents cannot keep both. Dkt. 41 keeps both anyway.

### C.   The Expansive Scope Forces a Jurisdictional Bind

To escape that constricted scope, Respondents must stretch the Award's residual catch-all to cover the entire JPM enterprise. That forces a jurisdictional bind. If "Respondent" means the enterprise, then the residual paragraph reaches affiliates the Panel disclaimed and statutory claims FINRA administratively removed.

Each of those limits is undisputed. They were placed there by Respondents, who told FINRA that JPMS would not arbitrate statutory claims, that JPMC and Chase were not FINRA members, and that those entities had not agreed to arbitrate in FINRA. Dkt. 41 at 17. Respondents now ask this Court to give the same residual paragraph the operative reach those limits would have foreclosed. They do not get to. *New Hampshire v. Maine*, 532 U.S. 742, 749–51 (2001), forbids exactly this maneuver—shifting positions with "the exigencies of the moment."

### D.   Respondents' Own Authorities Mark the Line They Now Cross

*DK Joint Venture 1 v. Weyland*, 649 F.3d 310, 312 (5th Cir. 2011), cited at Dkt. 41 at 14, holds that arbitrators cannot bind those they did not adjudicate. Respondents put that case in their brief; Petitioner is happy to take it. *Antwine v. Prudential-Bache Securities, Inc.*, 899 F.2d 410, 413 (5th Cir. 1990), and *McVay v. Halliburton Energy Services, Inc.*, 608 F. App'x 222, 227 (5th Cir. 2015), confirmed awards with no ambiguity and "fair notice of what [the party] may, and must not, do." Dkt. 41 at 13–14. Neither court confronted a residual

paragraph reaching parties the panel disclaimed and claims the forum administratively refused to hear. Their deference attaches to results within delegated authority. It does not extend operative effect outside it.

### E.   Confinement, Not Reasoning Review

The remedy follows the problem. Confirm the definite, JPMS-directed dispositions the Panel actually made. Confine the residual denial language to the matters actually delegated to and decided by the Panel. Deference is unaffected. The Award is unenlarged and unshrunk. The Court refuses only what Respondents themselves told FINRA the Panel could not do.

The Court need not speculate about policy consequences. The question is whether a private tribunal may be given operative effect beyond the authority the parties and forum conferred. The question therefore becomes what forum, if any, can resolve the residual uncertainty created by Respondents' construction. Respondents assume the answer is automatic remand to FINRA. It is not. Once the dispute concerns the operative effect of a federal judgment, the Court must determine whether remand is capable of curing the defect at all.

### IV.   The Court Must Determine the Award's Operative Effect Because Remand Cannot

Respondents attempt to dismiss this Ground in a single footnote, declaring that even after vacatur, "this Court cannot retain jurisdiction and must remand to FINRA." Dkt. 41 at 2 n.2. Respondents assume the question is where unresolved matters should be sent. It is not. The threshold question is who determines the operative effect of this Court's judgment. The reach, implementation, and consequences of a federal judgment are Article III questions, not arbitral ones.

### A.   Remand Cannot Resolve the Jurisdictional Defects Embedded in the Award

Respondents rely on *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504 (2001), and *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29 (1987). Those cases confirm that remand is ordinarily appropriate—but only when the arbitrators can actually

perform the task being remanded. Here, they cannot.

FINRA already disclaimed authority over JPMC and Chase and lacked jurisdiction to compel their participation. FINRA likewise directed Petitioner to delete his statutory employment claims from the arbitration or face dismissal of the proceeding. FINRA therefore expressly limited the universe of claims and parties before the Panel. A remand would return the parties to the same jurisdictional limitations that created the present dispute.

Fifth Circuit law does not compel that futile result. Remand is the presumed remedy only where the defect is a mere ambiguity in the award's scope or application. *See Brown v. Witco Corp.*, 340 F.3d 209, 215–16 (5th Cir. 2003). It is not the remedy where, as here, the defect is a structural absence of forum authority. In that posture, the district court proceeds under the FAA to enter judgment. *See Universal Am. Barge Corp. v. J-Chem, Inc.*, 946 F.2d 1131, 1138 (5th Cir. 1991). An arbitral forum cannot resolve on remand matters it lacked authority to decide in the first instance.

