**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **JOSHUA DAVID SAPPI BIERING,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:26-cv-00381-O-BP** |
| | § | |
| **J.P. MORGAN SECURITIES, LLC, *et al.*,** | § | |
| | § | |
| **Defendants.** | § | |

**ORDER**

Before the Court are the Amended Verified Petition to Confirm, Modify, and Vacate in Part a FINRA Arbitration Award, and to Retain Jurisdiction (ECF No. 11) that *pro se* Plaintiff Joshua Biering filed on April 13, 2026, Response (ECF No. 41) that JP Morgan Securities LLC, JPMorgan Chase & Co., and JPMorgan Chase Bank NA (collectively "Defendants") filed on May 26, 2026, and Reply (ECF No. 45) that Biering filed on June 1, 2026. After considering the pleadings and applicable legal authorities, the undersigned **RECOMMENDS** that Chief United States District Judge Reed O'Connor **GRANT** the Motion in part to the extent Biering seeks confirmation of the award and **DENY** the remainder of the Motion, and **CONFIRM** the arbitration award.

## I. BACKGROUND

Beiring brings this case concerning an arbitration award ("the award") issued on December 29, 2025. ECF No. 20-1. In the arbitration, Biering brought claims for defamation/defamation per se and violation of FINRA rules; business disparagement; tortious interference; unfair competition; wrongful discharge; weaponization of U5; breach of contract; promissory estoppel; quantum merit and unjust enrichment; illegal forfeiture of earned compensation; forfeiture of deferred compensation (violation of ERISA); and violation of Texas and/or New York labor and wage laws.

*Id.* at 4. He sought more than $10,000,000.00 in damages for the alleged claims. *Id.* The arbitration panel denied his claims in their entirety, except for expungement of the U5 form. *Id.* at 5.

Biering now asks the Court to confirm and give effect to severable portions of the award, vacate non-final portions, and retain jurisdiction to resolve matters the arbitral forum could not finally and completely resolve. *Id.* He argues several theories for why vacatur is appropriate, chiefly because the arbitration panel's ruling did not adequately specify which defendants the ruling applied to and therefore was not a "a mutual, final, and definite disposition" as 9 U.S.C. § 10(a)(4) requires. *See* ECF No. 11 at 7. Defendants argue that Biering does not meet the high threshold under section 10 of the Federal Arbitration Act ("FAA") for vacatur. ECF No. 41 at 13.

## II. LEGAL AUTHORITIES

A court will vacate an arbitrator's decision "only in very unusual circumstances." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)). "In our circuit, judicial review of an arbitration award is extraordinarily narrow, and our review is exceedingly deferential to the arbitration panel's decision." *United States Trinity Energy Servs., L.L.C. v. Se. Directional Drilling, L.L.C.*, 135 F.4th 303, 307 (5th Cir. 2025) (cleaned up). "The burden of proof is on the party seeking to vacate the award, and any doubts or uncertainties must be resolved in favor of upholding it." *Cooper v. WestEnd Capital Mgmt., L.L.C.*, 832 F.3d 534, 544 (5th Cir. 2016) (citing *Brabham v. A.G. Edwards & Sons, Inc.*, 376 F.3d 377, 385 & n.9 (5th Cir. 2004)).

Section 10 of the FAA provides the sole statutory authority for a court's vacatur of an arbitration award. *Citigroup Glob. Markets, Inc. v. Bacon*, 562 F.3d 349, 358 (5th Cir. 2009) ("Thus from this point forward, arbitration awards under the FAA may be vacated only for reasons provided in §10."). Section 10(a)(4) of the FAA allows vacatur when the arbitrators "so

imperfectly executed [their powers] that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). "In this context, the terms 'mutual' and 'final' require that the arbitrator must have resolved the entire dispute (to the extent possible) submitted for resolution, while 'definite' requires that the award be sufficiently clear and specific to be enforced." *In re Texans CUSO Ins. Group, LLC*, 421 B.R. 769, 782 (Bankr. N.D. Tex. 2009) (citing *IDS Life Ins. Co. v. Royal Alliance Assocs., Inc.*, 266 F.3d 645, 650 (7th Cir. 2001)).

