**UNITED STATES DISTRICT COURT**
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **JOSHUA DAVID SAPPI BIERING**, | § | |
| Petitioner, *Pro Se,* | § | **Case No.** 4:26cv-381-O |
| v. | § | FINRA Case No. 24-01208 |
| **J.P. MORGAN SECURITIES LLC, JPMORGAN CHASE & CO., and JPMORGAN CHASE BANK, N.A.,** | § | EEOC Charge No. 450-2024-04743 |
| | § | AAA Case No. 01-26-0000-7215 |
| Respondents. | § | |

**PETITIONER'S SPECIFIC OBJECTIONS TO THE MAGISTRATE JUDGE'S [*FINDINGS, CONCLUSIONS, AND RECOMMENDATION*] [DKT. 51] AND REQUEST FOR ORAL ARGUMENT AND SUPPLEMENTAL BRIEFING**

Petitioner Joshua David Sappi Biering, *pro se,*[1] respectfully submits these specific objections under 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b)(2) to the Findings, Conclusions, and Recommendation entered July 14, 2026 (Dkt. 51) (the "FCR"), and requests oral argument or, in the alternative, focused supplemental briefing on the form of judgment. Although the docket entry is captioned an "Order," its substance recommends disposition of the Amended Verified Petition (Dkt. 11), and the FCR itself directs Rule 72(b) objections. Dkt. 51 at 10–11.

Because Petitioner declined consent to final disposition by a magistrate judge (Dkt. 7), the filing can operate only as a recommendation under 28 U.S.C. § 636(b)(1)(B), and this Court must determine de novo each properly objected-to portion. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). Pro se filings are construed liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*); *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). No portion of the Verified Petition (Dkt. 1), the Amended Verified Petition (Dkt. 11), or the Reply (Dkt. 45) is

[1] "A document filed *pro se* is to be liberally construed," and *pro se* filings are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus, 551 U.S. 89*, 94 (2007) (*per curiam*) (cleaned up); H*aines v. Kerner*, 404 U.S. 519, 520–21 (1972).

waived or abandoned, and Petitioner preserves his Rule 72(a) objection (Dkt. 29) to the April 30, 2026 extension order (Dkt. 28).

These objections identify each portion of the FCR challenged, the basis for each objection, and the specific relief requested. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (*en banc*). Petitioner requests oral argument or focused supplemental briefing on any issue the Court finds unresolved — including § 10(c), the BAA gateway, § 402, the noticed fee procedure, and the vehicle for the claims the Award never adjudicated. *Cf. Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 514–15 (2001) (Stevens, J., dissenting) ("the Court should have set this case for argument if it wanted to answer" the remedial question).

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT** — FAA DEFERENCE IS NOT JUDICIAL ABDICATION ..... 1

**STANDARD OF REVIEW** ..... 4

**OBJECTION ONE** — THE FCR RESTS ON A MISLABELED INSTRUMENT AND A MISCITED RECORD ..... 4

- A. Determination Challenged ..... 4
- B. Governing Law ..... 5
- C. Record Support ..... 5
- D. Effect on the Proposed Judgment ..... 5
- E. Requested Ruling ..... 6

**OBJECTION TWO** — THE "JPMS" LABEL IS NOT THE ANALYSIS: THE JUDGMENT MUST RECITE THE ENTITY, AGREEMENT, AND FUNCTION MAP ..... 6

- A. Determination Challenged ..... 6
- B. Governing Law ..... 6
- C. Record Support ..... 6
- D. Effect on the Proposed Judgment ..... 8
- E. Requested Ruling ..... 8

**OBJECTION THREE** — AN UNQUALIFIED "CONFIRM" IS NOT AN EXECUTABLE JUDGMENT: THE FINDINGS, U5 TERMS, FEES, AND NON-DETERMINATIONS BELONG IN IT ..... 8

- A. Determination Challenged ..... 8
- B. Governing Law ..... 8
- C. Record Support ..... 9
- D. Effect on the Proposed Judgment ..... 10
- E. Requested Ruling ..... 10

**OBJECTION FOUR** — THE FCR CONVERTS AN ADMITTED FORM U4 ERROR INTO A SILENT MERITS LOSS, MISAPPLYING § 11(b)–(c) ..... 11

- A. Determination Challenged ..... 11
- B. Governing Law ..... 11
- C. Record Support ..... 11
- D. Effect on the Proposed Judgment ..... 12
- E. Requested Ruling ..... 12

**OBJECTION FIVE** — THE RESIDUAL DENIALS CANNOT OUTRUN THE SUBMISSION: CONFINEMENT FIRST, SEVERABLE VACATUR AND § 10(c) IN THE ALTERNATIVE ..... 12

- A. Determination Challenged ..... 12
- B. Governing Law ..... 13
- C. Record Support ..... 13

D. Effect on the Proposed Judgment ....15
E. Requested Ruling ....15
**OBJECTION SIX** — THE REMOVED AND NON-DETERMINED CLAIMS REMAIN OPEN: NOT ADJUDICATED, NOT WAIVED, NOT EXTINGUISHED ....16
A. Determination Challenged ....16
B. Governing Law ....16
C. Record Support ....16
D. Effect on the Proposed Judgment ....19
E. Requested Ruling ....19
**OBJECTION SEVEN** — REMAND WITHOUT A TASK, PARTY, AGREEMENT, OR FORUM IS FUTILITY, NOT DEFERENCE ....19
A. Determination Challenged ....19
B. Governing Law ....19
C. Record Support ....20
D. Effect on the Proposed Judgment ....20
E. Requested Ruling ....21
**OBJECTION EIGHT** — "NO SPECIFIC BAD FAITH" WAS FOUND WITHOUT LOOKING: THE FOUR MONETARY QUESTIONS REQUIRE FOUR ANALYSES ....21
A. Determination Challenged ....21
B. Governing Law ....21
C. Record Support ....21
D. Effect on the Proposed Judgment ....22
E. Requested Ruling ....23
**OBJECTION NINE** — THE RECORD PERMITS, AND RULE 72(b)(3) REQUIRES, THE COMPLETE JUDICIAL DISPOSITION ....23
A. Determination Challenged ....23
B. Governing Law ....23
C. Record Support ....24
D. Effect on the Proposed Judgment ....24
E. Requested Ruling ....24
**CONCLUSION AND PRAYER** ....25

## TABLE OF AUTHORITIES

### Cases

*Alpine Sec. Corp. v. FINRA*, 86 F.4th 406 (D.C. Cir. 2023) .....3
*Alpine Sec. Corp. v. FINRA*, 121 F.4th 1314 (D.C. Cir. 2024) .....3, 18
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .....24
*Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009) .....16
*Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347 (5th Cir. 2003) .....3, 6, 16, 23
*Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 447 F.3d 411 (5th Cir. 2006) .....3, 23
*Brown v. Witco Corp.*, 340 F.3d 209 (5th Cir. 2003) .....13, 19, 20
*Burchell v. Marsh*, 58 U.S. (17 How.) 344 (1855) .....2
*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .....23
*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) .....21, 22, 23, 26
*Citigroup Global Mkts., Inc. v. Bacon*, 562 F.3d 349 (5th Cir. 2009) ..... *passim*
*Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024) .....2, 6
*Container Prods., Inc. v. United Steelworkers*, 873 F.2d 818 (5th Cir. 1989) .....4
*Cure & Assocs., P.C. v. LPL Fin. LLC*, 118 F.4th 663 (5th Cir. 2024) .....16
*DK Joint Venture 1 v. Weyand*, 649 F.3d 310 (5th Cir. 2011) .....20
*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*) .....4
*Erickson v. Pardus*, 551 U.S. 89 (2007) (*per curiam*) ..... i
*Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573 (Tex. 2001) .....16, 23
*Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314 (5th Cir. 1994) .....6
*First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938 (1995) .....2, 4, 6, 25
*Fox v. Vice*, 563 U.S. 826 (2011) .....21
*Garland Symphony Orchestra Ass'n v. Dallas-Fort Worth Prof'l Musicians Ass'n*, No. 4:24-cv-00739-O (N.D. Tex. Mar. 7, 2025) .....4
*Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101 (2017) .....21, 23, 26
*Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287 (2010) .....1
*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305 (5th Cir. 2002)23
*Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444 (2003) .....6
*Haines v. Kerner*, 404 U.S. 519 (1972) ..... i
*In re Texans CUSO Ins. Grp., LLC*, 421 B.R. 769 (Bankr. N.D. Tex. 2009) .....13, 25
*J.P. Morgan Sec. LLC v. Luckett*, No. 3:22-cv-137-RGJ, 2023 WL 6050230 (W.D. Ky. Sept. 14, 2023) .....10, 25
*Jones Bros., Inc. v. Sec'y of Labor*, 898 F.3d 669 (6th Cir. 2018) .....20
*K & R Contractors, LLC v. Keene*, 86 F.4th 135 (4th Cir. 2023) .....18
*Law Offices of Steven M. Johnson, P.C. v. Patton*, No. 4:23-cv-00047-O (N.D. Tex. Apr. 10, 2023) .....9

