**UNITED STATES DISTRICT COURT**
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **JOSHUA DAVID SAPPI BIERING,** | § | |
| | § | |
| Petitioner, *Pro Se,* | § | **Case No.** 4:26-cv-00381-O-BP |
| | § | |
| v. | § | FINRA Case No. 24-01208 |
| | § | EEOC Charge No. 450-2024-04743 |
| **J.P. MORGAN SECURITIES LLC, JPMORGAN CHASE & CO., and JPMORGAN CHASE BANK, N.A.,** | § | AAA Case No. 01-26-0000-7215 |
| | § | |
| | § | |
| | § | |
| Respondents. | § | |

**PETITIONER'S REPLY IN SUPPORT OF DOCKET 56**

Petitioner replies to Respondents' opposition. Dkt. 57. The Form U4 issue does not require reconsideration of an arbitral factual finding. The existing record establishes that the five disclosures were erroneous, remain archived, and could not be corrected through the FINRA mechanism used during the arbitration. Dkt. 51 at 4–5, PageID 2592–93; Dkt. 33-3 at 169–74, PageID 2005–10.

## I. THE ERROR AND CONTINUING EFFECT ARE UNDISPUTED

The Second Amended Statement of Claim addressed the five disclosures under the heading "JPM's Loose Interpretation of Disclosure Reporting." It alleged that "JPM loosely interpreted disclosure requirements on Biering's Form U4, marking it with multiple bankruptcies/compromises related to student loan discharges." Dkt. 20-4 at 20, PageID 391 (¶ 50). Footnote 14 identified five student-loan discharges and stated that JPM had admitted the disclosures were erroneous. *Id.* n.14.

> JPMS subsequently filed a Form U4 amendment stating:
> "Student Loan Compromise(s) – Removed disclosures 'DRP filed in Error' since the full student loan balances were forgiven."

Dkt. 20-6 at 40–41, PageID 592–93.

Greg Thompson, JPMS's Employee Conduct Lead for North American Licensing and Registration, addressed the same filings at the hearing. When first asked whether the original U4 marking was incorrect, Thompson responded, "I have no idea." Dkt. 33-3 at 50, PageID 1886. After reviewing the corrective material, Thompson agreed that the disclosure was "filed in error" after JPM received additional documentation and FINRA guidance. *Id.* at 51, PageID 1887. When asked why the student-loan compromises existed, Thompson testified:

> "I don't, it doesn't matter to my department. We just want to make sure that they were on the U-4 if they were supposed to be."

*Id.* at 52, PageID 1888. Thompson then confirmed that, once JPM became aware of the information, "we removed it from his form U-4." *Id.*

The Recommendation reached the same factual conclusion. It found that "it is undisputed that the form U4 was erroneous," that the archived record continued to show "a history of bankruptcies rather than discharged student loans," and that the record was "making his licensure and employment more difficult." Dkt. 51 at 4–5, PageID 2592–93.

The remaining dispute therefore concerns the archived regulatory record and the available remedy, not whether the underlying disclosures were accurate.

## II. FINRA HAD NO MECHANISM TO CORRECT THE ARCHIVED RECORD; GRAHAM CONFIRMS THE JUDICIAL ROUTE

The hearing record establishes what occurred when Petitioner attempted to correct the archived disclosures. Counsel explained that FINRA would not permit the five archived items to be included in the expungement proceeding and that, after discussions with FINRA counsel, FINRA's position was that "there's no way to do it if it's archived." Dkt. 33-3 at 169–70, PageID 2005–06.

The Chair confirmed that the information had been "filed in error" and asked whether the incorrect loan information remained archived. The answer was yes. *Id.* at 170, PageID 2006. Respondents' counsel confirmed that account was "consistent with my understanding." *Id.* at 171, PageID 2007. After further discussion of whether an erroneously archived item

could be reversed and expunged, the Chair observed that an item apparently could remain "archived forever" without a corrective mechanism and stated: "That seems bizarre to me." *Id.* at 174, PageID 2010.

The Recommendation stated that Petitioner "cites no authority" for the proposition that FINRA lacked such a mechanism and that a judicial order was required. Dkt. 51 at 5, PageID 2593. *Jonathan Edward Graham* supplies that authority.

In *Graham*, the SEC addressed archived non-customer Form U4 disclosures maintained in CRD. FINRA explained that Rule 2080 applied to customer-dispute information and that its rules did not provide a mechanism for removing Graham's archived disclosures. FINRA further advised:

> "[T]he only way to obtain expungement of these archived disclosures from CRD is for Mr. Graham to obtain orders of expungement . . . from the relevant agencies or courts themselves."

