**No. 26-____**

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

**IN RE JOSHUA DAVID SAPPI BIERING,**
PETITIONER, *PRO SE*

*On Petition for Writs of Mandamus or Prohibition to the*
**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS,**
**FORT WORTH DIVISION**

**CIVIL ACTION NO.** 4:26-cv-00381-O-BP
The Honorable Reed C. O'Connor, United States District Judge
The Honorable Hal R. Ray, Jr., United States Magistrate Judge

**CIVIL ACTION NO.** 4:26-cv-00950-P-BJ
The Honorable Mark T. Pittman, United States District Judge
The Honorable Jeffrey L. Cureton, United States Magistrate Judge

## PETITION FOR WRITS OF MANDAMUS OR PROHIBITION

**Action Requested by September 11, 2026 (5th Cir. R. 27.3)**

Joshua David Sappi Biering, Petitioner, *Pro Se*
4635 Washburn Ave., Fort Worth, TX 76107
jdsb@bierfam.com | (682) 218-6738
September 8, 2026

## CERTIFICATE OF INTERESTED PERSONS

Under Fifth Circuit Rule 28.2.1, the undersigned pro se Petitioner certifies that the following persons and entities have an interest in the outcome of this original proceeding, so that the judges of this Court may evaluate possible disqualification or recusal.

**Petitioner.** Joshua David Sappi Biering, Petitioner, pro se.

**Real Parties in Interest.** J.P. Morgan Securities LLC; JPMorgan Chase Bank, N.A.; and JPMorgan Chase & Co. JPMorgan Chase & Co. is a publicly held corporation (NYSE: JPM). JPMorgan Chase Bank, N.A. is a wholly owned subsidiary of JPMorgan Chase & Co. J.P. Morgan Securities LLC is a wholly owned subsidiary of J.P. Morgan Broker-Dealer Holdings Inc., which is a wholly owned subsidiary of JPMorgan Chase Holdings LLC, which is a wholly owned subsidiary of JPMorgan Chase & Co. Per the disclosure statement in No. 4:26-cv-00950-P (Dkt. 13), The Vanguard Group, Inc. holds shares of JPMorgan Chase & Co. through sponsored funds, and no publicly held corporation owns ten percent or more of its stock.

**Counsel for the Real Parties in Interest.** Jeffrey S. Dunlap and Kyle W. Rea, UB Greensfelder LLP (counsel for J.P. Morgan Securities LLC in FINRA Arbitration No. 24-01208; admitted pro hac vice in No. 4:26-cv-00381-O);

Christopher S. Dodrill and Elizabeth A. Bones, Greenberg Traurig, LLP (Nos. 4:26-cv-00381-O and 4:26-cv-00950-P); and Jennifer Tomsen, Greenberg Traurig, LLP (No. 4:26-cv-00950-P).

**Judicial Officers.** The Honorable Reed C. O'Connor and the Honorable Mark T. Pittman, United States District Judges, and the Honorable Hal R. Ray, Jr., and the Honorable Jeffrey L. Cureton, United States Magistrate Judges, of the United States District Court for the Northern District of Texas, are the judicial officers whose proceedings are the subject of this petition; Rule 21(b)(4) does not treat a trial-court judge as a respondent.

**Related Participants.** Financial Industry Regulatory Authority, Inc. (FINRA), Dispute Resolution Services, administrator of FINRA Arbitration No. 24-01208, whose administrative actions the petition describes; the American Arbitration Association (No. 01-26-0000-7215); the U.S. Equal Employment Opportunity Commission and Texas Workforce Commission Civil Rights Division (Charge No. 450-2024-04743); and Iacuone McAllister Potter LLP, Petitioner's former counsel in the FINRA arbitration.

Joshua David Sappi Biering

**JOSHUA DAVID SAPPI BIERING**
Petitioner, *Pro Se*

## STATEMENT REGARDING ORAL ARGUMENT

Biering does not request oral argument at this stage. He stands ready to appear if the Court orders a response under Federal Rule of Appellate Procedure 21(b) or determines that argument would assist with the extensive procedural record, the fragmentation of claims, and the serial jurisdictional challenges.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS .... i
STATEMENT REGARDING ORAL ARGUMENT .... iii
TABLE OF AUTHORITIES .... iv
PRELIMINARY STATEMENT .... 1
STATEMENT OF RELATED CASES AND PROCEEDINGS .... 4
JURISDICTIONAL STATEMENT .... 6
STATEMENT OF RELIEF SOUGHT .... 7
ISSUES PRESENTED .... 8
STATEMENT OF FACTS NECESSARY TO UNDERSTAND THE PETITION .... 9
I. The BAA covers the JPMorgan enterprise; the securities registration separately carried FINRA obligations. .... 9
II. Respondents' 2024 positions divided the parties and the claims before any panel received the case. .... 10
III. The narrowed arbitration produced an extensive record and findings on the same events, and received none of the removed claims. .... 11
IV. 381-O supplied back-end FAA review and now holds a fully briefed post-judgment motion. .... 12
V. 950-P holds the residue and the antecedent judicial gateway. .... 13
  A. The complaint and Count I. .... 13
  B. Respondents' stated sequence .... 14
  C. The merits motion, the August 25 order, and the motion to strike. .... 15
REASONS THE WRIT SHOULD ISSUE .... 16
I. The All Writs Act reaches the two decisions that fix when this Court's jurisdiction over the controversy becomes operative. .... 16
II. Biering's right to the court-assigned sequence is clear and indisputable .... 17
  A. Section 402(b) selects the decisionmaker and, with it, the order of decision. .... 17

B. The Chapter 4 predicate is pleaded; the scope of the "case" is itself a court-assigned question; and the remaining gateway questions are judicial whether or not Chapter 4 applies. ....18

C. The only decision that divided this controversy was administrative, was made at the member's written request, and has no identified direct review vehicle. ....19

D. Respondents concede the decisionmaker and contest only the timing. ....20

E. 381-O presents a distinct adjudicatory act; the petition does not rely on delay, and the request is severable. ....21

F. The forum question is judicial because the residual claims are legal claims. ....21

III. No other adequate means exist, because later review cannot recreate the decisional sequence after the next process has occurred. ....22

A. The first cycle shows what back-end review cannot do. ....22

B. Section 16, Coinbase, and Spizzirri define the next non-merits interval, and it reaches both dockets. ....22

C. McDermott does not reach the right asserted. ....23

D. The petition rests on sequence, not on elapsed time, and it is filed after the threat became concrete and before the event that would make the relief impossible. ....24

E. Section 1292(b) is relevant because no certified interlocutory route presently exists. ....25

F. An objection preserved but undecided when the next proceeding begins is, in practice, an objection lost. ....26

G. The requests address opposite ends of the same interval without merging the cases, and the limiting principle of In re Dean is satisfied. ....26

IV. The combined circumstances make limited supervisory relief appropriate without converting the surrounding institutional authorities into independent mandamus elements. ....27

A. The writ requested is conditional, severable, and narrower than the underlying disputes. ....27

B. The record is mature although the 950-P docket is recent. ....27

C. The Supreme Court's structural cases do not decide this petition, but they show why the identity and timing of a legally

assigned decisionmaker matter independently of eventual substantive correctness. ....... 28

D. Recent FINRA and private-nondelegation decisions reinforce the timing distinction without determining FINRA's constitutional status. ....... 29

E. Congress separately subjects FINRA, including its arbitration services, to recurring governmental oversight. ....... 30

F. Section 572 provides a congressional analogue, not a FINRA vacatur ground. ....... 32

G. Section 1292(b), Rule 40, and mandamus remain separate doctrines; their criteria nevertheless show why the circumstances are unusual. ....... 32