**B.   Respondents' Own Fragmentation Demonstrates that FINRA Cannot Provide a Complete Disposition**

Respondents' own account demonstrates why a FINRA remand is structurally inadequate. Throughout the FINRA proceeding, Respondents insisted that JPMC and Chase were outside FINRA's authority. *See* Dkt. 41 at 7. They now acknowledge that claims involving those entities are proceeding separately before the AAA. Dkt. 41 at 5 n.5.

Having successfully fragmented the dispute and prevented a universal disposition at FINRA, Respondents cannot simultaneously argue that a FINRA remand would provide a complete resolution of the controversy. FINRA cannot adjudicate claims Respondents themselves removed from FINRA's reach. *See Garcia v. Fuentes Rest. Mgmt. Servs., Inc.*, 141 F.4th 671, 681 (5th Cir. 2025) (courts "frown upon attempts to switch judicial horses in midstream").

**C.   Congress has Independently Foreclosed Arbitral Remand of Covered EFAA Claims**

The inadequacy of remand is reinforced by a statute Respondents never address. The

claims FINRA required Petitioner to remove included sexual-assault and sexual-harassment claims. Congress enacted the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act (EFAA), which invalidates pre-dispute arbitration agreements as to covered claims at the election of the "person alleging conduct" constituting the dispute. 9 U.S.C. §§ 401–402.

To the extent covered claims remain viable, Petitioner invokes the protections afforded by the EFAA. Accordingly, to the extent any covered claims survive the Award's residual denial language, they cannot be returned to arbitration over Petitioner's objection. Congress reserved that election exclusively to the person alleging the conduct, not to the arbitral forum or the employer. The EFAA therefore independently confirms what the jurisdictional record already demonstrates: remand cannot supply a complete remedy for the defects presented here.

**D.    This Court Must Define the Scope and Consequences of its Rule 58 Judgment**

Respondents repeatedly assume that remand answers the question presented. It does not. The issue is not whether arbitrators should decide matters committed to them. The issue is what operative effect this Court's Rule 58 judgment carries after confirmation, modification, or vacatur of the Award before it.

That determination belongs exclusively to this Court. Neither FINRA nor the AAA can define the scope of federal preclusion, determine which parties are bound by a federal judgment, resolve the consequences of claims excluded from arbitral jurisdiction, or otherwise determine the operative effect of a federal judgment on CRD, BrokerCheck, FINRA Awards Online, or other public regulatory records. Those are judicial functions.

Accordingly, even if some portion of the Award were remanded, this Court would still be required to determine the Award's operative effect. Relinquishing that duty jeopardizes the Court's Article III authority to oversee the implementation of its own judgments. Retaining jurisdiction is therefore not an extraordinary remedy and does not conflict with *Garvey*; it is the ordinary exercise of Article III authority necessary to implement whatever

judgment this Court ultimately enters.

## V.    The Court's Inherent Authority Supports But-For Costs

Respondents recast this Ground as a demand to "sanction Respondents . . . for conduct during the FINRA arbitration" and answer with *Positive Software Solutions, Inc. v. New Century Mortgage Corp.*, 619 F.3d 458, 463 (5th Cir. 2010). Dkt. 41 at 17–18. They also assert that "$822,889.89 appears to be Biering's own attorneys' fees," already denied by the Panel. Dkt. 41 at 17. Both answers miss the relief sought.

### A.    Positive Software Does Not Eliminate This Court's Inherent Authority

*Positive Software* held that a district court lacked inherent authority to sanction an attorney for conduct "during arbitration" that was "neither before the district court nor in direct defiance of its orders." 619 F.3d at 463. That decision—issued before the Supreme Court's intervening decision in *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101 (2017)— did not abolish a court's inherent authority over conduct affecting its own proceedings. *Goodyear* trains the inquiry on costs causally tied to the proceedings, not on policing the arbitration.