Section 10(c) permits a court to vacate an award when "the award is clearly inconsistent with the factors set forth in section 572 of title 5," which permits federal agencies to use arbitration to resolve disputes. 9 U.S.C. § 10(c).

## III. ANALYSIS

Biering states sixteen times that he does not ask the Court to reweigh the merits of the judgment and instead only asks the Court to determine finality, party reach, and legal effect taking the award as written. *See, e.g.,* ECF No. 11 at 20. He asks that the Court confirm under 9 U.S.C. § 9 the award's definite, severable, JPMS-directed relief, modify part of the award under 9 U.S.C. §§ 11(b)-(c), and vacate the remainder of the award under 9 U.S.C. § 10(a)(4) or in the alternative § 10(c). ECF No. 47 at 14. Biering identifies seven grounds for relief. ECF No. 11 at 34-48. The Court considers grounds one through three and five through seven separately from ground four because ground four is cumulative and relies on the analysis of the other six grounds.

### A. Ground one

Biering first asks that the Court confirm the part of the award relating to expungement of his FINRA Form U5. ECF No. 11 at 34. "A Form U5 must be filed when an individual leaves a firm for any reason." When Must a Form U5 Be Filed, FINRA, https://www.finra.org/registration-exams-ce/broker-dealers/registration-forms/form-u5 (last visited July 13, 2026). The form states

and explains the reason that the employee's employment ended. *Cure v. LPL Fin. LLC*, No. 1:22-cv-00311-MJT, 2023 WL 12263622, at *2 (E.D. Tex. Aug. 16, 2023), *rev'd in part, vacated in part sub nom.*, 118 F.4th 663 (5th Cir. 2024).

Here, the arbitration panel ordered JPMS to expunge "the Reason for Termination and Termination Explanation" in Form U5, change the reason for termination to "Voluntary," delete and leave blank the Termination Explanation, and expunge the Date Terminated field in Section 4 of the Form U5. ECF No. 20-1 at 5. The panel applied this award to all references to the Reason for Termination and Termination Explanation. *Id.* Defendants do not object to the Court affirming the award as to this finding. ECF No. 41 at 12. Therefore, the Court should confirm the award as to the expungement of Biering's form U5.

**B. Ground two**

Biering seeks removal of U4 form disclosures. ECF No. 11 at 36. He claims the form misreported his student loans as a bankruptcy. *Id.* A U4 form establishes that an individual is registered within the appropriate jurisdictions and self-regulatory organizations. Form U4, FINRA, https://www.finra.org/registration-exams-ce/broker-dealers/registration-forms/form-u4 (last visited July 13, 2026). Biering argues that he presented the issue as a contested claim, defendants conceded the error, and the panel agreed the disclosures should be expunged, yet the award was silent as to the expungement because "FINRA lacks a mechanism to remove them absent a judicial order." ECF No. 11 at 36. Defendants respond that Biering contests a collateral issue which is not part of Biering's statement of claim and not addressed in the arbitration award and therefore outside the scope of the Court's review. ECF No. 41 at 3. Biering's statement of claim does mention the U4 expunction issue. *See* ECF No. 20-4 at 20.

It also appears from the transcript of the arbitration hearing that it is undisputed that the form U4 was erroneous. ECF No. 33-3 at 165-174. Although the erroneous form was "archived," the form was not expunged and therefore continues to show on Biering's record a history of bankruptcies rather than discharged student loans, making his licensure and employment more difficult. *Id.* at 172. The Chairperson of the panel noted that it seemed "bizarre" that no FINRA mechanism existed to correct an erroneous archived filing. *Id.* at 174.

Biering argues that the panel did not include expunction of the U4 form in its award because FINRA does not have such an expunction mechanism, and a judicial order is required. He cites no authority for this proposition. And while the panel was silent as to the U4, and from the transcript it appears that the panel may have been concerned with such a result, the award contains no mention of the U4 or why the panel does not address it. Additionally, while Biering's statement of the claim mentions the U4, he does not set it out as a separate claim for relief. *See* ECF No. 20-3 at 22-34. And even if he argues that he explicitly requested relief on this point, the award makes clear that other than the expunction of the U5, all other relief requested is denied in its entirety. ECF No. 20-1 at 4.