*Link v. Wabash R.R. Co.*, 370 U.S. 626 (1962)....................21
*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024)....................4
*Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504 (2001)....................20, 25
*Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995)....................13
*McCarthy v. Madigan*, 503 U.S. 140 (1992)....................20
*McVay v. Halliburton Energy Servs., Inc.*, 608 F. App'x 222 (5th Cir. 2015)....................9
*Miller v. Allstate Ins. Co.*, No. 4:25-cv-00069-O (N.D. Tex. Mar. 10, 2026)....................4
*Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022)....................2
*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983)....................2
*MRLED, LLC v. SoundBridge, LLC*, No. 3:24-cv-01922-K (N.D. Tex. July 26, 2024)....................10
*Natsource LLC v. Paribello*, 151 F. Supp. 2d 465 (S.D.N.Y. 2001)....................14
*Oil, Chem. & Atomic Workers Int'l Union, Local 4-367 v. Rohm & Haas, Tex. Inc.*, 677 F.2d 492 (5th Cir. 1982)....................13
*Oxford Health Plans LLC v. Sutter*, 569 U.S. 564 (2013)....................*passim*
*Pioneer Nat. Res. USA, Inc. v. Paper, Allied Indus., Chem. & Energy Workers Int'l Union Local 4-487*, 328 F.3d 818 (5th Cir. 2003)....................11, 12
*Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 619 F.3d 458 (5th Cir. 2010)....21, 22
*Purshe Kaplan Sterling Invs., Inc. v. Vungarala*, No. 4:21-cv-00889-O (N.D. Tex. Jan. 26, 2022)....................11
*SEC v. Jarkesy*, 603 U.S. 109 (2024)....................19
*Smith v. SEC*, No. 24-3907 (6th Cir. June 16, 2026)....................1, 18
*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010)....................1
*Sullivan v. Feldman*, 132 F.4th 315 (5th Cir. 2025)....................13, 15
*Taylor v. Sturgell*, 553 U.S. 880 (2008)....................16
*United States v. Ackerman*, 831 F.3d 1292 (10th Cir. 2016)....................18
*United States v. Dickson*, 40 U.S. (15 Pet.) 141 (1841)....................4
*United States v. Raddatz*, 447 U.S. 667 (1980)....................4, 5, 23
*Universal Am. Barge Corp. v. J-Chem, Inc.*, 946 F.2d 1131 (5th Cir. 1991)....................2

**Statutes**

5 U.S.C. § 572....................13, 15
9 U.S.C. § 7....................8
9 U.S.C. §§ 9, 13....................2, 9
9 U.S.C. § 10....................*passim*
9 U.S.C. § 11....................11, 12
9 U.S.C. §§ 401–402 (Ending Forced Arbitration Act)....................17, 19
15 U.S.C. § 78o-3....................2, 3, 10
28 U.S.C. § 636....................4, 5, 13

28 U.S.C. § 1927 .......................................................................................22, 23

**Rules**

Fed. R. Civ. P. 54 .......................................................................................25
Fed. R. Civ. P. 56 .......................................................................................19, 23
Fed. R. Civ. P. 58 .......................................................................................24, 25
Fed. R. Civ. P. 72 .......................................................................................*passim*
FINRA Rule 1122 .......................................................................................12
FINRA Rule 2080 .......................................................................................11, 17
FINRA Rule 8312 .......................................................................................15, 18
FINRA Rule 13100 .......................................................................................2
FINRA Rule 13200 .......................................................................................1
FINRA Rule 13413 .......................................................................................8, 15, 17
FINRA Rule 13901 .......................................................................................9
FINRA Rules 13513, 13604, 13904 .......................................................................................8

**Other Authorities**

*Becht v. J.P. Morgan Sec., LLC*, FINRA No. 23-03185 (Apr. 9, 2025) ............................15, 23
*Jonathan Edward Graham*, Exchange Act Release No. 89237 (July 7, 2020)..... 12, 15, 17, 18
FINRA Regulatory Notice 16-25 .......................................................................................18
FINRA Regulatory Notice 26-06 (Mar. 2, 2026) ..............................................................3, 18
Examining FINRA and the MSRB: Hearing Before the Subcomm. on Capital Markets, 119th Cong. (Mar. 5, 2026) .......................................................................................18

## PRELIMINARY STATEMENT — FAA DEFERENCE IS NOT JUDICIAL ABDICATION

The FCR does not resolve the dispute presented. It identifies the Award's limits: "clear and unequivocal" that "Respondent" means J.P. Morgan Securities LLC ("JPMS"); "no determination" as to JPMorgan Chase & Co. ("JPMC") and JPMorgan Chase Bank, N.A. ("JPM Bank"); resolution only "to the extent possible." Dkt. 51 at 2–3, 6–7. It then omits their legal consequences, recommending an unqualified "CONFIRM." *Id.* at 1, 10. It counts Petitioner's merits disclaimers "sixteen times" and dismisses the requested consequences as "novel." *Id.* at 3. Stated now for a seventeenth time: Petitioner does not dispute the Panel's findings. He embraces them. Dkt. 11, PageID 140.

The disputed questions are questions of law: the legal effect of those findings, the boundaries of the submission, and the permissible scope of the federal judgment. One proposition connects every objection below: intertwined facts do not merge distinct entities, functions, agreements, claims, or legal capacities.

The record before the Panel was integrated: one workplace, one investigation, one chronology. The legal architecture was not. Three captioned respondents occupy three legal capacities: JPMS, the FINRA member and registration filer; JPMC, the parent company; and JPM Bank, the employer of record.

**The Award decided the FINRA/U4 submission; it did not construe the BAA.** Arbitration is a creature of contract and consent. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010); *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010). The Binding Arbitration Agreement (the "BAA"), declaring it "in the best interests of both the individual and JPMorgan Chase to resolve the dispute" without litigation, submits all Covered Claims against "JPMorgan Chase & Co. and all of its direct and indirect subsidiaries." Dkt. 20-2 at 7, PageID 280.

Separately, the Form U4 and FINRA Rule 13200 compel an industry forum textually limited to members and associated persons — natural persons, not corporate affiliates.

FINRA Rule 13100(a); 15 U.S.C. § 78o-3(b)(7), (h)(1); *see Smith v. SEC*, No. 24-3907, slip op. (6th Cir. June 16, 2026) (amended opinion). The Award decided the FINRA submission. It nowhere construed the BAA, and silence about a contract is not a construction of it. *Coinbase, Inc. v. Suski*, 602 U.S. 143, 148–52 (2024); *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943–46 (1995).