*Jonathan Edward Graham*, Exchange Act Release No. 89237, at 3–4 (SEC July 7, 2020).

The SEC dismissed Graham's application because it lacked statutory jurisdiction to review FINRA's action. *Id.* at 4–7. The absence of a FINRA or SEC remedy did not adjudicate the accuracy of the underlying information. It identified the limit of those forums and the need to seek relief from the relevant agency or court.

The facts here go further than *Graham*. JPMS has already identified these five disclosures as "DRP filed in Error." Dkt. 20-6 at 40–41, PageID 592–93. The Recommendation found the error undisputed and found continuing licensing and employment consequences. Dkt. 51 at 4–5, PageID 2592–93. The hearing established that Petitioner attempted to obtain correction through FINRA and that no mechanism was available. Dkt. 33-3 at 169–74, PageID 2005–10.

Respondents' reliance on arbitral finality does not resolve the separate question of the Court's authority over the archived regulatory record. Dkt. 57 at 17–19, PageID 2702–04. The issue is not whether FINRA's interpretation deserves deference. *Graham* demonstrates that FINRA had no mechanism for correcting these archived non-customer disclosures and that judicial relief was the available route. That conclusion is especially significant

notwithstanding Respondents' characterization of FINRA as possessing quasi-governmental authority.

Under *Loper Bright Enterprises v. Raimondo*, the Court must exercise its independent judgment on the governing legal question and may not defer to an agency's interpretation merely because the matter concerns an agency-administered regulatory system. 603 U.S. 369, 412–13 (2024). Here, no deference is owed to FINRA's position. *Graham* confirms the absence of an administrative correction mechanism; *Loper Bright* confirms that the Court must independently determine the legal consequences under 9 U.S.C. §§ 11(b) and 11(c).

Docket 56 preserves those statutory grounds. The Court should adjudicate them on the established record.

## III. THE BUT-FOR EXPENSE ISSUE IS CATEGORY-SPECIFIC AND PRESERVED

Respondents continue to characterize the expense request as a single demand for sanctions arising during arbitration. Dkt. 57 at 19–20, PageID 2704–05. That characterization does not address the structure of Docket 56.

Docket 56 identifies forty-seven separate expense entries, organized into four distinct but-for categories, totaling $861,407.26. Those categories include expenses incurred after the Award and expenses attributable to the archived Form U4 disclosures. Dkt. 56 at 5–6, PageID 2682–83. The request is therefore not a generalized demand for reimbursement of arbitration expenses. It seeks recovery of expenses that would not have been incurred but for the specific conduct and circumstances identified in each category.

Docket 56 expressly recognizes that a particular category may fail "for want of authority, a required finding, or causation." *Id.* at 6, PageID 2683. Respondents' opposition does not establish that every category fails for the same reason, nor does it address the category-specific causal showing. Petitioner therefore preserves the but-for expense issue as to each category without further briefing.

## CONCLUSION

The existing record establishes that Occurrence Nos. 1977589–1977593 were filed in error, remain archived in CRD, and continue to affect Petitioner's licensing and employment record. Dkt. 20-6 at 40–41, PageID 592–93; Dkt. 51 at 4–5, PageID 2592–93. It also establishes that Petitioner attempted to obtain correction through FINRA and that no FINRA mechanism was available. Dkt. 33-3 at 169–74, PageID 2005–10. *Graham* confirms that limitation for archived non-customer CRD disclosures and identifies judicial orders as the available route. No deference is owed to FINRA's contrary or incomplete position.

Petitioner respectfully requests that the Court adjudicate the preserved grounds under 9 U.S.C. §§ 11(b) and 11(c), clarify that confirmation does not render the admittedly erroneous archived occurrences substantively valid, and grant the relief authorized by those provisions.

Petitioner reserves all rights to appeal any adverse ruling, including any ruling concerning the archived Form U4 disclosures, the Court's authority under 9 U.S.C. §§ 11(b) and 11(c), and the category-specific but-for expense claims.

Respectfully submitted,

**JOSHUA DAVID SAPPI BIERING**
Petitioner, *Pro Se*

Dated: August 26, 2026

### CERTIFICATE OF SERVICE

I certify that on August 26, 2026, the foregoing was filed through CM/ECF, which will provide electronic notice to all counsel of record.

**JOSHUA DAVID SAPPI BIERING**
Petitioner, *Pro Se*