CONCLUSION ....... 34

PRAYER ....... 34

CERTIFICATE OF COMPLIANCE ....... 37

CERTIFICATE OF SERVICE ....... 38

ADDENDUM A: 9 U.S.C. § 402 ....... 39

ADDENDUM B: CONTENTS OF THE RULE 21 APPENDIX ....... 40

## TABLE OF AUTHORITIES

**Page(s)**

***Cases***

*Alpine Sec. Corp. v. FINRA*, 121 F.4th 1314 (D.C. Cir. 2024) ....................................29
*Apache Bohai Corp. v. Texaco China, B.V.*, 330 F.3d 307 (5th Cir. 2003).............23
*Axon Enter., Inc. v. FTC*, 598 U.S. 175 (2023) .................................1, 3, 13, 22, 28, 30
*Bruce v. Adams & Reese, LLP*, 168 F.4th 367 (6th Cir. 2026) .......................... 18, 33
*Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367 (2004)......................................... passim
*Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023)...................................... 2, 3, 7, 9, 22, 27
*Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024)..................................2, 3, 7, 9, 19, 22, 27
*Ding v. Structure Therapeutics, Inc.*, No. 25-1532 (9th Cir. Aug. 19, 2026) ........................................................................................................... 18, 33
*Erickson v. Pardus*, 551 U.S. 89 (2007).......................................................................18
*First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938 (1995) .....................................7, 21
*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010)..........................................................................................................................28
*Garcia v. Fuentes*, 141 F.4th 671 (5th Cir. 2025) .......................................................19
*Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008)...................................20
*Hertz Corp. v. Friend*, 559 U.S. 77 (2010) ......................................................................22
*In re Alliance Liftboats, L.L.C.*, No. 26-30091 (5th Cir. Mar. 11, 2026) (published order) ...........................................................................................................24
*In re Dean*, 527 F.3d 391 (5th Cir. 2008) ................................................................ 26, 27
*In re Goodhart*, No. 26-20337 (5th Cir. Aug. 26, 2026) (per curiam) (unpublished) ...........................................................................................................24
*In re JPMorgan Chase & Co.*, 916 F.3d 494 (5th Cir. 2019) ............ 1, 2, 4, 6, 19, 24
*In re Red Barn Motors, Inc.*, 794 F.3d 481 (5th Cir. 2015) (per curiam).............16
*In re United States ex rel. Drummond*, 886 F.3d 448 (5th Cir. 2018) (per curiam)...............................................................................................................21
*In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008) (en banc).................. 7
*In re Westcott*, 135 F.4th 243 (5th Cir. 2025) ............................................................16
*Kerr v. U.S. Dist. Ct. for N. Dist. of Cal.*, 426 U.S. 394 (1976) .....................................16
*Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199 (5th Cir. 2016).......................19

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) ..... 20
*McDermott Int'l, Inc. v. Underwriters at Lloyds*, 981 F.2d 744 (5th Cir. 1993) ..... 7, 23
*Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022) ..... passim
*Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, No. 23-10520 (5th Cir. June 11, 2026) (on remand) ..... 29
*New Prime Inc. v. Oliveira*, 586 U.S. 105 (2019) ..... 17
*Oklahoma v. United States*, 163 F.4th 294 (6th Cir. 2025) ..... 30
*Oxford Health Plans LLC v. Sutter*, 569 U.S. 564 (2013) ..... 20, 22
*Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297 (4th Cir. 2019) ..... 14
*Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63 (2010) ..... 19
*Roche v. Evaporated Milk Ass'n*, 319 U.S. 21 (1943) ..... 6, 16
*SEC v. Jarkesy*, 603 U.S. 109 (2024) ..... 21, 22, 26, 29
*Smith v. SEC*, 171 F.4th 798 (6th Cir. 2026) ..... 26
*Smith v. Spizzirri*, 601 U.S. 472 (2024) ..... 3, 9, 22, 23, 26
*Sullivan v. Feldman*, 132 F.4th 315 (5th Cir. 2025) ..... 19
*Will v. Calvert Fire Ins. Co.*, 437 U.S. 655 (1978) ..... 16

### ***Constitutional Provisions***

U.S. Const. art. III ..... 12, 13, 21, 22, 26
U.S. Const. amend. VII ..... 13, 21

### ***Statutes***

5 U.S.C. § 572(b) (Administrative Dispute Resolution Act) ..... 4, 12, 32
9 U.S.C. §§ 9–11 (Federal Arbitration Act) ..... 3, 6, 28
9 U.S.C. § 10(a)(4) ..... 12, 22
9 U.S.C. § 10(c) ..... 12, 32
9 U.S.C. § 16 (Federal Arbitration Act) ..... passim
9 U.S.C. §§ 401–402 (Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021) ..... passim
9 U.S.C. § 401(4) ..... 13, 18
9 U.S.C. § 402(a) ..... 6, 13, 18
9 U.S.C. § 402(b) ..... passim
28 U.S.C. § 1291 ..... 7, 21

28 U.S.C. § 1292(b) .......... passim
28 U.S.C. § 1331 .......... 7
28 U.S.C. § 1332 .......... 7
28 U.S.C. § 1367(a) .......... 7
28 U.S.C. § 1651(a) (All Writs Act) .......... 6
28 U.S.C. §§ 2201–2202 (Declaratory Judgment Act) .......... 7
Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, § 964, 124 Stat. 1376 (2010) .......... 30

***Rules***

**FEDERAL RULES OF APPELLATE PROCEDURE**

FED. R. APP. P. 4(a)(4) (effect of post-judgment motions on time to appeal) .......... passim
Fed. R. App. P. 21 (writs of mandamus and prohibition) .......... 6, 21, 35, 36
Fed. R. App. P. 40(b)(2) (en banc determination) .......... 4, 32, 33

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 56 (summary judgment) .......... 15, 28
Fed. R. Civ. P. 57 (declaratory judgment) .......... 6, 7, 15
FED. R. CIV. P. 59(e) (motion to alter or amend a judgment) .......... passim
FED. R. CIV. P. 60(b) (relief from a judgment or order) .......... passim

**FIFTH CIRCUIT RULES**

5th Cir. R. 27.3 (emergency motions) .......... 8

**TEXAS RULES OF CIVIL PROCEDURE**

Tex. R. Civ. P. 202 (depositions before suit) .......... 5

**FINRA RULES**

FINRA Rule 13103 (Director's administrative duties) .......... 11, 20
FINRA Rule 13413 (interpretation of the Code) .......... 11, 19

### *Other Authorities*

H.R. Rep. No. 117-234 (2022)....................14

*The Role of Self-Regulatory Organizations in U.S. Markets: Examining FINRA and the MSRB*: *Hearing Before the Subcomm. on Capital Mkts. of the H. Comm. on Fin. Servs.*, 119th Cong. (Mar. 5, 2026)....................31

Restoring Accountability in Market Supervision Act, H.R. 2689, 119th Cong. (2025)....................31

U.S. Gov't Accountability Off., GAO-25-107723, Securities Regulation: SEC's Oversight of the Financial Industry Regulatory Authority (2025)....................31

**PRELIMINARY STATEMENT**

"Ms. Cochran and Axon have already endured multi-year odysseys through the entire federal judicial system—and no judge yet has breathed a word about the merits of their claims."

— *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 215 (2023) (Gorsuch, J., concurring in judgment)

One employment controversy occupies two Northern District of Texas dockets. In *Biering v. J.P. Morgan Securities LLC*, No. 4:26-cv-00381-O-BP ("381-O"), judgment confirming a FINRA award was entered July 31, 2026, and a timely motion under Rules 59(e) and 60(b) (Dkt. 56) is fully briefed; under Rule 4(a)(4) the appeal period does not begin until it is decided. In *Biering v. JPMorgan Chase Bank, N.A.*, No. 4:26-cv-00950-P-BJ ("950-P"), the residue of the same controversy—statutory claims removed from the arbitration before hearing, and claims against two entities as to which the award "made no determination," App. 0144—is pending on a fully briefed court-assigned gateway motion (Dkt. 9). Respondents have announced a motion to compel arbitration "on or before" September 18, App. 0107, and have requested a stay of the action "in its entirety" through "the resolution of any appeal," App. 0084.