### B.    Chambers and Goodyear Permit But-For Cost Shifting

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991), recognizes the inherent authority to shift fees for bad-faith conduct, and *Goodyear* limits that authority to the fees that "would not have been incurred but for the bad faith." 581 U.S. at 109. Petitioner asks only for that calibrated, but-for subset. He does not ask for a penalty on the arbitration.

### C.    But-For Costs Are Distinct from Compensatory and Punitive Relief

The recoverable costs are discrete and listable: (i) the Form U-4 correction costs that would not have been incurred but for Respondents' conceded erroneous filings; and (ii) the Form U-5 correction and transition costs that would not have been incurred but for the Panel's findings and Respondents' inaccurate filing. These are categorically distinct from the compensatory damages quantified at Dkt. 22-3 and from any punitive relief. The Panel's

denial of "attorneys' fees" as a merits remedy (Award at 4) does not preclude a but-for cost award the Panel never considered: the cost of conduct affecting the proceedings now before this Court.

## VI.    Punitive Relief on Preserved Claims Is Reserved to the Court

Respondents argue punitive damages "are not exclusive to this Court" because they were "available in FINRA arbitration," Petitioner "sought and was denied" them, and he "waived his right to a jury trial . . . by agreeing to arbitration." Dkt. 41 at 18–19. Each point is true for the claims FINRA heard. None reaches the claims it did not.

### A.    No Arbitral Waiver Reaches Claims the Forum Was Barred from Hearing

A jury-trial waiver attaches to claims placed in an arbitral forum. It cannot attach to claims the forum was barred from hearing. FINRA ordered the statutory employment claims deleted under Rule 13201 (Dkt. 41 at 7) and could not reach the affiliate claims at all. Respondents' own authority draws the line. The jury right "vanishes" only "[i]f the claims are properly before an arbitral forum." *Householder Grp. v. Caughran*, 354 F. App'x 848, 852 (5th Cir. 2009) (Dkt. 41 at 19); *Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 711 (5th Cir. 2002). Claims FINRA expelled were never properly before it.

Respondents' *Jarkesy*-distinguishing cases do not save them. As an initial matter, these are untested district-court orders addressing pending arbitrations, not appellate precedent. *Mansour* involved a plaintiff alleging a "conspiracy of some sort" in a pre-arbitration attempt to escape an arbitration agreement entirely. 2025 WL 2380456 (E.D. Tex. Aug. 15, 2025). *Nguyen* involved a dispute over a promissory note—a contractual matter that Petitioner concedes falls comfortably within the public-rights context where a FINRA panel's industry focus is a proper forum. 2025 WL 436062 (E.D. Mo. Feb. 7, 2025). Neither addresses the preclusion of severe common-law and statutory claims that an arbitral forum explicitly forced out.

Chief Justice Roberts foreclosed this exact attempt to dodge scrutiny through forum labels: "What matters is the substance of the suit, not where it is brought, who brings it, or

how it is labeled." *SEC v. Jarkesy*, 603 U.S. 109, 131 (2024). By stamping that *Jarkesy* "does not apply to arbitration," those district courts elevated the label over the substance. Petitioner does not contest that a valid agreement waives a jury trial for claims actually arbitrated. He contests the preclusion of legal claims seeking legal remedies that were never within any arbitral forum.

### B.    Jarkesy Confirms the Court's Role as to Preserved Legal Remedies

Respondents read *Jarkesy* as irrelevant because it "did not involve arbitration." Dkt. 41 at 20. Petitioner does not use *Jarkesy* to undo the waiver. He uses it for the point it squarely makes: legal claims seeking legal remedies belong, when not validly committed elsewhere, before an Article III court. *SEC v. Jarkesy*, 603 U.S. at 120–28. The claims FINRA refused to hear were never validly committed to arbitration. For those, *Jarkesy* confirms the judicial forum.

### C.    The Panel's Unexplained Punitive-Damages Denial Is Not Preclusive

The Panel's denial of "any requests for punitive damages" sits in the same one-sentence catch-all that denies "any and all claims for relief not specifically addressed." Award at 4. An unexplained catch-all cannot preclude claims the Panel made "no determination" about, or that FINRA expelled before the hearing. Preclusion needs actual adjudication, not a residual sweep.