If Biering did not explicitly request the U4 expunction as part of his claim before the arbitration panel, the Court should not now modify the award on that basis because it is beyond the scope of the Court's review of the award. *See Pioneer Nat. Res. USA, Inc.*, 328 F.3d at 821 ("The district court did not have the authority to modify the arbitral awards to include relief that a party either could have asked the arbitrator to award but did not, or that the arbitrator saw fit not to award.").

If Biering explicitly requested this relief, then the effect of the award is to deny his request. He argues that § 11(c) exists to cure this type of award, because it is "imperfect in matter of form

not affecting the merits of the controversy." 9 U.S.C. 11(c). But is unclear how this award was imperfect in form not affecting the merits. Instead, Biering seemingly asks the Court to review the merits of this decision. It is not appropriate for the Court to conduct new analysis on this point and determine whether expunction is appropriate if Biering adequately raised the issue at arbitration, and the panel rejected it on the merits. Therefore, the Court should deny Biering's request to modify the award to direct removal of erroneous archived U4 disclosures because the award was not imperfect in matter of form under 9 U.S.C. § 11(c).

**C. Ground three**

Next, Biering launches a "finality" objection to the award's damages and disposition of defamation claims, asserting that they lack an enforceable legal result. ECF No. 11 at 37. But Biering does not show that the panel did not resolve the entire dispute to the extent possible or that the award was not sufficiently clear and specific to be enforced. *In re Texans CUSO Ins. Group, LLC*, 421 B.R. at 782. Instead, he argues only that because the award uses the word "respondent," while the record allocated challenged conduct across three separate legal entities, the award is not final. ECF No. 11 at 37-38. He contends that although the panel disclaimed jurisdiction over the two non-FINRA member entities, its operative findings describe the conduct in collective terms, requiring the Court to infer how the award applies to each entity. *Id.* at 38. However, the award is clear that JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. are not FINRA members, and therefore the panel made no determination as to the claims against them. ECF No. 20-1 at 4. Consequently, although Biering initially brought claims against three entities, the award is clear and unequivocal that when referring to "respondent," it applies to the only entity that was a FINRA member. The Court should deny Biering's request to vacate this part of the award because the arbitrators resolved the entire dispute submitted for resolution to the extent possible, and the award

was sufficiently clear and specific to be enforced. *See In re Texans CUSO Ins. Group, LLC*, 421 B.R. 769, 782.

**D. Ground five**

Next, Biering invokes the Court's equitable powers and requests an award of $864,407.26 in compensatory relief for fees and costs caused by defendants' bad-faith litigation conduct. ECF No. 11 at 44 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-6 (1991)). At the outset, the Court notes that the decision in *Chambers* did not concern review of an arbitration award and is not mandatory authority on that point. Additionally, Biering also does not point to specific bad faith conduct that justifies such an award. Moreover, the requested compensatory relief for bad faith conduct is most like a sanction, and "the district court lack[s] inherent authority to sanction [] for [] conduct during arbitration." *Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 619 F.3d 458, 463 (5th Cir. 2010). Otherwise, "there would be nothing to prevent courts from inserting themselves into the thicket of arbitrable issues—precisely where they do not belong." *Id.*

Biering, citing *Chambers* and other similar cases regarding a Court's general equitable fee-shifting power, contends that *Positive Software Sols., Inc.* does not apply because he seeks a compensatory fee award rather than sanctions. ECF No. 41 at 11. However, Biering does not offer any additional legal authority to justify the Court plunging into the thicket of arbitrable issues where it "do[es] not belong." *Positive Software Sols., Inc.*, 619 F.3d at 463. Accordingly, the Court should deny Biering's request for this award.