**The Panel's authority was bounded twice.** FINRA staff, not the Panel, ordered deletion of the statutory claims "or this case will be closed without prejudice," with a single alternative: "a court order mandating arbitration." Dkt. 20-7 at 2, PageID 596; *id.* at 76, PageID 670; *see infra* Objection Six (the request-by-request disposition history). And the Panel expressly made "no determination" as to JPMC and JPM Bank. Dkt. 20-1 at 3–4, PageID 265–66. *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569–73 (2013), protects what arbitrators actually construed; it does not convert a residual catch-all into adjudication of parties and claims the Award excluded. Compliance with an administrator's ultimatum is not waiver, and courts may not invent arbitration-specific waiver rules. *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417–19 (2022). An arbitration bounded twice — by consent and by administrative excision — produced an award that resolved this controversy, in the FCR's own quotation, only "to the extent possible." Dkt. 51 at 2–3, 6–7. The protective AAA filing (Case No. 01-26-0000-7215), in abeyance, Dkt. 50, is addressed in Objections Seven and Eight.

**The goal is an end, not a commencement.** Confirmation under §§ 9 and 13 produces a judgment meant to end the enforcement dispute. *Citigroup Global Mkts., Inc. v. Bacon*, 562 F.3d 349, 351 (5th Cir. 2009) (quoting *Burchell v. Marsh*, 58 U.S. (17 How.) 344, 349 (1855)). That end-of-litigation purpose is not only Congress's; it is JPMorgan's: the BAA's first recital adopts it. Dkt. 20-2 at 7, PageID 280; *see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 (1983). Because FINRA cannot compel the affiliates, restore the deleted claims, or execute its own Form U5 directive, remand is futile; this Court should retain jurisdiction and complete the controversy on the developed record. *Universal Am.*

*Barge Corp. v. J-Chem, Inc.*, 946 F.2d 1131, 1135–37 (5th Cir. 1991); *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 447 F.3d 411, 416–20 (5th Cir. 2006) (*Bridas* II). Adopted as written, Dkt. 51 tells the registered representative that a federal court may seal an adjudicated falsehood; tells the industry to file first and correct later; and tells the investing public that the protective architecture, *see* 15 U.S.C. § 78o-3(b)(6), yields to labels.

**The forum operates under structural scrutiny — context, not a vacatur theory.** The judgment-shape question arises against a forum already under structural scrutiny, not as a freestanding vacatur theory but as context for refusing residual-finality formalism. Dkt. 11 framed FINRA as a self-regulatory organization exercising agency-like authority under Exchange Act oversight and documented Petitioner's pre-suit congressional and regulatory outreach. Dkt. 11; *Alpine Sec. Corp. v. FINRA*, 86 F.4th 406, 409–10 (D.C. Cir. 2023) (Walker, J.); *see also* Dkts. 18, 36-1, 39.

Dkt. 36 placed before the Court the March 5, 2026 House Financial Services hearing on H.R. 2689 (a proposal cited solely for the structural concerns the hearing record reflects) and the D.C. Circuit's timing principle that delayed review of FINRA-administered consequences is often "too little too late." Dkt. 36 at 4–5; *Alpine Sec. Corp. v. FINRA*, 121 F.4th 1314, 1329–30 (D.C. Cir. 2024). FINRA itself has requested public comment on core features of this arbitration process. FINRA Regulatory Notice 26-06 (Mar. 2, 2026). None of this dilutes *Bacon* deference or supplies an independent vacatur ground. It corroborates why bare confirmation and residual-denial overread are a poor fit where the Award's own non-determinations, the forced claim-narrowing, and §§ 9, 10(a)(4), 11, and 13 already require the Court to state who is bound, what was decided, and what the judgment commands.

**The governing principle.** The findings are accepted; giving them lawful operative effect is this Court's confirmation function. As Objection Nine details, the developed record permits this Court to complete the adjudication the Panel lacked authority to provide. Dkt.

51 leaves the second contract, the administrator taint, the removed claims, the non-adjudicated parties, and § 10(c) unanswered. Petitioner objects to those omissions as follows.

**STANDARD OF REVIEW**

Where a party objects with specificity, the district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made" and "may accept, reject, or modify, in whole or in part, the findings or recommendations." 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3); *United States v. Raddatz*, 447 U.S. 667, 673–76 (1980). Objections must be specific to trigger de novo review, *Douglass*, 79 F.3d at 1420, and each objection below is directed to an identified page and determination of the FCR.

The duty is one of independent judgment: "No matter how 'disagreeable that duty may be,'" a judge "is not at liberty to surrender, or to waive it," and it "is perhaps 'the defining characteristi[c] of Article III judges.'" *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 430 (2024) (Gorsuch, J., concurring) (quoting *United States v. Dickson*, 40 U.S. (15 Pet.) 141, 162 (1841) (Story, J.)). Deference to an arbitral award under the FAA operates within that duty, not in place of it: the court owes deference to what the Panel decided, and owes the parties an independent determination of what the Panel had authority to decide and what its award lawfully reaches. *First Options*, 514 U.S. at 943–46. Questions of arbitral jurisdiction antecedent to confirmation receive no deference in this Court. *Garland Symphony Orchestra Ass'n v. Dallas-Fort Worth Prof'l Musicians Ass'n*, No. 4:24-cv-00739-O, ECF 20 at 10 (N.D. Tex. Mar. 7, 2025) (O'Connor, J.) (quoting *Container Prods., Inc. v. United Steelworkers*, 873

F.2d 818, 819–20 (5th Cir. 1989)); *accord Miller v. Allstate Ins. Co.*, No. 4:25-cv-00069-O, ECF 51 (N.D. Tex. Mar. 10, 2026).

## I. OBJECTION ONE — THE FCR RESTS ON A MISLABELED INSTRUMENT AND A MISCITED RECORD

### A. Determination Challenged

Petitioner objects to the FCR's threshold handling of the petition: its "ORDER" self-caption for what operates as a recommendation; its resolution of pled grounds by the label "several unmeritorious grounds," Dkt. 51 at 10, rather than analysis; its reliance on a nonexistent record; and any asymmetric merits use of the post-briefing status reports. Dkt. 51 at 1, 3, 7–10.

### B. Governing Law

Absent the parties' consent under 28 U.S.C. § 636(c), a magistrate judge recommends rather than finally decides a dispositive matter, 28 U.S.C. § 636(b)(1)(B), and the district judge determines each specifically challenged portion de novo from the record that actually contains the parties' arguments, § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3); *Raddatz*, 447 U.S. at 674–76. De novo review is not a ministerial afterthought, and a label does not discharge the statute's command of a fresh "determination" of each objected-to portion.

### C. Record Support

Petitioner declined consent to final magistrate-judge jurisdiction. Dkt. 7. Dkt. 51 therefore operates as a recommendation regardless of caption. Phantom pages cannot anchor a disposition. The FCR rests on a nonexistent record: it attributes Petitioner's positions to "ECF No. 47 at 14," "at 13," "at 12," and "ECF No. 41 at 11," Dkt. 51 at 3, 7–9; but Dkt. 47 is a four-page status report containing no such pages or arguments, and Dkt. 41 at 11 is

Respondents' response, not Petitioner's argument. The arguments live in the Reply: Dkt. 45 at 14, 11, 12, and 13, PageID 2567, 2564, 2565, 2566.

The mislabeled sources do characterizing work: it is at "ECF No. 47 at 12" that the FCR describes Petitioner as "persist[ing] with this novel theory," Dkt. 51 at 8, sourcing the characterization to a four-page status report that contains no theory at all.

Separately, Respondents' Status Report (Dkt. 48) introduced new positions on jurisdiction, remand, and nonparties after briefing closed, and Petitioner's objection to that expansion (Dkt. 49) preserved the point; if Dkt. 48 is considered beyond case management, procedural parity requires equal consideration of Dkt. 49. Dkts. 47–49, PageID 2572–81.

### D. Effect on the Proposed Judgment

The miscites are not clerical trivia: they occur where the FCR describes what Petitioner argued and finds those arguments, labeled "several unmeritorious grounds," unpersuasive. A de novo determination that adopts characterizations sourced to the wrong documents would carry the misattribution into the judgment. This pattern — a mislabeled instrument, miscited filings, disposition by label — is precisely where de novo review and liberal construction of *pro se* filings matter most.

### E. Requested Ruling

Treat Dkt. 51 as a recommendation; disregard the global label; correct the record miscites; use Dkts. 48 and 49 only for their procedural value; and decide each pled ground on its substance from Dkt. 11 and Dkt. 45 themselves.

## II. OBJECTION TWO — THE “JPMS” LABEL IS NOT THE ANALYSIS: THE JUDGMENT MUST RECITE THE ENTITY, AGREEMENT, AND FUNCTION MAP

### A. Determination Challenged

Petitioner objects to § III.C's treatment of "Respondent means JPMS" as the complete answer to party and claim scope, Dkt. 51 at 6–7, without addressing the BAA, the FINRA

submission, the entities' distinct legal functions, or FINRA's pre-hearing narrowing. Identifying the boundary is the beginning of the § 10(a)(4) and § 13 analysis, not its end.

### B. Governing Law

Courts, not labels, decide whether an arbitration agreement exists, whom it binds, and which of two agreements governs. *First Options*, 514 U.S. at 943–46; *Coinbase*, 602 U.S. at 148–52. Gateway questions are "presumptively for courts to decide," *Oxford*, 569 U.S. at 569 n.2 (quoting *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003)), at the enforcement stage by this Court, *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 355–63 (5th Cir. 2003) (*Bridas* I); and arbitral authority is measured by the agreement and the submission, *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1323 (5th Cir. 1994).

### C. Record Support

**Two agreements, not one.** The employer-drafted, mutual BAA defines "JPMorgan Chase" and the "Firm" to include JPMC and its direct and indirect subsidiaries, and provides that an award has no preclusive effect in a dispute with anyone who was not a named arbitration party. Dkt. 20-2 at 7–8, PageID 280–81. The later FINRA Submission Agreement was executed for JPMS alone (September 10, 2024). *Id.* at 15–16, PageID 288–89.

**Three entities, three functions — the Award itself keeps them distinct.** The Award's own caption states the structure: "Associated Person vs. Member and Non-Members." Dkt. 20-1 at 1, PageID 263. JPMS is the FINRA member (CRD No. 79) that performed the registration, Form U5 filing, and certification functions, and it alone was adjudicated — its U5 corrected and $31,625.00 assessed against it. JPMC is the BAA drafter and corporate parent; JPM Bank is the employer of record, admitted in JPMS's Answer and by Respondents' counsel. Each received the express "no determination" recital. The full entity, agreement, and function map, with the record citation fixing each role, is set out in Appendix A (Table A-1), and the judgment should recite it.

**Appearance, submission, receipt, acceptance, and adjudication are distinct acts.** Petitioner submitted every Covered Claim against every captioned party (compare Dkt.

20-3 with Dkt. 20-4); the administrator declined to receive some claims — claims, not parties, Dkt. 20-7 at 2 — and, on counsel's written request to restore them, granted only a deadline extension, *id.* at 48–66, 91, PageID 642–60, 685; the Panel accepted, and could decide, only what remained.

The removed statutory claims are not an entity and belong in no entity map: fourteen causes were asserted against all three "Firm" entities, Dkt. 25-1 at 2, PageID 1471, deleted on staff directive before the operative pleading, and never adjudicated by any forum. JPMS's own Statement of Answer disclaimed the forum for the rest: JPM Bank and JPMC "are not FINRA member firms" and "do not agree to arbitrate." Dkt. 20-5 at 23, PageID 491 n.1. An appearance in a caption did not enlarge consent or merge corporate capacities; receipt and acceptance were the forum's acts, and their limits fix the outer boundary of what the Award can preclude.

**Evidentiary reach exceeded party reach by design.** The Panel compelled affiliate-held evidence while its orders described the affiliates as captioned but not participating. Dkt. 21-1 at 44–47, PageID 751–54. That was lawful: FINRA Rules 13413, 13513, 13604, and 13904, with 9 U.S.C. § 7, let a panel receive evidence, weigh credibility, and state findings about the entire employment, investigation, and Form U5 sequence — including affiliate conduct — without thereby acquiring power to enter dispositions against entities whose conduct appears in the proof.

### D. Effect on the Proposed Judgment

Unified facts do not yield enterprise-wide dispositions by inference. A judgment that recites only "JPMS" without the map invites successive disputes over affiliate reach and preclusion; a judgment that prints the map forecloses them.

### E. Requested Ruling

Recite the map in the judgment — the Panel adjudicated the operative October 11 claims against JPMS; JPMC and JPM Bank did not submit and received no merits determination; the Award did not construe the BAA; the FINRA-deleted claims were not

adjudicated; and fact-finding about an integrated workflow did not enlarge dispositive authority.

## III. OBJECTION THREE — AN UNQUALIFIED "CONFIRM" IS NOT AN EXECUTABLE JUDGMENT: THE FINDINGS, U5 TERMS, FEES, AND NON-DETERMINATIONS BELONG IN IT

### A. Determination Challenged

Petitioner objects to the Background's and § III.C's treatment of the Award as globally final, Dkt. 51 at 2, 6–7, and to the recommended disposition's failure to carry into the judgment the Award's four operative components: the express findings, the Form U5 directive's operative terms, the $31,625.00 in fee assessments, and the "no determination" recitals. *Id.* at 10. Petitioner does not object to § III.A — he urges its immediate adoption — nor to § III.E's recitation of the governing standards, as distinct from their application.

### B. Governing Law

A confirmed award becomes a judgment with "the same force and effect" as any other, 9 U.S.C. § 13, and a judgment must be sufficiently definite that its subjects "know how to comply with it" and can execute it without further adjudication. *McVay v. Halliburton Energy Servs., Inc.*, 608 F. App'x 222, 225–27 (5th Cir. 2015); 9 U.S.C. §§ 9, 13; Fed. R. Civ. P. 58. Rule 72(b)(3) permits adopting a discrete, unopposed portion immediately while determining the remainder de novo.

### C. Record Support

**The U5 relief is unopposed and time-sensitive.** Respondents do not oppose confirmation of the expungement directive. Dkt. 41 at 2 n.1. The Award conditions implementation on this Court: Petitioner "must obtain confirmation of this Award" from a court of competent jurisdiction "before the CRD will execute the expungement directive." Dkt. 20-1 at 3, PageID 265. The judgment must carry the directive's operative terms, in the Award's words: JPMS (CRD No. 79) is directed to expunge the Form U5 it filed December 22, 2023 for Petitioner (CRD No. 6883842) by (i) changing the Reason for Termination to "Voluntary"; (ii) deleting the Section 3 Termination Explanation, leaving it blank, with all

references likewise deleted; and (iii) recording the Date of Termination as October 28, 2023. Dkt. 20-1 at 3–5, PageID 265–67. The deleted Explanation is identified text: "After RR submitted resignation, but before expiration of Notice Period, RR was terminated for inappropriate behavior. Not related to the sale of securities or any customer complaints." Dkt. 20-6 at 2–3, PageID 554–55.

**The fee assessments are liquidated, final, and routine to confirm.** The Award assesses $31,625.00 against JPMS, "due upon receipt": a $4,325.00 Member Surcharge and $7,300.00 Member Process Fee under FINRA Rule 13901; a $200.00 discovery-motion award; and $19,800.00 in hearing-session fees across fourteen sessions. Dkt. 20-1 at 5–6, PageID 267–68. Money components of FINRA awards are confirmed as judgments in this District as a matter of course. *Law Offices of Steven M. Johnson, P.C. v. Patton*, No. 4:23-cv-00047-O (N.D. Tex. Apr. 10, 2023) (O'Connor, J.); *MRLED, LLC v. SoundBridge, LLC*, No. 3:24-cv-01922-K (N.D. Tex. July 26, 2024).

**The findings are the Award's core, and the judgment must recite them.** The Panel unanimously found, in its Explanation of Decision, Dkt. 20-1 at 4–5, PageID 266–67, that "when Respondent learned that Claimant was contemplating resigning … to work for a competitor of Respondent, Respondent began investigating reasons to terminate Claimant so as to make it more difficult for Claimant to compete"; that "Respondent has been found to have done this in the past"; that "the Panel is concerned that this may be a pattern of conduct"; that "one of the primary reasons … was to hinder Claimant's ability to transfer his book of business to a competitor"; that "based on the facts in this case, the Form U-5 [is] inaccurate"; and that "the absence of a clean U-5 makes it very difficult to move to a Tier one competitor firm." These findings rest on settled fact-finding authority, *supra* Objection Two: they speak to the whole course of conduct, while the dispositions bind only JPMS and the claims actually heard. Confirming the findings as written does not enlarge the dispositions, and omitting them does not shrink the facts. But omitting them from the judgment would strip the confirmed Award of the content that makes it enforceable against the conduct the

Panel condemned, in a registration system Congress built for investor protection. 15 U.S.C. § 78o-3(b)(6).

The stakes are not abstract: JPMS litigates U5 narratives as a repeat player, and confirming courts enforce the panel's corrective language as rendered. *J.P. Morgan Sec. LLC v. Luckett*, No. 3:22-cv-137-RGJ, 2023 WL 6050230, at *8–9 (W.D. Ky. Sept. 14, 2023); Dkt. 33-2 at 46–47, PageID 1800–01.

### D. Effect on the Proposed Judgment

A judgment that omits these terms leaves CRD nothing to execute; the confirmed Award becomes an unenforceable recital. The four components together are the instrument. The judgment is the instrument: CRD executes from it; the fees are collected on it; the boundaries operate through its recitals.

### E. Requested Ruling

Adopt § III.A immediately under Rule 72(b)(3) and enter that portion of judgment now; and enter one complete, implementable judgment carrying the findings, the U5 operative terms, the $31,625.00, and the non-determination recitals; the accompanying Proposed Order so provides.

## IV. OBJECTION FOUR — THE FCR CONVERTS AN ADMITTED FORM U4 ERROR INTO A SILENT MERITS LOSS, MISAPPLYING § 11(b)–(c)

### A. Determination Challenged

Petitioner objects to § III.B's either/or — that the U4 issue was either never presented or presented and rejected — and to its conclusion that the Award is "not imperfect in [a] matter of form." Dkt. 51 at 4–6.

### B. Governing Law

An award that grants relief while silent on an admitted, intertwined clerical error is "imperfect in [a] matter of form not affecting the merits of the controversy," and the Court "may modify and correct the award, so as to effect the intent thereof and promote justice between the parties." 9 U.S.C. § 11(c). This Court has done exactly that. *Purshe Kaplan*

*Sterling Invs., Inc. v. Vungarala*, No. 4:21-cv-00889-O, ECF 18 (N.D. Tex. Jan. 26, 2022) (O'Connor, J.) (modifying a FINRA award under § 11(a), (c)). Silence is not an adverse merits finding. *Pioneer Nat. Res. USA, Inc. v. Paper, Allied Indus., Chem. & Energy Workers Int'l Union Local 4-487*, 328 F.3d 818, 821 (5th Cir.), modified on denial of reh'g, 338 F.3d 440 (5th Cir. 2003).

### C. Record Support

Two distinct registration pathways are in play: the customer-dispute occurrence (No. 2204024), which travels the FINRA Rule 2080 expungement path the Award grants, and the archived financial-disclosure occurrences (Nos. 1977589–1977593), which Rule 2080 does not touch. The FCR's own findings defeat its dichotomy: it acknowledges the U4 issue was raised and the filing error "undisputed" — calling the sequence "bizarre" — *id.* at 4–5, PageID 2592–93, and JPMS admitted the disclosures were filed in error and then "just archived forever." Dkt. 33-3 at 169–74, PageID 2005–10; Dkt. 20-6 at 10–21, 29, 34, 40–41, PageID 562–73, 581, 586, 592–93 ("DRP filed in Error"; Filing ID 61688417; the five entries report bankruptcy-type events although the federal student loans were discharged, not compromised). The operative pleading identified the issue. Dkt. 20-4 at 19–20, PageID 390–91.

The SEC's own architecture confirms that courts are the corrective forum for archived entries: expungement of CRD information requires "orders of expungement … from the relevant agencies or courts." *Jonathan Edward Graham*, Exchange Act Release No. 89237 (SEC July 7, 2020); FINRA Rule 1122. *Pioneer* is inapposite: Petitioner does not ask the Court to complete the arbitrators' work; the archived-entry correction was never work the arbitrators could do.

### D. Effect on the Proposed Judgment

Two remedy alternatives are available. First, modify under § 11(c) to direct correction or removal of the admittedly erroneous archived entries. Second, at minimum, hold that the Award made no merits determination on them, so the request remains open, without

prejudice, to an authorized regulatory or judicial correction process. Either alternative avoids converting an admitted clerical error into a silent, preclusive merits loss.

### E. Requested Ruling

Modify under 9 U.S.C. § 11(c) to direct correction or removal of the admittedly erroneous archived entries (Occurrence Nos. 1977589–1977593); at minimum, hold that the Award made no merits determination on them and the request remains open, without prejudice.

## V. OBJECTION FIVE — THE RESIDUAL DENIALS CANNOT OUTRUN THE SUBMISSION: CONFINEMENT FIRST, SEVERABLE VACATUR AND § 10(c) IN THE ALTERNATIVE

### A. Determination Challenged

Petitioner objects to § III.C's treatment of the Award's conceded boundary as global finality and to the denial of all § 10(a)(4) and § 10(c) relief. Dkt. 51 at 6–7, 10. The FCR answered a global vacatur request never made — Petitioner asserts no manifest-disregard theory, *Bacon*, 562 F.3d at 358 — and never performed the confinement analysis. The only vacatur sought is severable and alternative: the residual denials insofar as they could be read to reach removed claims or non-determined entities.

### B. Governing Law

An award is a shield for what it decided — not "a sword" for what it did not. *Oxford*, 569 U.S. at 574 (Alito, J., concurring). A court "may not, under the guise of enforcement, broaden the scope of the award," *Oil, Chem. & Atomic Workers Int'l Union, Local 4-367 v. Rohm & Haas, Tex. Inc.*, 677 F.2d 492, 493–95 (5th Cir. 1982); *Brown v. Witco Corp.*, 340 F.3d 209, 216 (5th Cir. 2003), and residual language is harmonized with express non-determinations rather than read to contradict them, *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63–64 (1995). Where a discrete portion exceeds the submission, the remedy is to excise that portion under § 10(a)(4), not global vacatur. *Sullivan v. Feldman*,

132 F.4th 315, 339–40 (5th Cir. 2025). Section 10(c) and 5 U.S.C. § 572(b) supply a further, pleaded alternative that a recommendation may not deny by silence. 28 U.S.C. § 636(b)(1)(C).

### C. Record Support

The FCR holds, as Respondents argued, that "Respondent" means only JPMS. Dkt. 51 at 6; Dkt. 41. Petitioner accepts that construction; his objection is that the judgment must say it. The Award captions three entities, denies "Claimant's claims" in the aggregate, and describes the employer's conduct as "Respondent's" while the employer of record was JPM Bank, and then twice recites that the Panel "made no determination" as to JPMC and JPM Bank. Dkt. 20-1 at 3–4, PageID 265–66. The FCR applied In re Texans CUSO Ins. Grp., LLC, 421 B.R. 769, 782 (Bankr. N.D. Tex. 2009) — an award is final if it resolves the submission "to the extent possible" — which concedes Petitioner's premise: what was not possible was not resolved.

**Each dispositive recital must be owned by the function that could perform it.** Three dates anchor the analysis: October 28, when the registration relationship ended by resignation; December 1, when the employer acted; and December 22, when the regulatory filing issued. Three acts, performed by three functions, cannot be merged into one JPMS termination. Confinement is not reweighing: it asks only which legal function each recital describes and who held it.

The investigation and "within its rights" recitals describe Employee Relations, Global Security, and employer functions the record assigns to JPM Bank, not broker-dealer conduct of JPMS: the outcome was forecast before the interview concluded ("hoping to wrap early next week with a term," 10:30 p.m., October 27, Dkt. 22-1 at 2, PageID 938); the garden-leave recital rests on the employer's own policy and its December 26 endpoint, Dkt. 20-5 at 81–83, PageID 549–51; and the "termination after resignation" recital states an unsubmitted question of law. By contrast, the book-of-business, U5-inaccuracy, and correction recitals describe filing and certification functions that belong to JPMS and bind it in full. The residual and catch-all denials bind only as dispositions of the operative October 11 claims actually

heard against JPMS; read to reach removed claims or non-determined entities, they exceed the submission. *Oxford*, 569 U.S. at 574 (Alito, J., concurring). The recital-by-recital capacity attribution is set out in Appendix A (Table A-2); the record citations supporting each attribution appear in this Objection and in Objection Two.

**The resignation preceded the recited termination.** Petitioner resigned October 28 — the Award concedes it and orders the record to say "Voluntary" — yet the recital describes a termination subsequent to that resignation. At-will sequencing is a question of law, never argued to the Panel, *see Natsource LLC v. Paribello*, 151 F. Supp. 2d 465, 477–78 (S.D.N.Y. 2001); the BAA preserves the "voluntary ('at will') nature" of employment, Dkt. 20-2 at 3, 12, PageID 276, 285; and the demand letters' Voluntary-U5 authority went unrebutted, Dkt. 20-7 at 98–108, PageID 692–702.

**The book-of-business finding binds JPMS as filer.** JPMS filed under CRD No. 79 on December 22; the book was split and redistributed mid-investigation ("Urgent Request Josh Biering Book," Sunday, October 29), Dkt. 22-7 at 2–4, PageID 1067–69; Global Security closed its file November 29 — "Allegations NOT Supported" — and the U5 still issued "Discharged" three weeks later. Dkt. 22-2 at 1–2, PageID 982–83.

**Mutual, final, and definite — the severable alternative.** So confined, the residual denials stand and no vacatur is required. But if any residual recital cannot bear that construction, the excess is discrete and severable, and the remedy is reversal of the tainted piece, not global vacatur. *Sullivan*, 132 F.4th at 339–40. The taint is identified: FINRA's administrator excised the sexual-harassment and sexual-assault claims arising from the very investigation the Panel found pretextual, and the excision swept the negligent-investigation theories with it — although FINRA's own Code places that decision with the Panel. FINRA Rule 13413. The deletion directive, counsel's same-day reconsideration request, and FINRA's denial are detailed request by request in Objection Six.

**Section 10(c) is the pleaded alternative the FCR mentioned but never decided.** The FCR recites 9 U.S.C. § 10(c) and 5 U.S.C. § 572(b) among the governing

standards, Dkt. 51 at 2–3, then applies neither. The ground is serious because the forum performs a regulatory function: FINRA arbitration is mandatory for registered persons, and its outputs feed CRD and BrokerCheck. FINRA Rule 8312; Graham, Release No. 89237. Every § 572(b) consideration is engaged. 5 U.S.C. § 572(b)(1)–(6). The docketed comparator confirms the recurrence concern the Panel itself flagged: in *Becht v. J.P. Morgan Sec., LLC*, FINRA No. 23-03185 (Award Apr. 9, 2025), a FINRA panel found the same firm's conduct "woefully inadequate," its investigation "cursory at best" and "rubber-stamped," and awarded punitive damages. Dkt. 33-2 at 4–5.

### D. Effect on the Proposed Judgment

Recited, the construction ends the affiliate-reach dispute at entry; unstated, it seeds it. The severable alternative removes only the administrator-tainted residue while leaving the expungement, the findings, and the fees untouched. Section 10(c) supplies an alternative route to the same confined relief.

### E. Requested Ruling

Recite the JPMS-only construction and the no-determination recitals in the Award's words; adjudicate the residual denials as confined to JPMS and the claims actually heard; in the alternative, vacate the severable, administrator-tainted residue under § 10(a)(4); and decide § 10(c) expressly.

## VI. OBJECTION SIX — THE REMOVED AND NON-DETERMINED CLAIMS REMAIN OPEN: NOT ADJUDICATED, NOT WAIVED, NOT EXTINGUISHED

### A. Determination Challenged

Petitioner objects to the FCR's refusal to analyze the gateway, waiver, and reservation questions: declaring it "need not analyze" them, labeling them "cumulative," and dismissing the reservations as "unnecessary." Dkt. 51 at 3, 9–10.

### B. Governing Law

The gateway is "presumptively for courts," *Oxford*, 569 U.S. at 569 n.2, decided at the enforcement stage by this Court, *Bridas* I, 345 F.3d at 355–63, under ordinary contract and

agency principles, *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009); *Cure & Assocs., P.C. v. LPL Fin. LLC*, 118 F.4th 663, 670–71 (5th Cir. 2024). No preclusion attaches against nonparties to the determination. *Taylor v. Sturgell*, 553 U.S. 880, 892–95 (2008); *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577, 580 (Tex. 2001). Forced removal under threat is not waiver, *Morgan*, 596 U.S. at 417–19, and a party that refused its agreed forum cannot wield the truncated award as a sword, *Universal Am. Barge*, 946 F.2d at 1137.

### C. Record Support

**Either contractual path requires a ruling the FCR omitted.** If the BAA reached the affiliates — its text covers "JPMorgan Chase & Co. and all of its direct and indirect subsidiaries," Dkt. 20-2 at 7, PageID 280 — the arbitral proceeding was incomplete as to them. If it did not, the Award is final only as to JPMS and the affiliate claims were never adjudicated anywhere. Either way the findings and dispositions are not coextensive: the facts found span all three entities by role, while the dispositions reach only the single FINRA member.

**The removed and non-determined claims survive.** Five record events control: the claims were asserted (Dkt. 20-4); removed by administrator directive (Dkt. 20-7 at 2); the affiliates remained captioned throughout; they did not submit; and the Panel made "no determination" as to them (Dkt. 20-1 at 3–4), while Petitioner preserved the issues in Grounds Four and Seven and the parties' status reports. Dkts. 47–49. On Respondents' side, the August 13, 2024 letter of JPMS's counsel refused affiliate FINRA arbitration outright — a litigating position, not an adjudication. Dkt. 20-7 at 5, PageID 599.

**Each administrative request has a documented disposition — and none is an adjudication.** Restoration of the deleted claims: requested the same day the directive issued, in counsel's nineteen-page September 6, 2024 reconsideration letter invoking the Panel's authority under FINRA Rule 13413 to decide its own jurisdiction, Dkt. 20-7 at 48–66, PageID 642–60; denied on September 27, 2024, when FINRA's response granted only a

deadline extension to October 4 and restated the same two options — delete the claims or obtain a court order compelling arbitration, *id.* at 91, PageID 685. A panel-level ruling: never provided — staff decided the question FINRA's own Code assigns to the Panel, and no panel ever passed on it. FINRA Rule 13413.

The rank-and-strike fee duplication ($32,657.50): demanded after the Award by letter to Richard Berry, Executive Vice President and Director of FINRA Dispute Resolution Services (March 13, 2026); no response has been received. *Id.* at 8–9, PageID 602–03. The archived Form U4 entries: no FINRA mechanism exists; Rule 2080 does not reach them, and correction requires "orders of expungement … from the relevant agencies or courts." Graham, Release No. 89237; *supra* Objection Four. Requested, denied, unanswered, or without a mechanism: none of these dispositions adjudicated anything.

**Section 402 belongs to a court — and the election belongs to Petitioner.** Under the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act, the invalidation election is the claimant's, § 402(a), and applicability and validity "shall be determined by a court, rather than an arbitrator," § 402(b), not by a forum administrator. FINRA's deletion directive was neither Petitioner's § 402 election nor the judicial determination the statute requires. The removed claims are reserved, not abandoned: after the forced fragmentation and Respondents' refusal of the designated forum, Petitioner does not consent — prospectively, under any pre- or post-dispute agreement — to their arbitration, and he preserves all due-process, Article III, and jury-trial rights as to them.

**The forum performs a public-law function — and its structure is under scrutiny.** FINRA arbitration is mandatory for registered persons, and its outputs feed CRD and BrokerCheck: public systems reaching regulators, employers, and investors. FINRA Rule 8312; Graham, Release No. 89237. In *Smith v. SEC*, the Sixth Circuit explained that historical leniency toward self-regulatory discipline rests on "consenting members regulating themselves" — membership as a "voluntary contract with the exchange" — and that the analysis changes where "that voluntary relationship is absent," slip op. at 16; "[w]hen an

actor is endowed with law enforcement powers beyond those enjoyed by private citizens," the actor is typically "a governmental entity," *id.* at 6–7 (quoting *United States v. Ackerman*, 831 F.3d 1292, 1296 (10th Cir. 2016) (Gorsuch, J.)). Petitioner does not contend that Smith automatically invalidates FINRA arbitration; he invokes it for the narrower proposition that a court "may proceed to consider a claim regardless of whether it was raised before the agency." *Id.* at 8–9 (citing *K & R Contractors, LLC v. Keene*, 86 F.4th 135, 145 (4th Cir. 2023)).

The D.C. Circuit enjoined a FINRA expulsion on structural grounds, *Alpine*, 121 F.4th at 1329–30 — not a holding that *Alpine* itself vacates this Award, but confirmation that delayed review of FINRA-administered consequences is often "too little too late." The House Capital Markets Subcommittee examined FINRA's reach this spring. Examining FINRA and the MSRB: Hearing Before the Subcomm. on Capital Markets of the H. Comm. on Fin. Servs., 119th Cong. (Mar. 5, 2026); *see* FINRA Regulatory Notice 26-06 (Mar. 2, 2026); FINRA Regulatory Notice 16-25. None of this asks a constitutional ruling; it confirms why the removed claims cannot be treated as extinguished by an administrator's excision.

**The reserved remedies are concrete, and the merits path is ordinary.** *SEC v. Jarkesy*, 603 U.S. 109, 123–25 (2024), is invoked for one limited purpose: the substance of monetary relief determines whether it is restorative or punitive. The preserved remedies are concrete: statutory punitive and liquidated remedies on the removed federal claims, and exemplary damages under Texas law on the never-adjudicated state claims. The merits of reserved claims then proceed by ordinary federal procedure on this developed record, including summary judgment where no genuine dispute remains. Fed. R. Civ. P. 56.

### D. Effect on the Proposed Judgment

Returning those claims to arbitration would make this Award "the commencement, not the end, of litigation." *Bacon*, 562 F.3d at 351. The judgment should declare the claims

open in a court of competent jurisdiction and foreclose any motion to compel resting on this Award.

### E. Requested Ruling

Determine the gateway consequences under either branch; hold that the removed and non-determined claims were not adjudicated, waived, or extinguished; recite the § 402(b), Article III, jury-trial, and punitive-remedy reservations; declare that this Award and its judgment supply no basis to compel arbitration of those claims, and that no further arbitration may be ordered without first determining the governing agreement, the party asserting the right, the claims involved, waiver, and the effect of Petitioner's § 402 election; and set the reserved claims on the ordinary merits path in this Court.

## VII. OBJECTION SEVEN — REMAND WITHOUT A TASK, PARTY, AGREEMENT, OR FORUM IS FUTILITY, NOT DEFERENCE

### A. Determination Challenged

Petitioner objects to the FCR's treatment of Ground Four as a remand-timing question — tracking Respondents' footnote, Dkt. 41 at 2 n.2 — and to its dismissal of the ground as "cumulative." Dkt. 51 at 3, 9–10.

### B. Governing Law

The Award is not ambiguous, so the clarification-remand doctrine has no object. *Witco Corp. v. United Nat'l Ins. Co.*, 340 F.3d 214, 216 (5th Cir. 2003); *Garvey*, 532 U.S. at 511. Section 10(a) provides that a court "may" vacate; nothing requires prolonging proceedings after an authority defect is identified. Exhaustion and remand doctrines presuppose adjudicators who do not "lack authority to grant the type of relief requested." *McCarthy v. Madigan*, 503 U.S. 140, 147–48 (1992); *Jones Bros., Inc. v. Sec'y of Labor*, 898 F.3d 669, 673–74 (6th Cir. 2018).

### C. Record Support

**There is nothing for a panel to do.** FINRA cannot compel JPMC or JPM Bank, *see DK Joint Venture 1 v. Weyand*, 649 F.3d 310, 312 (5th Cir. 2011) (Respondents' own authority,

Dkt. 48 at 3); cannot restore administrator-deleted claims; and cannot execute its own U5 directive (implementation now requires this Court's judgment). Dkt. 20-1 at 3, PageID 265. A forum that resolved the dispute only "to the extent possible" cannot host the remainder. *Bacon* polices the same boundary in both directions: it reversed a district court for re-judging arbitrated merits; it does not license enlarging an award to parties and claims never arbitrated, and it commands that confirmation end litigation. 562 F.3d at 350–51, 358. Ground Four is foundational, not cumulative: Grounds Five through Seven take their content from where the arbitral submission ended and this Court's Article III duty begins.

**The protective AAA filing supplies neither consent nor a task.** AAA's preliminary review expressly did not determine the existence, enforceability, or scope of any arbitration agreement; counsel appeared for all three entities; and AAA suspended the matter for judicial intervention. Dkt. 25-4 at 2, PageID 1491; Dkt. 25-6 at 2, PageID 1497; Dkt. 50. The duplicative expense that second, idle forum generates is addressed in Objection Eight.

### D. Effect on the Proposed Judgment

A remand recommendation would send the controversy to a forum that can neither reach the parties nor perform the remaining task, defeating the confirmation function.

### E. Requested Ruling

Reject any remand premise; decide on the existing record who is bound by each agreement, what was decided, and what remains; and order further arbitration only upon identification of the governing agreement, the parties bound, a covered unresolved dispute, and an authorized forum — none of which exists here.

## VIII. OBJECTION EIGHT — "NO SPECIFIC BAD FAITH" WAS FOUND WITHOUT LOOKING: THE FOUR MONETARY QUESTIONS REQUIRE FOUR ANALYSES

### A. Determination Challenged

Petitioner objects to § III.D's conclusions that he "does not point to specific bad faith," that the request is "most like a sanction," and that *Positive Software* forecloses relief as a

"thicket of arbitrable issues." Dkt. 51 at 7. The quoted characterizations are Respondents' own, adopted from their response; the FCR grouped the governing Supreme Court standard with "and other similar cases," *id.*, without applying it, and Respondents never engaged *Goodyear* at all.

### B. Governing Law

Fee-shifting under inherent authority is calibrated to the losses the misconduct caused, *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108–10 (2017); the power exists "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases," *id.* at 107 (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962)); and quantification may use "rough justice, not … auditing perfection," including "estimates." *Id.* at 110 (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)); *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46, 50 (1991).

### C. Record Support

**Four distinct requests require four distinct analyses.** (1) The Award's own $31,625.00 — Objection Three; confirmation, not sanctions. (2) The documented but-for schedule: $861,407.26 across forty-seven invoices in four causation categories organized, in the exhibit's own words, "by but-for causation per *Goodyear* v. Haeger" — Category A, wrongful-U5 costs ($293,017.06); Category B, discovery obstruction ($408,793.39); Category C, post-award and vacatur-stage costs ($123,536.06); and Category D, the U4 archive correction ($36,060.75). Dkt. 22-8 at 1, PageID 1074–75. (The FCR's reference to "$864,407.26," Dkt. 51 at 7, appears to be a transcription error; the exhibit total is $861,407.26.) (3) Inherent authority reaching bad-faith abuse of this Court's processes, including by counsel. *Chambers*, 501 U.S. at 43–46, 50. (4) 28 U.S.C. § 1927 multiplication — a different respondent (counsel), different elements, and a different procedure.

***Positive Software* flips against the FCR's use of it.** In *Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 619 F.3d 458, 463 (5th Cir. 2010), the movant "ignore[d] at least two other procedures that were available" in the arbitral forum; Petitioner invoked and

exhausted those channels in writing to FINRA's own management, *supra* Objection Six. Dkt. 20-7 at 48–66, 91, PageID 642–60, 685; *id.* at 8–9, PageID 602–03; Dkt. 33-3 at 173–74, PageID 2009–10. And the court expressly declined to "speculate on whether a district court might ever have the power to sanction for conduct in arbitration," noting it "might have reached a different result" on facts implicating the court's own processes. *Id.* at 463 & n.3.

This record supplies the different facts: refusal to stipulate to the admitted filing error; obstruction the Panel itself taxed; a duplicative AAA appearance, suspension, and accruing employer-side fee assessments, Dkt. 25-7; and asymmetry — a $4.4 trillion institution litigating business-as-usual against an individual bearing but-for costs. Dkt. 18 at 2–3 & nn.1–3, PageID 253–54; Dkt. 36 at 4, PageID 2166. The imbalance is relevant not because institutional size independently shifts fees, but because Respondents controlled the records, corporate allocations, and successive forum positions that generated the documented expense, while Petitioner alone personally absorbed the resulting costs. Equity therefore reinforces — not replaces — the required actor-specific findings and but-for causation analysis.

### D. Effect on the Proposed Judgment

The forum's recurrence concern is not abstract: the Panel flagged a possible "pattern of conduct," and *Becht* documents the same firm's "cursory," "rubber-stamped" investigation. Dkt. 20-1 at 4; Dkt. 33-2 at 4–5. Petitioner seeks compensatory relief now, to the extent entitlement and amount are established on the existing record; in the alternative, he requests an expedited, narrowly confined procedure limited to actor-specific causation and quantification, not a merits presumption and not a shrug, with the consequential-damages claims preserved for merits adjudication rather than sanctions.

### E. Requested Ruling

Confirm the $31,625.00 assessment; reject the categorical merger and analyze the four questions separately; award the compensatory amount presently established on the existing record; alternatively, set a prompt, noticed *Chambers*/*Goodyear* prove-up limited to any

actor-specific causation or quantification issue the Court identifies — subject-specific notice, a specific bad-faith determination, but-for causation, and a documented record — with § 1927 addressed separately as to counsel; and preserve the consequential-damages claims for merits adjudication.

## IX. OBJECTION NINE — THE RECORD PERMITS, AND RULE 72(b)(3) REQUIRES, THE COMPLETE JUDICIAL DISPOSITION

### A. Determination Challenged

Petitioner objects to the single-sentence disposition — confirm, deny all other relief — as inadequate to implement the Award the FCR itself describes. Dkt. 51 at 10.

### B. Governing Law

Where "only questions of law remain," decision follows on the existing record. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312–13 (5th Cir. 2002); *Raddatz*, 447 U.S. at 674–76 (contemplating de novo determination on the existing record); *Ernst & Young*, 51 S.W.3d at 577 (resolving a fraud element as a matter of law on a complete record). This Circuit resolves gateway and enforcement questions on a developed record rather than discarding completed proceedings. *Bridas* II, 447 F.3d at 416–20. Summary-judgment safeguards apply to any reserved claim decided now. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

### C. Record Support

**This Court is the only court positioned to prevent a cascade — and everything it needs is before it.** All three captioned entities are before the Court; the Award's text supplies the findings and the non-determinations; and both sides have represented that no discovery or further factual development is needed. Dkt. 47 at 1–2, PageID 2572–73; Dkt. 48 at 1–2, PageID 2576–77. The 445-page appendix, Dkt. 20 (cover), PageID 261, the hearing transcripts, and the Award close the factual record. The record's

completeness does not enlarge the Panel's authority. It enables this Court to complete the adjudication the Panel lacked authority to provide.

**The complete disposition has six components, each already briefed.** An executable confirmation (Objection Three); lawful scope limitations (Objections Two and Five); preserved claims with their reservations recited (Objection Six); rejection of remand with limited retained jurisdiction (Objection Seven); compensatory relief now, with a confined prove-up as the alternative (Objection Eight); and finality through a separate Rule 58 judgment that FINRA's CRD can execute without another scope dispute. The issue-by-issue disposition matrix — every determination mapped to its objection and to the accompanying Proposed Order — is set out in Appendix B (Table B-1).

### D. Effect on the Proposed Judgment

The judgment is the instrument. A bare "confirm" invites successive proceedings over preclusion, CRD implementation, affiliate reach, and residual denials; the complete disposition ends them. The goal is an end, not a commencement.

### E. Requested Ruling

Adopt § III.A immediately under Rule 72(b)(3); enter the accompanying Proposed Order, or materially consistent issue-by-issue relief; and retain jurisdiction to implement, supervise, and enforce the judgment.

## X. CONCLUSION AND PRAYER

Petitioner does not seek wholesale vacatur of the Award. He seeks confirmation of the Award according to its terms, together with only the severable and alternative relief necessary to address the residue produced by the administrator-directed deletion of claims and the resulting limits on what the Panel could decide. The record presents the "very unusual circumstances" contemplated in *Oxford*: three captioned entities, two asserted sources of arbitral consent, claims removed at the administrator's direction, express non-determinations as to two Respondents, and public-registration relief that requires a judicial

judgment for implementation. *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)).

The authorities cited in the FCR require deference to the Award the Panel actually rendered, including its express limits. They do not permit confirmation to enlarge the Award into an adjudication of parties, claims, or functions the Panel did not decide.

**WHEREFORE, PREMISES CONSIDERED**, Petitioner Joshua David Sappi Biering respectfully requests that the Court sustain these Objections, reject or modify the Findings, Conclusions, and Recommendation (Dkt. 51) to the extent it recommends an unqualified confirmation and denial of all other relief, and enter judgment that:

(i) **CONFIRMS** the FINRA Award according to its terms;

(ii) **INCORPORATES** into the judgment the Award's operative Form U5 corrective directives, including the required amendment of Petitioner's CRD record;

(iii) **CONFIRMS** the Award's $31,625.00 fee assessment against J.P. Morgan Securities LLC;

(iv) **RECITES** the Award's express findings and its express "no determination" recitals concerning JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A.;

(v) **CONFIRMS** that the Award adjudicated only the claims and issues submitted against J.P. Morgan Securities LLC and did not adjudicate claims against JPMorgan Chase & Co. or JPMorgan Chase Bank, N.A.;

(vi) **HOLDS** that the FINRA-administrator-deleted claims and the claims as to which the Award made no determination were not adjudicated, waived, extinguished, or otherwise resolved by the Award or its confirmation;

(vii) **REJECTS** any remand absent identification of a governing arbitration agreement, bound parties, a covered unresolved dispute, and an authorized forum capable of granting the requested relief;

(viii) **MODIFIES** or clarifies the Award under 9 U.S.C. § 11(c) with respect to the admitted archived Form U4 filing errors, or alternatively holds that the Award

made no merits determination concerning those entries and that any request for correction remains open and unadjudicated;

(ix) **SEPARATELY ANALYZES** and disposes of Petitioner's monetary requests under the legal standards applicable to each request, including any limited and properly noticed proceedings the Court deems necessary regarding causation or quantification;

(x) **ADOPTS** Section III.A of the FCR immediately pursuant to Rule 72(b)(3) and enters the accompanying Proposed Order, or materially consistent relief; and

(xi) **RETAINS** jurisdiction to implement, supervise, enforce, and, if necessary, clarify the judgment and the confirmed Award.

Petitioner further requests oral argument or focused supplemental briefing on any issue the Court concludes requires further development, and such other and further relief, at law or in equity, to which Petitioner may be justly entitled.

Respectfully submitted,

Joshua David Sappi Biering

**JOSHUA DAVID SAPPI BIERING**
Petitioner, *Pro Se*

Dated: July 28, 2026

**CERTIFICATE OF SERVICE**

Petitioner, *pro se*, certifies that on July 28, 2026, the foregoing was filed via CM/ECF, which will automatically serve notice on all counsel of record.

Joshua David Sappi Biering

**JOSHUA DAVID SAPPI BIERING**
Petitioner, *Pro Se*