The controversy has been in a forum since June 2024, on contracts executed in 2016. JP*Morgan* Chase Bank, N.A. told the EEOC that Form U5

disputes "must be adjudicated in FINRA arbitration," App. 0055; Biering filed there and named all three Respondents; JPMS then told FINRA it did not agree to arbitrate the statutory claims there and that the enterprise agreement "has no bearing," App. 0061–0062; and FINRA staff, adopting JPMS's reading, required deletion of every statutory claim before any panel sat, App. 0058, 0256–0257. No panel interpreted the agreement or the Code. The panel decided the narrowed submission and "made no determination" as to the Bank or JPMC. App. 0144. Confirmation in 381-O reached the award rendered and held the excluded claims "not within the scope of the Court's review." App. 0227. Dkt. 56 asks the court to state what the judgment did and did not adjudicate. The petition asks only that it be decided so that 381-O may proceed.

The gateway in 950-P comprises several court-assigned determinations: whether Chapter 4 applies and, if so, the validity and enforceability questions § 402(b) assigns to "a court, rather than an arbitrator," irrespective of delegation; whether an agreement was formed with, and binds, each Respondent; which of the enterprise agreement, the Form U4, and the FINRA Code governs; any challenge to the delegation clause; and waiver and estoppel arising from Respondents' positions in 2024 and 2026. App. 0019–0020, 0033–0042; 9 U.S.C. § 402(b); *Coinbase, Inc. v. Suski*, 602 U.S. 143, 149–52 (2024); *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022). Respondents do "not dispute that this

threshold issue is for the Court to decide," App. 0110, reserve their substantive response for the September 18 motion, and oppose any advance limitation on an arbitration-based stay, App. 0105–0110.

Section 16 assigns the immediate appeal to one side of the coming ruling. If arbitration is denied, § 16(a) gives Respondents an immediate appeal and *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 740–44 (2023), requires a stay of the proceedings involved in it. If arbitration is compelled and the action stayed, § 16(b) withholds an immediate appeal, *Smith v. Spizzirri*, 601 U.S. 472, 477–78 (2024), forecloses a final judgment, and only § 1292(b) certification remains. Respondents have relied on overlapping materials from the two dockets and have requested a stay extending through any arbitration appeal; if the 950-P gateway produces an interlocutory appeal, the unresolved status of Dkt. 56 would leave the completed first cycle unable to proceed through its ordinary appellate route. On either branch the court-assigned determinations would be made, if at all, after a process that review under §§ 9–11 cannot reopen.

The identity and timing of the assigned decisionmaker matter independently of eventual merits correctness, *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191–92 (2023), and FINRA exercises private authority within a structure whose governmental supervision is a recurring appellate and congressional question. Reasons, Part IV. The petition does not rest on the interval since

briefing closed in either court; it rests on sequence. Section 1292(b), Federal Rule of Appellate Procedure 40, the FAA's award-review provisions, and 5 U.S.C. § 572(b) supply no additional mandamus elements; they identify the same features—the allocation of decisionmaking authority, the timing and availability of review, and the inability of back-end review to reconstruct a court-first determination—that make these circumstances unusual.

Neither docket presently offers an ordinary appellate path. *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380–81 (2004). The writ requests disposition of Dkt. 56 in 381-O; completion of the court-assigned gateway determinations in 950-P before an order compelling arbitration, a referral under an asserted delegation clause, or a stay premised on those undecided questions; and, if the Chapter 4 question is resolved adversely, an opportunity to seek § 1292(b) certification before the residual claims proceed in an arbitral forum. It does not accelerate the September 18 deadline, prevent Respondents' motion, consolidate or reassign either action, or prescribe either court's vehicle or ruling.

**STATEMENT OF RELATED CASES AND PROCEEDINGS**

Biering was employed by JPMorgan Chase Bank, N.A. ("the Bank") and registered through J.P. Morgan Securities LLC ("JPMS"), a FINRA member; both are subsidiaries of JPMorgan Chase & Co. ("JPMC"), which with its subsidiaries

is “the Firm” under the Binding Arbitration Agreement (“BAA”). App. 0236; 381-O, Dkt. 11 at PageID 145–146. The three are the real parties in interest (“Respondents”).

EEOC Charge No. 450-2024-04743, filed February 25, 2024 and dual-filed with the Texas Workforce Commission Civil Rights Division.

FINRA Arbitration No. 24-01208, filed June 3, 2024. The December 29, 2025 award ran against JPMS only. App. 0141–0152.

*In re Joshua David Sappi Biering*, Cause No. DC-24-15770 (191st Dist. Ct., Dallas Cnty., Tex.). A petition under Texas Rule of Civil Procedure 202, filed September 10, 2024, four days after FINRA staff directed deletion of the statutory claims, to depose five JP*Morgan* individuals in the Dallas community, including the chairman of JPMC’s Dallas region. 381-O, Dkt. 10 at PageID 134; Dkt. 22-6 at PageID 1039–1053. No deposition was taken; the potential claims are now Counts X and XIII of 950-P.

FINRA Arbitration No. 23-03445: a separate expungement matter concerning customer-dispute Occurrence No. 2204024; the October 25, 2024 award was confirmed January 9, 2025. It is not a basis for this petition.

Form U4 Occurrence Nos. 1977589 through 1977593: five archived financial disclosures the award does not identify, addressed in Dkt. 56 in 381-O. 381-O, Dkt. 56 at PageID 2678–2685.

AAA Case No. 01-26-0000-7215, filed February 10, 2026, as a protective demand to preserve limitations, expressly reserving the judicial forum and the § 402(a) election; held in abeyance pending a court decision. App. 0063–0078.

*Biering v. J.P. Morgan Securities LLC*, No. 4:26-cv-00381-O-BP (N.D. Tex.) (O'Connor, J.) ("381-O"), filed March 30, 2026, under 9 U.S.C. §§ 9–11. Judgment confirming the award entered July 31, 2026 (Dkts. 54, 55). Biering's timely Rule 59(e)/60(b) motion (Dkt. 56) is fully briefed; his motion for an expedited ruling (Dkt. 59) is pending. FED. R. APP. P. 4(a)(4)(A).

*Biering v. JPMorgan Chase Bank, N.A.*, No. 4:26-cv-00950-P-BJ (N.D. Tex.) (Pittman, J.) ("950-P"), filed August 3, 2026. It pleads the statutory claims removed from the arbitration and the claims against the two entities the award did not reach; Count I seeks the gateway determinations. App. 0003–0032. Biering's Rule 57 motion (Dkt. 9) is fully briefed. Respondents will move to compel arbitration on or before September 18, 2026. App. 0107.

No prior petition for mandamus or prohibition has been filed concerning either action.

## JURISDICTIONAL STATEMENT

This Court may issue the writ under the All Writs Act, 28 U.S.C. § 1651(a), and Federal Rule of Appellate Procedure 21, in aid of its prospective appellate jurisdiction over both proceedings. *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21,

25 (1943); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 309–11 (5th Cir. 2008) (en banc).

In 381-O the district court had jurisdiction under 28 U.S.C. § 1332, and its judgment will be reviewable under 9 U.S.C. § 16(a)(1)(D) and 28 U.S.C. § 1291 once the post-judgment motion is decided. Fed. R. App. P. 4(a)(4)(A). In 950-P the district court has jurisdiction under 28 U.S.C. §§ 1331 and 1367(a), with diversity pleaded in the alternative, App. 0007; Count I arises under 28 U.S.C. §§ 2201–2202 and Federal Rule of Civil Procedure 57.

The determinations at issue are assigned to a court, not to an arbitral administrator or panel. 9 U.S.C. § 402(b); *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943–45 (1995). No order compelling arbitration exists, so no appeal under 9 U.S.C. § 16 has attached, *Coinbase*, 599 U.S. at 738; no gateway determination exists from which § 1292(b) certification could be sought; and the petition does not seek to circumvent § 16(b). *McDermott Int'l, Inc. v. Underwriters at Lloyds*, 981 F.2d 744, 748 (5th Cir. 1993).

## STATEMENT OF RELIEF SOUGHT

As to 381-O, the writ should direct disposition of the fully briefed motion under Rules 59(e) and 60(b) (Dkt. 56), without direction as to result, so that the Rule 4(a)(4) appellate process may proceed.

As to 950-P, the writ should direct the district court, before compelling

arbitration, giving effect to an asserted delegation provision, or entering an arbitration-based stay that presupposes those determinations, to decide the court-assigned questions identified in the Prayer—Chapter 4 and § 402(b); the governing instrument and the parties bound; any specific delegation challenge; and any preserved waiver or estoppel issue governing law assigns to the court—on Count I, on Dkt. 9, or on the announced motion to compel. The two requests are severable.

If the district court enters an adverse Chapter 4 determination before an order compelling or referring arbitration becomes operative, Biering alternatively requests only that any timely § 1292(b) request be ruled upon before that transition.

A companion motion under Fifth Circuit Rule 27.3 requests emergency consideration keyed to September 11, 2026.

## ISSUES PRESENTED

1. In 381-O, a timely Rule 59(e)/60(b) motion asking the court to state what its July 31, 2026 judgment did and did not adjudicate is fully briefed, and under Rule 4(a)(4) its disposition is a prerequisite to operative appellate review. May the writ direct its disposition where it requests only a ruling rather than a particular result?

2. In 950-P, the court-assigned gateway comprises Chapter 4 and § 402(b), formation and party identity, the governing instrument, any delegation challenge, and waiver and estoppel; Respondents concede the decisionmaker but reserve their position for a motion to compel. Must the district court complete those determinations before compelling arbitration, giving effect to an asserted delegation provision, or entering an arbitration-based stay that presupposes them?

3. Section 16(a) and *Coinbase* give Respondents an immediate appeal and a mandatory stay if arbitration is denied; § 16(b) and *Spizzirri* leave Biering without either if it is compelled; and post-award review reaches only the award rendered. Is ordinary review an adequate means to secure the court-first determinations?

## STATEMENT OF FACTS NECESSARY TO UNDERSTAND THE PETITION

### I. The BAA covers the JPMorgan enterprise; the securities registration separately carried FINRA obligations.

Biering executed the BAA on February 18, 2016. App. 0241. It defines "JP*Morgan* Chase" and "the Firm" as "JP*Morgan* Chase & Co. and all of its direct and indirect subsidiaries," makes the employee and the Firm the "Covered Parties," defines "Covered Claims" to include "all legally protected employment-

related claims," including "claims of employment discrimination or harassment," App. 0236, and purports to send arbitrability to an arbitrator, App. 0240. His employer was the Bank, not a FINRA member; his registrations were held through JPMS, which filed his Forms U4 and U5. 381-O, Dkt. 11 at PageID 145–146. The award recites only that the Bank and JPMC "did not voluntarily submit." App. 0144.

## II. Respondents' 2024 positions divided the parties and the claims before any panel received the case.

On May 24, 2024, the Bank told the EEOC that Form U5 disputes "must be adjudicated in FINRA arbitration." App. 0055. Biering filed on June 3 and on August 12 named all three Respondents; both pleadings asserted statutory discrimination claims arising from the investigation. App. 0061, 0144; 381-O, Dkt. 43 at PageID 2269–2271. On August 13, JPMS told FINRA that it "has not agreed and does not agree to arbitrate" those claims there, that the Bank and JPMC "do not agree to arbitrate claims against them in FINRA arbitration," and that the BAA "has no bearing on the present FINRA arbitration." App. 0061–0062.

On September 6, 2024, FINRA staff wrote that the agreement "specifies that statutory employment discrimination claims are to be arbitrated at AAA," that absent "a court order compelling arbitration at FINRA, we do not have

jurisdiction over these claims," and that Biering must delete every such claim or the case would close. App. 0058. Three reconsideration requests were denied without a hearing, App. 0257; 381-O, Dkt. 20-7 at 48–52, 78–81;[1] the Director stated that "no court of competent jurisdiction has ordered the parties to arbitrate" those claims at FINRA. App. 0256–0257. Biering amended under protest. Rule 13103 assigns the Director administrative duties; Rule 13413 gives the panel "the authority to interpret and determine the applicability of all provisions under the Code." No panel did so.

### III. The narrowed arbitration produced an extensive record and findings on the same events, and received none of the removed claims.

JPMS withheld documents until the March 10, 2025 Confidentiality Agreement, which names Biering and JPMS as its only parties, was executed. App. 0115–0140. Production then ran nine rounds and approximately 29,000 pages over approximately 351 days, through three motions to compel; after an arbitrator withdrew five days before the September 2025 hearing and JPMS declined to proceed with two, the hearing was reset to December and occupied

[1] In FINRA No. 22-00545, involving the same three entities and the same counsel, staff did not remove the statutory claims; the panel decided which respondents were bound and which non-members had "not voluntarily submit[ted]." 381-O, Dkt. 20-7 at 50, 55–56, PageID 644, 649–650.

six days. 381-O, Dkt. 11 ¶ 87, PageID 143, 164, 199–203; App. 0146–0147. The panel found that JPMS "began investigating reasons to terminate" Biering "so as to make it more difficult" for him to join a competitor and timed the Form U5 "to hinder Claimant's ability to transfer his book of business"; it found the U5 inaccurate, ordered it corrected, and denied damages. App. 0145. The award recites that the June and August pleadings "were not served on Respondent or considered by the Panel" and that the panel "made no determination with respect to the claims against" the Bank or JPMC. App. 0144.

## IV. 381-O supplied back-end FAA review and now holds a fully briefed post-judgment motion.

Biering petitioned to confirm in part and to modify or partially vacate under §§ 10(a)(4) and 11(b)–(c), preserved § 10(c) in the alternative and the institutional considerations Congress identified in 5 U.S.C. § 572(b), and reserved the non-submitted claims and the § 402 election. 381-O, Dkt. 11 at PageID 137–138, 153–154, 172–176; Dkt. 11 ¶¶ 56, 156. The magistrate judge applied the deferential FAA standard and held the request to preserve "claims that the panel excluded from the scope of the arbitration" to be "not within the scope of the Court's review." App. 0220, 0227. That is the FAA standard; the point is structural. Once a private panel has decided a matter, the Article III court that enters judgment on the award supplies no meaningful merits review

of that decision. Cf. *Axon*, 598 U.S. at 196–97 (Thomas, J., concurring) ("grave doubts" about adjudication of core private rights "with only deferential judicial review on the back end"). Over objection, the district court confirmed and entered judgment on July 31, 2026. App. 0153–0154. On August 5, Biering moved under Rules 59(e) and 60(b) (Dkt. 56), asking the court to state what the judgment did and did not adjudicate, including as to five Form U4 disclosures that remain archived in CRD. App. 0155–0162. Briefing closed with Biering's reply. 381-O, Dkt. 58. The petition does not allege unreasonable delay; it relies on the legal effect of the pending motion under Rule 4(a)(4).

## V. 950-P holds the residue and the antecedent judicial gateway.

### A. The complaint and Count I.

Biering filed 950-P on August 3, 2026, pleading thirteen counts: Count I for the gateway determinations, Counts II–IX for the removed statutory claims, and Counts X–XIII for related tort and contract claims. App. 0003–0032. Count I invokes § 401(4), makes the § 402(a) election, alleges that under § 402(b) the determinations "must be determined by this Court, irrespective of any delegation clause," pleads waiver and estoppel in the alternative, preserves Article III and Seventh Amendment rights, and asks that any compelled claim be stayed under 9 U.S.C. § 3 rather than dismissed. App. 0019–0020 (Dkt. 1 ¶¶ 99–110). The pleaded predicate is Respondents' own construct. The panel

found that, after learning Biering contemplated leaving for a competitor, JPMS "began investigating reasons to terminate" him "so as to make it more difficult" to do so and timed the Form U5 to "hinder" the "transfer of his book of business." App. 0145. The complaint alleges that, during that same effort, a senior Human Resources executive internally recast the underlying event as "a very serious allegation of sexual assault by the male subject towards a female employee," that the female participant was neither investigated nor disciplined, and that the Form U5 ultimately described the event only as "inappropriate behavior." App. 0013–0016 (Dkt. 1 ¶¶ 60–83). Count III pleads sexual harassment. Dkt. 1 ¶¶ 117–121; see *Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297, 303–04 (4th Cir. 2019). Whether those allegations satisfy Chapter 4, whether the entire "case" is affected, and what consequence the prior arbitration history carries are questions for the district court under § 402(b), see H.R. Rep. No. 117-234, at 3–4, 9–10 (2022), not questions this petition asks this Court to answer.

**B. Respondents' stated sequence.**

Four days after filing, Respondents' conferral letter stated that the claims "must be arbitrated [at] the AAA" under the BAA and that Biering might have "to proceed before two separate arbitral tribunals." App. 0041–0042. The AAA proceeding Biering filed protectively in February 2026 is held "in abeyance

pending a court decision or a request to continue administration." App. 0063–0078; 381-O, Dkt. 50-1 at PageID 2586. Biering moved under Rule 57 on August 9 to advance Count I. App. 0033–0040. Respondents moved to stay the action "until the motion to compel arbitration and any appeal are finally decided," App. 0080–0084; the magistrate judge denied the stay and extended their deadline to September 18, App. 0102. Briefing on Dkt. 9 closed with Biering's reply, 950-P, Dkt. 21; no ruling is scheduled.

### C. The merits motion, the August 25 order, and the motion to strike.

Biering moved for partial summary judgment on August 18 on Counts II–XIII, excluding Count I, with a 52-page brief and a 992-page appendix. App. 0094–0096. The magistrate judge denied the motion the next day as premature, and the district court, on de novo review, denied it "WITHOUT PREJUDICE with leave to refile once adequate discovery has been completed." App. 0100, 0103.[2] Biering objected, asking the court to control the sequence by "deciding DKT. 9 first." App. 0247, 0252. On August 25, the district court overruled the objections and declined "any other relief requested by Plaintiff in his Objections," without

[2] Local Civil Rule 16.1(f) exempts cases filed by pro se plaintiffs from Rule 16(b)'s scheduling and planning requirements, so no scheduling order set a later opening date for summary-judgment motions, and Rule 56(b) permitted the motion when filed. N.D. Tex. L. Civ. R. 16.1(f); Fed. R. Civ. P. 56(b).

mentioning Dkt. 9 or § 402(b). App. 0103. Two days later, all three Respondents moved to enforce the Confidentiality Agreement JPMS alone signed and to strike or restrict the appendix; the court set a September 9 response date. App. 0115–0140. The merits vehicle is no longer pending; the gateway is submitted; the arbitration motion is announced; and AAA awaits a court decision.

## REASONS THE WRIT SHOULD ISSUE

### I. The All Writs Act reaches the two decisions that fix when this Court's jurisdiction over the controversy becomes operative.

This Court's mandamus authority extends to cases within its prospective appellate jurisdiction "although no appeal has been perfected." *Roche*, 319 U.S. at 25; *In re Red Barn Motors, Inc.*, 794 F.3d 481, 483 (5th Cir. 2015) (per curiam). Biering must show "no other adequate means to attain the relief he desires," a right to the writ that is "clear and indisputable," and that issuance is appropriate in the Court's discretion. *Kerr v. U.S. Dist. Ct. for N. Dist. of Cal.*, 426 U.S. 394, 402–03 (1976); *Cheney*, 542 U.S. at 380–81; *In re Westcott*, 135 F.4th 243, 245 (5th Cir. 2025). The conditions are independent, and satisfaction of the first two does not eliminate the Court's discretion under the third. The writ's office includes compelling a court "to exercise its authority when it is its duty to do so." *Roche*, 319 U.S. at 26; *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 661–62 (1978) (plurality opinion). The petition asks this Court to preserve

adjudication, not to provide interlocutory merits review.

## II. Biering's right to the court-assigned sequence is clear and indisputable.

### A. Section 402(b) selects the decisionmaker and, with it, the order of decision.

Section 402(b) provides that "[t]he applicability of this chapter to an agreement to arbitrate and the validity and enforceability of an agreement to which this chapter applies shall be determined by a court, rather than an arbitrator, . . . irrespective of whether the agreement purports to delegate such determinations to an arbitrator." 9 U.S.C. § 402(b). The statute does not merely supply a defense reviewable after arbitration; it withdraws the identified determinations from the arbitrator, and giving effect to a delegation provision before deciding whether § 402(b) displaces it would reverse the statutory order. *New Prime Inc. v. Oliveira*, 586 U.S. 105, 111–12 (2019), held that a court must decide whether the Act applies before invoking its authority to enforce a delegation clause; § 402(b) is more explicit, stating both the decisionmaker and the displacement of delegation. The right asserted is correspondingly narrow. Biering does not claim a clear and indisputable right to prevail under Chapter 4. He claims a right to have the statutorily identified court decide the identified questions before an arbitrator may exercise authority derived from the challenged agreement, and to have the remaining gateway questions decided

by the court to the extent governing law assigns them there.

### B. The Chapter 4 predicate is pleaded; the scope of the "case" is itself a court-assigned question; and the remaining gateway questions are judicial whether or not Chapter 4 applies.

A "sexual harassment dispute" is one "relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law," 9 U.S.C. § 401(4); the election belongs to "the person alleging" that conduct and runs to "a case" relating to the dispute, § 402(a). Count I invokes those provisions and makes the election; Count III pleads sexual harassment; and the complaint alleges that Respondents themselves characterized the events as sexual assault and applied the Firm's anti-harassment processes to Biering alone. The pro se complaint is entitled to liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

Two questions of first impression in this Court sit inside that determination. The Sixth Circuit reads § 402(a)'s "case" language to reach every claim in the action, not only the harassment claim. *Bruce v. Adams & Reese, LLP*, 168 F.4th 367, 382 (6th Cir. 2026). The Ninth Circuit has held that a claimant who first learned the basis for a harassment claim during an existing arbitration had not made the statutory election by initiating that arbitration on other claims. *Ding v. Structure Therapeutics, Inc.*, No. 25-1532, slip op. at 5, 20–21 (9th Cir. Aug. 19, 2026); *but see id*. at 24 (Rawlinson, J., dissenting). Those are §

402(b) determinations for the district court, not premises this Court is asked to accept.

The writ does not depend on the answers. If Chapter 4 applies, § 402(b) governs. If it does not reach every residual claim, ordinary arbitration law still assigns to the court whether an agreement to arbitrate was formed, *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201–02 (5th Cir. 2016); who is bound, *Sullivan v. Feldman*, 132 F.4th 315, 338 (5th Cir. 2025); which of the BAA and the Form U4 governs, *Suski*, 602 U.S. at 149–52 ("a court must decide which contract governs"); any specific challenge to the delegation provision, *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70–72 (2010); and waiver under ordinary principles without a prejudice requirement, *Morgan*, 596 U.S. at 417–18; *Garcia v. Fuentes*, 141 F.4th 671, 675–76 (5th Cir. 2025).

### C. The only decision that divided this controversy was administrative, was made at the member's written request, and has no identified direct review vehicle.

FINRA staff, not a panel, construed the BAA on JPMS's letter before any panel sat, and the staff letters identify the missing element: "a court order compelling arbitration at FINRA." App. 0058, 0256–0257. In doing so FINRA interpreted the governing agreement and its own Code, a function the Code reserves to the panel, which alone has "the authority to interpret and determine the applicability of all provisions under the Code." FINRA Rule 13413; see

FINRA Rule 13103 (Director's administrative duties). Sections 9 through 11 review only the award an arbitrator rendered, *Oxford Health*, 569 U.S. at 568–69; *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008); deference under *Oxford Health* attaches when an arbitrator construes the agreement entrusted to him, and does not transform a pre-panel administrative construction into a panel construction.

A court owes the staff's reading of Chapter 4 or of the Code no deference. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024). The district court in 950-P therefore duplicates no prior judicial or arbitral determination; it makes a judicial determination not yet made, and § 402(b) places it before, not after, the next arbitration.

### D. Respondents concede the decisionmaker and contest only the timing.

Respondents' August 12 motion states that the threshold questions are ones "the EFAA assigns to this Court to decide before any merits litigation proceeds," App. 0080–0081; their opposition to Dkt. 9 states that "this threshold issue is for the Court to decide," App. 0110. The announced motion will invoke the BAA and the Form U4, and Respondents' position on formation, party identity, scope, and waiver is reserved. App. 0105–0107, 0240. The remaining issue is whether the court's determination will occur before any

delegation, compelled arbitration, or arbitration-based stay obtains operative force from the challenged agreements.

### E. 381-O presents a distinct adjudicatory act; the petition does not rely on delay, and the request is severable.

The time to appeal runs from the order disposing of the motion. Fed. R. App. P. 4(a)(4)(A). Disposition of Dkt. 56 is therefore the act that makes the judgment reviewable under 28 U.S.C. § 1291 and 9 U.S.C. § 16(a)(1)(D). Biering does not contend that the period since briefing closed amounts to unreasonable delay. *Cf. In re United States ex rel. Drummond*, 886 F.3d 448, 450–51 (5th Cir. 2018) (per curiam). The petition asks for that act and nothing concerning its outcome. If the Court concludes a writ is not presently warranted as to 381-O, that component is severable; the Court may deny it, or order a Rule 21(b) response and retain the petition, without affecting the § 402(b) right asserted in 950-P.

### F. The forum question is judicial because the residual claims are legal claims.

The residual counts are legal claims that carry the Seventh Amendment right in an Article III court, *SEC v. Jarkesy*, 603 U.S. 109, 134–35 (2024), and whether these agreements waived that forum, as to these claims and these parties, is the judicial question § 402(b) and *First Options* reserve. "[W]hat matters is the substance of the suit, not where it is brought, who brings it, or

how it is labeled." *Jarkesy*, 603 U.S. at 135. The Article III objection is preserved below, App. 0019–0020; the petition does not rest on it.

## III. No other adequate means exist, because later review cannot recreate the decisional sequence after the next process has occurred.

### A. The first cycle shows what back-end review cannot do.

381-O supplied judicial review confined to the award rendered and to the § 10 grounds. That is the review Respondents' sequence would leave for the § 402(b) determinations: an arbitrator decides them, and a court later asks only whether he "exceeded [his] powers," 9 U.S.C. § 10(a)(4), a standard that sustains any award that "even arguably" construes the contract, *Oxford Health*, 569 U.S. at 569. *Axon* distinguishes ordinary litigation expense from subjection to an unauthorized decisionmaker, a "here-and-now injury" that is "impossible to remedy once the proceeding is over." 598 U.S. at 191–92; see *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010). Biering does not equate FINRA arbitration with the administrative adjudication in *Axon*; the point is that later review cannot make a decision antecedent after the process governed by that decision has occurred.

### B. Section 16, Coinbase, and Spizzirri define the next non-merits interval, and it reaches both dockets.

If the district court refuses arbitration, § 16(a)(1)(B) authorizes Respondents to appeal, and *Coinbase*, 599 U.S. at 740–44, requires a stay of the

proceedings involved in that appeal. If the court compels arbitration and stays the case, § 16(b) withholds an immediate appeal, *Apache Bohai Corp. v. Texaco China, B.V.*, 330 F.3d 307, 309–11 (5th Cir. 2003), and *Spizzirri*, 601 U.S. at 477–78, requires a stay rather than dismissal, so no final judgment issues under § 16(a)(3). An order that Chapter 4 does not apply, standing alone, is not among the orders listed in § 16(a). Part III.E. Respondents have asked that their stay reach the action "in its entirety" through "the resolution of any appeal" and have relied on overlapping materials from the two dockets. App. 0084, 0115–0138. The asymmetry does not itself establish mandamus; it explains why the timing of the antecedent court-assigned determinations matters: once the district court selects the § 16 branch, the parties do not possess equivalent immediate routes to review the allocation that preceded it.

### C. McDermott does not reach the right asserted.

*McDermott* denied mandamus directed at an entered order compelling arbitration because the district court "did not clearly overstep its authority" and because "all issues presented" could "be raised in an appeal after the arbitration is completed and a final judgment entered." 981 F.2d at 748. Both grounds concern review of a ruling already made, under no statute withdrawing specified questions from arbitral authority irrespective of delegation. A later appeal may correct an erroneous ruling; it cannot place the

court-assigned determinations at the front of a process that has run to award.

### D. The petition rests on sequence, not on elapsed time, and it is filed after the threat became concrete and before the event that would make the relief impossible.

The petition does not contend that the interval since briefing closed in either court is itself delay warranting the writ. It contends that an identified event—an order compelling arbitration, a referral, or an arbitration-based stay, sought by a motion due September 18 with a stay requested through any appeal—would displace determinations assigned to the court, and that review after that event cannot restore them. The timing inquiry is contextual. *In re Goodhart* granted mandamus where a threshold question was set for hearing after the event that made it matter, because "[a]n appeal from the district court's final judgment cannot undo any delay in reaching that final judgment." No. 26-20337, slip op. at 5, 9 (5th Cir. Aug. 26, 2026) (per curiam) (unpublished) (App. 0195–0218). *In re Alliance Liftboats, L.L.C*. denied mandamus where ordinary appeal remained adequate and found the petition "too late" as to notice already sent. No. 26-30091, slip op. at 2–3 (5th Cir. Mar. 11, 2026). *In re JPMorgan Chase & Co*., 916 F.3d 494, 499 (5th Cir. 2019), found the prong met where notice could not be recalled once sent.

This petition sits inside that window. Respondents have demanded a different forum under the agreement they told FINRA had "no bearing,"

announced the motion for September 18, requested a stay through "the resolution of any appeal," and reserved every other gateway position for that motion; the August 25 order, responding to an objection that asked the court to decide Dkt. 9 first, declined "any other relief" without mentioning Dkt. 9 or § 402(b); and no ruling on Dkt. 9 is scheduled. App. 0041–0042, 0084, 0102–0103, 0105–0110, 0240. No order compels arbitration, stays the action on that basis, or refers a gateway question. The writ is conditional and satisfied by the determinations whatever their outcome; waiting until the sequence has been displaced defeats the relief requested.

### E. Section 1292(b) is relevant because no certified interlocutory route presently exists.

Section 1292(b) permits a certified interlocutory appeal from an order presenting a controlling question of law on which substantial ground for difference of opinion exists, where immediate appeal may materially advance the litigation. No such order exists in 950-P, no certification exists, and even after certification this Court independently decides whether to permit the appeal. Section 1292(b) therefore cannot supply present relief from a non-decision. Its relevance is structural: Congress preserved it in § 16(b) as the exception to the bar on arbitration appeals, so if the district court enters an adverse Chapter 4 ruling that is not independently appealable under § 16(a), §

1292(b) may become the only statutory interlocutory route before an order compelling arbitration becomes operative. The alternative prayer asks only that, if such an order is entered and Biering timely requests certification, the district court decide the request before the case crosses into the nonappealable arbitral branch.

### F. An objection preserved but undecided when the next proceeding begins is, in practice, an objection lost.

In *Smith v. SEC*, a FINRA-sanctioned registrant argued on review that *Jarkesy* entitled him to an Article III court and a jury; the Sixth Circuit could not reach the argument because he had not urged it before the Commission, though, had he raised it in time, he "may well have been entitled to a jury trial in federal court." 171 F.4th at 811–12. Biering raised his objections at the assigned time. App. 0019–0020, 0033–0040, 0063–0078. Directed into arbitration first, the residue would return with objections preserved and undecided and a court confined to § 10.

### G. The requests address opposite ends of the same interval without merging the cases, and the limiting principle of In re Dean is satisfied.

If 950-P is directed to arbitration and stayed, § 16(b) withholds an immediate appeal and *Spizzirri* forecloses the dismissal that would produce a final judgment; during that interval the July 31 judgment in 381-O is the only final judgment arising from the controversy, and Rule 4(a)(4) prevents its

appellate period from running until Dkt. 56 is decided. The requests require no cross-case jurisdiction or consolidation; each asks the responsible district court to complete an act governing law assigns to it. A statutory violation alone does not warrant the writ; *In re Dean*, 527 F.3d 391, 394–95 (5th Cir. 2008), declined mandamus despite a Crime Victims' Rights Act violation because later proceedings still afforded the participation the statute secured. Here, once the residue enters arbitration or a *Coinbase* stay attaches, the court-first determination is replaced, not postponed.

## IV. The combined circumstances make limited supervisory relief appropriate without converting the surrounding institutional authorities into independent mandamus elements.

### A. The writ requested is conditional, severable, and narrower than the underlying disputes.

The third *Cheney* condition asks whether issuance is appropriate under the circumstances. 542 U.S. at 381. The writ decides no gateway, arbitrability, waiver, liability, or award question and directs neither district judge how to rule. As to 950-P it is satisfied by a judicial decision whatever the result; as to 381-O it is satisfied by disposition of Dkt. 56 regardless of outcome. The relief ends at adjudication and substitutes no appellate judgment for district-court judgment.

### B. The record is mature although the 950-P docket is recent.

The age of 950-P does not establish delay, and the petition does not

contend otherwise. But the controversy and its record did not begin in August 2026: approximately 351 days of discovery, approximately 29,000 pages over nine rounds, three motions to compel, six hearing days, a reasoned award, confirmation under §§ 9–11, and a protective AAA demand preceded the residual claims and the gateway in the district court. App. 0146–0147. The district court denied the Rule 56 vehicle as premature and permitted refiling after adequate discovery; the petition does not challenge that ruling. Respondents then undertook document-by-document litigation over the 996-page appendix drawn from the same record and obtained expedited briefing on that collateral matter. App. 0115–0140. The gateway is not presented against an undeveloped record, and forum allocation now generates additional proceedings while the antecedent decision remains outstanding.

### C. The Supreme Court's structural cases do not decide this petition, but they show why the identity and timing of a legally assigned decisionmaker matter independently of eventual substantive correctness.

The doctrines remain distinct. *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 484–86 (2010), addressed structural restraints on, and judicial review of, a body modeled on the securities industry's self-regulatory organizations. *Axon* recognized that subjection to an allegedly unlawful decisionmaker can itself produce an injury not fully repairable

through back-end review. 598 U.S. at 191–92. *Jarkesy*, 603 U.S. at 134–35, held that the substance of a legal action can make the identity of the adjudicative forum constitutionally consequential. None supplies an independent ground for the writ. Their relevance is confined to the third *Cheney* condition: federal law repeatedly treats the identity of the assigned decisionmaker and the timing of review as institutional questions distinct from whether the ultimate decision is correct. Section 402(b) makes that concern statutory here. Congress expressly selected the court.

### D. Recent FINRA and private-nondelegation decisions reinforce the timing distinction without determining FINRA's constitutional status.

FINRA operates within a statutory structure of Commission supervision, and recent appellate litigation has examined when governmental supervision over consequential private regulatory action is sufficient. In *Alpine Sec. Corp. v. FINRA*, 121 F.4th 1314, 1326 (D.C. Cir. 2024), the D.C. Circuit enjoined FINRA from giving effect to an expedited expulsion before Commission review, reasoning that review following an irreversible sanction "can make any later review . . . a largely academic exercise." In *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, No. 23-10520, slip op. at 22–23, 29–30 & n.21 (5th Cir. June 11, 2026), this Court held a private regulator's enforcement power unconstitutional where governmental control arrives only after the private act

takes effect, distinguished the SEC–FINRA structure because Congress furnished the Commission substantial supervisory authority over FINRA, and expressly reserved "whether the SEC–FINRA relationship poses any constitutional issues." *Contra Oklahoma v. United States*, 163 F.4th 294 (6th Cir. 2025). Those cases concern regulatory enforcement, not employment arbitration, and establish no constitutional defect here. Their narrower relevance is the one *Axon* identifies: when governmental or judicial review is part of the legal allocation, its timing matters if the private act becomes consequential before the assigned public decisionmaker acts. The point has particular force for arbitration because the Commission's oversight of FINRA reaches its disciplinary action but not its private arbitration awards, which no agency reviews. FINRA's administrative removal of the statutory claims did not travel through the disciplinary-review path to the Commission or a court of appeals. The court-assigned gateway in 950-P is the present judicial checkpoint.

### E. Congress separately subjects FINRA, including its arbitration services, to recurring governmental oversight.

Congress has not treated FINRA's structure as exclusively private. Section 964 of the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376 (2010), requires recurring review of

Commission oversight of FINRA across specified areas that expressly include FINRA's arbitration services, together with governance, conflicts of interest, examinations, funding, rule effectiveness, and transparency; the Government Accountability Office's most recent review confirms the continuing triennial structure. U.S. Gov't Accountability Off., GAO-25-107723, Securities Regulation: SEC's Oversight of the Financial Industry Regulatory Authority (2025) (FINRA is a membership organization governed and funded by the broker-dealers it regulates). Congress also continues to examine the SRO model: on March 5, 2026, the House Subcommittee on Capital Markets convened a hearing on FINRA and the MSRB and listed among the legislation under consideration H.R. 2689, which would transfer the rulemaking, examination, and enforcement functions of registered national securities associations to the Commission. *The Role of Self-Regulatory Organizations in U.S. Markets: Examining FINRA and the MSRB*: *Hearing Before the Subcomm. on Capital Mkts. of the H. Comm. on Fin. Servs.*, 119th Cong. (Mar. 5, 2026); H.R. 2689, 119th Cong. (2025). None of that decides Biering's claims, alters *Cheney*, or supplies a cause of action. It confirms that the FINRA structure implicated by this record operates within an ongoing federal oversight framework rather than as an isolated private forum.

### F. Section 572 provides a congressional analogue, not a FINRA vacatur ground.

Congress has elsewhere identified circumstances that make institutional dispute resolution unsuitable: the need for authoritative resolution, significant governmental-policy questions, consistency, effects on nonparties, the importance of a full public record, and continuing governmental responsibility. 5 U.S.C. § 572(b)(1)–(6). Section 572 does not govern private FINRA arbitration, and 9 U.S.C. § 10(c) supplies no vacatur ground for a FINRA award; Biering relies on neither as operative FAA law. Section 572 is relevant as a congressional analogue. Several features Congress identified there are present in this record: a judicially confirmed Form U5 correction entering a national securities-registration record; affiliated entities outside the award; disputes over the scope of a public federal judgment; and continuing regulatory administration of CRD information.

### G. Section 1292(b), Rule 40, and mandamus remain separate doctrines; their criteria nevertheless show why the circumstances are unusual.

Section 1292(b) asks whether a controlling question of law, substantial ground for difference of opinion, and material advancement justify a certified interlocutory appeal. *Cheney* asks whether there is no adequate alternative, a clear and indisputable right, and circumstances appropriate for extraordinary relief. Rule 40 concerns the institutional work of this Court—uniformity,

conflict with authoritative decisions, and questions of exceptional importance, Fed. R. App. P. 40(b)(2)—and supplies no element of *Cheney*.

The present circumstances nevertheless touch features each framework independently regards as significant. The decisionmaker rule is express in § 402(b). The reach of Chapter 4 contains questions on which courts of appeals have divided. *Bruce*, 168 F.4th at 382; *Ding*, slip op. at 5, 20–21. The outcome determines which branch of § 16 becomes operative. The structure that produced this record recurs wherever a registered person employed by a non-member affiliate asserts statutory claims. App. 0055, 0061–0062. FINRA remains under recurring Commission and congressional oversight. And post-award review is deliberately narrower than first-instance determination of the judicial gateway. Satisfaction of one extraordinary standard does not prove another. But multiple federal frameworks, developed for different purposes, independently identify the allocation, timing, reviewability, and institutional effect of decisionmaking as consequential. The doctrines remain separate. The circumstances converge. That convergence bears on *Cheney*'s third condition because the writ requested remains narrow: preserve the decisionmaking authority already allocated by law before the private process governed by that allocation acquires consequences that later review cannot reconstruct.

## CONCLUSION

The controversy has completed one arbitration-and-confirmation cycle. That cycle adjudicated a narrowed submission, produced findings on the investigation and the Form U5, expressly excluded determinations concerning two JP*Morgan* entities, and left the administratively removed statutory claims unresolved; the resulting judgment is one post-judgment ruling away from ordinary appellate review. The residue sits in 950-P, where Congress assigns the gateway to a court irrespective of delegation, Respondents acknowledge the decisionmaker while reserving their position for an announced motion to compel, and AAA awaits a court decision. The requested writ determines the answer in neither court. It asks that each court perform the act governing law assigns to it before the next procedural branch makes the timing of that act consequential.

## PRAYER

For these reasons, Biering respectfully requests that this Court:

1. As to No. 4:26-cv-00381-O-BP, ISSUE a writ directing disposition of the fully briefed motion under Federal Rules of Civil Procedure 59(e) and 60(b) (Dkt. 56), without prescribing the result, so that Federal Rule of Appellate Procedure 4(a)(4) may operate and the existing judgment may proceed through the ordinary appellate

process.

2. As to No. 4:26-cv-00950-P-BJ, ISSUE a writ directing that, before an order compelling arbitration, an asserted delegation provision is given effect, or an arbitration-based stay presupposing those determinations is entered, the district court determine: (a) whether Chapter 4 of the Federal Arbitration Act applies and, if so, the validity and enforceability questions 9 U.S.C. § 402(b) assigns to a court irrespective of delegation; (b) which arbitration instrument governs and whether an enforceable agreement binds each Respondent; (c) any properly presented challenge to an asserted delegation provision; and (d) any preserved waiver or estoppel issue that governing law assigns to the court.

3. Alternatively, if the district court in No. 4:26-cv-00950-P-BJ enters an adverse Chapter 4 determination before an order compelling or referring arbitration becomes operative, DIRECT only that any timely request for certification under 28 U.S.C. § 1292(b) be ruled upon before that transition, without directing certification or prejudging any certified appeal.

4. Alternatively as to either component, ORDER a response under Federal Rule of Appellate Procedure 21(b) and retain the petition

while the district court completes the identified act.

Nothing in the requested relief prevents Respondents from filing their announced motion, dictates the vehicle or result in either court, bypasses justified gateway fact development, consolidates or reassigns either action, or reviews the July 31, 2026 judgment through Rule 21.

Respectfully submitted,

**JOSHUA DAVID SAPPI BIERING**
Petitioner, *Pro Se*

Dated: September 8, 2026

**CERTIFICATE OF COMPLIANCE**

1. This petition complies with the type-volume limitation of Federal Rule of Appellate Procedure 21(d)(1) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), it contains 7,776 words, including footnotes, as counted by the word-count function of Microsoft Word.

2. This petition complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced serif typeface using Microsoft Word in 14-point Cambria, including footnotes.

3. Pursuant to Fifth Circuit Rule 25.2.13, the undersigned certifies that all required privacy redactions have been made; that the electronic submission is an exact copy of the paper document, 5th Cir. R. 25.2.1; and that the document has been scanned for viruses with Microsoft Defender Antivirus and is free of viruses.

**JOSHUA DAVID SAPPI BIERING**
Petitioner, *Pro Se*

## CERTIFICATE OF SERVICE

I certify that on September 8, 2026, this petition, with the accompanying appendix (App. 0001–0257) and the companion Emergency Motion under Fifth Circuit Rule 27.3, was transmitted to the Clerk of this Court for filing and, at the same time and in the same manner, was served by email on counsel of record for the real parties in interest: Christopher S. Dodrill (christopher.dodrill@gtlaw.com), Elizabeth A. Bones (beth.bones@gtlaw.com), and Jennifer Tomsen (tomsenj@gtlaw.com), Greenberg Traurig, LLP; and Jeffrey S. Dunlap (jdunlap@ubglaw.com) and Kyle W. Rea (krea@ubglaw.com), UB Greensfelder LLP. Email is the means by which the parties have exchanged papers in the underlying proceedings, and counsel are registered CM/ECF users who will also receive the Court's notice of docket activity. A copy of the petition is being provided to the district judges whose proceedings are the subject of the petition by notice filed on the docket of each underlying case. Fed. R. App. P. 21(a)(1).

**JOSHUA DAVID SAPPI BIERING**
Petitioner, *Pro Se*

**ADDENDUM A: 9 U.S.C. § 402**

Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021, Pub. L. No. 117-90, 136 Stat. 26 (2022), codified in relevant part at 9 U.S.C. § 402:

> (a) In general. Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.
>
> (b) Determination of applicability. An issue as to whether this chapter applies with respect to a dispute shall be determined under Federal law. The applicability of this chapter to an agreement to arbitrate and the validity and enforceability of an agreement to which this chapter applies shall be determined by a court, rather than an arbitrator, irrespective of whether the party resisting arbitration challenges the arbitration agreement specifically or in conjunction with other terms of the contract containing such agreement, and irrespective of whether the agreement purports to delegate such determinations to an arbitrator.

## ADDENDUM B: CONTENTS OF THE RULE 21 APPENDIX

The separately bound appendix contains the orders, memoranda, briefs, and record materials necessary to understand both components of the petition. FED. R. APP. P. 21(a)(2)(C); 5TH CIR. R. 21.

For 950-P: the complaint; Dkt. 9 and its exhibits; Respondents' stay motion and the order denying it; the orders disposing of the Rule 56 motion and the objections; Dkts. 20 and 21 on the judicial gateway; the motion to strike or restrict and the expedited briefing order; the BAA and Form U4 materials on which the competing arbitration provisions rest; the FINRA administrative correspondence; and the FINRA award.

For 381-O: the award; the findings, conclusions, and recommendation insofar as they define the scope of FAA review; the July 31 order and judgment; Dkt. 56, Respondents' opposition, and Biering's reply; and Dkt. 59.

The appendix also includes *In re Goodhart*, No. 26-20337 (5th Cir. Aug. 26, 2026), cited as an unpublished decision under Fifth Circuit Rule 47.5.4.