### VII.   Preservation Of Non-Concession, Reserved Claims, And Later-Phase Relief

Respondents answer this Ground by saying it "does not seek any relief" and that they "reject Biering's attempt to dictate the arguments or claims they may make in the future." Dkt. 41 at 3 n.3. This Ground dictates nothing and seeks no affirmative relief. It asks the Court to recognize what the Award already establishes: certain matters were not adjudicated and carry no preclusive effect.

### A.    Affiliate Claims Were Not Adjudicated

The Panel made "no determination" as to JPMC and Chase. Award at 3. Claims against

them were not decided and cannot be precluded by this Award. Respondents prove the point by litigating those claims in the AAA. Dkt. 41 at 5 n.5.

### B.    Rule 13201-Removed Claims Were Not Adjudicated

FINRA ordered the statutory employment claims deleted as a condition of proceeding. Dkt. 41 at 7. Compliance with a forum directive is not a merits adjudication. It is not consent to preclusion.

### C.    EFAA-Preserved Claims Were Not Adjudicated

The sexual-assault and sexual-harassment claims are reserved to this Court at the election of the person alleging the conduct. 9 U.S.C. §§ 401–402. They were never arbitrated. They cannot be precluded.

### D.    Reserved Compensatory And Punitive Relief Remains Non-Preclusive

Relief tied to claims never adjudicated—compensatory and punitive—remains available in the proper forum. Recognizing non-preclusion is not granting relief. It is reading the Award for what it says and refusing its residual paragraph a sweep the Panel never gave it. *See New Hampshire v. Maine*, 532 U.S. at 749; *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022).

## VIII. Prayer For Relief

For these reasons, Petitioner respectfully requests that the Court:

(i)    **CONFIRM**, under 9 U.S.C. § 9, the Award's definite, severable, JPMS-directed relief, including the Form U-5 expungement directive, the corrected termination date of October 28, 2023, the forum-fee allocation against JPMS, and the Panel's express findings of U-5 inaccuracy, intentional competitive hindrance, and possible pattern conduct;

(ii)    **MODIFY** the Award under 9 U.S.C. §§ 11(b)–(c) to direct removal of the archived, conceded Form U-4 disclosure errors;

(iii)    **VACATE**, under 9 U.S.C. § 10(a)(4) or in the alternative § 10(c), the residual no-defamation and zero-damages dispositions, so that they bind no entity the Panel made "no determination" about and preclude no claim the Panel did not

14

adjudicate;

(iv) **RETAIN JURSIDICTION TO DETERMINE THE OPERATIVE EFFECT** of the confirmed, modified, and confined Award; and

(v) **GRANT** such other and further relief as is just.

## IX.    Conclusion

Respondents concede the Court should confirm expungement. They then ignore the findings that compelled it and the questions the Petition raises. The Award is definite where it corrects the public record. It is indefinite where Respondents need it most: on which entity is bound, and on the leap from the Panel's findings to zero damages and no defamation. The FAA lets the Court confirm the definite, modify the conceded, and confine the indefinite. Petitioner respectfully requests relief consistent with the foregoing.

Respectfully submitted,

*Joshua David Sappi Biering*

**JOSHUA DAVID SAPPI BIERING**
Petitioner, *Pro Se*

Dated: June 1, 2026

15

## CERTIFICATE OF CONFERENCE

N.D. Tex. L. Civ. R. 7.1 requires a certificate of conference only for motions. Petitioner submits the following for the Court's case-management purposes. Petitioner conferred with counsel for Respondents before filing the Amended Verified Petition [Dkt. 11] and continued to confer during the briefing of Dkt. 41 and this Reply. The parties remain opposed to the relief sought in Dkt. 11.

Consistent with Federal Rule of Evidence 408 and the confidentiality applicable to settlement communications, Petitioner discloses no substance of any settlement or mediation communications.

## CERTIFICATE OF SERVICE

Petitioner, *pro se*, certifies that on June 1, 2026, the foregoing was filed via CM/ECF, which will automatically serve notice on all counsel of record.

**JOSHUA DAVID SAPPI BIERING**
Petitioner, *Pro Se*

16