**E. Ground six**

Biering also requests to preserve the right to seek punitive relief after the Court resolves the issues he raises in his petition. ECF No. 11 at 46. He cites *SEC v. Jarkesy*, 603 U.S. 109, 131 (2024), a case not about arbitration, for the proposition that the "Seventh Amendment guarantees

adjudication before an Article III court." ECF No. 11 at 45. Biering raised the issue of punitive damages during the arbitration, and the panel denied his request. ECF No. 20-1 at 4. He now argues that the denial "does not foreclose the Court's independent authority to consider such relief." ECF No. 11 at 47. As a preliminary matter, the Court should deny Biering's request because he seeks relief that the arbitration panel denied. *See Pioneer Nat. Res. USA, Inc. v. Paper, Allied Indus., Chem. & Energy Workers Intern. Union Local 4-487*, 328 F.3d 818, 821 (5th Cir. 2003), *opinion modified on denial of reh'g sub nom.*, 338 F.3d 440 (5th Cir. 2003).

As to the Seventh Amendment issue, Defendants cite district court cases that refute Biering's argument and hold that "[i]f claims are properly before an arbitral forum pursuant to an arbitration agreement, then the Seventh Amendment right to a jury trial vanishes." *Householder Group v. Caughran*, 354 F. App'x. 848, 852 (5th Cir. 2009). Further, when a party "voluntarily and knowingly waive[s] his right to a jury trial in favor of arbitration[,] there are no Seventh Amendment concerns raised by enforcing those agreements." *Mansour v. Morgan Stanley*, No. 4:24-cv-459, 2025 WL 2380456, at *22 (E.D. Tex. Aug. 15, 2025) (citing *Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 712 (5th Cir. 2002)) (holding that *Jarkesy* is limited to situations where an executive agency seeks to enforce penalties for fraud without a jury trial)).

Biering persists with this novel theory and dismisses the cited legal authority as merely "untested" district court orders that misinterpret Supreme Court precedent. ECF No. 47 at 12. He also argues that the award denied his request for punitive damages in one sentence and without analysis and therefore the denial does not constitute "actual adjudication." *Id.* at 13. It is unclear why the length of the denial would invalidate the award, and Biering cites no authority for such a contention.

Even so, he cites no authority supporting his asserted right to request punitive damages relief after the Court's resolution. It is unclear, and Biering does not explain, how his request fits within the narrow grounds that 9 U.S.C. § 10 authorizes for judicial review of an arbitration award. And nevertheless, this reservation is unnecessary if the Court denies his request to vacate. Therefore, the Court should deny Biering's request.

**F. Ground seven**

Biering also requests "preservation of non-concession, reserved claims, and later-phase relief." ECF No. 11 at 47. He seeks to preserve arguments and claims that the panel excluded from the scope of the arbitration. *Id.* He also reasserts relief he seeks in previous sections relating to punitive damages and the U5 form. *Id.* To the extent Biering requests relief that he did not seek during the arbitration, the Court should deny this request because it is not within the scope of the Court's review. *See Pioneer Nat. Res. USA, Inc.*, 328 F.3d at 821. As for the relief he requests for a second time, the Court should deny that relief for the reasons stated in the previous sections analyzing those requests.

**G. Ground four**

Finally, Biering argues that after the Court confirms, modifies, and vacates the award, it should retain jurisdiction to "determine the operative effect of the [a]ward and to supervise any ancillary relief that depends on that determination." ECF No. 11 at 43. The Court need not analyze this argument because it should not vacate the award. And even if it does vacate the award, retaining jurisdiction is not appropriate. *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 511 (2001) (citations omitted) ("[E]stablished law ordinarily precludes a court from resolving the merits of the parties' dispute . . . no matter how erroneous the arbitrator's decision. Even when the arbitrator's award may properly be vacated, the appropriate remedy is to remand the case for

further arbitration proceedings."). Therefore, the Court should deny Biering's request in ground four.

## IV. CONCLUSION

Judicial review of an arbitration award is extraordinarily narrow and exceedingly deferential. *United States Trinity Energy Services, L.L.C.*, 135 F.4th at 307. Biering asserts several unmeritorious grounds for vacatur of the arbitration award, and he does not show that this is one of the "very unusual circumstances" that justifies vacatur. *Oxford Health Plans LLC*, 569 U.S. at 568. Accordingly, the undersigned **RECOMMENDS** that Chief Judge O'Connor **GRANT** the Motion in part to the extent Biering seeks confirmation of the award and **DENY** the remainder of the Motion, and **CONFIRM** the arbitration award.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

**SIGNED** on July 14, 2026.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE